Liza M. Walsh
Hector D. Ruiz
CONNELL FOLEY LLP
One Newark Center
1085 Raymond Boulevard, 19th Floor
Newark, New Jersey 07102
(973) 757-1100

**OF COUNSEL:**

Adam R. Alper
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
(415) 439-1400

Michael W. De Vries
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, CA 90071
(213) 680-8400

Gianni Cutri
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

Jared Barcenas
KIRKLAND & ELLIS LLP
601 Lexington Ave.
New York, NY 10022
(212) 446-4800

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| EAGLE VIEW TECHNOLOGIES, INC., and PICTOMETRY INTERNATIONAL CORP., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| XACTWARE SOLUTIONS, INC., and VERISK ANALYTICS, INC., | ) ) ) | |
| Defendants. | ) ) ) | Civil Action No. _____ |

Plaintiffs Eagle View Technologies, Inc. ("Eagle View") and Pictometry International

Corp. ("Pictometry") (collectively, "Plaintiffs"), by their undersigned attorneys, for their

1

3503780-1

Complaint against Defendants Xactware Solutions, Inc. ("Xactware") and Verisk Analytics, Inc. ("Verisk") (collectively, "Defendants"), hereby allege as follows:

## NATURE OF ACTION

1.      This is an action for patent infringement.  Over the course of several years, Eagle View and its affiliate Pictometry have developed products that produce 3D models from aerial images of roofs, resulting in aerial roof reports that are extremely accurate and detailed.  These reports are used, *inter alia*, to estimate the costs of roof repairs.  Eagle View and Pictometry are market leaders in providing technologies relating to such reports in the construction and insurance markets.  Xactware directly competes with Eagle View and Pictometry, including in the construction and insurance markets, with at least rooftop aerial measurement products, including Xactimate®, Roof InSight™, Property InSight™, and Aerial Sketch™ (collectively, "Accused Products").  Xactware is a wholly-owned subsidiary of Verisk, and Verisk has been and continues to be integrally involved in Xactware's operations.  Plaintiffs Eagle View and Pictometry now bring this action to halt Defendants' respective infringement of seven patents, and obtain other relief as necessary.  As more fully described below, each of Defendants Xactware and Verisk infringes each of United States Patent Nos. 8,078,436, 8,170,840, 8,209,152, 8,542,880, 8,818,770, 8,823,732, and 8,825,454 (collectively, "Patents-in-Suit") in connection with the Accused Products.

## THE PARTIES

2.      Plaintiff Eagle View Technologies, Inc. is a corporation organized and existing under the laws of the State of Washington, having a principal place of business at 3700 Monte Villa Parkway, Suite 200, Bothell, WA 98021.  Eagle View launched in 2008, and was the first remote aerial roof measurement service.  Eagle View has developed and continues to develop products that produce 3D models resulting in aerial roof and wall measurement reports.  These reports are used, *inter alia*, to estimate the costs of roof repairs.

2

3.     Plaintiff Pictometry International Corp. is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 100 Town Centre Drive, Suite A, Rochester, NY 14623.  Pictometry, which was founded in 1996, is an innovator of, among other things, aerial oblique image capture and processing technologies.

4.     In January 2013, a merger between Eagle View and Pictometry resulted in the creation of a new company called EagleView Technology Corporation ("EVT"), which is comprised of Eagle View and Pictometry.

5.     On information and belief, Defendant Xactware Solutions, Inc. is a corporation organized and existing under the laws of the State of Delaware, having a place of business at 545 Washington Boulevard, Jersey City, NJ 07310.  Xactware directly competes with Eagle View and Pictometry, including in the construction and insurance markets, with at least the Accused Products.

6.     On information and belief, Defendant Verisk Analytics, Inc. is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 545 Washington Boulevard, Jersey City, NJ 07310.  Xactware is a wholly-owned subsidiary of Verisk, and Verisk has been and continues to be integrally involved in Xactware's operations.  According to Verisk's website, Xactware is a member of "The Verisk Family of Companies" (Ex. 1) and the President of Xactware, Jim Loveland, also is a Senior Vice President at Verisk (Ex. 2).  According to records kept by the New Jersey Division of Revenue and Enterprise Services, Xactware maintains office space in the same building as Verisk, *i.e.*, 545 Washington Boulevard, Jersey City, NJ 07310.  (Ex. 3).

**PATENTS-IN-SUIT**

7.     Eagle View is the owner of the entire right, title, and interest in and to United States Patent No. 8,078,436 (the "'436 Patent"), entitled "Aerial Roof Estimation Systems and Methods," which was issued by the United States Patent and Trademark Office (USPTO) on December 13, 2011.  A true and correct copy of the '436 Patent is attached hereto as Exhibit 4.

8.     The '436 Patent is valid and enforceable.

3

9.      Eagle View is the owner of the entire right, title, and interest in and to United States Patent No. 8,170,840 (the "'840 Patent"), entitled "Pitch Determination Systems and Methods for Aerial Roof Estimation," which was issued by the USPTO on May 1, 2012.  A true and correct copy of the '840 Patent is attached hereto as Exhibit 5.

10.     The '840 Patent is valid and enforceable.

11.     Eagle View is the owner of the entire right, title, and interest in and to United States Patent No. 8,209,152 (the "'152 Patent"), entitled "Concurrent Display Systems and Methods for Aerial Roof Estimation," which was issued by the USPTO on June 26, 2012.  A true and correct copy of the '152 Patent is attached hereto as Exhibit 6.

12.     The '152 Patent is valid and enforceable.

13.     Pictometry is the owner of the entire right, title, and interest in and to United States Patent No. 8,542,880 (the "'880 Patent"), entitled "System and Process for Roof Measurement Using Aerial Imagery," which was issued by the USPTO on September 24, 2013. A true and correct copy of the '880 Patent is attached hereto as Exhibit 7.

14.     The '880 Patent is valid and enforceable.

15.     Eagle View is the owner of the entire right, title, and interest in and to United States Patent No. 8,818,770 (the "'770 Patent"), entitled "Pitch Determination Systems and Methods for Aerial Roof Estimation," which was issued by the USPTO on August 26, 2014.  A true and correct copy of the '770 Patent is attached hereto as Exhibit 8.

16.     The '770 Patent is valid and enforceable.

17.     Pictometry is the owner of the entire right, title, and interest in and to United States Patent No. 8,823,732 (the "'732 Patent"), entitled "Systems and Methods for Processing Images with Edge Detection and Snap-to Feature," which was issued by the USPTO on September 2, 2014.  A true and correct copy of the '732 Patent is attached hereto as Exhibit 9.

18.     The '732 Patent is valid and enforceable.

19.     Eagle View is the owner of the entire right, title, and interest in and to United States Patent No. 8,825,454 (the "'454 Patent"), entitled "Concurrent Display Systems and

4

Methods for Aerial Roof Estimation," which was issued by the USPTO on September 2, 2014. A true and correct copy of the '454 Patent is attached hereto as Exhibit 10.

20.     The '454 Patent is valid and enforceable.

## JURISDICTION AND VENUE

21.     This is an action for patent infringement arising under the provisions of the Patent Laws of the United States of America, Title 35, United States Code.

22.     Subject matter jurisdiction over Plaintiffs' claims is conferred upon this Court by 28 U.S.C. §§ 1331 and 1338(a).

23.     This Court has personal jurisdiction over Xactware because, *inter alia*, Xactware, on information and belief: (1) has substantial, continuous, and systematic contacts with this State; (2) is registered to do business in the State of New Jersey under entity ID # 0101006731 and has a registered agent for service of process in New Jersey (Ex. 3); (3) maintains a place of business in this State; (4) has solicited business in, transacted business within, and attempted to derive financial benefit from residents of New Jersey, on a substantial and not isolated basis; (5) has committed and continues to commit purposeful actions in this State that infringe the Patents-in-Suit; and (6) enjoys substantial income from such infringement in this State.

