UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| EAGLE VIEW TECHNOLOGIES, INC. and PICTOMETRY INTERNATIONAL CORP., : : : Plaintiffs, : : v. : : XACTWARE SOLUTIONS, INC. and VERISK ANALYTICS, INC., : : Defendants. : | Civil No 15-7025 (RBK/JS) **OPINION** |

**KUGLER**, United States District Judge:

This patent case arises from sales by Defendants Xactware Solutions, Inc. and Verisk Analytics, Inc. (collectively, "Defendants") of software that allegedly infringes nine different patents assigned to Plaintiffs Eagle View Technologies, Inc. and Pictometry International Corp. (collectively, "Plaintiffs"). Presently before the Court is Defendants' Motion to Dismiss Under 35 U.S.C. § 101 ("Defendants' Motion") [Dkt. No. 50]. For the reasons that follow, Defendants' Motion will be **DENIED WITHOUT PREJUDICE**.

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiffs are collectively the owners by assignment of nine patents: U.S. Patent Nos. 8,078,436 (the " '436 Patent"); 8,170,840 (the " '840 Patent"); 8,209,152 (the " '152 Patent"); 8,542,880 (the " '880 Patent"); 8,818,770 (the " '770 Patent"); 8,823,732 (the " '732 Patent"); 8,825,454 (the " '454 Patent"); 9,129,376 (the " '376 Patent"); and 9,135,737 (the " '737 Patent") (collectively, the "Asserted Patents"). (First Am. Compl. (the "FAC") [Dkt. No. 30] ¶¶ 7–24.) The Asserted Patents are generally directed to software for rooftop aerial measurement

1

that is used in preparing aerial roof reports.  (*See* FAC ¶ 1.)  Plaintiffs and Defendants are competitors in this area, with Defendants selling a product called Xactimate® in combination with Roof InSight™, Property Insight™, and/or Aerial Sketch™ (collectively, the "Accused Products").  (*See, e.g.*, ¶¶ 1, 33, 54.)  Plaintiffs allege that the Accused Products infringe the Asserted Patents, both directly and indirectly.  (*See, e.g.*, ¶¶ 31–51.)

Plaintiffs initially filed this action on September 23, 2015, alleging infringement of only seven of the nine Asserted Patents.  (*See generally* Complaint [Dkt. No. 1].)  Plaintiffs then filed the FAC on November 30, 215 to allege infringement of all nine of the Asserted Patents.  (*See generally* FAC.)  Defendants have also asserted counterclaims seeking declaratory judgment of non-infringement and invalidity for each of the Asserted Patents.  (*See generally* Answer and Counterclaim [Dkt. No. 39].)  Defendants then filed the pending motion to have each count of the FAC dismissed for failure to state a claim, arguing that the Asserted Patents each claim ineligible subject matter under 35 U.S.C. § 101.  This Court exercises subject matter jurisdiction over this patent suit pursuant to 28 U.S.C. §§ 1331 and 1338(a).

## II. LEGAL STANDARD

### A. Rule 12(b)(6) Standard Generally

Rule 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).  In other words, a complaint is sufficient if it contains enough factual matter, accepted as true, to "state a claim to

relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). It is not for courts to decide at this point whether the moving party will succeed on the merits, but "whether they should be afforded an opportunity to offer evidence in support of their claims." *In re Rockefeller Ctr. Prop., Inc.*, 311 F.3d 198, 215 (3d Cir. 2002). Yet, while "detailed factual allegations" are not necessary, a "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678–79.

To make this determination, a court conducts a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 680). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A complaint cannot survive where a court can infer only that a claim is merely possible rather than plausible. *Id.*

   **B.**  **35 U.S.C. § 101 Standard**

35 U.S.C. § 101 provides that patents may only issue for "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." However, the Supreme Court "ha[s] long held that this provision contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014) (quoting *Ass'n for Molecular*

3

*Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013)) (internal quotations omitted). As explained by the Court, "the concern that drives this exclusionary principle [is] one of pre-emption." *Id.* (citations omitted). "The ultimate question of patent eligibility under § 101 is an issue of law . . . ." *In re BRCA1- and BRCA2-Based Hereditary Cancer Test Patent Litig.*, 774 F.3d 755, 759 (Fed. Cir. 2014).

In evaluating whether a patent claims patent eligible subject matter under § 101, the Court undertakes a two-step inquiry to determine: (1) whether the patent claims the aforementioned laws of nature, natural phenomena, or abstract ideas; and (2) if so, whether the "elements of each claim both individually and 'as an ordered combination' . . . 'transform the nature of the claim' into a patent-eligible application." *Alice*, 134 S. Ct. at 2355 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1297–98 (2012)). Step two is often referred to as the "inventive concept." *Id.* (quoting *Mayo*, 132 S. Ct. at 1294).

