[Doc. No. 107]

**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

EAGLE VIEW TECHNOLOGIES, INC.,
et al.,

                    Plaintiffs,

     v.                              Civil No. 15-7025 (RBK/JS)

XACTWARE SOLUTIONS, INC.,
et al.,

                    Defendants.

<u>**MEMORANDUM OPINION AND ORDER**</u>

     This matter is before the Court on defendants Xactware Solutions, Inc. and Verisk Analytics, Inc.'s (collectively, "defendants") "Motion to Stay Pending <u>Inter Partes</u> Review" [Doc. No. 107]. The Court is in receipt of plaintiffs Eagle View Technologies, Inc. and Pictometry International Corp.'s (collectively, "plaintiffs") opposition [Doc. No. 130], defendants' reply [Doc. No. 137] and plaintiffs' supplemental letter [Doc. No. 146]. The Court recently held oral argument. For the reasons to be discussed, defendants' motion is DENIED.

<u>Background</u>

     Plaintiffs filed this patent infringement action on September 23, 2015, alleging defendants infringed seven of plaintiffs' patents: U.S. Patent Nos. 8,078,436 ("'436 patent"), 8,170,840

1

("'840 patent"), 8,209,152 ("'152 patent"), 8,542,880 ("'880 patent"), 8,818,770 ("'770 patent"), 8,823,732 ("'732 patent") and 8,825,454 ("'454 patent"). Compl. ¶ 1 [Doc. No. 1]. Plaintiffs amended their complaint on November 30, 2015 to assert infringement of two additional patents: U.S. Patent Nos. 9,129,376 ("'376 patent") and 9,135,737 ("'737 patent"). Am. Compl. ¶ 1 [Doc. No. 30]. These patents are generally directed to software technology for imaging, modeling and rendering aerial rooftop measurements and reports. Plaintiffs and defendants are competitors in this market with plaintiffs accusing defendants' following products of infringement: Xactimate®, Roof Insight™, Property InSight™ and Aerial Sketch™.[1] Id. Defendants filed an answer and also asserted counterclaims seeking declaratory judgment of non-infringement and invalidity for each of the nine patents asserted. See generally Am. Answer [Doc. No. 39].

The Fed. R. Civ. P. 16 Scheduling Conference was held on December 9, 2015. Pursuant to the December 10, 2015 Scheduling Order [Doc. No. 38], plaintiffs timely served their asserted claims (153) and infringement contentions. See Defs.' Br. at 4 [Doc. No. 107-1]. Defendants filed their first set of petitions for inter partes review ("IPR") as to all 153 asserted claims in the nine

---

[1] The Court recently granted plaintiffs' motion for leave to amend their infringement contentions to include the "Mass Production Tool" as an accused product. Oct. 28, 2016 Order [Doc. No. 139].

asserted patents with the U.S. Patent and Trademark Office ("PTO") on February 8, 2016. Defs.' Br. at 6.

On February 9, 2016, defendants moved before the Honorable Robert B. Kugler, U.S.D.J. to dismiss the amended complaint on the ground that each of the nine asserted patents claims ineligible subject matter under 35 U.S.C. § 101 [Doc. No. 50-1]. Defendants then moved before this Court on April 8, 2016 to stay discovery pending Judge Kugler's ruling on their motion to dismiss [Doc. No. 66]. On May 4, 2016, the Court granted in part and denied in part the stay motion. In particular, the Court ordered all depositions and the parties' Markman submissions stayed; however, defendants' request to stay all discovery was denied. May 4, 2016 Order at 1-2 [Doc. No. 75]. In its Oral Opinion the Court expressed that if the factual circumstances and balance of interests changed the Court would revisit its decision. May 2, 2016 Oral Op. Tr. 46:8-46:12 [Doc. No. 79]. The Court also noted the inordinate number of claims asserted and ordered the parties to "meet and confer to reduce to a reasonable number the asserted claims (presently 153) and claim terms to be construed (presently 63)." May 4, 2016 Order at 2.

