Liza M. Walsh
Hector D. Ruiz
Eleonore Ofosu-Antwi
WALSH PIZZI O'REILLY FALANGA LLP
One Riverfront Plaza
1037 Raymond Boulevard, Suite 600
Newark, New Jersey 07102
(973) 757-1100

**OF COUNSEL** (admitted *pro hac vice*)**:**

Adam R. Alper
Brandon Brown
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
(415) 439-1400

Michael W. De Vries
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, CA 90071
(213) 680-8400

Gianni Cutri
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

Jared Barcenas
KIRKLAND & ELLIS LLP
601 Lexington Ave.
New York, NY 10022
(212) 446-4800

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| EAGLE VIEW TECHNOLOGIES, INC., and PICTOMETRY INTERNATIONAL CORP.,<br><br>    Plaintiffs,<br><br>  v.<br><br>XACTWARE SOLUTIONS, INC., and VERISK ANALYTICS, INC.,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No.
1:15-cv-07025-RBK-JS

*Electronically Filed*

**PLAINTIFFS' MOTION TO DISMISS DEFENDANTS' INEQUITABLE CONDUCT COUNTERCLAIM (COUNT XIX) UNDER FED. R. CIV. P. 12(b)(6) AND MOTION TO STRIKE DEFENDANTS' TWELFTH AFFIRMATIVE DEFENSE UNDER FED. R. CIV. P. 12(F)**

## **TABLE OF CONTENTS**

I.     **INTRODUCTION** ...................................................................................1

II.    **LEGAL STANDARD** ...........................................................................4

III.   **STATEMENT OF FACTS** ..................................................................8

IV.   **ARGUMENT**......................................................................................13

      A.    Defendants  Do Not Allege A Factual Basis That Eagle View's Patent Prosecutors Had Knowledge Of Details Contained Within Kennedy's File History ...........................................................14

      B.    Defendants' Do Not Allege A Factual Basis That Plaintiff's Patent Prosecutors Had The Specific Intent To Withhold Material Information .........................................................................19

V.    **CONCLUSION** .................................................................................27

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*1st Media, LLC v. Elec. Arts, Inc.*,
    694 F.3d 1367 (Fed. Cir. 2012) ........................................................6

*Abaxis, Inc. v. Cepheid*,
    No. 10-CV-02840-LHK, 2011 WL 3741501 (N.D. Cal. Aug. 25,
    2011) ................................................................................................19

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S. Ct. 1937 (2009).................................................7

*Audionics Sys., Inc. v. AAMP of Florida, Inc.*,
    No. 12-cv-10763 MMM, 2013 WL 12129652 (C.D. Cal. Nov. 19,
    2013) ....................................................................................20, 23, 27

*Bayer Cropscience AG v. Dow Agrosciences LLC*,
    Civ. 10–1045, 2012 WL 1253047 (D.Del. Apr. 12, 2012)............5, 24

*Benihana of Tokyo, Inc. v. Benihana Inc.*,
    C.A. No. 10-1051, 2011 WL 3861897 (D. Del. Sept. 1, 2011)........11

*Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Sols.,
P.C.*,
    482 F.3d 1347 (Fed. Cir. 2007) ........................................................4

*Courtesy Prod. L.L.C. v. Hamilton Beach Brands, Inc.*,
    No. CV 13-2012-SLR-SRF, 2015 WL 6159113 (D. Del. Oct. 20,
    2015) ................................................................................................11

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
    575 F.3d 1312 (Fed. Cir. 2009) ...............................................*passim*

*In re Gabapentin Patent Litig.*,
    649 F. Supp. 2d 340 (D.N.J. 2009)...........................................*passim*

*Glenside West Corp. v. Exxon Co. U.S.A.*,
    761 F.Supp. 1100 (D.N.J.1991) ........................................................8

*Graphic Packaging Int'l, Inc. v. C.W. Zumbiel Co.*,
No. 3:10-CV-891-J-37JBT, 2011 WL 4862498 (M.D. Fla. Sept.
12, 2011) ...........................................................................................19

*Mycone Dental Supply Co., Inc. v. Creative Nail Design, Inc.*,
No. 11-4380, 2013 WL 3216145 (D.N.J. June 24, 2013) ..........................*passim*

*Pension Benefit Guar. Corp. v. White Consolidated Indus., Inc.*,
998 F.2d 1192 (3rd Cir. 1993) .........................................................10

*Quest Integrity USA, LLC v. Clean Harbors Indus. Servs., Inc.*,
No. CV 14-1482-SLR, 2015 WL 4477700 (D. Del. July 22, 2015) .................11

*Resolution Trust Corp. v. Moskowitz*,
No. 93–2080, 1994 WL 229812 (D.N.J. May 24, 1994).....................................8

*Taro Pharm. N. Am. Inc. v. Suven Life Scis., LTD.*,
No. 11–2452 JAP, 2012 WL 2513523 (D.N.J. June 28, 2012)...............4, 22, 23

*Teva Neuroscience, Inc. v. Watson Labs., Inc.*,
No. 10-5078 JLL, 2011 WL 741250 (D.N.J. Feb. 24, 2011) ........................8, 20

*Therasense Inc. v. Becton, Dickinson and Co.*,
649 F.3d 1276 (Fed. Cir. 2011) .................................................*passim*

*Warner Chilcott Co., LLC v. Amneal Pharm.,*,
Nos. 11-5989 (FSH), 11-6926 (FSH), 12-2474 (FSH), 2013 WL
6627694, at *9 (D.N.J. Dec. 20, 2013) ........................................7, 25

## Rules

Fed. R. Civ. P. 9(b) .......................................................................*passim*