24.     This Court has personal jurisdiction over Verisk because, *inter alia*, Verisk, on information and belief: (1) has substantial, continuous, and systematic contacts with this State; (2) maintains a principal place of business in this State; (3) has solicited business in, transacted business within, and attempted to derive financial benefit from residents of New Jersey, on a substantial and not isolated basis; (4) has committed and continues to commit purposeful actions in this State that infringe the Patents-in-Suit; and (5) enjoys substantial income from such infringement in this State.

25.     Additionally, Verisk has previously consented to this Court's jurisdiction and availed itself of the protections afforded by this Court. *See, e.g.*, Defendant's Answer in *Austin v. Verisk Analytics, Inc. et al.*, Case No. 2:13-cv-04277.

3503780-1

26.     Venue is proper in this Court under 28 U.S.C. §§ 1391 and 1400(b) because Xactware and Verisk have places of business in this District, have committed acts of infringement in this district, and are subject to personal jurisdiction in this district.

<u>**COUNT I – INFRINGEMENT OF THE '436 PATENT BY XACTWARE**</u>

27.     Plaintiffs reallege paragraphs 1-26 as if fully set forth herein.

28.     The USPTO duly and legally issued the '436 Patent on December 13, 2011.

29.     Xactware has directly and indirectly infringed and continues to directly and indirectly infringe the '436 Patent, in connection with rooftop aerial measurement products, including but not limited to Xactimate® in combination with Roof InSight™ and/or Property Insight™.

30.     Xactware makes and uses rooftop aerial measurement products, including but not limited to Xactimate® in combination with Roof InSight™ and/or Property Insight™, within the United States, and as such, Xactware has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least one claim of the '436 Patent under one or more subsections of 35 U.S.C. § 271, including § 271(a).

31.     On information and belief, Xactware has had knowledge of the '436 Patent since at least as early December 2014 in connection with Verisk's intended acquisition of EVT. Verisk performed due diligence related to its intended acquisition of EVT, including with respect to Eagle View's patent holdings. EVT personnel had discussions with representatives of Verisk concerning Eagle View's patents, including the '436 Patent, prior to the termination of the EVT acquisition in December 2014.

32.     On information and belief, Verisk has been and continues to be integrally involved in Xactware's operations and as such, Xactware became aware of the '436 Patent through Verisk and the diligence Verisk performed in connection with its intended acquisition of EVT.

33.     Xactware also has had knowledge of the '436 Patent since at least as early as May 22, 2012, when it submitted an Information Disclosure Statement (IDS) identifying the '436

6

Patent to the USPTO during the prosecution of its own U.S. Patent Application No. 13/397,325. (Ex. 11).

34.     In addition to directly infringing the '436 Patent, Xactware has in the past and continues to indirectly infringe the '436 Patent by inducing direct infringement by others, such as end users of rooftop aerial measurement products, including but not limited to Xactimate® in combination with Roof InSight™ and/or Property Insight™.  As set forth above, Xactware knew or should have known that use of rooftop aerial measurement products, including but not limited to Xactimate® in combination with Roof InSight™ and/or Property Insight™, by its end users infringes at least one claim of the '436 Patent since at least as early as the first such infringing use of such products after May 22, 2012.  Xactware knowingly induced such use of those products in a manner that infringes the '436 Patent, including through at least promotional, advertising, and instructional materials, and Xactware had the requisite intent to encourage such infringement.  As such, Xactware has indirectly infringed and continues to indirectly infringe at least one claim of the '436 Patent under one or more subsections of 35 U.S.C. § 271, including § 271(b).

35.     Xactware's infringement of the '436 Patent has been and continues to be willful. Xactware has acted with knowledge of the '436 Patent and without a reasonable basis for a good-faith belief that it would not be liable for infringement of the '436 Patent.  For example, subsequent to being informed of the '436 Patent, Xactware continued to make and use rooftop aerial measurement products, including but not limited to Xactimate® in combination with Roof InSight™ and/or Property Insight™, within the United States in a manner that infringes the '436 Patent.  Xactware has disregarded and continues to disregard its infringement and/or an objectively high likelihood that its actions constitute infringement of the '436 Patent.  This objectively-defined risk was known or is so obvious that it should have been known to Xactware. Xactware's infringement of the '436 Patent has been and continues to be willful, entitling Eagle View to enhanced damages under 35 U.S.C. § 284.

36.     Xactware's acts of infringement have caused damage to Eagle View, and Eagle View is entitled to recover from Xactware the damages sustained by Eagle View as a result of Xactware's wrongful acts in an amount subject to proof at trial.

37.     Xactware's acts of infringement have caused, and unless restrained and enjoined, will continue to cause, irreparable injury and damage to Eagle View for which there is no adequate remedy at law.

38.     This case is exceptional, entitling Eagle View to an award of attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT II – INFRINGEMENT OF THE '436 PATENT BY VERISK

39.     Plaintiffs reallege paragraphs 1-38 as if fully set forth herein.

40.     Verisk has indirectly infringed and continues to indirectly infringe the '436 Patent, in connection with Xactware's rooftop aerial measurement products, including but not limited to Xactimate® in combination with Roof InSight™ and/or Property Insight™.

41.     On information and belief, Verisk has had knowledge of the '436 Patent since at least as early as December 2014 in connection with its intended acquisition of EVT.  In January 2014, Verisk signed an agreement to acquire EVT.  Verisk performed due diligence related to its intended acquisition of EVT, including with respect to Eagle View's patent holdings.  EVT personnel had discussions with representatives of Verisk concerning Eagle View's patents, including the '436 Patent, prior to the termination of the EVT acquisition in December 2014.

42.     On information and belief, Verisk also has had knowledge of the '436 Patent since at least as early as May 22, 2012, when Xactware submitted an IDS identifying the '436 Patent to the USPTO during the prosecution of Xactware's U.S. Patent Application No. 13/397,325.  (Ex. 11).  On information and belief, Verisk has been and continues to be integrally involved in Xactware's operations and as such, stays apprised of Xactware's patent holdings and the prosecution of its patent applications.

43.     Verisk has in the past and continues to indirectly infringe the '436 Patent by inducing direct infringement by Xactware, including Xactware's making and using rooftop aerial

measurement products, including but not limited to Xactimate® in combination with Roof InSight™ and/or Property Insight™, within the United States.  As set forth above, Verisk knew or should have known that Xactware's actions infringe the claims of the '436 Patent since at least as early as Xactware's first such act of direct infringement with respect to those products after May 22, 2012.  Verisk knowingly induced Xactware's making and using of such products in a manner that infringes the '436 Patent, including through at least its involvement in and control over the development, support, sale, and distribution of these products (*e.g.*, through procuring aerial images to be used therein (*see* Ex. 12), through taking actions to  broaden Xactware's customer base therefor (*see* Ex. 2), and in the marketing and promotion of these products (*e.g.*, through Verisk's website (*see* Exs. 13-15)), and Verisk had the requisite intent to encourage such infringement.  Indeed, Jim Loveland is both a Senior Vice President at Verisk and Xactware's President, and has "overseen the release of many new [Xactware] products and services."  (Ex. 2).  Accordingly, Verisk has indirectly infringed and continues to indirectly infringe at least one claim of the '436 Patent under one or more subsections of 35 U.S.C. § 271, including § 271(b).

44.    Verisk's infringement of the '436 Patent has been and continues to be willful.  Verisk has acted with knowledge of the '436 Patent and without a reasonable basis for a good-faith belief that it would not be liable for infringement of the '436 Patent.  For example, subsequent to being informed of the '436 Patent, Verisk continued to induce Xactware's making and using of rooftop aerial measurement products, including but not limited to Xactimate® in combination with Roof InSight™ and/or Property Insight™ in a manner that infringes the '436 Patent.  Verisk has disregarded and continues to disregard its infringement and/or an objectively high likelihood that its actions constitute infringement of the '436 Patent.  This objectively-defined risk was known or is so obvious that it should have been known to Verisk.  Verisk's infringement of the '436 Patent has been and continues to be willful, entitling Eagle View to enhanced damages under 35 U.S.C. § 284.