A motion challenging validity of a patent under § 101 may be brought at the motion to dismiss stage. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 717 (Fed. Cir. 2014) (affirming district court's invalidity ruling on a motion to dismiss). "Although the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter, claim construction is not an inviolable perquisite to a validity determination under § 101." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) (citations omitted). But, "it will ordinarily be desirable—and often necessary—to resolve claim construction disputes prior to a § 101 analysis." *Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can. (U.S.)*, 687 F.3d 1266, 1273 (Fed. Cir. 2012).

**III.     DISCUSSION**

Defendants move to dismiss the FAC, on the grounds that each of the nine Asserted Patents claims ineligible subject matter under 35 U.S.C. § 101.  (*See generally* Defs.' Mot. Br. [Dkt. No. 50-1].)  For each of the Asserted Patents, Defendants argue under both steps of the *Alice* test why the patent is ineligible.  (*See id.*)  Plaintiffs dispute each argument, and further submit that the number of asserted claims and the factual disputes between the parties counsel in favor of denying the motion at this procedural posture and permitting Defendants to raise this argument again later at summary judgment.  (*See* Pls.' Opp. [Dkt. No. 64] at 11–13.)  The Court addresses Defendants' arguments first and ultimately agrees with denying Defendants' Motion at this procedural stage.

The Court appreciates that the parties have expended a great amount of time in briefing this motion, after having been granted permission to exceed the normal page limits for motion briefs.  (*See* Order (Dec. 18, 2015) [Dkt. No. 41].)  However, the parties have clearly identified a number of factual disputes and raised issues about the meanings of the claims—even disputing the number of asserted claims.  (*Compare* Defs.' Mot. Br. at 11 ("Plaintiffs' scattershot assertion of 140 claims from nine closely-related patents . . . .") *with* Pls.' Opp. at 11 ("Defendants ask the Court to declare 153 claims from nine different patents invalid through ruling on a motion to dismiss . . . .").  Additionally, as noted by Plaintiffs in opposition, Defendants selected representative claims without consulting Plaintiffs, and have requested that this Court treat the unilaterally identified representative claims as such.  (*See* Pls.' Opp. at 13 n.6.)  Plaintiffs dispute the representative character of these claims.  (*Id.*)

As another judge in this District has reasoned, when "[i]t is clear to the Court from the parties' submissions and oral argument that the parties vigorously dispute the basic character and meaning of the claims," then the Court will be unable to fairly apply the *Alice* test, especially at

5

the inventive concept stage. *WAG Acquisition, LLC v. Multi-Media, LLC*, Civ. No. 14-2340 (ES/JAD), 2015 WL 5310203, at *6 (D.N.J. Sept. 10, 2015); *see also Data Distrib. Techs., LLC v. BRER Affiliates, Inc.*, Civ. No. 12-4878 (JBS/KMW), 2014 WL 4162765, at *8 (D.N.J. Aug. 19, 2014) ("Given the density of the '908 Patent with its 100 claims . . . and the lack of Plaintiff's proposed constructions or any agreement about claim construction, the Court finds it is advisable to postpone adjudication of the '908 Patent's eligibility under the abstractness test.")

Although no oral argument has been conducted, the briefing makes clear that the parties dispute the proper interpretation of the claims, such that the Court finds itself unable to develop a "full understanding of the basic character of the claimed subject matter." *See Content Extraction*, 776 F.3d 1349; *Bancorp*, 687 F.3d at 1273–74. Without this, the Court cannot proceed to undertake a proper § 101 analysis under the test as set forth in *Alice*. Further, the Court is not prepared to declare a small number of claims representative in order to decide Defendants' Motion over the objection of Plaintiffs.

The Court does not undertake this course of conduct lightly, as the Federal Circuit has counseled early determination of § 101 issues. *See Ultramercial*, 772 F.3d at 718–20 (Mayer, J., concurring) (encouraging courts to rule on § 101 motions early in litigation). Additionally, the Court does not want to encourage plaintiffs in future cases to artificially manufacture disputes in order to avoid an early ruling on § 101 motions. However, in this instance, it is appropriate to defer ruling until at least after claim construction on the at least 140 claims of the nine Asserted Patents.

**IV.     CONCLUSION**

For the foregoing reasons, Defendants' Motion will be DENIED WITHOUT PREJUDICE.  Defendants may represent these arguments at a later date after claim construction on either a motion for judgment on the pleadings or a motion for summary judgment, as Defendants deem appropriate.  An appropriate order accompanies this opinion.


Date:  August   2nd  , 2016


                                   s/ Robert B. Kugler
                                   ROBERT B. KUGLER, U.S.D.J.