On August 2, 2016, Judge Kugler denied defendants' motion to dismiss without prejudice. Judge Kugler reasoned that the parties' submissions "clearly identified a number of factual disputes and raised issues about the meanings of the claims--even disputing the

3

number of asserted claims" and thus "the Court finds itself unable to develop a 'full understanding of the basic character of the claimed subject matter.'" Eagle View Techs., Inc. v. Xactware Sols., Inc., C.A. No. 15-7025 (RBK/JS), 2016 WL 4154136, at *3 (D.N.J. Aug. 2, 2016) (citations omitted).

Defendants filed the instant motion to stay pending IPR proceedings on September 8, 2016 because a "material change in factual circumstances has taken place warranting a stay." Defs.' Br. at 1. In particular, defendants asked to "stay this case pending resolution of [IPR] proceedings recently instituted [August 2016] and to be instituted by the U.S. Patent and Trademark Office ('PTO')." Id. At the time defendants' motion was filed, there were nine asserted patents and 153 asserted claims with 63 claim terms to be construed in the case. In August 2016, the PTO instituted IPR proceedings on six of the nine asserted patents, encompassing approximately half of the 153 asserted claims. Defs.' Br. at 2. With regard to the three remaining asserted patents and other asserted claims not under IPR proceedings, defendants averred they would be taking further action by way of requesting reconsideration and filing new IPR petitions. Id.

Significant changes have occurred since the instant motion was filed. Importantly, plaintiffs served their amended contentions on September 16, 2016, reducing their asserted patent claims from 153 to 46, and asserted patents from nine to seven.

4

See Pls.' Sept. 25, 2016 Letter at 1 [Doc. No. 119]. This reduction in the number of asserted claims and patents resulted in IPR proceedings instituted for only four of the 46 asserted claims and four of the seven asserted patents.[2] In addition, since their motion to stay was filed defendants filed five additional IPR petitions which defendants aver will likely be instituted, ultimately simplifying the issues.[3] Also, defendants' three requests for reconsideration were denied. See Pls.' Nov. 22, 2016 Letter [Doc. No. 146].

Plaintiffs oppose defendants' motion to stay because, in plaintiffs' view, defendants have repeatedly attempted to delay this litigation and the instituted IPR reviews only cover four of the 46 "presently-asserted claims." Pls.' Opp'n at 1. Plaintiffs further point out the PTO rejected defendants' three requests for reconsideration. Id. at 2; see also Pls.' Nov. 22, 2016 Letter. With regard to defendants' new IPR petitions, plaintiffs aver they do not provide any reasonable basis for staying the case because the PTO will not decide whether to institute IPR proceedings until

---

[2] The four asserted claims and patents presently under IPR proceeding are: claim 10 of '152 patent; claim 11 of '770 patent; claim 26 of '454 patent; and claim 25 of '737 patent. See Pls.' Opp'n at 5 [Doc. No. 129].

[3] These five additional IPR petitions were filed between September 12, 2016 and October 7, 2016. See Defs.' Reply Exs. A-E [Doc. Nos. 137-2 to 137-6].

March 2017 at the earliest. Pls.' Opp'n at 2. In sum, plaintiffs oppose a stay on the ground they will be unduly prejudiced by a stay, defendants will not face hardship or inequity if a stay is denied, a stay will not simplify the issues, and substantial progress has been made in the case.

Defendants ask the Court not to focus on the fact the PTO only instituted IPR proceedings for four of 46 presently-asserted claims. Defs.' Reply at 3 [Doc. No. 137]. Defendants argue the PTO instituted IPR proceedings for a majority of the originally-asserted and currently-asserted patents. Id. Defendants also point to plaintiffs' reduction of asserted claims from 153 to 46 only days after defendants filed the present motion. Id. Defendants argue the presently-instituted IPR proceedings and defendants' subsequent filings with the PTO "will likely simplify discovery and other aspects of the case" and result in "potential invalidity of asserted claims." Id. at 13.