Fed. R. Civ. P. 12(b)(6).................................................................*passim*

Fed. R. Civ. P. 12(f) .............................................................1, 7, 20, 27

Federal Rule of Evidence 201 ...............................................................10

Rule 9(b)...........................................................................................25

Rule 12(b)...........................................................................................5

**Other Authorities**

MPEP § 2001.01 (9th ed., Nov. 2015)...................................................................15

U.S. Patent No. 8,078,436................................................................................*passim*

U.S. Patent No. 8,417,061...........................................................................10, 11

## I.      INTRODUCTION

Plaintiffs respectfully move this Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss with prejudice Defendants' 19th Counterclaim concerning inequitable conduct, for failure to state a claim upon which relief can be granted.   Plaintiffs likewise move this Court, pursuant to Federal Rule of Civil Procedure 12(f), to strike Defendants' Twelfth Affirmative Defense.    Both Defendants' counterclaim and affirmative defense allege that Eagle View's patent prosecutors committed inequitable conduct during prosecution of U.S. Patent No. 8,078,436 (the '436 Patent).

Defendants' new claim is a serious allegation—called the "atomic bomb" of patent law by the Federal Circuit.  The Federal Circuit has cautioned that "[t]he habit of charging inequitable conduct in almost every major patent case has become an absolute plague.  Reputable lawyers seem to feel compelled to make the charge against other reputable lawyers on the slenderest grounds, to represent their client's interests adequately, perhaps." *Therasense Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1289 (Fed. Cir. 2011) (internal quotations omitted).  Given the severity of the claim and its historic overuse, the Federal Circuit requires that the allegation be pled with sufficient particularity before being allowed to pass the pleading stage, including detailed allegations of underlying facts from which a court may reasonably infer that a patent prosecutor accused of inequitable conduct had knowledge of the

specific fact that he withheld and that he intentionally withheld it from the patent office.

Defendants have pled neither sufficient allegations nor sufficient facts to allow a reasonable inference that Eagle View's prosecution attorneys knew material information and intentionally withheld it from the Patent Office. Defendants' claim of inequitable conduct is premised on a disputed statement made by a patent examiner at the Patent Office that Plaintiff's '436 Patent was not entitled to its April 17, 2007 priority date. To make out their claim, Defendants must allege that this statement was known by Eagle View's prosecution counsel and intentionally withheld by them. However, the examiner's comments were made during the prosecution of a third-party's patent (hereinafter the "Kennedy Patent"), *not* during the prosecution of any of Eagle View's patents. Thus, there is no evidence that Eagle View's attorneys were ever aware of this statement, much less that they intentionally withheld it from the Patent Office.

But to survive a motion to dismiss here, Defendants must allege substantial, credible facts that Eagle View's prosecution counsel knew about what occurred during the prosecution of the Kennedy Patent. Defendants fail to do so, offering absolutely no evidence or reasonable inferences that Eagle View's attorneys knew anything pertaining to the details of the prosecution of the third-party Kennedy Patent at all. This fact is fatal to Defendants' claim of inequitable conduct, as Eagle

2

View's counsel cannot intentionally and fraudulently withhold something they did not know about.  Indeed, Defendants' allegations regarding knowledge by Eagle View's counsel of the Kennedy prosecution are completely threadbare.  Defendants claim only that "Mr. Carlson and Mr. Baunach had a duty to disclose the information repudiating the claimed priority of the '436 Patent to the PTO," (Second Amended Answer ("SAA") ¶ 109) but never offer the required facts showing that they actually knew about this supposed information.  Indeed, as explained in more detail below, every undisputed fact confirms that Eagle View's counsel did *not* know about the contents of the prosecution of the Kennedy Patent, just as Defendants' own counsel did not know about the supposed "repudiation" of the priority of the '436 Patent for more than a year.

Defendants also fail to make the required showing of intent.  Defendants assert that "[o]n information and belief, Eagle View acted with intent to deceive the Patent Office," (SAA ¶ 106) and insist that there is an "inescapable inference" that Eagle View's lawyers acted to intentionally mislead the Patent Office.  In doing so, Defendants have plead themselves out of court, as the Federal Circuit has repeatedly rejected this type of generalized pleading of inequitable as insufficient to survive a motion to dismiss.  *See, e.g.*, *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328–29 (Fed. Cir. 2009); *Mycone Dental Supply Co., Inc. v. Creative Nail Design, Inc.*, No. 11-4380 (JBS-KMW), 2013 WL 3216145, at *8 (D.N.J. June 24, 2013);

3

*Taro Pharm. N. Am. Inc. v. Suven Life Scis., LTD.*, No. 11–2452 JAP, 2012 WL 2513523, at *6 (D.N.J. June 28, 2012).  Indeed, Defendants' own pleadings show that far from misleading the Patent Office, Eagle View's counsel acted in good faith with respect to the Kennedy Patent, affirmatively disclosing it to the Patent Office for consideration.

Simply put, Defendants' allegations concerning knowledge of the prosecution details of the Kennedy Patent and specific intent to withhold such information from the Patent Office are insufficient and fall far short of the Federal Circuit's heightened pleading requirements for an inequitable conduct allegation.  Defendants' inequitable conduct counterclaim and defense, must therefore be dismissed.