45.     Verisk's acts of infringement have caused damage to Eagle View, and Eagle View is entitled to recover from Verisk the damages sustained by Eagle View as a result of Verisk's wrongful acts in an amount subject to proof at trial.

46.     Verisk's acts of infringement have caused, and unless restrained and enjoined, will continue to cause, irreparable injury and damage to Eagle View for which there is no adequate remedy at law.

47.     This case is exceptional, entitling Eagle View to an award of attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

### COUNT III – INFRINGEMENT OF THE '840 PATENT BY XACTWARE

48.     Plaintiffs reallege paragraphs 1-47 as if fully set forth herein.

49.     The USPTO duly and legally issued the '840 Patent on May 1, 2012.

50.     Xactware has directly and indirectly infringed and continues to directly and indirectly infringe the '840 Patent, in connection with rooftop aerial measurement products, including but not limited to Xactimate® in combination with Aerial Sketch™.

51.     Xactware makes and uses rooftop aerial measurement products, including but not limited to Xactimate® in combination with Aerial Sketch™, within the United States, and as such, Xactware has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least one claim of the '840 Patent under one or more subsections of 35 U.S.C. § 271, including § 271(a).

52.     On information and belief, Xactware has had knowledge of the '840 Patent since at least as early December 2014 in connection with Verisk's intended acquisition of EVT. Verisk performed due diligence related to its intended acquisition of EVT, including with respect to Eagle View's patent holdings.  EVT personnel had discussions with representatives of Verisk concerning Eagle View's patents, including the '840 Patent, prior to the termination of the EVT acquisition in December 2014.

53.     On information and belief, Verisk has been and continues to be integrally involved in Xactware's operations and as such, Xactware became aware of the '840 Patent

through Verisk and the diligence Verisk performed in connection with its intended acquisition of EVT.

54.     On information and belief, Xactware also has had knowledge of the '840 Patent since May 22, 2012, when Xactware submitted an IDS identifying U.S. Patent Publication Number 2010/0110074, which corresponds to the '840 Patent, to the USPTO during the prosecution of its own U.S. Patent Application No. 13/397,325.  (Ex. 11).

55.     In addition to directly infringing the '840 Patent, Xactware has in the past and continues to indirectly infringe the '840 Patent by inducing direct infringement by others, such as end users of rooftop aerial measurement products, including but not limited to Xactimate® in combination with Aerial Sketch$^{TM}$.  As set forth above, Xactware knew or should have known that use of rooftop aerial measurement products, including but not limited to Xactimate® in combination with Aerial Sketch$^{TM}$, by its end users infringes at least one claim of the '840 Patent since at least as early as the first such infringing use of such products after May 22, 2012. Xactware knowingly induced such use of those products in a manner that infringes the '840 Patent, including through at least promotional, advertising, and instructional materials, and Xactware had the requisite intent to encourage such infringement.  As such, Xactware has indirectly infringed and continues to indirectly infringe at least one claim of the '840 Patent under one or more subsections of 35 U.S.C. § 271, including § 271(b).

56.     Xactware's infringement of the '840 Patent has been and continues to be willful. Xactware has acted with knowledge of the '840 Patent and without a reasonable basis for a good-faith belief that it would not be liable for infringement of the '840 Patent.  For example, subsequent to being informed of the '840 Patent, Xactware continued to make and use rooftop aerial measurement products, including but not limited to Xactimate® in combination with Aerial Sketch$^{TM}$, within the United States in a manner that infringes the '840 Patent.  Xactware has disregarded and continues to disregard its infringement and/or an objectively high likelihood that its actions constitute infringement of the '840 Patent.  This objectively-defined risk was known or is so obvious that it should have been known to Xactware.  Xactware's infringement of

3503780-1

the '840 Patent has been and continues to be willful, entitling Eagle View to enhanced damages under 35 U.S.C. § 284.

57.     Xactware's acts of infringement have caused damage to Eagle View, and Eagle View is entitled to recover from Xactware the damages sustained by Eagle View as a result of Xactware's wrongful acts in an amount subject to proof at trial.

58.     Xactware's acts of infringement have caused, and unless restrained and enjoined, will continue to cause, irreparable injury and damage to Eagle View for which there is no adequate remedy at law.

59.     This case is exceptional, entitling Eagle View to an award of attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT IV – INFRINGEMENT OF THE '840 PATENT BY VERISK

60.     Plaintiffs reallege paragraphs 1-59 as if fully set forth herein.

61.     Verisk has indirectly infringed and continues to indirectly infringe the '840 Patent, in connection with Xactware's rooftop aerial measurement products, including but not limited to Xactimate® in combination with Aerial Sketch™.

62.     On information and belief, Verisk has had knowledge of the '840 Patent since at least as early as December 2014 in connection with its intended acquisition of EVT.  In January 2014, Verisk signed an agreement to acquire EVT.  Verisk performed due diligence related to its intended acquisition of EVT, including with respect to Eagle View's patent holdings.  EVT personnel had discussions with representatives of Verisk concerning Eagle View's patents, including the '840 Patent, prior to the termination of the EVT acquisition in December 2014.

63.     On information and belief, Verisk also has had knowledge of the '840 Patent since May 22, 2012, when Xactware submitted an IDS identifying U.S. Patent Publication Number 2010/0110074, which corresponds to the '840 Patent, to the USPTO during the prosecution of its own U.S. Patent Application No. 13/397,325.  (Ex. 11).  On information and belief, Verisk has been and continues to be integrally involved in Xactware's operations and as such, stays apprised of Xactware's patent holdings and the prosecution of its patent applications.

64.     Verisk has in the past and continues to indirectly infringe the '840 Patent by inducing direct infringement by Xactware, including Xactware's making and using rooftop aerial measurement products, including but not limited to Xactimate® in combination with Aerial Sketch™, within the United States.  As set forth above, Verisk knew or should have known that Xactware's actions infringe the claims of the '840 Patent since at least as early as Xactware's first such act of direct infringement with respect to those products after May 22, 2012.  Verisk knowingly induced Xactware's making and using of such products in a manner that infringes the '840 Patent, including through at least its involvement in and control over the development, support, sale, and distribution of these products (*e.g.*, through procuring aerial images to be used therein (*see* Ex. 12) and through taking actions to  broaden Xactware's customer base therefor (*see* Ex. 2), and in the marketing and promotion of these products (*e.g.*, through Verisk's website (*see* Exs. 13-15)), and Verisk had the requisite intent to encourage such infringement.  Indeed, Jim Loveland is both a Senior Vice President at Verisk and Xactware's President, and has "overseen the release of many new [Xactware] products and services."  (Ex. 2).  Accordingly, Verisk has indirectly infringed and continues to indirectly infringe at least one claim of the '840 Patent under one or more subsections of 35 U.S.C. § 271, including § 271(b).

65.     Verisk's infringement of the '840 Patent has been and continues to be willful.  Verisk has acted with knowledge of the '840 Patent and without a reasonable basis for a good-faith belief that it would not be liable for infringement of the '840 Patent.  For example, subsequent to being informed of the '840 Patent, Verisk continued to induce Xactware's making and using of rooftop aerial measurement products, including but not limited to Xactimate® in combination with Aerial Sketch™ in a manner that infringes the '840 Patent.  Verisk has disregarded and continues to disregard its infringement and/or an objectively high likelihood that its actions constitute infringement of the '840 Patent.  This objectively-defined risk was known or is so obvious that it should have been known to Verisk.  Verisk's infringement of the '840 Patent has been and continues to be willful, entitling Eagle View to enhanced damages under 35 U.S.C. § 284.

66.     Verisk's acts of infringement have caused damage to Eagle View, and Eagle View is entitled to recover from Verisk the damages sustained by Eagle View as a result of Verisk's wrongful acts in an amount subject to proof at trial.

67.     Verisk's acts of infringement have caused, and unless restrained and enjoined, will continue to cause, irreparable injury and damage to Eagle View for which there is no adequate remedy at law.