Discussion

It is well-settled that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." Depomed Inc. v. Purdue Pharma L.P., C.A. No. 13-0571 (JAP), 2014 WL 3729349, at *2 (D.N.J. July 25, 2014) (quoting Landis v. North Am. Co., 299 U.S. 248, 254 (1936)). In particular, "[t]he decision to stay a

patent case in which a reexamination by the PTO has been requested is within the discretion of the district court." Thermolife Int'l, LLC v. Prosource Performance Prod., C.A. No. 15-2037 (FLW/LHG), 2015 WL 9480023, at *6 (D.N.J. Dec. 29, 2015) (citing cases from the Federal Circuit and the District of New Jersey).

Because staying a case pending IPR proceedings offers both costs and benefits, courts traditionally balance the following three factors in determining whether to grant a stay: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and a trial date has been set." Depomed, 2014 WL 3729349, at *2 (citations omitted); see also Thermolife, 2015 WL 9480023, at *6 (quoting Mondis Tech. Ltd. v. LG Elecs., Inc., C.A. No. 15-4431 (SRC/CLW), 2015 WL 7012747, at *6 (D.N.J. Nov. 12, 2015)). While courts in this District have noted a "generally liberal policy toward granting stays pending patent reexamination by the PTO," Mondis Tech., 2015 WL 7012747, at *5 (citations omitted), a stay is not automatic as a "stay in litigation inevitably causes further delay in an already lengthy process, and could potentially harm [the opposing party]." Id. (quoting Brass Smith, LLC v. RPI Indus., Inc., C.A. No. 09-06344 (NLH/JS), 2010 WL 4444717, at *2 (D.N.J. Nov. 1, 2010)). "The party seeking a stay of civil litigation bears the burden to show that

7

the stay would be appropriate." Id. (citing Landis, 299 U.S. at 255).

The Court will now proceed to analyze the relevant factors to determine if a stay should be granted.

A. Prejudice to the Non-Moving Party

In determining whether a stay will likely result in undue prejudice to plaintiffs or place them at a clear tactical disadvantage, the Court considers a number of factors including "the timing of the request for reexamination, the timing of the request for [a] stay, the status of the reexamination proceedings and the relationship of the parties." Depomed, 2014 WL 3729349, at *2 (quoting Boston Scientific Corp. v. Cordis Corp., 777 F. Supp. 2d 783, 789 (D. Del. 2011)). For the reasons to be discussed, the Court finds that plaintiffs will suffer undue prejudice from a stay.

1. Timing of IPR Petitions

While the parties did not discuss the timing of defendants' first set of IPR petitions, the Court finds this sub-factor to be neutral. Defendants filed their original IPR petitions on February 8, 2016, less than five months after plaintiffs commenced this case. Defs.' Br. at 6. While courts are reluctant to stay a case if it appears that the timing of the IPR petition suggests a dilatory motive on the movant's part, it does not appear defendants' original IPR petitions were motivated by such an

intent. Depomed, 2014 WL 3729349, at *3 (finding the timing of IPR sub-factor to be neutral at best despite the movant filing its IPR petitions just two weeks short of the one-year statutory deadline because the movant promptly filed its petitions after two patents-in-suit were voluntarily dismissed from the case) (citing Nexans Inc. v. Belden Inc., C.A. No. 12-1491 (SLR/SRF), 2014 WL 651913, at *3 (D. Del. Feb. 19, 2014)).

The fact that defendants filed another set of IPR petitions is not relevant to the Court's analysis of whether to grant a stay. Serial IPR petitions are disfavored. See SAS Inst., Inc. v. Complement, LLC, 825 F.3d 1341, 1357 (Fed. Cir. 2016) (noting that "[t]he America Invents Act was designed--after a decade of hearings and revisions--to reduce the cost of patent litigation, to resolve major validity issues in an expert tribunal, and to put an end to repetitive challenges" and "abusive serial challenges to patents"). Further, the parties will not know if the new IPRs will be instituted until approximately March or April 2017. Davol, Inc. v. Atrium Med. Corp., C.A. No. 12-958 (GMS), 2013 WL 3013343, at *2 n.2 (D. Del. June 17, 2013) ("Under the new [IPR] procedures, the Director of the PTO must decide whether to grant review within six months of a petition being filed, see 35 U.S.C. § 314(b); 37 C.F.R. § 42.107."). In addition, courts routinely deny requests for a stay prior to the PTO's decision concerning whether to institute an IPR. Straight Path IP Grp., Inc. v. Vonage Holdings