## II.   LEGAL STANDARD

Whether inequitable conduct has been adequately pled is a question of Federal Circuit law.  *Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Sols., P.C.*, 482 F.3d 1347, 1356 (Fed. Cir. 2007).  The Federal Circuit, concerned that inequitable conduct claims like Defendants "ha[ve] been overplayed, [are] appearing in nearly every patent suit, and [are] cluttering up the patent system," decided *en banc* to "tighten" the standards for inequitable in order to "redirect a doctrine that has been overused to the detriment of the public."  *Therasense*, 649 F.3d at 1289–90.  Indeed, unjustified and speculative inequitable conduct claims like Defendants' here, have "plagued not only the courts but also the entire patent system."  *Id.* at

4

1289.  This district (and others) have held that the logic of *Therasense* squarely applies a high-bar to the pleading standard and thus is critical to consider in ruling on a Rule 12(b) motion. *Mycone*, 2013 WL 3216145, at *6 ("The Federal Circuit's concerns [in *Therasense*] included the impact of loosely pled inequitable conduct claims on the litigation process, particularly during discovery and settlement negotiations.  These concerns necessarily involve the pleading stage because otherwise a claim of inequitable conduct that is insufficiently pled will open the door to intrusive and time-consuming discovery and will color settlement negotiations in a manner than is unfair to the patentee and clogs the litigation.  While [Defendant] need not prove its inequitable conduct claim at this procedural posture, it must plead a plausible claim for relief in accordance with *Therasense*.").[1]

Accordingly, the Federal Circuit requires very specific allegations under Rule 9(b) that filter out all but the most genuine claims of fraud on the Patent Office.  "[A] pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual:

---

[1] *See also Bayer Cropscience AG v. Dow Agrosciences LLC,* No. 10–1045 (RMB–JS), 2012 WL 1253047, at *2 (D.Del. Apr. 12, 2012) ("Although the *Therasense* decision did not squarely address the pleading requirements for an inequitable conduct defense, but instead involved the review of a district court's opinion after a bench trial, the decision is still relevant to the pleading issues involved herein.").

**(1) knew of the withheld material information** or of the falsity of the material misrepresentation, **and**

**(2)** withheld or misrepresented this information **with a specific intent to deceive the [Patent Office]**."

*Exergen*, 575 F.3d at 1328–29 (emphasis added); *see Mycone*, 2013 WL 3216145, at *3–5 (finding the Federal Circuit *Exergen* decision applies to the pleading stage). These allegations must include sufficient particularity to allege that a specific individual knew about the information, *Mycone*, 2013 WL 3216145, at *4, and must include "identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the [Patent Office]." *Exergen*, 575 F.3d at 1326–27.  A court must also consider the "patentee's objective indications of candor and good faith" when assessing "whether the pleadings create a reasonable inference of specific intent to deceive the [Patent Office]."  *Mycone*, 2013 WL 3216145, at *5.

Allowing inequitable conduct claims to proceed without these proper allegations of knowledge and specific intent would "effectively eviscerate *Therasense*'s test for *mens rea* and reinflict the plague of patent unenforceability based on the thinnest of speculation regarding the applicant's putative mental state." *1st Media, LLC v. Elec. Arts, Inc.*, 694 F.3d 1367, 1375 (Fed. Cir. 2012); *see Warner Chilcott Co., LLC v. Amneal Pharm., LLC*, Nos. 11-5989 (FSH), 11-6926 (FSH), 12-2474 (FSH), 2013 WL 6627694, at *9 (D.N.J. Dec. 20, 2013) ("Considering the

draconian nature of an inequitable conduct claim," Rule 9(b)'s pleading standards require that the allegations not be silent on the relation between knowing about a reference and the specific intent to hide it from the Patent Office.). Allowing unjustified claims would continue the "cluttering [of] the patent system" lamented by the Federal Circuit in *Therasense*, and lead to undue cost, confusion, and distraction from the real issues in a case. *Therasense*, 649 F.3d at 1289.

Federal Rule of Civil Procedure 12(b)(6) allows for dismissal of claims like Defendants'. At the pleading stage, Defendants must allege in a sufficiently factual manner to "state a claim of relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). Although a Court must accept as true all factual allegations in a complaint, that tenet is "inapplicable to legal conclusions" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Mycone*, 2013 WL 3216145, at *3. Likewise, Federal Rule Civil Procedure 12(f) governs the sufficiency of affirmative defenses and provides that the court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *In re Gabapentin Patent Litig.*, 649 F. Supp. 2d 340, 346 (D.N.J. 2009). "A motion to strike an affirmative defense pursuant to 12(f) is governed by the same standards as a motion to dismiss pursuant to 12(b)(6)." *Teva Neuroscience, Inc. v. Watson Labs., Inc.*, No. 10-5078 JLL, 2011 WL 741250, at *1 (D.N.J. Feb. 24,

2011).  "[W]hen a defense is legally insufficient under any set of facts which may be inferred from the allegations of the pleading" a motion to strike should be granted. *In re Gabapentin*, 649 F. Supp. 2d at 346 (quoting *Glenside West Corp. v. Exxon Co. U.S.A.*, 761 F. Supp. 1100, 1115 (D.N.J. 1991)). Granting a motion to strike can "hasten resolution of cases by eliminating the need for discovery which in turn saves time and litigation expenses."  *Id.* (quoting *Resolution Trust Corp. v. Moskowitz*, No. 93–2080, 1994 WL 229812, at *13 (D.N.J. May 24, 1994)).

## III.   STATEMENT OF FACTS

Defendants filed their SAA on May 18, 2017, after more than a year and half of litigation and discovery, arguing for the first time that U.S. Patent Number 8,078,436 (the "Eagle View '436 Patent") is unenforceable due to alleged inequitable conduct by two of Eagle View's patent prosecution attorneys, David Carlson and Jeremiah Baunach, during the prosecution of the Eagle View '436 Patent.  *See* SAA ¶¶ 80–113.  The assertion of inequitable conduct pertains to a statement made by the Patent Office during the prosecution of the Kennedy Patent, which is a third party patent not owned or related in any way to Eagle View.  A background of the Eagle View '436 Patent and the Kennedy prosecution is as follows.