68.     This case is exceptional, entitling Eagle View to an award of attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

### COUNT V – INFRINGEMENT OF THE '152 PATENT BY XACTWARE

69.     Plaintiffs reallege paragraphs 1-68 as if fully set forth herein.

70.     The USPTO duly and legally issued the '152 Patent on June 26, 2012.

71.     Xactware has directly and indirectly infringed and continues to directly and indirectly infringe the '152 Patent, in connection with rooftop aerial measurement products, including but not limited to Xactimate® in combination with Aerial Sketch™.

72.     Xactware makes and uses rooftop aerial measurement products, including but not limited to Xactimate® in combination with Aerial Sketch™, within the United States, and as such, Xactware has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least one claim of the '152 Patent under one or more subsections of 35 U.S.C. § 271, including § 271(a).

73.     On information and belief, Xactware has had knowledge of the '152 Patent since at least as early December 2014 in connection with Verisk's intended acquisition of EVT. Verisk performed due diligence related to its intended acquisition of EVT, including with respect to Eagle View's patent holdings.  EVT personnel had discussions with representatives of Verisk concerning Eagle View's patents, including the '152 Patent, prior to the termination of the EVT acquisition in December 2014.

74.     On information and belief, Verisk has been and continues to be integrally involved in Xactware's operations and as such, Xactware became aware of the '152 Patent

14

through Verisk and the diligence Verisk performed in connection with its intended acquisition of EVT.

75.    On information and belief, Xactware also has had knowledge of the '152 Patent since it issued on June 26, 2012.  On May 22, 2012, Xactware submitted an IDS identifying U.S. Patent Publication Number 2010/0114537, which corresponds to the '152 Patent, to the USPTO during the prosecution of its own U.S. Patent Application No. 13/397,325.  (Ex. 11).

76.    In addition to directly infringing the '152 Patent, Xactware has in the past and continues to indirectly infringe the '152 Patent by inducing direct infringement by others, such as end users of rooftop aerial measurement products, including but not limited to Xactimate® in combination with Aerial Sketch™.  As set forth above, Xactware knew or should have known that use of rooftop aerial measurement products, including but not limited to Xactimate® in combination with Aerial Sketch™, by its end users infringes at least one claim of the '152 Patent since at least as early the first such infringing use of such products after June 26, 2012. Xactware knowingly induced such use of those products in a manner that infringes the '152 Patent, including through at least promotional, advertising, and instructional materials, and Xactware had the requisite intent to encourage such infringement.  As such, Xactware has indirectly infringed and continues to indirectly infringe at least one claim of the '152 Patent under one or more subsections of 35 U.S.C. § 271, including § 271(b).

77.    Xactware's infringement of the '152 Patent has been and continues to be willful. Xactware has acted with knowledge of the '152 Patent and without a reasonable basis for a good-faith belief that it would not be liable for infringement of the '152 Patent.  For example, subsequent to being informed of the '152 Patent, Xactware continued to make and use rooftop aerial measurement products, including but not limited to Xactimate® in combination with Aerial Sketch™, within the United States in a manner that infringes the '152 Patent.  Xactware has disregarded and continues to disregard its infringement and/or an objectively high likelihood that its actions constitute infringement of the '152 Patent.  This objectively-defined risk was known or is so obvious that it should have been known to Xactware.  Xactware's infringement of

the '152 Patent has been and continues to be willful, entitling Eagle View to enhanced damages under 35 U.S.C. § 284.

78.     Xactware's acts of infringement have caused damage to Eagle View, and Eagle View is entitled to recover from Xactware the damages sustained by Eagle View as a result of Xactware's wrongful acts in an amount subject to proof at trial.

79.     Xactware's acts of infringement have caused, and unless restrained and enjoined, will continue to cause, irreparable injury and damage to Eagle View for which there is no adequate remedy at law.

80.     This case is exceptional, entitling Eagle View to an award of attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

### COUNT VI – INFRINGEMENT OF THE '152 PATENT BY VERISK

81.     Plaintiffs reallege paragraphs 1-80 as if fully set forth herein.

82.     Verisk has indirectly infringed and continues to indirectly infringe the '152 Patent, in connection with Xactware's rooftop aerial measurement products, including but not limited to Xactimate® in combination with Aerial Sketch™.

83.     On information and belief, Verisk has had knowledge of the '152 Patent since at least as early as December 2014 in connection with its intended acquisition of EVT.  Verisk performed due diligence related to its intended acquisition of EVT, including with respect to Eagle View's patent holdings.  EVT personnel had discussions with representatives of Verisk concerning Eagle View's patents, including the '152 Patent, prior to the termination of the EVT acquisition in December 2014.

84.     On information and belief, Verisk also has had knowledge of the '152 Patent since it issued on June 26, 2012.  On May 22, 2012, Xactware submitted an IDS identifying U.S. Patent Publication Number 2010/0114537, which corresponds to the '152 Patent, to the USPTO during the prosecution of its own U.S. Patent Application No. 13/397,325.  (Ex. 11).  On information and belief, Verisk has been and continues to be integrally involved in Xactware's

16

operations and as such, stays apprised of Xactware's patent holdings and the prosecution of its patent applications.

85.     Verisk has in the past and continues to indirectly infringe the '152 Patent by inducing direct infringement by Xactware, including Xactware's making and using rooftop aerial measurement products, including but not limited to Xactimate® in combination with Aerial Sketch<sup>TM</sup>, within the United States.  As set forth above, Verisk knew or should have known that Xactware's actions infringe the claims of the '152 Patent since at least as early as Xactware's first such act of direct infringement with respect to those products after June 26, 2012.  Verisk knowingly induced Xactware's making and using of rooftop aerial measurement products, including but not limited to Xactimate® in combination with Aerial Sketch<sup>TM</sup>, in a manner that infringes the '152 Patent, including through at least its involvement in and control over the development, support, sale, and distribution of these products (*e.g.*, through procuring aerial images to be used therein (*see* Ex. 12), through taking actions to  broaden Xactware's customer base therefor (*see* Ex. 2), and in the marketing and promotion of these products, including through Verisk's website (*see* Exs. 13-15)), and Verisk had the requisite intent to encourage such infringement.  Indeed, Jim Loveland is both a Senior Vice President at Verisk and Xactware's President, and has "overseen the release of many new [Xactware] products and services."  (Ex. 2).  Accordingly, Verisk has indirectly infringed and continues to indirectly infringe at least one claim of the '152 Patent under one or more subsections of 35 U.S.C. § 271, including § 271(b).

86.     Verisk's infringement of the '152 Patent has been and continues to be willful. Verisk has acted with knowledge of the '152 Patent and without a reasonable basis for a good-faith belief that it would not be liable for infringement of the '152 Patent.  For example, subsequent to being informed of the '152 Patent, Verisk continued to induce Xactware's making and using of rooftop aerial measurement products, including but not limited to Xactimate® in combination with Aerial Sketch<sup>TM</sup>, in a manner that infringes the '152 Patent.  Verisk has disregarded and continues to disregard its infringement and/or an objectively high likelihood that its actions constitute infringement of the '152 Patent.  This objectively-defined risk was known

or is so obvious that it should have been known to Verisk.  Verisk's infringement of the '152 Patent has been and continues to be willful, entitling Eagle View to enhanced damages under 35 U.S.C. § 284.

87.     Verisk's acts of infringement have caused damage to Eagle View, and Eagle View is entitled to recover from Verisk the damages sustained by Eagle View as a result of Verisk's wrongful acts in an amount subject to proof at trial.

88.     Verisk's acts of infringement have caused, and unless restrained and enjoined, will continue to cause, irreparable injury and damage to Eagle View for which there is no adequate remedy at law.