<u>Corp.</u>, C.A. No. 14-502 (JLL/JAD), 2014 WL 4271633, at *3 (D.N.J. Aug. 28, 2014) (declining to rule on whether to grant a stay until the PTO decides whether it will grant review of the defendants' IPR petitions); <u>Derma Scis., Inc. v. Manukamed Ltd.</u>, C.A. No. 12-3388 (JAP), 2013 WL 6096459, at *1 (D.N.J. July 18, 2013) (declining to rule on stay motion until after the PTO's institution decision so the court could make a "more informed determination" on the merits of a stay); <u>Trover Grp., Inc. v. Dedicated Micros USA</u>, C.A. No. 2:13-CV-1047 (WCB), 2015 WL 1069179, at *5 (E.D. Tex. Mar. 11, 2015) (noting the majority of courts have postponed or denied stay requests when the PTO has not yet acted on the petitions for review).

It does not go unnoticed that the timing of defendants' petitions could show defendants' dilatory motive. This is so because defendants failed to provide the Court with a good reason for filing a second set of IPR petitions rather than including the new arguments in defendants' first set of petitions.[4] Unlike the single set of petitions filed in <u>Depomed</u>, where the court found the IPR petitions to be in response to the voluntary dismissal of

---

[4] At oral argument, defendants reasoned that their recent discovery of previously unknown prior art references led to their second set of IPR petitions. Defendants explained that despite their diligent efforts, the prior art references were undiscoverable before defendants' first set of IPR petitions. Defendants' argument is not convincing.

two patents-in-suit, the Court is not persuaded that defendants'
second set of petitions was solely in response to plaintiffs'
reduction of asserted claims and patents. Nevertheless, because
the Court considers defendants' second set of petitions immaterial
to the present motion, the Court finds the "timing of IPR
petitions" sub-factor is neutral.

  2. Timing of the Present Motion to Stay

    In considering the timing of a motion to stay, courts
recognize that "a motion to stay pending a review of patent claims
can always be said to seek a tactical advantage" in some sense. LG
Elecs., Inc. v. Toshiba Samsung Storage Tech. Korea Corp., C.A.
No. 12-1063 (LPS/CJB), 2015 WL 8674901, at *5 (D. Del. Dec. 11,
2015); see also Belden Techs. Inc. v. Superior Essex Commc'ns LP,
C.A. No. 08-63 (SLR), 2010 WL 3522327, at *2 (D. Del. Sept. 2,
2010) ("A request for reexamination made well after the onset of
litigation followed by a subsequent request to stay may lead to an
inference that the moving party is seeking an inappropriate
tactical advantage."). Here, defendants filed their original IPR
petitions nearly five months after the litigation commenced, and
the present motion to stay was not filed until one month after
Judge Kugler denied defendants' motion to dismiss. Under these
circumstances, an inference could be drawn that defendants are
seeking an inappropriate tactical advantage because they waited
until their motion to dismiss was denied to file their present

11

motion to stay. Thus, the Court finds that this sub-factor weighs against granting a stay.

### 3. Status of IPR

This factor favors plaintiffs. First, defendants' first set of IPR petitions has already been decided, with the PTO instituting review of only four asserted claims in August 2016. Under the governing statute, the presently instituted IPR proceedings are not expected to be fully resolved by the PTO until August 2017 at the earliest with a possibility of a six-month extension for "good cause." 35 U.S.C. 316(a)(11); see also Toshiba Samsung Storage Tech. Korea Corp. v. LG Elecs., Inc., C.A. No. 15-691 (LPS), 2016 WL 3437605, at *5 (D. Del. June 17, 2016) (finding the "status of IPR" sub-factor weighed against a stay because the recently instituted IPR and the possibility of a six-month extension for good cause and/or two or more years of IPR appellate proceedings would be prejudicial to the non-movant).