Eagle View filed a Provisional Application 60/925,072 (the "'072 Provisional Application"), on April 17, 2007.  *Id.* ¶ 86.  Eagle View filed Non-provisional

8

Application No. 12/148,439 ("the '439 Application"), on April 17, 2008. *Id.* ¶ 85. Eagle View also filed Non-provisional Application No. 12/253,092 (the "'092 Application") (which is a continuation-in-part of the '439 Application), on October 16, 2008. *Id.* ¶¶ 84–85. The '436 Patent issued on December 13, 2011, from the '092 application. *Id.* ¶¶ 84, 87. As Defendants' pleading explains, "[b]oth the '092 Application and the '439 Application claim the priority of the . . . '072 Provisional Application," *id.* ¶ 86, which, as explained above, is dated April 17, 2007.

The allegedly material information that was supposedly known by Eagle View's patent prosecution counsel and intentionally withheld by them, according to Defendants, is not something that occurred during prosecution of the '436 Patent. Instead, it arose during prosecution of an unrelated, third-party patent. On February 2, 2009, Sungevity, a solar energy company, filed non-provisional patent Application No. 12/364,506 listing Kennedy *et al.* as the named inventors (the "Kennedy Application"). The Kennedy Application was filed *after* Eagle View's April 17, 2007 provisional application; accordingly, Eagle View's '436 Patent was prior art to the Kennedy application.

After the Kennedy Application was filed, the Patent Office rejected it in light of Eagle View's '436 Patent, finding that the '436 Patent disclosed at least as much as what was claimed in the Kennedy Application. In response to this rejection, Sungevity argued to the Patent Office that the '436 Patent was not entitled to its

9

April 17, 2007 priority date. According to Sungevity, this meant that the '436 Patent
would not be prior art to the Kennedy Application. Sungevity resubmitted its
application with new claims similar to the language of the claims in the '436 Patent
and asked the Patent Office to allow the revised Kennedy Application to be allowed
with these claims. *Id.* ¶¶ 97–99; *see* Prosecution History of U.S. Patent No.
8,417,061 ("Kennedy prosecution history") (Brown Decl., Ex. 1) at 83–84
(September 4, 2012 Kennedy Response to Office Action).[2]

---

[2] Under Federal Rule of Evidence 201, the Court may take judicial notice of the
prosecution histories for U.S. Patent Number 8,417,061 (the "Kennedy Patent")
and the Supplemental Examination Number 96/000,004 (the "'004
Reexamination"), excerpts of which are attached as Exhibits 1-5 to the
Declaration of B. Brown ("Brown Decl.") filed concurrently with this
brief. These records may be considered by the Court in conjunction with the
present motion as they are matters of the public record, whose authenticity is not
in dispute, and are explicitly relied upon and cited in Defendants' SAA. *See,
e.g., Pension Benefit Guar. Corp. v. White Consolidated Indus., Inc*., 998 F.2d
1192, 1196 (3d Cir. 1993) ("We now hold that a court may consider an
undisputedly authentic document that a defendant attaches as an exhibit to a
motion to dismiss if the plaintiff's claims are based on the document."); *In re
Rockefeller Center Props., Inc. Securities Litig*., 184 F.3d 280, 293 (3rd Cir.
1999) (taking judicial notice of public disclosures, such as SEC filing, is
consistent with the Circuit's practice of "allowing consideration of indisputably
authentic documents which serve as the basis for plaintiffs' complaint");
*Courtesy Prod. L.L.C. v. Hamilton Beach Brands, Inc.*, No. 13-2012-SLR-SRF,
2015 WL 6159113, at *6 n.7 (D. Del. Oct. 20, 2015) (considering, in a motion to
dismiss, a patent's prosecution history as a publicly available record); *Quest
Integrity USA, LLC v. Clean Harbors Indus. Servs., Inc.*, No. 14-1482-SLR, 2015
WL 4477700, at *1 n.4 (D. Del. July 22, 2015) (same); *Benihana of Tokyo, Inc.
v. Benihana Inc.*, No. 10-1051, 2011 WL 3861897, at *2 n.1 (D. Del. Sept. 1,
2011) (considering a publicly available document submitted to the Patent Office
in a motion to dismiss).

According to Defendants' pleading, on December 12, 2012, the Kennedy Application examiner concluded that the '436 Patent was not entitled to its April 17, 2007 priority date, thus allowing the Kennedy application to be granted.[3] SAA ¶¶ 93, 95. This December 12, 2012 statement forms the basis of Defendants' inequitable conduct claim.  The Kennedy prosecution proceeding was *ex parte*—as alleged, at no point did the Patent Office or the Kennedy Application examiner institute proceedings that would involve Eagle View's patents in connection with the Kennedy patent, nor did the Patent Office ever notify Eagle View's counsel that the priority date of the '436 Patent had been called into question or forward to Eagle View the assertions made during prosecution of the Kennedy Application. Ultimately, the Kennedy Application issued as U.S. Patent No. 8,417,061 (the "Kennedy Patent") on April 9, 2013.  SAA ¶ 93.

In the meantime, however, on October 3, 2012, approximately two months *before* the December 12, 2012 statement pertaining to the priority of the '436 Patent, Eagle View had filed a request for supplemental examination of the '436 Patent (the "'004 Reexamination").[4]  *See* Supplemental Examination Request No. 96/000,004

---

[3]  Eagle View does not agree with the allegations in Defendants' counterclaims, but nonetheless recites them here as alleged.