89.     This case is exceptional, entitling Eagle View to an award of attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

### COUNT VII – INFRINGEMENT OF THE '880 PATENT BY XACTWARE

90.     Plaintiffs reallege paragraphs 1-89 as if fully set forth herein.

91.     The USPTO duly and legally issued the '880 Patent on September 24, 2013.

92.     Xactware has directly and indirectly infringed and continues to directly and indirectly infringe the '880 Patent, in connection with rooftop aerial measurement products, including but not limited to Xactimate® in combination with Roof InSight<sup>TM</sup> and/or Aerial Sketch<sup>TM</sup>.

93.     Xactware makes and uses rooftop aerial measurement products, including but not limited to Xactimate® in combination with Roof InSight<sup>TM</sup> and/or Aerial Sketch<sup>TM</sup>, within the United States, and as such, Xactware has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least one claim of the '880 Patent under one or more subsections of 35 U.S.C. § 271, including § 271(a).

94.     On information and belief, Xactware has had knowledge of the '880 Patent since at least as early December 2014 in connection with Verisk's intended acquisition of EVT. Verisk performed due diligence related to its intended acquisition of EVT, including with respect to Pictometry's patent holdings.  EVT personnel had discussions with representatives of Verisk

concerning Pictometry's patents, including the '880 Patent, prior to the termination of the EVT acquisition in December 2014.

95.     On information and belief, Verisk has been and continues to be integrally involved in Xactware's operations and as such, Xactware became aware of the '880 Patent through Verisk and the diligence Verisk performed in connection with its intended acquisition of EVT.

96.     In addition to directly infringing the '880 Patent, Xactware has in the past and continues to indirectly infringe the '880 Patent by inducing direct infringement by others, such as end users of rooftop aerial measurement products, including but not limited to Xactimate® in combination with Roof InSight™ and/or Aerial Sketch™.  As set forth above, Xactware knew or should have known that use of rooftop aerial measurement products, including but not limited to Xactimate® in combination with Roof InSight™ and/or Aerial Sketch™, by its end users infringes at least one claim of the '880 Patent since at least as early as the first such infringing use of such products after December 2014.  Xactware knowingly induced such use of those products in a manner that infringes the '880 Patent, including through at least promotional, advertising, and instructional materials, and Xactware had the requisite intent to encourage such infringement.  As such, Xactware has indirectly infringed and continues to indirectly infringe at least one claim of the '880 Patent under one or more subsections of 35 U.S.C. § 271, including § 271(b).

97.     Xactware's infringement of the '880 Patent has been and continues to be willful. Xactware has acted with knowledge of the '880 Patent and without a reasonable basis for a good-faith belief that it would not be liable for infringement of the '880 Patent.  For example, subsequent to being informed of the '880 Patent, Xactware continued to make and use rooftop aerial measurement products, including but not limited to Xactimate® in combination with Roof InSight™ and/or Aerial Sketch™, within the United States in a manner that infringes the '880 Patent.  Xactware has disregarded and continues to disregard its infringement and/or an objectively high likelihood that its actions constitute infringement of the '880 Patent.  This

objectively-defined risk was known or is so obvious that it should have been known to Xactware. Xactware's infringement of the '880 Patent has been and continues to be willful, entitling Pictometry to enhanced damages under 35 U.S.C. § 284.

98.     Xactware's acts of infringement have caused damage to Pictometry, and Pictometry is entitled to recover from Xactware the damages sustained by Pictometry as a result of Xactware's wrongful acts in an amount subject to proof at trial.

99.     Xactware's acts of infringement have caused, and unless restrained and enjoined, will continue to cause, irreparable injury and damage to Pictometry for which there is no adequate remedy at law.

100.    This case is exceptional, entitling Pictometry to an award of attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT VIII – INFRINGEMENT OF THE '880 PATENT BY VERISK

101.    Plaintiffs reallege paragraphs 1-100 as if fully set forth herein.

102.    Verisk has indirectly infringed and continues to indirectly infringe the '880 Patent, in connection with Xactware's rooftop aerial measurement products, including but not limited to Xactimate® in combination with Roof InSight[TM] and/or Aerial Sketch[TM].

103.    On information and belief, Verisk has had knowledge of the '880 Patent since at least as early as December 2014 in connection with its intended acquisition of EVT.  Verisk performed due diligence related to its intended acquisition of EVT, including with respect to Pictometry's patent holdings.  EVT personnel had discussions with representatives of Verisk concerning Pictometry's patents, including the '880 Patent, prior to the termination of the EVT acquisition in December 2014.

104.    Verisk has in the past and continues to indirectly infringe the '880 Patent by inducing direct infringement by Xactware, including Xactware's making and using rooftop aerial measurement products, including but not limited to Xactimate® in combination with Roof InSight[TM] and/or Aerial Sketch[TM], within the United States.  As set forth above, Verisk knew or should have known that Xactware's actions infringe the claims of the '880 Patent since at least as

early as Xactware's first such act of direct infringement with respect to those products after December 2014. Verisk knowingly induced Xactware's making and using of such products in a manner that infringes the '880 Patent, including through at least its involvement in and control over the development, support, sale, and distribution of these products (*e.g.*, through procuring aerial images to be used therein (*see* Ex. 12), through taking actions to broaden Xactware's customer base therefor (*see* Ex. 2), and in the marketing and promotion of these products, including through Verisk's website (*see* Exs. 13-15)), and Verisk had the requisite intent to encourage such infringement. Indeed, Jim Loveland is both a Senior Vice President at Verisk and Xactware's President, and has "overseen the release of many new [Xactware] products and services." (Ex. 2). Accordingly, Verisk has indirectly infringed and continues to indirectly infringe at least one claim of the '880 Patent under one or more subsections of 35 U.S.C. § 271, including § 271(b).

105. Verisk's infringement of the '880 Patent has been and continues to be willful. Verisk has acted with knowledge of the '880 Patent and without a reasonable basis for a good-faith belief that it would not be liable for infringement of the '880 Patent. For example, subsequent to being informed of the '880 Patent, Verisk continued to induce Xactware's making and using of rooftop aerial measurement products, including but not limited to Xactimate® in combination with Roof InSight™ and/or Aerial Sketch™, in a manner that infringes the '880 Patent. Verisk has disregarded and continues to disregard its infringement and/or an objectively high likelihood that its actions constitute infringement of the '880 Patent. This objectively-defined risk was known or is so obvious that it should have been known to Verisk. Verisk's infringement of the '880 Patent has been and continues to be willful, entitling Pictometry to enhanced damages under 35 U.S.C. § 284.

106. Verisk's acts of infringement have caused damage to Pictometry, and Pictometry is entitled to recover from Verisk the damages sustained by Pictometry as a result of Verisk's wrongful acts in an amount subject to proof at trial.

107.     Verisk's acts of infringement have caused, and unless restrained and enjoined, will continue to cause, irreparable injury and damage to Pictometry for which there is no adequate remedy at law.

108.     This case is exceptional, entitling Pictometry to an award of attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

### COUNT IX – INFRINGEMENT OF THE '770 PATENT BY XACTWARE

109.     Plaintiffs reallege paragraphs 1-108 as if fully set forth herein.

110.     The USPTO duly and legally issued the '770 Patent on August 26, 2014.

111.     Xactware has directly and indirectly infringed and continues to directly and indirectly infringe the '770 Patent, in connection with rooftop aerial measurement products, including but not limited to Xactimate® in combination with Aerial Sketch$^{TM}$.

112.     Xactware makes and uses rooftop aerial measurement products, including but not limited to Xactimate® in combination with Aerial Sketch$^{TM}$, within the United States, and as such, Xactware has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least one claim of the '770 Patent under one or more subsections of 35 U.S.C. § 271, including § 271(a).

113.     On information and belief, Xactware has had knowledge of the '770 Patent since at least as early December 2014 in connection with Verisk's intended acquisition of EVT. Verisk performed due diligence related to its intended acquisition of EVT, including with respect to Eagle View's patent holdings.  EVT personnel had discussions with representatives of Verisk concerning Eagle View's patents, including the '770 Patent, prior to the termination of the EVT acquisition in December 2014.