Defendants' second set of IPR petitions, filed approximately eight months after their first set of IPR petitions, further supports the Court's finding that the status of IPR weighs against a stay. The PTO will not decide whether to institute the IPR proceedings on defendants' second set of petitions until March or April 2017. See 35 U.S.C. § 314(b); 37 C.F.R. § 42.107. Even if one IPR proceeding is instituted, the final decision will not be issued until March 2018 at the earliest. Thus, it follows that an

additional delay of eight months will occur if the Court accepts defendants' argument that their recently filed but uninstituted IPR petitions are determinative here. Stated differently, the "status of IPR" sub-factor weighs heavily against a stay if the Court considers the IPR status of defendants' second set of petitions. Accordingly, the Court finds the "status of IPR" sub-factor weighs against staying the litigation.

4. <u>Relationship of the Parties</u>

Courts are generally reluctant to grant a stay in a matter where the parties are direct competitors on the rationale that a stay would likely cause the non-movant to lose substantial profits and goodwill on the market. <u>See, e.g.</u>, <u>Depomed</u>, 2014 WL 3729349, at *4 (quoting <u>Neste Oil OYJ v. Dynamic Fuels, LLC</u>, C.A. No. 12-1744 (GMS), 2013 WL 3353984, at *3 (D. Del. July 2, 2013)); <u>Thermolife</u>, 2015 WL 9480023, at *6 (finding because the parties are direct competitors, a stay of the litigation would result in prejudice to the non-movant).[5]

---

[5] Defendants cite <u>Thermolife</u> to argue that "a court in this district granted a stay even though the parties were competitors [because] other factors can and do outweigh the parties status as competitors." Defs.' Reply at 7 (citing <u>Thermolife</u>, 2015 WL 9480023, at *7). However, the decision is inapposite because defendants fail to note the weight of other factors the court in <u>Thermolife</u> considered in its analysis. For instance, the court found the "simplification of issues" factor weighed in favor of a stay, noting that at least one of the patents-in-suit was under reexamination for all of its claims. <u>Thermolife</u>, 2015 WL 9480023, at *7. The court also found the "stage of litigation" factor weighed in favor of a stay because the factor was uncontested and

Here, the Court finds the parties are in fact direct competitors and, thus, this sub-factor weighs against a stay due to the likelihood of prejudice to plaintiffs. Plaintiffs aver the parties are direct competitors "in the contentious aerial measurement service and reports market." Pls.' Opp'n at 9. In support, plaintiffs point to defendants' September 2015 "Five Year Strategy." Id.; Pls.' Opp'n Ex. 11 at 14, 19 [Doc. No. 129-1] ("[Plaintiff] is very active in the market . . . . We need to erode their market share by selling Roof Insight right now . . . . This section will focus primarily on our major competitor [plaintiff] . . . as well as recommend ways that we can aggressively use to increase our market share."). In light of defendants' express unequivocal strategy to erode plaintiffs' market share, the Court finds plaintiffs will be prejudiced by a stay and, thus, this sub-factor weighs against staying the litigation.

To the extent defendants focus on the fact that plaintiffs did not seek a preliminary injunction to support their argument that plaintiffs will not suffer undue prejudice, the Court finds this is not determinative. Defs.' Br. at 10. Defendants argue plaintiffs' failure to seek a preliminary injunction and the

---

discovery was ongoing with no trial date being set. Id. In the present matter, no patent-in-suit has all of its claims under IPR proceedings and, as will be discussed, the "stage of litigation" factor favors plaintiffs. See Defs.' Reply at 3-4; Pls.' Opp'n at 14. Therefore, defendants' reliance on Thermolife is misplaced.