[4]  Defendants state that this request for supplemental examination was filed on December 28, 2012.  *See* SAA ¶ 89.  This is incorrect.  While a corrected version of the request was filed on December 28, 2012, to remedy certain aspects of the original request that were not compliant with filing formalities, the original

(Brown Decl., Ex. 2); SAA ¶ 91.  This '004 Reexamination was assigned to a different examiner at the patent office than the one handling the Kennedy patent. *See, e.g.*, Brown Decl., Ex. 1 (Kennedy Application assigned to Mr. Yosef Kassa) *with* Brown Decl., Ex. 5 ('436/'004 Patent Reexamination assigned to Mr. Jason Proctor). Thus, there is no dispute that there was no overlap in counsel or examiners between the two proceedings.  Additionally, there is no dispute that Eagle View's prosecution counsel was unaware that the examiner of the Kennedy Application had reached any conclusions regarding priority of the '436 Patent when the '004 Reexamination was initiated on October 3, 2012, as no such conclusions had been reached as of that date.

Approximately nine months after the '004 Reexamination was initiated, the Patent Office filed a litigation search report, which identified the now-issued Kennedy Patent along with over 200 other references.  *See* SAA ¶ 102; July 3, 2013 Search Report (Brown Decl., Ex. 3).  The report did not include the underlying Kennedy Patent prosecution files.  Brown Decl., Ex. 3.  On September 23, 2013, Eagle View filed an Information Disclosure Statement that echoed the Patent Office search report, including the Kennedy Patent but again without the Kennedy patent prosecution files, along with other references not identified by the Patent Office.  *See*

---

request for supplemental examination was filed on October 3, 2012.  *See* Supplemental Examination Request No. 96/000,004 (Brown Decl., Ex. 2).

SAA ¶ 103; September 23, 2013 Information Disclosure Statement (Brown Decl., Ex. 4).  The '004 Reexamination continued for an additional 7 months until April 16, 2014, when the Patent Office filed a Notice of Intent to issue an *Ex Parte* Reexamination Certificate for the Eagle View '436 Patent allowing the claims at issue in this case.  SAA ¶ 104.  The Kennedy Patent was listed a reference that was considered by the examiner during the proceedings, Brown Decl., Ex. 5, however, as alleged, it was never specifically discussed by the Patent Office during the '004 Reexamination.

## IV.   ARGUMENT

The crux of Defendants' argument is that Eagle View's patent prosecutors somehow learned of, and then intentionally withheld, a piece of information contained within the file history of one of the over 200 references considered by the Patent Office.  This is a substantial accusation, as it seeks to discredit the integrity of the members of the bar who prosecuted the '436 Patent.

Despite the enormity of the accusation, however, Defendants have failed to present facts necessary to support their claim.  In particular, Defendants have failed to credibly establish the knowledge or intent elements as required by the Federal Circuit.  Defendants have made no allegation of facts sufficient to show that: 1) Eagle View's patent prosecutors ever knew that the Kennedy Application's examiner had made any conclusions regarding the priority of the '436 Patent during

the third-party prosecution of the Kennedy Application; or that 2) Eagle View's patent prosecutors intentionally withheld that information from the patent office.

Defendants' counterclaim and affirmative defense, then, are squarely the type of pleadings that *Therasense* and its progeny sought to exclude; accordingly, they should be dismissed with prejudice.

### A. DEFENDANTS DO NOT ALLEGE A FACTUAL BASIS THAT EAGLE VIEW'S PATENT PROSECUTORS HAD KNOWLEDGE OF DETAILS CONTAINED WITHIN KENNEDY'S FILE HISTORY

During prosecution of the third-party Kennedy Patent, Sungevity was confronted with the Eagle View '436 patent as prior art. Sungevity sought to circumvent the Eagle View prior art by arguing that the Eagle View '436 Patent was not entitled to its provisional priority date. This was an *ex parte* proceeding, in which neither Eagle View nor its counsel were involved. The examiner overseeing the Kennedy application allegedly agreed with Sungevity's argument, and allowed the Kennedy Patent to issue over the Eagle View '436 Patent. Defendants' entire inequitable conduct claim is premised on this exchange between the examiner of the Kennedy Application and Sungevity, a third party. To allow this claim to continue, Defendants must set forth credible, substantial evidence that Eagle View's attorneys knew about this exchange and intentionally withheld it from the Patent Office. They have not.

14

Defendants make no allegation that the Patent Office, Sungevity, or any other party ever informed Eagle View's prosecution counsel about the details of the Kennedy Application and the statements made therein.  Nor have Defendants made any allegations that Eagle View's prosecution counsel was in possession of, reviewed, or were even aware of the substance of the Kennedy prosecution history. Defendants never offer the "identification of the specific who, what, when, where, and how of the material misrepresentation," as required by the Federal Circuit. *Exergen*, 575 F.3d at 1326–27.  Instead, Defendants merely make a conclusory allegation that Eagle View and its counsel **knew about the Kennedy _Patent_**, SAA ¶ 93 ("Eagle View and its counsel knew of the Kennedy Patent . . . during the pendency of the '004 Reexamination.") (emphasis added),[5] rather than the contents of the underlying prosecution.