114.     On information and belief, Verisk has been and continues to be integrally involved in Xactware's operations and as such, Xactware became aware of the '770 Patent through Verisk and the diligence Verisk performed in connection with its intended acquisition of EVT.

115.    In addition to directly infringing the '770 Patent, Xactware has in the past and continues to indirectly infringe the '770 Patent by inducing direct infringement by others, such as end users of rooftop aerial measurement products, including but not limited to Xactimate® in combination with Aerial Sketch™.  As set forth above, Xactware knew or should have known that use of rooftop aerial measurement products, including but not limited to Xactimate® in combination with Aerial Sketch™, by its end users infringes at least one claim of the '770 Patent since at least as early as the first such infringing use of such products after December 2014. Xactware knowingly induced such use of those products in a manner that infringes the '770 Patent, including through at least promotional, advertising, and instructional materials, and Xactware had the requisite intent to encourage such infringement.  As such, Xactware has indirectly infringed and continues to indirectly infringe at least one claim of the '770 Patent under one or more subsections of 35 U.S.C. § 271, including § 271(b).

116.    Xactware's infringement of the '770 Patent has been and continues to be willful. Xactware has acted with knowledge of the '770 Patent and without a reasonable basis for a good-faith belief that it would not be liable for infringement of the '770 Patent.  For example, subsequent to being informed of the '770 Patent, Xactware continued to make and use rooftop aerial measurement products, including but not limited to Xactimate® in combination with Aerial Sketch™, within the United States in a manner that infringes the '770 Patent.  Xactware has disregarded and continues to disregard its infringement and/or an objectively high likelihood that its actions constitute infringement of the '770 Patent.  This objectively-defined risk was known or is so obvious that it should have been known to Xactware.  Xactware's infringement of the '770 Patent has been and continues to be willful, entitling Eagle View to enhanced damages under 35 U.S.C. § 284.

117.    Xactware's acts of infringement have caused damage to Eagle View, and Eagle View is entitled to recover from Xactware the damages sustained by Eagle View as a result of Xactware's wrongful acts in an amount subject to proof at trial.

118.    Xactware's acts of infringement have caused, and unless restrained and enjoined, will continue to cause, irreparable injury and damage to Eagle View for which there is no adequate remedy at law.

119.    This case is exceptional, entitling Eagle View to an award of attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

### COUNT X – INFRINGEMENT OF THE '770 PATENT BY VERISK

120.    Plaintiffs reallege paragraphs 1-119 as if fully set forth herein.

121.    Verisk has indirectly infringed and continues to indirectly infringe the '770 Patent, in connection with Xactware's rooftop aerial measurement products, including but not limited to Xactimate® in combination with Aerial Sketch$^{TM}$.

122.    On information and belief, Verisk has had knowledge of the '770 Patent since at least as early as December 2014 in connection with its intended acquisition of EVT.  In January 2014, Verisk signed an agreement to acquire EVT.  Verisk performed due diligence related to its intended acquisition of EVT, including with respect to Eagle View's patent holdings.  EVT personnel had discussions with representatives of Verisk concerning Eagle View's patents, including the '770 Patent, prior to the termination of the EVT acquisition in December 2014.

123.    Verisk has in the past and continues to indirectly infringe the '770 Patent by inducing direct infringement by Xactware, including Xactware's making and using rooftop aerial measurement products, including but not limited to Xactimate® in combination with Aerial Sketch$^{TM}$, within the United States.  As set forth above, Verisk knew or should have known that Xactware's actions infringe the claims of the '770 Patent since at least as early as Xactware's first such act of direct infringement with respect to those products after December 2014.  Verisk knowingly induced Xactware's making and using of such products in a manner that infringes the '770 Patent, including through at least its involvement in and control over the development, support, sale, and distribution of these products (*e.g.*, through procuring aerial images to be used therein (*see* Ex. 12), through taking actions to broaden Xactware's customer base therefor (*see* Ex. 2), and in the marketing and promotion of these products, including through Verisk's website

24

(*see* Exs. 13-15)), and Verisk had the requisite intent to encourage such infringement.  Indeed, Jim Loveland is both a Senior Vice President at Verisk and Xactware's President, and has "overseen the release of many new [Xactware] products and services."  (Ex. 2).  Accordingly, Verisk has indirectly infringed and continues to indirectly infringe at least one claim of the '770 Patent under one or more subsections of 35 U.S.C. § 271, including § 271(b).

124.    Verisk's infringement of the '770 Patent has been and continues to be willful. Verisk has acted with knowledge of the '770 Patent and without a reasonable basis for a good-faith belief that it would not be liable for infringement of the '770 Patent.  For example, subsequent to being informed of the '770 Patent, Verisk continued to induce Xactware's making and using of rooftop aerial measurement products, including but not limited to Xactimate® in combination with Aerial Sketch[TM], in a manner that infringes the '770 Patent.  Verisk has disregarded and continues to disregard its infringement and/or an objectively high likelihood that its actions constitute infringement of the '770 Patent.  This objectively-defined risk was known or is so obvious that it should have been known to Verisk.  Verisk's infringement of the '770 Patent has been and continues to be willful, entitling Eagle View to enhanced damages under 35 U.S.C. § 284.

125.    Verisk's acts of infringement have caused damage to Eagle View, and Eagle View is entitled to recover from Verisk the damages sustained by Eagle View as a result of Verisk's wrongful acts in an amount subject to proof at trial.

126.    Verisk's acts of infringement have caused, and unless restrained and enjoined, will continue to cause, irreparable injury and damage to Eagle View for which there is no adequate remedy at law.

127.    This case is exceptional, entitling Eagle View to an award of attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

### COUNT XI – INFRINGEMENT OF THE '732 PATENT BY XACTWARE

128.    Plaintiffs reallege paragraphs 1-127 as if fully set forth herein.

129.    The USPTO duly and legally issued the '732 Patent on September 2, 2014.

130.    Xactware has directly and indirectly infringed and continues to directly and indirectly infringe the '732 Patent, in connection with rooftop aerial measurement products, including but not limited to Xactimate® in combination with Aerial Sketch[TM].

131.    Xactware makes and uses rooftop aerial measurement products, including but not limited to Xactimate® in combination with Aerial Sketch[TM], within the United States, and as such, Xactware has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least one claim of the '732 Patent under one or more subsections of 35 U.S.C. § 271, including § 271(a).

132.    On information and belief, Xactware has had knowledge of the '732 Patent since at least as early December 2014 in connection with Verisk's intended acquisition of EVT. Verisk performed due diligence related to its intended acquisition of EVT, including with respect to Pictometry's patent holdings.  EVT personnel had discussions with representatives of Verisk concerning Pictometry's patents, including the '732 Patent, prior to the termination of the EVT acquisition in December 2014.

133.    On information and belief, Verisk has been and continues to be integrally involved in Xactware's operations and as such, Xactware became aware of the '732 Patent through Verisk and the diligence Verisk performed in connection with its intended acquisition of EVT.

134.    In addition to directly infringing the '732 Patent, Xactware has in the past and continues to indirectly infringe the '732 Patent by inducing direct infringement by others, such as end users of rooftop aerial measurement products, including but not limited to Xactimate® in combination with Aerial Sketch[TM].  As set forth above, Xactware knew or should have known that use of rooftop aerial measurement products, including but not limited to Xactimate® in combination with Aerial Sketch[TM], by its end users infringes at least one claim of the '732 Patent since at least as early as the first such infringing use of such products after December 2014. Xactware knowingly induced such use of those products in a manner that infringes the '732 Patent, including through at least promotional, advertising, and instructional materials, and

26

Xactware had the requisite intent to encourage such infringement.   As such, Xactware has indirectly infringed and continues to indirectly infringe at least one claim of the '732 Patent under one or more subsections of 35 U.S.C. § 271, including § 271(b).