availability of other legal or equitable remedies after the stay
is lifted, favor a stay. Defs.' Reply at 6 (citing MonoSol Rx, LLC
v. BioDelivery Scis. Int'l, Inc., C.A. No. 10-5695 (FLW), 2012 WL
762501, at *10 (D.N.J. Mar. 7, 2012)). However, MonoSol is
distinguishable because the parties are direct competitors. In
MonoSol, the court expressed "appreciation" for the plaintiff's
contention that the defendants were competitors but did not find
the parties to be direct competitors. MonoSol, 2012 WL 762501, at
*10. As noted, the parties here are direct competitors with
defendants' express strategy to erode plaintiffs' market share and
"aggressively . . . increase" defendants' market share. In
particular, defendants' "Five Year Strategy" shows defendants'
market share relative to plaintiffs' increased from less than 1%
in 2013 to approximately 10% in 2015. See Pls.' Reply Ex. 11 at
21-23. Therefore, defendants' reliance on MonoSol is misplaced.
See Nippon Steel & Sumito Metal Corp. v. POSCO, C.A. No. 12-2429
(DMC), 2013 WL 1867042, at *5 (D.N.J. May 2, 2013) ("[W]hen parties
are directly competing and the landscape of the relevant market is
changing, it presents a circumstance where justice demands that
the allegedly aggrieved party be given an opportunity to litigate
its claims--and sooner than later.").

Moreover, courts have rejected arguments similar to
defendants based on the rationale "that there could be a variety
of reasons that a patentee does not move for a preliminary

injunction." VirtualAgility Inc. v. Salesforce.com, Inc., 759 F.3d 1307, 1319 (Fed. Cir. 2014); Nippon Steel, 2013 WL 1867042, at *6 n.6 ("[T]he failure to move for a preliminary injunction does not erase the fact that [the non-movant] would likely suffer tangible harm from a stay.").[6]

Accordingly, the Court finds the majority of sub-factors for determining whether plaintiffs would suffer undue prejudice from a stay pending IPR proceedings weighs against a stay.

B. Simplification of Issues

Courts have noted several ways in which a stay pending IPR proceedings can simplify a pending litigation:

> (1) a review of all prior art presented to a court by the PTO, with its particular expertise; (2) the potential alleviation of numerous discovery problems relating to prior art by PTO examination; (3) the potential dismissal of a civil action should invalidity of a patent be found by the PTO; (4) encouragement to settle based upon the outcome of the PTO reexamination; (5) an admissible record at trial from the PTO proceedings which would reduce the complexity and length of the litigation; (6) a reduction of issues, defenses

---

[6] Plaintiffs have not offered a detailed reason for why they did not seek a preliminary injunction. However, courts recognize the "need for discovery" as a legitimate reason because a preliminary injunction requires a showing of a "likelihood of success on the merits." Nippon Steel, 2013 WL 1867042, at *6 n.6 ("[W]here plaintiff needed 'substantial discovery (possibly including access to [d]efendants' source code)' to prove infringement, the failure to seek a preliminary injunction 'present no reason' to stay the case.") (citing Cooper Notification, Inc. v. Twitter, Inc., C.A. No. 09-865 (LPS), 2010 WL 5149351, at *3 (D. Del. Dec. 13, 2010)). Nevertheless, the Court will not speculate about plaintiffs' motive for not seeking a preliminary injunction. Plaintiffs' decision is not determinative as to whether to stay the case.

and evidence during pre-trial conferences; and (7) a reduction of costs for the parties and a court.

Eberle v. Harris, C.A. No. 03-5809 (SRC), 2005 WL 6192865, at *2 (D.N.J. Dec. 8, 2005) (citing GPAC, Inc. v. D.W.W. Enters., Inc., 144 F.R.D. 60, 63 (D.N.J. 1992)).