This is a legally insufficient allegation to establish the knowledge requirement of Defendants' fraud claim.  The Kennedy Patent itself does not contain any discussion of the Eagle View '436 Patent and it does not contain the details of the underlying prosecution or the Kennedy Application examiner's December 12, 2012

---

[5]   Moreover, Defendants' claim that "Eagle View" as an entity committed inequitable conduct is not allowed under the law.  Defendants may only identify individuals who allegedly withheld material information from the PTO. *See Exergen*, 575 F.3d at 1329 (requiring inequitable-conduct claimant to "name the specific individual associated with the filing or prosecution of the application"); MPEP § 2001.01 (9th ed., Nov. 2015) (duty to disclose information material to patentability only applies to individuals and not general entities).

statements.  Nor does the Kennedy Patent make any mention of challenging the priority date of the Eagle View provisional application.  Indeed, even Defendants' own counsel acknowledged at a recent hearing that it was exceedingly difficult to understand how the Kennedy Patent pertained to the '436 Patent, specifically with regard to the priority issue raised during prosecution.  Specifically, Defendants sought leave to add the Kennedy Patent as a prior art assertion in their invalidity contentions.  There was no question that Defendants had known about the Kennedy Patent since this litigation was filed, since it is listed on the face of the '436 Patent.  But it took Defendants *an entire year* of defending this case and studying the prior art at issue to assert that Kennedy was prior art to the '436 Patent.  Pressed by the Court to explain this delay, Defendants insisted that they could not figure out the relevance of the Kennedy Patent to the '436 Patent until they "dug deeper into the file history of the patent" and conducted "significant analysis" over a 12-month period:

> And it didn't immediately become apparent that the priority issue was germane until *we dug deeper into the file history of the [Kennedy] patent* and fully appreciated why the priority, as set forth in the [Kennedy] patent, is invalidating with regard to the '436 patent... so the short answer, Judge, is that it was not, like some other patents, immediately apparent from its face that it was invalidating prior art, *but required some significant analysis before we would be able to determine the relevance and probity of it.*

May 1, 2017 Hearing Tr. at 12:10–20 (emphasis added).  In other words, even though Defendants' counsel had the Kennedy Patent and were actively trying to invalidate

16

the '436 Patent, the Kennedy Patent itself was insufficient to put a reasonably diligent attorney on notice of the underlying file history.  That is precisely why merely alleging that Eagle View's counsel knew about the Kennedy Patent is wholly insufficient to establish that those lawyers knew about the underlying file history, where the supposedly material information pertaining to the priority of the '436 patent was buried.  Defendants themselves acknowledge that it is "not immediately apparent from its face that [the Kennedy Patent] was invalidating prior art" but that "significant analysis" would be required to determine the alleged "relevance and probity" of the Kennedy reference.  *Id.*  Thus, any inference that merely knowing about the Kennedy Patent is the same as knowing about its file history falls apart in light of Defendants' own apparent yearlong struggle to understand that connection.

Defendants even admit in their pleading that the Kennedy Patent itself does not inform anybody about the allegedly material fact they base their counterclaim on.  Instead, Defendants argue that one must review the lengthy prosecution history of that patent in order to learn the alleged significance of the patent:

> The significance of the Kennedy Patent in repudiating a claim of priority by the '436 Patent to the April 17, 2007 filing date of the '072 Provisional Application is demonstrated by the prosecution history of the Kennedy Patent . . . .

SAA ¶ 108.  Defendants' admission is critical, and amounts to pleading themselves out of their own counterclaim: Defendants do not and cannot allege that Eagle View's prosecutors ever reviewed this Kennedy Patent prosecution history, let alone

17

the particular page containing the examiner statements Defendants now claim as their supposedly material information.  Such an allegation requires the inference that Eagle View's patent prosecution counsel was on notice of thousands and thousands of pages of file histories and backgrounds of over 200 references considered during prosecution of the '436 Patent.  There is no basis for such an allegation, nor do Defendants even make it.

Thus, missing from Defendants' allegations are sufficient facts to infer that Eagle View's patent prosecutors *were actually aware* that the priority of the Eagle View '436 Patent was challenged during prosecution of the Kennedy Patent—particularly since neither of them had any involvement in the prosecution of the Kennedy Patent.  Binding precedent confirms that Defendants' allegations concerning knowledge of the Kennedy Patent are insufficient to establish that Eagle View's patent prosecutors were aware of the importance of it or of the contents of the underlying prosecution of that patent.  "[O]ne cannot assume that an individual, who generally knew that a reference existed, also knew of the specific material *information* contained in that reference."  *Exergen*, 575 F.3d at 1330; *see also Graphic Packaging Int'l, Inc. v. C.W. Zumbiel Co.*, No. 10-891-J-37JBT, 2011 WL 4862498, at *3 (M.D. Fla. Sept. 12, 2011) (recognizing that even if defendant's "allegations suggest that [the patent attorneys] were aware" of the prior art references at issue, "[t]hat is not enough . . . . It is not knowledge of a reference but

18

rather *knowledge of the material information in the reference* that must be averred.")
(original emphasis).  Defendants simply cannot rely on a chain of inferences to
support the knowledge prong of their inequitable conduct claim when, as here, there
is no evidence that the supposedly material information was known to Eagle View's
prosecution attorneys.  *See, e.g.*, *Abaxis, Inc. v. Cepheid*, No. 10-CV-02840-LHK,
2011 WL 3741501, at *5 (N.D. Cal. Aug. 25, 2011) (dismissing inequitable conduct
claim premised on a "tenuous" "chain of inference" where the patent prosecutor was
aware of a prior art reference but Defendants "allegations as a whole fail to support
the reasonable inference that [patent prosecutor] knew that specific information in
the [prior art reference] was but-for material to the patents-in-suit").

Without a particularized factual basis to support the requisite knowledge of
material information allegedly withheld, Defendants' counterclaim for inequitable
conduct fails to state a claim upon which relief may be granted under Rules 12(b)(6)
and 9(b).  Similarly, for the same reasons Defendants' counterclaim for inequitable
conduct should be dismissed under Rule 12(b)(6), its affirmative defense based on
inequitable conduct should be stricken under Rule 12(f).  *Teva Neuroscience*, 2011
WL 741250, at *1.