135.   Xactware's infringement of the '732 Patent has been and continues to be willful. Xactware has acted with knowledge of the '732 Patent and without a reasonable basis for a good-faith belief that it would not be liable for infringement of the '732 Patent.   For example, subsequent to being informed of the '732 Patent, Xactware continued to make and use rooftop aerial measurement products, including but not limited to Xactimate® in combination with Aerial Sketch[TM], within the United States in a manner that infringes the '732 Patent.   Xactware has disregarded and continues to disregard its infringement and/or an objectively high likelihood that its actions constitute infringement of the '732 Patent.   This objectively-defined risk was known or is so obvious that it should have been known to Xactware.   Xactware's infringement of the '732 Patent has been and continues to be willful, entitling Pictometry to enhanced damages under 35 U.S.C. § 284.

136.   Xactware's acts of infringement have caused damage to Pictometry, and Pictometry is entitled to recover from Xactware the damages sustained by Pictometry as a result of Xactware's wrongful acts in an amount subject to proof at trial.

137.   Xactware's acts of infringement have caused, and unless restrained and enjoined, will continue to cause, irreparable injury and damage to Pictometry for which there is no adequate remedy at law.

138.   This case is exceptional, entitling Pictometry to an award of attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

### COUNT XII – INFRINGEMENT OF THE '732 PATENT BY VERISK

139.   Plaintiffs reallege paragraphs 1-138 as if fully set forth herein.

140.   Verisk has indirectly infringed and continues to indirectly infringe the '732 Patent, in connection with Xactware's rooftop aerial measurement products, including but not limited to Xactimate® in combination with Aerial Sketch[TM].

27

141.    On information and belief, Verisk has had knowledge of the '732 Patent since at least as early as December 2014 in connection with its intended acquisition of EVT.  Verisk performed due diligence related to its intended acquisition of EVT, including with respect to Pictometry's patent holdings.  EVT personnel had discussions with representatives of Verisk concerning Pictometry's patents, including the '732 Patent, prior to the termination of the EVT acquisition in December 2014.

142.    Verisk has in the past and continues to indirectly infringe the '732 Patent by inducing direct infringement by Xactware, including Xactware's making and using rooftop aerial measurement products, including but not limited to Xactimate® in combination with Aerial Sketch$^{TM}$, within the United States.  As set forth above, Verisk knew or should have known that Xactware's actions infringe the claims of the '732 Patent since at least as early as Xactware's first such act of direct infringement with respect to those products after December 2014.  Verisk knowingly induced Xactware's making and using of such products in a manner that infringes the '732 Patent, including through at least its involvement in and control over the development, support, sale, and distribution of these products (*e.g.*, through procuring aerial images to be used therein (*see* Ex. 12), through taking actions to  broaden Xactware's customer base therefor (*see* Ex. 2), and in the marketing and promotion of these products, including through Verisk's website (*see* Exs. 13-15)), and Verisk had the requisite intent to encourage such infringement.  Indeed, Jim Loveland is both a Senior Vice President at Verisk and Xactware's President, and has "overseen the release of many new [Xactware] products and services."  (Ex. 2).  Accordingly, Verisk has indirectly infringed and continues to indirectly infringe at least one claim of the '732 Patent under one or more subsections of 35 U.S.C. § 271, including § 271(b).

143.    Verisk's infringement of the '732 Patent has been and continues to be willful. Verisk has acted with knowledge of the '732 Patent and without a reasonable basis for a good-faith belief that it would not be liable for infringement of the '732 Patent.  For example, subsequent to being informed of the '732 Patent, Verisk continued to induce Xactware's making and using of rooftop aerial measurement products, including but not limited to Xactimate® in

combination with Aerial Sketch<sup>TM</sup>, in a manner that infringes the '732 Patent.  Verisk has disregarded and continues to disregard its infringement and/or an objectively high likelihood that its actions constitute infringement of the '732 Patent.  This objectively-defined risk was known or is so obvious that it should have been known to Verisk.  Verisk's infringement of the '732 Patent has been and continues to be willful, entitling Pictometry to enhanced damages under 35 U.S.C. § 284.

144.    Verisk's acts of infringement have caused damage to Pictometry, and Pictometry is entitled to recover from Verisk the damages sustained by Pictometry as a result of Verisk's wrongful acts in an amount subject to proof at trial.

145.    Verisk's acts of infringement have caused, and unless restrained and enjoined, will continue to cause, irreparable injury and damage to Pictometry for which there is no adequate remedy at law.

146.    This case is exceptional, entitling Pictometry to an award of attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## <u>COUNT XIII – INFRINGEMENT OF THE '454 PATENT BY XACTWARE</u>

147.    Plaintiffs reallege paragraphs 1-146 as if fully set forth herein.

148.    The USPTO duly and legally issued the '454 Patent on September 2, 2014.

149.    Xactware has directly and indirectly infringed and continues to directly and indirectly infringe the '454 Patent, in connection with rooftop aerial measurement products, including but not limited to Xactimate® in combination with Aerial Sketch<sup>TM</sup>.

150.    Xactware uses rooftop aerial measurement products, including but not limited to Xactimate® in combination with Aerial Sketch<sup>TM</sup>, within the United States, and as such, Xactware has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least one claim of the '454 Patent under one or more subsections of 35 U.S.C. § 271, including § 271(a).

151.    On information and belief, Xactware has had knowledge of the '454 Patent since at least as early December 2014 in connection with Verisk's intended acquisition of EVT.

Verisk performed due diligence related to its intended acquisition of EVT, including with respect to Eagle View's patent holdings.  EVT personnel had discussions with representatives of Verisk concerning Eagle View's patents, including the '454 Patent, prior to the termination of the EVT acquisition in December 2014.

152.    On information and belief, Verisk has been and continues to be integrally involved in Xactware's operations and as such, Xactware became aware of the '454 Patent through Verisk and the diligence Verisk performed in connection with its intended acquisition of EVT.

153.    In addition to directly infringing the '454 Patent, Xactware has in the past and continues to indirectly infringe the '454 Patent by inducing direct infringement by others, such as end users of rooftop aerial measurement products, including but not limited to Xactimate® in combination with Aerial Sketch$^{TM}$.  As set forth above, Xactware knew or should have known that use of rooftop aerial measurement products, including but not limited to Xactimate® in combination with Aerial Sketch$^{TM}$, by its end users infringes at least one claim of the '454 Patent since at least as early as the first such infringing use of such products after December 2014. Xactware knowingly induced such use of those products in a manner that infringes the '454 Patent, including through at least promotional, advertising, and instructional materials, and Xactware had the requisite intent to encourage such infringement.   As such, Xactware has indirectly infringed and continues to indirectly infringe at least one claim of the '454 Patent under one or more subsections of 35 U.S.C. § 271, including § 271(b).

154.    Xactware's infringement of the '454 Patent has been and continues to be willful. Xactware has acted with knowledge of the '454 Patent and without a reasonable basis for a good-faith belief that it would not be liable for infringement of the '454 Patent. For example, subsequent to being informed of the '454 Patent, Xactware continued to use rooftop aerial measurement products, including but not limited to Xactimate® in combination with Aerial Sketch$^{TM}$, within the United States in a manner that infringes the '454 Patent.  Xactware has disregarded and continues to disregard its infringement and/or an objectively high likelihood that

its actions constitute infringement of the '454 Patent.  This objectively-defined risk was known or is so obvious that it should have been known to Xactware.  Xactware's infringement of the '454 Patent has been and continues to be willful, entitling Eagle View to enhanced damages under 35 U.S.C. § 284.

155.    Xactware's acts of infringement have caused damage to Eagle View, and Eagle View is entitled to recover from Xactware the damages sustained by Eagle View as a result of Xactware's wrongful acts in an amount subject to proof at trial.

156.    Xactware's acts of infringement have caused, and unless restrained and enjoined, will continue to cause, irreparable injury and damage to Eagle View for which there is no adequate remedy at law.

157.    This case is exceptional, entitling Eagle View to an award of attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

### COUNT XIV – INFRINGEMENT OF THE '454 PATENT BY VERISK

158.    Plaintiffs reallege paragraphs 1-157 as if fully set forth herein.

159.    Verisk has indirectly infringed and continues to indirectly infringe the '454 Patent, in connection with Xactware's rooftop aerial measurement products, including but not limited to Xactimate® in combination with Aerial Sketch$^{TM}$.