The "issue simplification" factor does not require a complete invalidation of all asserted claims by the IPR proceedings and simplification can occur even where "some or all of the claims are found not invalid." See Depomed, 2014 WL 3729349, at *5 (quoting Softview LLC v. Apple Inc., C.A. No. 10-389 (LPS), 2013 WL 4757831, at *1 (D. Del. Sept. 4, 2013)). Issue simplification can occur where the number of asserted claims and patents are reduced due to invalidation or the estoppel effect of the IPR proceedings. Id.; see also 35 U.S.C. § 315(2)(e) (barring the petitioner in an IPR proceeding that results in a final decision by the PTO from asserting in a civil action invalidity arguments that the petitioner raised or reasonably could have raised during the IPR proceedings). Therefore, the number of claims asserted in the pending litigation relative to the number of claims subject to the IPR proceedings is a significant factor for the Court to consider. See Depomed, 2014 WL 3729349, at *5 ("The more the scope of the litigation exceeds the scope of the IPR proceedings, the less likely the IPR proceedings and requested stay will simplify the issues.") (citing Princeton Digital Image Corp. v. Konami Digital

Entm't Inc., C.A. No. 12-1461 (LPS/CJB), 2014 WL 3819458, at *3 (D. Del. Jan. 15, 2014)).

At present, there are 46 asserted claims and seven asserted patents in the case. Only four asserted claims and four asserted patents are under IPR proceedings. See supra note 2. While the Court notes that the "'issue simplification' factor does not require complete overlap" of the issues as defendants argue, even under the best-case scenario for defendants, only four of the 46 asserted claims may be invalidated, clarified or limited, representing less than 10% of the claims at issue in the case. See Defs.' Reply at 11 ("'Cancellation, clarification, or limitation of claims,' even if not all claims, helps simplify the litigation." (quoting Mondis Tech., 2015 WL 7012747, at *7)).

The Court acknowledges there is a possibility some simplification may occur; however, such a low percentage of the asserted claims at issue before the PTO weighs heavily against a stay. See Toshiba Samsung, 2016 WL 3437605, at *2-3 (finding the "issue simplification" factor weighed against a stay where, inter alia, only 13 of the 43 asserted claims (roughly 30%) were under IPR and even considering the originally asserted claims, only 30 of the 60 originally asserted claims would be under review); Dane Techs., Inc. v. Gatekeeper Sys., Inc., C.A. No. 12-2730 (ADM/AJB), 2013 WL 4483355, at *2 (D. Minn. Aug. 20, 2013) (denying stay where the movant only petitioned for review of two of the three patents-

in-suit); <u>Pentair Water Pool & Spa, Inc. v. Hayward Indus., Inc.</u>, C.A. No. 5:11-459-D, 2012 WL 6608619, at *3 (E.D.N.C. Dec. 18, 2012) (finding the "issue simplification" factor weighed against a stay where the PTO instituted IPR proceedings for only four of the seven patents-in-suit).[7]

Defendants also point to their second set of IPR petitions in support of their argument that the "issue simplification" factor weighs in favor of a stay. Defs.' Reply at 12 (citing <u>Richmond v. Ningbo Hangshun Elec. Co.</u>, C.A. No. 13-1944 (MLC), slip op. at 4-7 (D.N.J. Sept. 21, 2015)). In particular, defendants point to the court's advice in <u>Richmond</u> "to await the issuance of all decisions concerning the invalidity and the patentability of the [patents-in-suit]--as well as decisions concerning the Related Patents issued in any IPRs that any party may soon feel emboldened to institute." <u>Id.</u> (quoting <u>Richmond</u>, slip op. at 5).

However, defendants' reliance on <u>Richmond</u> is misplaced. <u>Richmond</u> was a consolidated civil action involving an individual plaintiff patentee and multiple defendant entities, whereas the present matter involves a single action. <u>Richmond</u>, slip op. at 1-

---

[7] The Court notes that defendants focus on the percentage of claims and patents originally asserted by plaintiffs that would be under the IPR proceedings had the number of originally asserted claims and patents remained the same. Defs.' Reply at 3-4. However, the relevant consideration for "issue simplification" is the number of claims and patents presently asserted rather than the number originally asserted.