## B. DEFENDANTS DO NOT ALLEGE A FACTUAL BASIS THAT EAGLE VIEW'S PATENT PROSECUTORS HAD THE

## SPECIFIC INTENT TO WITHHOLD MATERIAL INFORMATION

Defendants' allegations on specific intent to withhold material information from the Patent Office are similarly inadequate. Defendants admit to having no information regarding the intentions of Eagle View's patent prosecutors, a fatal gap in Defendants' pleading. Instead, Defendants' allegations are premised "[o]n information and belief" and an "inescapable inference" rather than specific factual allegations. SAA ¶¶ 106, 112, 113. As a matter of law, Defendants' allegations based on "information and belief" are insufficient to plead inequitable conduct under Rule 9(b). *See Audionics Sys., Inc. v. AAMP of Florida, Inc.*, No. 12-cv-10763 MMM (JEMx), 2013 WL 12129652, at *7 (C.D. Cal. Nov. 19, 2013) ("As a threshold matter, Crux's assertion 'on information and belief' that AAMP's failure to disclose the Soundgate products was specifically intended to deceive the PTO *is insufficient to give rise to an inference of deceptive intent*.") (emphasis added).

For example, Defendants assert that "[o]n information and belief, Eagle View acted with intent to deceive the Patent Office, as evidenced by the record of the '004 Reexamination, which demonstrates that Eagle View, Mr. Carlson, and Mr. Baunach knew of the Kennedy Patent." *Id.* ¶ 106; *see also id.* ¶112 (deceptive intent "is the inescapable inference from their knowledge of the Kennedy Patent and their failure to disclose the prior repudiation by the [Patent Office] of the April 17, 2007 priority claim of the '436 Patent.") But as explained above, knowledge of the

Kennedy *Patent* is insufficient to establish knowledge of the Kennedy *prosecution*. Without knowledge of the latter, there can be no intent to withhold it, such that there is no basis for the "belief" or "inescapable inference" urged by Defendants.

Indeed, Courts routinely dismiss inequitable conduct claims as insufficient pleadings even when they have far more allegations of intent and knowledge than Defendants have alleged here.  For example, in *ESCO Corporation v. Cashman Equipment Company*, the defendants alleged that the plaintiff's in-house patent attorney committed inequitable conduct by failing to disclose a material prior art reference, specifically a prior art reference he allegedly knew about because ***he himself had previously prosecuted it***. 158 F. Supp. 3d 1051, 1060–62 (D. Nev. 2016).  Despite this alleged knowledge and actual experience with the highly material reference withheld, the court determined that the defendants failed to adequately plead the intent to deceive element of inequitable conduct, noting that inequitable conduct "allegations must plausibly support the inference that the individual made a 'deliberate decision to withhold a known material reference'" and that "an intent to deceive ***cannot be inferred solely based upon the failure to disclose known information, even if highly material***." *See id.* at 1061–62 (citing *Exergen*, 5775 F.3d at 1327) (citing *Therasense*, 649 F.3d at 1290) (emphasis added).  Because the defendants "offer[ed] no other facts from which the Court could reasonably infer the plausibility of their conclusory statement that [the plaintiff's

21

patent attorney] 'intentionally' failed to disclose the [prior art reference that he previously prosecuted] during the prosecution of the '621 patent," the court dismissed the defendants' inequitable conduct claim with respect to the '621 patent. *Id.* at 1062.

Additionally, in *Taro Pharmaceuticals North America Inc. v. Suven Life Sciences, Ltd.*, a District of New Jersey court rejected the defendant's inequitable conduct claim for failure to plead facts permitting a reasonable inference that the patent applicants had the requisite intent to mislead the Patent Office. 2012 WL 2513523, at *6. The defendant's allegations of specific intent to deceive were premised on the applicants presenting data in the patent specification that "were allegedly at odds" with what was disclosed in product specifications. *Id*. The Court found that the product specifications were in fact disclosed during prosecution and that the "examiner had all of the relevant materials before him, expressly considered them, and the office granted the patent." *Id*. The court therefore determined that the defendant's allegations were insufficient to infer that "the applicants had the requisite intent to deceive the Patent Office." *Id*. As here, the patent office had all necessary information in front of them already, and was just as capable as Eagle View's patent prosecutors to locate the allegedly critical detail within the Kennedy prosecution.

22

Here, Defendants have offered far less than those cases that resulted in dismissals.  Instead of alleging any actual facts regarding intent, Defendants' allegation in paragraph 106 alleges the intent of two different people based solely on "information and belief."  This is insufficient to plead intent under Rule 9(b). *See Audionics*, 2013 WL 12129652, at *7 ("As a threshold matter, Crux's assertion 'on information and belief' that AAMP's failure to disclose the Soundgate products was specifically intended to deceive the PTO *is insufficient to give rise to an inference of deceptive intent*.") (emphasis added).