160.    On information and belief, Verisk has had knowledge of the '454 Patent since at least as early as December 2014 in connection with its intended acquisition of EVT.  In January 2014, Verisk signed an agreement to acquire EVT.  Verisk performed due diligence related to its intended acquisition of EVT, including with respect to Eagle View's patent holdings.  EVT personnel had discussions with representatives of Verisk concerning Eagle View's patents, including the '454 Patent, prior to the termination of the EVT acquisition in December 2014.

161.    Verisk has in the past and continues to indirectly infringe the '454 Patent by inducing direct infringement by Xactware, including Xactware's using rooftop aerial measurement products, including but not limited to Xactimate® in combination with Aerial Sketch$^{TM}$, within the United States.  As set forth above, Verisk knew or should have known that

Xactware's actions infringe the claims of the '454 Patent since at least as early as Xactware's first such act of direct infringement with respect to those products after December 2014.  Verisk knowingly induced Xactware's using of such products in a manner that infringes the '454 Patent, including through at least its involvement in and control over the development, support, sale, and distribution of these products (*e.g.*, through procuring aerial images to be used therein (*see* Ex. 12), through taking actions to  broaden Xactware's customer base therefor (*see* Ex. 2), and in the marketing and promotion of these products, including through Verisk's website (*see* Exs. 13-15)), and Verisk had the requisite intent to encourage such infringement.  Indeed, Jim Loveland is both a Senior Vice President at Verisk and Xactware's President, and has "overseen the release of many new [Xactware] products and services."  (Ex. 2).  Accordingly, Verisk has indirectly infringed and continues to indirectly infringe at least one claim of the '454 Patent under one or more subsections of 35 U.S.C. § 271, including § 271(b).

162.    Verisk's infringement of the '454 Patent has been and continues to be willful. Verisk has acted with knowledge of the '454 Patent and without a reasonable basis for a good-faith belief that it would not be liable for infringement of the '454 Patent.  For example, subsequent to being informed of the '454 Patent, Verisk continued to induce Xactware's using of rooftop aerial measurement products, including but not limited to Xactimate® in combination with Aerial Sketch™, in a manner that infringes the '454 Patent.  Verisk has disregarded and continues to disregard its infringement and/or an objectively high likelihood that its actions constitute infringement of the '454 Patent.  This objectively-defined risk was known or is so obvious that it should have been known to Verisk.  Verisk's infringement of the '454 Patent has been and continues to be willful, entitling Eagle View to enhanced damages under 35 U.S.C. § 284.

163.    Verisk's acts of infringement have caused damage to Eagle View, and Eagle View is entitled to recover from Verisk the damages sustained by Eagle View as a result of Verisk's wrongful acts in an amount subject to proof at trial.

164. Verisk's acts of infringement have caused, and unless restrained and enjoined, will continue to cause, irreparable injury and damage to Eagle View for which there is no adequate remedy at law.

165. This case is exceptional, entitling Eagle View to an award of attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray for the following relief:

A. For entry of judgment by this Court against Xactware and Verisk and in favor of Eagle View and Pictometry in all respects, including that Xactware and Verisk have and continue to directly infringe and/or indirectly infringe, by way of inducement, the '436, '840, '152, '880, '770, '732, and '454 Patents;

B. For an order permanently enjoining Xactware and Verisk, and their respective officers, directors, shareholders, agents, servants, employees, attorneys, all parent, subsidiary and affiliate corporations, their successors in interest and assigns, and all other entities and individuals acting in concert with it or on its behalf, including customers, from making, importing, using, offering for sale, and/or selling any product or service falling within the scope of any claim of the '436, '840, '152, '880, '770, '732, and '454 Patents, including Xactimate® in combination with Roof InSight™, Property InSight™, and/or Aerial Sketch™, or otherwise infringing any claim of the '436, '840, '152, '880, '770, '732, and '454 Patents;

C. Alternatively, in the event that an injunction does not issue, that this Court award a compulsory ongoing future royalty;

D. For damages arising from Xactware's and Verisk's infringement of the '436, '840, '152, '880, '770, '732, and '454 Patents, including lost profits suffered by Eagle View and Pictometry as a result of Xactware's and Verisk's infringement and in an amount not less than a reasonable royalty, together with pre-judgment and post-judgment interest;

E. That this Court declare Xactware's and Verisk's infringement to be willful and award increased damages in an amount not less than three times the damages assessed for

Xactware's and Verisk's infringement to Eagle View and Pictometry for the period of such willful infringement pursuant to 35 U.S.C.§ 284;

F.     That this Court declare this to be an exceptional case pursuant to 35 U.S.C. § 285 and award Eagle View and Pictometry their attorneys' fees;

G.     That Eagle View and Pictometry be awarded costs of court; and

H.     For such other and further relief as the Court may deem just and proper.

<u>**DEMAND FOR JURY TRIAL**</u>

Pursuant to Fed. R. Civ. P. 38(b), Eagle View and Pictometry respectfully demand a jury trial on any and all issues triable as of right by a jury in this action.

3503780-1

Dated: September 23, 2015                    CONNELL FOLEY LLP

                                             s/*Liza M. Walsh*
                                             _____
                                             Liza M. Walsh
                                             Hector D. Ruiz
                                             One Newark Center
                                             1085 Raymond Boulevard, 19th Floor
                                             Newark, New Jersey 07102
                                             (973) 757-1100

                                             *Attorneys for Plaintiffs*

OF COUNSEL:

Adam R. Alper                    Michael W. De Vries
KIRKLAND & ELLIS LLP             KIRKLAND & ELLIS LLP
555 California Street            333 South Hope Street
San Francisco, CA 94104         Los Angeles, CA 90071
(415) 439-1400                   (213) 680-8400

Gianni Cutri                     Jared Barcenas
KIRKLAND & ELLIS LLP             KIRKLAND & ELLIS LLP
300 North LaSalle                601 Lexington Ave.
Chicago, IL 60654                New York, NY 10022
(312) 862-2000                   (212) 446-4800

## RULE 11.2 CERTIFICATION

I hereby certify that, to the best of my knowledge, the matter in controversy is not the subject of any other pending or anticipated litigation in any court or arbitration proceeding, nor are there any non-parties known to Plaintiffs that should be joined to this action.  In addition, I recognize a continuing obligation during the course of this litigation to file and to serve on all other parties and with the Court an amended certification if there is a change in the facts stated in this original certification.

Dated: September 23, 2015

CONNELL FOLEY LLP

*s/Liza M. Walsh*
Liza M. Walsh
Hector D. Ruiz
One Newark Center
1085 Raymond Boulevard, 19th Floor
Newark, New Jersey 07102
(973) 757-1100

*Attorneys for Plaintiffs*

OF COUNSEL:

Adam R. Alper
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
(415) 439-1400

Michael W. De Vries
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, CA 90071
(213) 680-8400

Gianni Cutri
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

Jared Barcenas
KIRKLAND & ELLIS LLP
601 Lexington Ave.
New York, NY 10022
(212) 446-4800

## RULE 201.1 CERTIFICATION

I hereby certify that the above-captioned matter is not subject to compulsory arbitration in that the Plaintiffs seek, *inter alia*, injunctive relief.

Dated: September 23, 2015

CONNELL FOLEY LLP

*s/Liza M. Walsh*
Liza M. Walsh
Hector D. Ruiz
One Newark Center
1085 Raymond Boulevard, 19th Floor
Newark, New Jersey 07102
(973) 757-1100

*Attorneys for Plaintiffs*

OF COUNSEL:

Adam R. Alper
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
(415) 439-1400

Michael W. De Vries
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, CA 90071
(213) 680-8400

Gianni Cutri
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

Jared Barcenas
KIRKLAND & ELLIS LLP
601 Lexington Ave.
New York, NY 10022
(212) 446-4800