2. More significantly, the court in Richmond specifically found that the PTO's decisions whether to institute IPR proceedings provided "comprehensive analysis and claim construction" for each of the patents at issue. Id. at 2-4. The court noted that under these circumstances, the "issue simplification" may weigh in favor of a stay to conserve time and resources for the multiple parties, including those who did not participate in the IPR filings and to await "comprehensive analysis and claim construction" by the PTO. See id. at 2.

In contrast, thus far the PTO's decisions here have not provided any comprehensive claim construction. Of the nine PTO decisions regarding whether to institute review, the PTO provided only a limited claim construction of the term "database" of the '880 patent and "geo-referenced" of the '732 patent,[8] which are no longer asserted in the case. Defs.' Br. Ex. D at 6 [Doc. No. 107-7]; Id. Ex. F at 4-5 [Doc. No. 107-9]. The PTO did not provide a claim construction for the remaining claims. See Defs.' Br. Ex. A-F [Doc. Nos. 107-4 to 107-9]; Pls.' Opp'n Ex. 1-3 [Doc. No. 130]. It is entirely speculative that defendants' second set of petitions will be more successful than its first set.

_____

[8] To be clear, the PTO accepted defendants' unopposed proposed construction of the term "geo-referenced" as being the "broadest reasonable construction in light of the specification of the '732 patent." Defs.' Br. Ex. F at 5.

It is no surprise, therefore, that Richmond is not controlling here. The case is factually distinguishable and defendants' second set of IPR petitions is not determinative on the "issue simplification" factor. See, e.g., Straight Path, 2014 WL 4271633, at *3; Depomed, 2014 WL 3729349, at *1 (determining that the movant's request for a stay was premature in light of the PTO's pending decision whether to institute IPR proceedings); Derma Scis., 2013 WL 6096459, at *1 (denying a motion to stay pending IPR).

Accordingly, the Court finds that the "issue simplification" factor weighs against a stay because the result of IPR proceedings on four asserted claims, representing less than 10% of the asserted claims, will not materially simplify the issues in the litigation.

C. Stage of the Litigation

Courts are more willing to stay a case in its early stages pending IPR proceedings because it can advance judicial efficiency by conserving resources expended by the parties and the Court on claims that may subsequently be found invalid. Toshiba Samsung, 2016 WL 3437605, at *3. On the other hand, "when a matter has already reached its later stages with discovery being complete and/or a trial date being set, requests to stay are less frequently granted." Depomed, 2014 WL 3729349, at *6. Where the parties and the court have expended "substantial time and resources . . . in [the] case to scheduling and the resolution of discovery disputes"

and other motion practices, the "litigation stage" factor weighs against a stay even at a relatively early stage. SoftView LLC v. Apple Inc., C.A. No. 10-389 (LPS), 2012 WL 3061027, at *4 (D. Del. July 26, 2012).

Here, the Court finds that the stage of litigation weighs against a stay. The Court notes that even though no depositions have yet been taken and Markman briefs have not been filed, the parties and the Court have devoted substantial resources to scheduling, discovery disputes and motion practice. For instance, Judge Kugler ruled on defendants' motion to dismiss under 35 U.S.C. § 101. See Aug. 2, 2016 Op. [Doc. No. 104]. Likewise, this Court ruled on defendants' motion to stay discovery pending Judge Kugler's ruling and plaintiffs' motion to amend infringement contentions. See May 4, 2016 Order [Doc. No. 75]; Oct. 28, 2016 Order [Doc. No. 139]. Of course, the Court also notes the substantial amount of time and resources spent by the parties in presenting their current arguments. Accordingly, the Court finds that the "litigation stage" factor weighs against a stay. This is especially true in an instance like this where the parties already substantially completed their costly and time-consuming document and ESI production.

22

Conclusion

In sum, the Court finds that all three factors in determining whether to stay a case pending IPR proceedings weigh against imposing a stay.

**ORDER**

Accordingly, for the reasons discussed,

IT IS HEREBY ORDERED this 7th day of December, 2016 that defendant's "Motion to Stay Pending Inter Partes Review" [Doc. No. 107] is DENIED.

/s/ Joel Schneider
JOEL SCHNEIDER
United States Magistrate Judge