Likewise, paragraph 113, the only other reference to the supposed intent of Messrs. Carlson and Braunuch, fares no better.  There, Defendants assert that deceptive intent is "the inescapable inference because Mr. Carlson and Mr. Baunach maintained the previously rejected 2007 priority date even after the Patent Office determined that  the '072 Provisional  Application did not support the '436 Patent claims and issued the Kennedy Patent, and even after the Patent Office brought the Kennedy Patent to their attention in the '004 Reexamination of the '436 Patent." SAA ¶ 113.  This assertion fails as well.  Defendants assert that Mr. Carlson and Mr. Baunach "maintained" the April 17, 2007 priority date, apparently recognizing that when those attorneys filed the '004 Reexamination in October 2012, there had been no finding by the Patent Office with regard to the priority date of the '436 Patent.  There is no allegation about when Mr. Carlson allegedly became aware

23

of the examiner's statement in the Kennedy Patent prosecution that was made months later, and for which there exists no evidence that it was never conveyed to him.  There is no allegation about how this occurred.  And there is no allegation about how and when Mr. Baunach even came to learn this information.  Defendants' pleading never answers those required questions, *Exergen*, 575 F.3d at 1326–27 ("Rule 9(b) requires identification of the specific who, what, when, where, and how of the material . . . omission committed"), because Defendants provide no factual allegations of any intentional withholding by either of these two attorneys.  This failure is fatal to Defendants' pleadings.  *See Mycone*, 2013 WL 3216145, at *8 ("CND must plead specific intent to deceive with factual particularity . . . ."); *Bayer Cropscience*, 2012 WL 1253047, at *4 n.5 (finding an alleged breach of a duty to disclose material information did not create a reasonable inference that an individual deliberately intended to deceive the Patent Office).  At bottom, Defendants have failed to provide any facts that demonstrate a *specific intent* to deceive the Patent Office by withholding material information.  *See, e.g.*, *Therasense*, 649 F.3d at 1290 ("Proving that the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the [Patent Office] ***does not prove specific intent to deceive***.") (emphasis added); *Exergen*, 575 F.3d at 1331 ("SAAT's pleading does not contain specific factual allegations to show that the individual who had previously cited the '998 patent knew of the specific information that is alleged

24

to be material to the '685 patent and then decided to deliberately withhold it from the relevant examiner.").

Defendants have simply not met their pleading burden of factual particularity because they cannot, and this error is fatal to their allegations.  Defendants should not be able to bring a fraud allegation without meeting the stringent requirements for doing so.  *Warner Chilcott*, 2013 WL 6627694, at *9 ("Considering the draconian nature of an inequitable conduct claim," Rule 9(b)'s pleading standards require that the allegations not be silent on the relation between knowing about a reference and the specific intent to hide it from the Patent Office.).

1.      **Eagle View's Patent Prosecutors' Disclosure Of The Kennedy Patent Provides An Objective Indication Of Candor And Good Faith**

Any inference drawn in Defendants' complaint must be "'one that is plausible and that flows logically from the facts alleged, ***including any objective indications of candor and good faith***.'" *Mycone*, 2013 WL 3216145, at *5 (quoting *Exergen*, 575 F.3d at 1329 n.5) (emphasis added).  Defendants' allegations of inequitable conduct not only fail to demonstrate an intent to deceive the Patent Office, but are also contradicted by the undisputed fact that Eagle View *disclosed* the Kennedy Patent during the '004 Reexamination—a clear objective indication of candor and

good faith.  *See id.* at *7 (disclosure of prior art at issue during prosecution "is not compatible with intent to deceive").

As discussed above, the Patent Office found the Kennedy Patent by way of a litigation search.  Eagle View's counsel thereafter disclosed that reference (and more than 200 others) in an Information Disclosure Statement, to ensure that it was considered by the Patent Office during the '004 Reexamination.   The only reasonable inference to draw from this conduct is that Messrs. Carlson and Braunach wanted to put everything to the Patent Office for consideration and did so in good faith.

Indeed, according to Defendants, "[e]ven a cursory review of claims 1-2 of the Kennedy Patent demonstrates that the claims are substantially identical to claims 1 and 2 of the '436 Patent," (SAA ¶ 107), and "[t]he issuance of the near identical claims in the Kennedy Patent demonstrates that the Patent Office considered the Kennedy Patent to predate the '436 Patent, since the Kennedy Patent could not otherwise obtain the same claims."  *Id.* ¶ 108.  According to Defendants then, the Patent Office need only have undertaken a "cursory review" the Kennedy Patent to uncover the priority date issue.  If this is true, then Eagle View's submission of Kennedy to the PTO was not an effort to conceal Kennedy, but precisely the opposite. *See Audionics Sys.*, 2013 WL 12129652, at *8 ("[I]f it intended to deceive the [Patent Office] by concealing the Soundgate products during prosecution of the

26

'952 and '540 patents, it would be 'undeniably poor strategy' to disclose those very products to the [Patent Office] in its later prosecution of the related '825 patent."). If Defendants' theory of disclosure is to be credited, then Eagle View's submission of the Kennedy Patent would actually demonstrate good faith and candor because Eagle View unquestionably put the Kennedy Patent (and, by Defendants' chain of inferences, the Kennedy Prosecution Statement) squarely in front of the Patent Office for its review.

## V.        CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court dismiss Defendants' counterclaim for inequitable conduct under Federal Rule of Civil Procedure 12(b)(6) and 12(f).

Dated:  June 5, 2016        WALSH PIZZI O'REILLY FALANGA LLP

        *s/Liza M. Walsh*

        Liza M. Walsh
        Hector D. Ruiz
        Eleonore Ofosu-Antwi
        WALSH PIZZI O'REILLY FALANGA LLP
        One Riverfront Plaza
        1037 Raymond Boulevard, Suite 600
        Newark, New Jersey 07102
        (973) 757-1100

**OF COUNSEL** (admitted *pro hac vice*):

Adam R. Alper        Michael W. De Vries
Brandon Brown        KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS LLP        333 South Hope Street
555 California Street        Los Angeles, CA 90071
San Francisco, CA 94104        (213) 680-8400
(415) 439-1400

Gianni Cutri        Jared Barcenas
KIRKLAND & ELLIS LLP        KIRKLAND & ELLIS LLP
300 North LaSalle        601 Lexington Ave.
Chicago, IL 60654        New York, NY 10022
(312) 862-2000        (212) 446-4800

*Attorneys for Plaintiffs*