```
                        UNITED STATES DISTRICT COURT
                          DISTRICT OF NEW JERSEY


EAGLE VIEW TECHNOLOGIES,        )    15-CV-7025
INC, et al,                     )
                                )
              Plaintiffs,        )
                                )
        vs.                      )
                                )
XACTWARE SOLUTIONS, INC, et al, )    Camden, NJ
                                )    October 5, 2017
              Defendants.        )    2:03 p.m.



                     TRANSCRIPT OF ORAL ARGUMENT
                BEFORE THE HONORABLE JOEL SCHNEIDER
                   UNITED STATES MAGISTRATE JUDGE


APPEARANCES:


For the Plaintiffs:        HECTOR D. RUIZ, ESQUIRE
                           ELEONORE OFOSU-ANTWI, ESQUIRE
                           WALSH PIZZI O'REILLY FALANGA, LLP
                           One Riverfront Plaza
                           1037 Raymond Boulevard
                           6th Floor
                           Newark, NJ  07102

                           ADAM R. ALPER, ESQUIRE
                           BRANDON H. BROWN, ESQUIRE
                           KIRKLAND & ELLIS, LLP
                           555 California Street
                           San Francisco, CA  94104

                           GIANNI CUTRI, ESQUIRE
                           KIRKLAND & ELLIS, LLP
                           300 North LaSalle
                           Chicago, IL  60654

                           MICHAEL W. DE VRIES, ESQUIRE
                           KIRKLAND & ELLIS, LLP
                           333 South Hope Street
                           Los Angeles, CA  90071
```

2

```
For the Defendants:        SCOTT S. CHRISTIE, ESQUIRE
                           MCCARTER & ENGLISH
                           Four Gateway Center
                           100 Mulberry Street
                           Newark, NJ  07102


                           LEE C. BROMBERG, ESQUIRE
                           BRIAN J. LARIVEE, ESQUIRE
                           MCCARTER & ENGLISH
                           265 Franklin Street
                           Boston, MA  02110



Audio Operator:            SARAH ECKERT




                           Transcribed by: DIANA DOMAN
                           TRANSCRIBING, LLC
                           P.O. Box 129
                           Gibbsboro, New Jersey  08026
                           Office:  (856) 435-7172
                           Fax:     (856) 435-7124
                           Email:   dianadoman@comcast.net



Proceedings recorded by electronic sound recording, transcript
produced by transcription service.
```

I N D E X

COLLOQUY:                                                    PAGE

Ref: Recitation of issues to discuss by the Court

  By Judge Schneider                                          6

Ref: Preliminary thoughts by the Court

  By Judge Schneider                                          7

Ref: Doctrine of equivalents

  By Mr. Christie                                         17, 31

  By Mr. Cutri                                               20

Ref: Theories pursuant to 35 USC, Section 271(f), (g)

  By Mr. Christie                                            35

  By Mr. Cutri                                               40

Ref: Ground point theory as to 436 patent  and the

    aero-triangulation theory as to 436 & 153 patents

  By Mr. Christie                                         42, 52

  By Mr. Cutri                                               45

  By Mr. Ruiz                                                52

Ref: Source code

  By Mr. Christie                                            55

  By Mr. Cutri                                               57

Ref: Priority date

  By Mr. Christie                                         65, 85

  By Mr. Alper                                               78

4

 1                        I N D E X  Continued

 2

 3     RULING BY THE COURT:                                    PAGE

 4     Ref: Amendment versus supplementation

 5        By Judge Schneider                                     17

 6

 7

 8

 9     *Speaker identification was not stated as new speakers spoke

10     up

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Colloquy                                        5

1            (The following was heard in open Court at 2:03 p.m.)

2            THE COURT:  Good afternoon, everybody.  Please be

3    seated.

4            ALL COUNSEL:  Good afternoon, Your Honor.

5            THE COURT:  A lot of blue suits in this room.  We're

6    on the record in Eagle View Technologies vs. Xactware

7    Solutions, et al, Docket Number 15-7025.  Let's start with the

8    entries of appearance for the plaintiff.

9            MR. RUIZ:  Sure.  Good afternoon, Your Honor, Hector

10   Ruiz from the law firm of Walsh, Pizzi, O'Reilly, Falanga, for

11   plaintiff and I have my colleague Eleonore Ofosu-Antwi of the

12   same law firm, and I have my colleagues from Kirkland & Ellis,

13   Brandon Brown, Gianni Cutri, and Adam Alper.

14           MR. ALPER:  Good afternoon, Your Honor.

15           THE COURT:  Welcome.  Somebody back there?

16           MR. DE VRIES:  And I'm Mike De Vries, also from the

17   law firm of Kirkland & Ellis, Your Honor.

18           THE COURT:  Welcome.

19           MR. CHRISTIE:  Good afternoon, Your Honor, from the

20   law firm of Scott -- I'm sorry, of McCarter & English, Scott

21   Christie with my partner Lee Bromberg and my colleague Brian

22   Larivee.  We represent the Defendants Verisk and Xactware.

23           THE COURT:  So we're here for oral argument on

24   defendant's motion to strike and plaintiff's cross-motion to

25   amend.  Counsel, just so you know, I'm going to reserve

1    decision today but you should receive the Court's ruling

2    promptly.  There's a lot to cover today and this is how I'd

3    like to proceed.

4           I just have some general background questions that

5    won't take too long, and then as I see it, I think that

6    defendants did a good job identifying the seven discreet

7    issues that we have to decide, and what I'd like to do is deal

8    with one issue at a time.  We'll hear from the defendant,

9    we'll hear from the plaintiff, and then we'll move on to the

10   next issue.

11          To make sure we're on the same page, these are the

12   seven issues that I have, counsel:  the doctrine of

13   equivalents, 35 USC 271(f) and (g); the ground point theory

14   and the 436 patent; infringement contentions; the area of

15   triangulation language in the 436 patent; the area of

16   triangulation language particularly for "receiving an

17   indication of a feature," and "modifying a three-dimensional

18   model limitation."

19          The sixth issue is the source code issues where

20   defendants want to strike Bates numbers higher than XWSC648;

21   and the last issue is the priority and invention dates not in

22   the 12/15 infringement contentions.  Related to that is the

23   issue of whether plaintiffs can assert one or more priority

24   dates.

25          Now, I'm happy to address any issue you want, but as

1    I read the papers, those were the issues that I identified.

2    Are there any issues, counsel, that you can think of at this

3    moment that the Court missed?

4              MR. RUIZ:  No, Your Honor, that list sounds complete

5    to us.

6              MR. CHRISTIE:  Likewise from defendants, Judge.  But

7    for the sake of ease of argument, I think your items three

8    through five, the ground point issue and the two aero-

9    triangulation issues sort of collapse into one.

10             THE COURT:  I don't disagree.

11             MR. CHRISTIE:  Okay.  So I just wanted to provide

12   that bit of guidance.

13             THE COURT:  I don't -- I studied the papers, I spent

14   a lot of time on this and I really want to get to the crux of

15   this.  I don't want you to waste your time, so I just want to

16   give you some preliminary thoughts.

17             To the extent that the plaintiffs argue or will

18   argue that the Court gave them carte blanche to make any

19   supplement or amendment that they wanted to, they're wrong.

20   The Court disagrees with that notion and that wasn't what the

21   Court ordered.

22             The Court gave plaintiffs leave to supplement their

23   invalidity contentions.  The Court did not grant plaintiffs

24   leave to amend their contentions at their whim.  The Court did

25   not dispense that the requirement in the local rule that in

1    order to amend a contention you have to show good cause -- we

2    know what the elements of good cause are, diligence/prejudice,

3    and that's how the Court sees it.

4           So as the Court sees it, the way its analysis has to

5    proceed when it decides this -- these issues is one, it has to

6    decide whether or not plaintiff's additions are supplements or

7    amendments.

8           If the Court decides that plaintiff is merely

9    supplementing its contentions, defendant's motion is going to

10   be denied.  If the Court decides that plaintiffs are seeking

11   to amend their contentions, the Court then has to determine if

12   there's good cause to amend the contentions.

13          If the Court finds that there is good cause,

14   plaintiff's cross-motion to amend is going to be granted, and

15   if the Court finds that plaintiffs did not establish good

16   cause to amend, defendant's motion to strike is going to be

17   granted and plaintiff's cross-motion is going to be denied.

18          I hope that this exercise that we're about to

19   undertake is a lesson to plaintiff about the mischief that

20   occurs when a party does not comply with the Local Rules of

21   Civil Procedure.

22          When the Court granted defendant's motion to compel

23   on May 1 with the order on May 2nd, the Court found that

24   plaintiff's disclosures were deficient and either explicitly

25   or implicitly, plaintiffs acknowledged that fact in my view as

1    evidenced by the fact that they included more fulsome

2    explanations in their briefs that they didn't include in their

3    contentions, which evidence that they did not disclose all the

4    information in their possession.

5           And as a result of that, we now have to deal with

6    these briefs, we now have to deal with these motions and there

7    could be significant consequences for the client and all this

8    could have been avoided if the plaintiffs had done what the

9    local rules require at the outset, full and complete and

10   fulsome infringement contentions.

11          The boilerplate couldn't be clearer,  you have to

12   crystalize your theories.  There is no shifting sands case

13   after case after case after case -- it says the same thing,

14   and this is a perfect example why the rules are set up as they

15   are, so we don't have to go through complex motions like this

16   to deal with issues which in the Court's view were completely

17   unnecessary.

18          I'm not saying the plaintiff's motion is going to be

19   granted or denied or the same for the defendant.  I'm just

20   saying that the reason we're here is because in the first

21   instance plaintiffs didn't do what they were supposed to do

22   and in the Court's view, there's no mistake about that, okay?

23          So what I'd like to do is just start with some very

24   basic questions.  Am I correct that the Markman hearing in the

25   case is October 12th, 2017?

1          MR. CHRISTIE:  Yes, Judge.  Scott Christie speaking,

2     that is correct.

3          THE COURT:  Am I correct that no depositions have

4     been taken in the case yet?

5          MR. CHRISTIE:  No, Judge, that is incorrect.  As of

6     today, three fact witness depositions have been taken.  We've

7     taken two depositions of their fact witnesses and they --

8          MR. RUIZ:  Yes, Judge.

9          MR. CHRISTIE:  -- they took a deposition of

10    Xactware's president.

11         THE COURT:  Could you refresh the Court's

12    recollection about what the current fact discovery deadline in

13    the case is?

14         MR. CHRISTIE:  Yes.  Currently, Judge, the fact

15    discovery deadline is the 28th of December, at the end of the

16    calender year.

17         THE COURT:  Last question.  One of the themes

18    throughout defendant's briefs is that when they received

19    plaintiff's contentions -- might as well talk about the

20    December, '15 amended contentions, that maybe it was after

21    that, I don't know, that they regularly pointed out to

22    plaintiffs the deficiencies in their contentions -- this is

23    what defendant says, I'm not saying it's true or not -- the

24    defendants regularly pointed out the deficiencies in the

25    contentions and that plaintiff's retort was that their

1    contentions were sufficient and in compliance with the rules

2    and then eventually you got to the position where they would

3    agree to supplement but only -- they had to take the

4    deposition first.

5            MR. CHRISTIE:  Essentially that's correct, Judge.

6            THE COURT:  Okay.  Can you tell me when it was that

7    defendants started alerting, pointing out to plaintiffs about

8    the deficiencies in their contentions?

9            MR. CHRISTIE:  Judge, I will check to see but I

10   believe that it was no later than the spring of 2016 that we

11   started to do it in earnest.  But there were of course before

12   then oral discussions and a few letters of that vein, but it's

13   been at least a year.

14           THE COURT:  And in your view -- and if the

15   plaintiffs disagree they can tell me, that even up until when

16   we argued your motion on May 1st, 2017 they were taking the

17   position that contentions were sufficient and we'll agree to

18   supplement, but we'll only do it after we take the deposition.

19           MR. CHRISTIE:  That was their position, Judge,

20   yes --

21           THE COURT:  Okay.

22           MR. CHRISTIE:  -- up until that point in time.

23           THE COURT:  Plaintiffs, anything to add?  Do you

24   want to add anything to the record?

25           MR. CUTRI:  Your Honor, Gianni Cutri for the

1    plaintiff, we would disagree that our position was that we

2    were unwilling to supplement.  Up through May 1st, as Your

3    Honor may recall, I think our position is we wanted to

4    supplement and during the hearing we made that -- we made

5    that --

6              THE COURT:  You wanted to supplement but only after

7    you took a deposition.

8              MR. CUTRI:  We believed at that time that a

9    deposition was appropriate because we had --

10             THE COURT:  That was your position --

11             MR. CUTRI:  That --

12             THE COURT:  -- your position was you would not

13   supplement until you took that deposition.

14             MR. CUTRI:  That's essentially correct, yes, Your

15   Honor.

16             THE COURT:  Okay.

17             MR. CUTRI:  And I would add that there was an

18   allowed supplement -- an allowed amendment in light of

19   information that was disclosed late by the defendants with

20   respect to the mass production tool.

21             We came to Your Honor, we proposed our supplemental

22   infringement contentions to Your Honor in the fall of 2016.

23   And when we proposed those, the defendants did not raise the

24   sufficiency issue with us in that context -- sufficiency of

25   the disclosures.

1        Instead it was just a matter of timing.  They just

2    said the timing was incorrect and so I would add that I -- in

3    October of 2016 -- it wasn't until after October, 2016 I think

4    it's fair to say we raised the issue of what they thought were

5    deficient contentions and so we would -- we would put the

6    timing a little bit differently.

7        And then it was January, 2017 when we brought that

8    issue to Your Honor, the dispute that we had, their request

9    for supplementation and our request for a deposition in

10   advance of supplementation.

11       THE COURT:  Well, you said, defendant, that you

12   started to raise the deficiencies in the spring of 2016 --

13       MR. CHRISTIE:  Correct.

14       THE COURT:  -- and if I understood plaintiffs,

15   they're moving that date back to October of 2016.

16       MR. CHRISTIE:  That's what I heard, Judge.

17       THE COURT:  Do you agree?

18       MR. CHRISTIE:  I do not agree.  I don't know that we

19   can put our hand on it right now, but if Your Honor wishes a

20   supplemental submission to the Court on that issue, we can

21   certainly do that in short order.

22       THE COURT:  But now I take it that would be in the

23   record of the motion to compel, wouldn't it -- those letters

24   going back and forth?

25       MR. CHRISTIE:  Good point, Judge.  It may.  It may.

Colloquy                                    14

1    We'd have to check and we could advise the Court

2    appropriately.

3              MR. CUTRI:  Your Honor, if I can clarify on that

4    point, I think it's correct that they raised this issue on our

5    prior contentions in -- in the April, May time frame of 2016.

6    What I was pointing out is that we had another set of

7    contentions that we sent to them, proposed to them in the

8    fall, and at that point they did not raise -- to my

9    recollection sitting here today I don't think they raised

10   insufficiency at that time.

11             It was after that, those infringement contentions --

12   amended infringement contentions were allowed that they then

13   said oh, now we think that these are not sufficient --

14             THE COURT:  Was there a court order?

15             MR. CUTRI:  I believe that was by court order with

16   respect to the mass production tool.  Yes, it was, it was.

17             THE COURT:  Oh, I granted plaintiff's motion to

18   amend infringement contentions on October 28th --

19             MR. CUTRI:  I believe that's -- that's what I'm

20   referring to.

21             THE COURT:  -- and they were served on November 4.

22             MR. CUTRI:  That's right.

23             THE COURT:  And then after November 4 you still

24   deemed plaintiff's contentions to be inadequate?

25             MR. CHRISTIE:  Correct, Judge.  Part of your ordered

1    supplementation was plaintiffs wanted to add something called

2    the mass production tool as a separate accused product.

3              THE COURT:  Right.

4              MR. CHRISTIE:  We disagreed.  We advised the Court

5    that it was part of one of the already accused products, Your

6    Honor let them do it, that's fine.  But by virtue of them

7    amending their contentions as part of the Court's order, it

8    didn't change the original deficiencies to the prior version

9    of the contentions, so it's not as if it was night and day,

10   two different sets of contentions.

11             The earlier one we had an issue with and the latter

12   one we did not have an issue with.  It was a continuing

13   problem that Your Honor's allowance of amendment did not cure.

14             THE COURT:  Are you saying that some of the same

15   complaints you had in April, 2016 still existed after the

16   November, 2016 amendments?

17             MR. CHRISTIE:  Exactly, Judge.  That's correct.

18             THE COURT:  All right.

19             MR. CHRISTIE:  In fact, all of them continued to

20   persist.

21             THE COURT:  All right.  The first issue we're going

22   to deal with is the doctrine of equivalents, and since it's

23   defendant's motion we'll hear from you first.  I just have a

24   question or two.

25             MR. CHRISTIE:  Yes, Judge, is it permissible if I

Colloquy                                      16

1    address the Court from counsel table?

2              THE COURT:  That's perfectly fine.

3              MR. CHRISTIE:  Great.

4              THE COURT:  So with regard to this theory, I want to

5    be clear, are we only talking about claim 1 in the 436 patent

6    and claim 2 in the 840 patent?

7              MR. CHRISTIE:  I believe that's correct, Judge.

8         (Pause in proceedings)

9              MR. CHRISTIE:  Correct, Judge, it's -- you know, to

10   the extent that they've asserted doctrine of equivalents

11   arguments at all, and we will check but we believe that Your

12   Honor's recollection is correct as to the scope of claims that

13   are affected by this new theory.

14             THE COURT:  Are there any other claims that they're

15   asserting the DOE theory --

16             MR. CHRISTIE:  No.

17             THE COURT:  -- as to except these two claims?

18             MR. CHRISTIE:  That's it, just those two claims,

19   Judge, correct.

20             THE COURT:  Plaintiff, do you have any disagreement

21   with defendant's argument that there was no details or

22   explanation given as to your DOE theory until you served the

23   June 6th, 2017 second supplement amended contentions?

24             MR. CUTRI:  No, Your Honor, we --

25             THE COURT:  You don't --

1          MR. CUTRI:  -- don't agree with that.

2          THE COURT:  -- agree with that?

3          MR. CUTRI:  I apologize.  I was -- I was agreeing

4    with -- our detail was not disclosed -- the detail around the

5    DOE theory was disclosed on June 6th --

6          THE COURT:  Okay.

7          MR. CUTRI:  -- 2017.

8          THE COURT:  I think we can agree on that.  There was

9    the revelation in the footnote and there was the other

10   statement --

11         MR. CUTRI:  That's correct.

12         THE COURT:  -- that provided no detail.  Okay.  So

13   it's the Court's position I'm finding and I'm ruling that

14   plaintiffs are seeking to amend their invalidity contentions

15   to assert this DOE theory.

16         It's not a supplement.  There's no reservations in

17   the local rules and they're really effectively starting from

18   scratch so it's an amendment in the Court's view.

19         So what we have to focus on now is whether there's

20   good cause to make this amendment so bear with me.  Is it your

21   position, defendants, that as to this DOE theory the plaintiff

22   could have and should have asserted it with their December,

23   '15 invalidity contentions?

24         MR. CHRISTIE:  Yes, Judge.  As called for by the

25   local rules.

1          THE COURT:  All right.  And I think they're taking

2    the position that in April, 2016 the defendants proposed a

3    construction that required a single software model, is that

4    your understanding?

5          MR. CHRISTIE:  That is our understanding, Judge.

6    There were some claim terms that we had thought at that time

7    required construction, including what you are referencing and

8    what you've seen in the briefs dealing with memory, dealing

9    with roof estimation module stored on the memory.

10         THE COURT:  So we're going to hear from the

11   plaintiffs, but how do you respond to plaintiff's argument

12   that it wasn't until you proposed that construction and they

13   had knowledge of that construction that they should have

14   asserted the DOE theory?

15         MR. CHRISTIE:  There's a couple folds to that,

16   Judge.  First of all, as you know, there's an ordered measured

17   process with regard to the local rules.  Plaintiffs are

18   required up front to give us the best information on a whole

19   host of issues, including doctrine of equivalents.

20         They were required to do it initially on December

21   7th -- December 15th.  They did not do that.  When I'm talking

22   about those claim construction issues, as Your Honor recalls

23   when the parties met and conferred as was required, submitted

24   a joint claim construction statement and ultimately winnowed

25   down the number of claim terms to be construed.

1          And in doing that, Judge, I think this time line

2     which is plaintiff's slide 14 -- defendant's slide 14 and

3     there's a copy -- a hard copy in front of you if you wish,

4     helps put this in perspective.

5          So we again, you know, back in the April, May time

6     frame, we were deciding on what terms needed to be construed

7     with regard to -- for purposes of claim construction and we

8     had the issues with the memory and the module on the memory.

9          But critically, Judge, for our perspective, with --

10    without any infringement theory including a doctrine of

11    equivalents theory on that issue, we felt it was safe to drop

12    that for construction.

13         It was only after we elected affirmatively to drop

14    those claims from construction that defendant now rides in at

15    the last minute and say ah ha, there's a weakness, there's a

16    vulnerability, now we can add our DOE theory and prejudice you

17    because we've got an advanced notice of your claim

18    construction position.

19         THE COURT:  Why do you believe that they had enough

20    information in December, '15 to assert the DOE theory?

21         MR. CHRISTIE:  Because, Judge, I think from our

22    perspective it was self-evident and that there was no need for

23    them to, you know, conduct any discovery or look at any claim

24    construction positions.

25         I mean, it's -- as Your Honor knows, they're hosting

1    the party if they're required to tell us what they think are

2    the infringement contentions of all stripes and varieties

3    including doctrine of equivalents.  And more critically, you

4    know, from the claim language itself, it was crystal clear

5    what was at issue.

6          They raised, you know, as Your Honor remembers, 153

7    asserted claims which the Court forced them to winnow down and

8    don't need to belabor that because that's something that you,

9    Your Honor, clearly understands, but based upon the claim

10   language itself, it was -- it was obvious, it was a no-brainer

11   and if they were going to raise it they could have and should

12   have but did not raise it earlier.

13         THE COURT:  Okay, plaintiff, what do you say to

14   defendant's argument that you should have raised this in

15   December, '15?

16         MR. CUTRI:  Well, we -- we disagree obviously, Your

17   Honor, and I think if I could, I would like to give Your Honor

18   enough context around what the term is and a little bit around

19   what the technology is so that you can understand why we

20   wouldn't have been on notice from the outset of the case, we

21   wouldn't have been on notice in April and I'll tell you

22   when --

23         THE COURT:  Well, you were on notice in April.

24         MR. CUTRI:  I respectfully disagree, Your Honor.

25   Our position is that this issue does not arise until February

Cutri - Argument                              21

1   8th of 2017 and I can show you how we get there --

2          THE COURT:  Well, I read the briefs so I know how

3   you got there.  But in April, '16 they proposed this

4   construction, right?

5          MR. CUTRI:  And -- yes, if I can --

6          THE COURT:  And then they withdrew it.

7          MR. CUTRI:  No.  We agreed to a construction on this

8   issue and I can show you what that -- that agreed construction

9   is where it happens on February 8th, 2017 and if I could, Your

10  Honor, can I direct -- can I bring this to your --

11         THE COURT:  Sure.

12         MR. CUTRI:  -- to the -- up to the Court?

13         THE COURT:  Is this in your briefs?

14         MR. CUTRI:  I believe it is.  This is something that

15  they're relying on with respect to when they "dropped" it.

16         THE COURT:  Okay.

17         MR. CUTRI:  When they dropped it they say it was in

18  the joint claim construction.

19         THE COURT:  I remember reading about the dropping.

20  I don't remember reading there was an agreed upon

21  construction.

22         MR. CUTRI:  Well, I can show Your Honor that issue

23  here, and I'm handing up Docket 178 -- make sure I have the

24  exact --

25         (Pause in proceedings)

1        MR. CHRISTIE:  Could you please advise me what page

2   you're talking about?

3        MR. CUTRI:  So it's in -- here, I'll just give you

4   this copy.  Here it is.  And for the record, I'm on page 5 of

5   Docket 178.  So, Your Honor, as you can see, the agreement

6   there is with respect to this term, and just to give Your

7   Honor a little bit of context --

8        THE COURT:  Where should I look at?

9        MR. CUTRI:  Oh, I'm sorry, Your Honor, on page 5 --

10  if you go back a page to page 4 so this is under Local Patent

11  Rule 4.3, construction of claim terms on which the parties

12  agree, and so the first column is the claim term and the

13  claims in it appears and the agreed upon construction -- it's

14  the third column.

15       And then if we turn the page, the second item, a

16  roof estimation module that is stored on the memory, and you

17  can see the parties have agreed to a construction here.  And

18  so, Your Honor, there's the claim term -- well, there's the

19  claim term right in front of you, "a roof estimation module

20  that is stored on the memory."

21       So at the outset of this case, we're talking about

22  roof estimation software, that's what the case is about.  We

23  say we've done our pre-filing investigation, we've looked at

24  your software, we think that you have a module that's running

25  on a memory.  We can see it's on a computer, there is it.

1    What they proposed in April is well, we think that has to be a

2    single software module, and you can see it up there, that's

3    their construction -- "single" software module.  We came back

4    to them and we said we disagree.

5          We had a number of discussions on it.  Now we're in

6    the phase of claim construction where they have as you'll

7    recall I think almost 30 or 25 or a very large number of claim

8    terms, and we said, you know, we think we need to work in this

9    and see if we can come to an agreement, and we came to an

10   agreement with respect to this claim term.

11         Now, if you look at what they had in April they say

12   "a single software module which is stored in memory."  What we

13   agreed on was "a module that is stored on the memory."  That's

14   February of 2017.

15         Now, when you take that exchange and you couple it

16   with Your Honor's instructions to put everything out there,

17   don't keep anything in your pocket, we look at this and we say

18   well wait, they originally were saying a single software

19   module that is stored in memory.

20         Now we've agreed that a module is stored on "the"

21   memory, could they be continuing to argue that the entire

22   program has to be in one place, on one person's computer?

23   Could they be arguing that?  They could be and so we should --

24   we don't want the risk of preclusion so we're going to put

25   this in, and then what we did after that, we had an exchange

Cutri - Argument                                    24

1    with the defendants.

2            We said now, we've put this in under doctrine of

3    equivalents, but if you're no longer asserting the single --

4    the idea that everything has to be on one place, then we'll

5    drop it, we'll drop the doctrine of equivalents.

6            And they said no, you're right, we are still

7    asserting it and then at the bottom of this screen on slide 16

8    you can see that on July 26th they come back and they say

9    there is no single roof estimation module that is stored on

10   the memory.

11           That's one of their non-infringement positions.  So

12   I know Your Honor said this is an amendment, how do we measure

13   good cause.  First we start with the date on which we should

14   have reasonably been on notice that this could be the issue in

15   the case, that we needed to --

16           THE COURT:  April, '16?

17           MR. CUTRI:  Respectfully, Your Honor, if it was

18   April 16th (sic), I think we can establish diligence and lack

19   of prejudice, but I do believe that it's a fair argument to

20   say that it would have been when they -- when we agreed on

21   this issue --

22           THE COURT:  They argued December, '15.

23           MR. CUTRI:  They argued December 15th (sic) and we

24   obviously disagree with that.

25           THE COURT:  Why?

1          MR. CUTRI:  Because in -- December 15th there's no

2    way for -- everyone reading the claim understands that a roof

3    estimation module -- and if you read the patent, the memory is

4    always described a being distributed in the module, it can be

5    in many different places, so we would never have an occasion

6    at the outset of the case to say gosh, could they conceivably

7    argue that the entire -- you know, computer program is on one

8    -- you know, in one instance -- I'm sorry, in one computer in

9    one memory?

10          There's no way for us to know that until they

11   actually explicitly say this is what we're going for.  And,

12   Your Honor, on the point of sufficiency of contentions, I

13   would invite the Court -- I'll find the docket record --

14   docket entry -- I would invite the Court to look at the

15   defendant's non-infringement positions.

16          As they were conveyed to us, they are essentially

17   repeating the claim language and saying it's not there,

18   without further explanation.  So it is a two-way street in

19   terms of sufficiency of contentions but we were trying to in

20   earnest, Your Honor, getting this issue out and saying this is

21   the doctrine of equivalents.  But with --

22          THE COURT:  So let's get this straight, in April,

23   2016, you knew about this construction.  Why then didn't you

24   move to amend to assert the DOE theory at or about that time?

25          MR. CUTRI:  Because at that time, Your Honor, we

1    were still in negotiations with the plaintiff around this

2    issue and we were trying to explain to the plaintiff that we

3    didn't see a way that that would be supported by the case, and

4    we ultimately believed that we either -- we either agreed to

5    disagree or what we did in February of 2017 is it seemed to us

6    that there was a potential that the defendants were still

7    going to argue this issue, and it was at that point in

8    December -- I'm sorry, February, 2017 that we came to -- and

9    again, with Your Honor's instructions in May, we came to the

10   conservative decision that we should amend and include DOE --

11                THE COURT:  So should --

12                MR. CUTRI:  -- and so --

13                THE COURT:  So should the Court find that you didn't

14   act diligently because if you had this doubt in your mind,

15   even after the February, '17 agreement, it still took a motion

16   and until June, '17 to assert the DOE theory for the first

17   time?

18                MR. CUTRI:  And that -- let me address that issue,

19   Your Honor, because it's not until June -- I don't think we

20   count from February 8th all the way to June 6th, and I know

21   that looks like four months --

22                THE COURT:  Why?

23                MR. CUTRI:  Because first April was a stay because

24   we were working on settlement.  You'll recall that we turned

25   the case off and there's -- so there's -- you subtract a month

1     from there.  Second, you -- on February 8th your motion

2     practice was already in place with respect to amending

3     contentions, so we were already -- and I understand the

4     Court's position that we should have already amended but I --

5     February 7th when this issue crystalizes, we are --

6               THE COURT:  They filed their motion.

7               MR. CUTRI:  Yeah, they had already filed --

8               THE COURT:  Right.

9               MR. CUTRI:  -- their motion.

10              THE COURT:  And you refused to amend.

11              MR. CUTRI:  Your -- yeah, Your Honor, at that point

12    we believed that we -- including for reasons related to this

13    claim construction position, that we thought it was

14    appropriate to go in and take a deposition and ask a witness

15    does your system run on a -- on just the memory or does it not

16    run on memory.

17              And, Your Honor, we definitely understand the

18    Court's ruling, but that was in our mind as well and after

19    February as this is a perfect example of why we need a witness

20    because they have superior knowledge of how their system works

21    and so they're now agreeing to a claim construction with that

22    superior knowledge.

23              But, Your Honor, if we start from February 8th, the

24    briefing is already in place, we know that Your Honor is going

25    to resolve this issue of amending which we wanted to do.  At

1    that time I believe the hearing had been scheduled for late

2    March -- I'd have to go back and look, but we would only be

3    talking about 45 days.

4            But then what happens is between February 8th and

5    May 1st, that's the time period we should be counting because

6    May 1st is when you resolved the issue of when are you going

7    to supplement, and then the timeliness of that supplement is

8    not in dispute after May 1st because that was an agreed date,

9    June 6th.

10           We got with the defendants and we said when -- when

11   we give this to you, can we have enough time to put everything

12   in, so if you're counting days from February 8th, you don't

13   count April and you stop at May, and so we're talking about an

14   order of two months.

15           And as you can see, we had to pull together the

16   doctrine of equivalents argument, pull together the relevant

17   evidence, and I think there are plenty of cases in this

18   district and elsewhere supporting that -- that diligence

19   during that time frame is sufficient.

20           And then I would have to address of course

21   prejudice, and we don't think there's any prejudice to the

22   defendants because as you can see, and we're not contesting

23   this, they are still in fact asserting this argument, the no

24   single roof estimation module stored on the memory.

25           We have not had -- they have not taken our technical

1    witness.  Their expert reports are not due until February.

2    Their non-infringement reports are not due until February.

3            They have -- we have not taken their technical

4    witnesses yet, that's not due until -- we're not doing that

5    until October 24th.  They have plenty of time -- I'm

6    explaining what the issues are in real time right now -- they

7    have plenty of time to prepare their witnesses.

8            The parties understand each other and if there -- if

9    there is an issue with respect to -- with respect to the

10   doctrine of equivalents and they say well, we don't -- they're

11   not saying that they don't understand, they do understand each

12   other and so we do believe that we've been diligent on this

13   issue.

14           And I think even if we had to go back to April to

15   the point we were talking about earlier, you'll recall when

16   the defendants were asking for Sungevity (phonetic) to be

17   brought into the case which they knew about for -- you know,

18   prior to the lawsuit, I think they actually knew about it

19   since 2014 when they tried to buy my client and did a review

20   of the patents, you know, their position was there was a lot

21   happening in the case.

22           And you can go back to that transcript and what

23   defense counsel says is it -- it kind of came to us as we were

24   looking at a number of different things a month or so ago, a

25   month or so before we moved, and I think on our side when we

1   put in our -- when we put in our amended infringement

2   contentions and proposed those to the other side and we had

3   that briefing in 2016 -- you can go back to that briefing --

4   they never say in that briefing that we don't understand your

5   positions or we need more.  It's not until January that that

6   arises.

7           But I do think that if Your Honor is doing the

8   analysis around diligence and timeliness, I think we meet that

9   standard because we had a number of different things going on

10  including no fact depositions, an introduction of a new

11  accused product which the defendants did not disclose at the

12  outset of the case that we didn't get to add into the case

13  until November 4th.

14          And then we had the parties were negotiating on

15  claim construction and so I think we have sufficient diligence

16  even back since April.

17          We definitely have sufficient diligence from

18  February 8th to what we believe the right number is May 1st

19  because April, 2017 is not something that should be counted

20  against us because all the parties thought the case was going

21  to be resolved.

22          And then finally of course there's no prejudice to

23  the defendants at this point.  They haven't identified

24  anything that -- that normally falls under the rubric of the

25  traditional analysis of prejudice under this Court's cases.

1          THE COURT:  Thank you, counsel.  Last word --

2          MR. CHRISTIE:  Yes, Your Honor --

3          THE COURT:  -- defendant?

4          MR. CHRISTIE:  -- if I may be heard briefly, Your

5   Honor, you got it right.  This issue was front and center in

6   April, 2016.  They knew about it, we discussed it.

7          If for some reason the Court finds that they were

8   not sufficiently on notice to raise it in December, 2015 as

9   they should have based upon the plain language of the claim, a

10  module that is stored on the memory -- "the" signifying

11  singular, I don't know what more you need in order to raise

12  that issue by way of infringement contention based upon the

13  plain language.

14          Separate and apart from that, Judge, Your Honor is

15  right, as of April, 2016 it was crystal clear that this was an

16  issue.  We talked about it and yeah, we agreed to a

17  construction.

18          But that doesn't obviate or provide an excuse for or

19  to generate into good cause to allow them to amend.  By virtue

20  of agreeing, we took an issue off the table for the Court to

21  address in the interest of compromise.

22          And, you know, now with that issue off the table by

23  way of claim construction, it's now a vulnerability or a

24  perceived strategic benefit for them to say ah ha, you know,

25  now that we've taken that issue off the table from a claim

1    construction perspective, we can go out now and belatedly

2    raise these doctrine of equivalents --

3            THE COURT:  Why?  Why is it prejudicial?

4            MR. CHRISTIE:  Because if they had -- they knew,

5    Judge, that we were -- we had taken this issue off the table

6    and --

7            THE COURT:  Have you really taken it off the table?

8            MR. CHRISTIE:  From a claim construction position,

9    yes, we have, Judge.  From -- from a non-infringement

10   perspective, of course we reserve our right to argue all kinds

11   of different positions.

12           But -- but the main way in which we are prejudiced

13   here aside from the fact that it is much belated and after we

14   have been able to brief claim construction, do the expert

15   reports and as Your Honor knows, we have Markman next week,

16   you know, they have been able to delay and then at the end

17   dump, cram, try to include if all this new stuff after they

18   have the benefit of our strategic thinking on claim

19   construction issues.  So --

20           THE COURT:  Are you conceding that they didn't have

21   notice in December, '15 that they should have asserted this

22   theory?

23           MR. CHRISTIE:  Well no, I'm not conceding that at

24   all.  I'm basing it -- especially based upon the plain

25   language of the claim, even if the Court somehow finds that

1    they were not noticed at that time or should not necessarily

2    have been tasked with raising it at that time, it was

3    abundantly crystal clear by April, 2016.

4           And, you know, Mr. Cutri tries to dance on the head

5    of a pin by trying to carve out all this time here, there,

6    everywhere -- we were trying to settle the case, this, that

7    and the other thing.

8           But at the end of the day, Judge, diligence is

9    critical here as you know, and this is endemic of the

10   plaintiff's view of this case which is that they can delay and

11   delay despite repeated requests by us to supplement, provide

12   further detail.

13          And once -- generally it's only after court order

14   that they do that and, you know, then time has passed, time

15   has passed, time has passed, we have our claim construction

16   positions out, we have our claim construction briefing, our

17   expert reports, and then all the sudden, you know, with the

18   benefit of that strategic thinking, they dump all this stuff

19   on us.

20          THE COURT:  Is it your position that you would not

21   have agreed it this claim construction in February of 2017 if

22   they had asserted the DOE theory earlier?

23          MR. CHRISTIE:  I think that's correct, Judge.  I

24   think that is correct because if we had known about the

25   infringement theory of the DOE, you know, we certainly would

1    have given a lot more thought as to whether we would consent

2    to that construction.

3              THE COURT:  Well, that's a little equivocal.

4              MR. CHRISTIE:  Yeah --

5              THE COURT:  I'm asking --

6              MR. CHRISTIE:  -- I understand that and I'm

7    trying --

8              THE COURT:  I want a fair answer.  If the fair

9    answer is you don't know, that's fine.  If it's yes, yes.  If

10   it's no, no.  I --

11             MR. CHRISTIE:  I understand.

12             THE COURT:  I just want to know what the -- what the

13   truth is.

14             MR. CHRISTIE:  Of course.  And I --

15             THE COURT:  And if -- quite honestly, if you're not

16   in a position to say unequivocally that you would not have

17   agreed to that construction if they asserted the DOE theory, I

18   would like to know that.

19             MR. CHRISTIE:  Okay.  May I speak to my colleagues

20   and address that issue a little bit later today, Judge?

21             THE COURT:  No --

22             MR. CHRISTIE:  Okay.

23             THE COURT:  -- I want to do it right now.

24             MR. CHRISTIE:  All right.

25        (Pause in proceedings)

1           MR. CHRISTIE:  Judge, in answer to your question, we

2    would not have agreed to this construction absent if we had

3    not had the DOE theory in play.  If the DOE theory hadn't been

4    in play, we would not have adopted and agreed to the

5    construction that we did agree to.

6           THE COURT:  Okay.  And are you prejudiced by that?

7           MR. CHRISTIE:  We believe we are, Judge, because now

8    that we have -- we're locked in to this construction and after

9    the fact now they raise their DOE theory, you know,

10   admittedly, Judge, we haven't done an exhaustive analysis as

11   to the impact but, you know, we have -- we were handcuffed now

12   and we're unfairly prejudiced based upon our reasonable

13   reliance that they would not have raised the issue after the

14   fact because of our consent to the construction.

15          THE COURT:  Okay, let's move on to the next issue

16   and that is the theories pursuant to 35 United States Code,

17   Section 271(f), (g) and, defendant, here's the question I have

18   for you.  It's correct, isn't it, that you supplemented your

19   answers to interrogatories on May 5th, 2017?

20          MR. CHRISTIE:  Yes, Judge, that's correct.

21          THE COURT:  And it was in those -- that's the

22   supplement that the plaintiffs point to -- in my words, to put

23   them on notice about these foreign activities.

24          MR. CHRISTIE:  That is correct, Judge.

25          THE COURT:  Now, the information that you

1    supplemented on May 5th, 2017, was that information available

2    to your client when they served their initial answers to

3    interrogatories say in February, 2016?

4              MR. CHRISTIE:  I don't think that information was

5    fully available.  Perhaps parts of it were, Judge, but --

6              THE COURT:  Well let me ask you --

7              MR. CHRISTIE:  Yes.

8              THE COURT:  -- the information you supplemented in

9    May, '17 --

10             MR. CHRISTIE:  Yes.

11             THE COURT:  -- was that just where your company did

12   business?

13             MR. CHRISTIE:  It's their -- their outsourcing --

14   international outsourcing outfits, yes, Judge.

15             THE COURT:  Okay.

16             MR. CHRISTIE:  But --

17             THE COURT:  So why in the world wasn't that

18   available in February, 2016?

19             MR. CHRISTIE:  Well, parts of it were.  It wasn't --

20   it isn't a static relationship.  It varied over time so it's

21   not necessarily remained consistent from day one to --

22             THE COURT:  So how about I ask this question.

23             MR. CHRISTIE:  Sure.  I understand.

24             THE COURT:  Was there foreign outsourcing in

25   February of 2016 that was not included in the February, 2016

1    answers to interrogatories?

2            MR. CHRISTIE:  Yes, there was certainly some of

3    that --

4            THE COURT:  Okay.

5            MR. CHRISTIE:  -- correct.

6            THE COURT:  So why then did your client wait until

7    May, 2017 to supplement the answers?

8            MR. CHRISTIE:  Okay, well we didn't -- we

9    supplemented the answers in 2017, you're correct, Judge --

10           THE COURT:  May, 2017.

11           MR. CHRISTIE:  You're right, Judge, in May --

12           THE COURT:  Right.

13           MR. CHRISTIE:  -- but what we also did in January of

14   2017 is we amended our non-infringement contentions to put

15   them squarely on notice about the foreign activities.

16           THE COURT:  Squarely is your word, right?

17           MR. CHRISTIE:  It is my word, yes.

18           THE COURT:  Okay.  But still tell me why you waited

19   until May, 2017 to supplement your answers to interrogatories

20   with information that was available a year and three to four

21   months before that.

22           MR. CHRISTIE:  You're right, Judge.

23           THE COURT:  And if I bar defendants from relying on

24   that supplement, am I then rewarding defendants for their

25   belated supplementation of their answers to interrogatories?

1          MR. CHRISTIE:  Okay, I don't think you're rewarding

2    us for any belated answers, Judge.  I think the analysis here,

3    as Your Honor has acknowledged, is whether they were able or

4    should have raised these issues, whether it was

5    supplementation or amendment, and Your Honor has not quite

6    said how you feel about this but, you know, our view is that,

7    you know, clearly this is amendment --

8          THE COURT:  But if they stand up --

9          MR. CHRISTIE:  Yes.

10          THE COURT:  -- and say, Judge, how could we not rely

11   on their sworn answers to interrogatories -- sworn answers to

12   interrogatories which only identified Utah -- what?  I mean,

13   Judge, how could you penalize us for relying on their answers

14   to interrogatories?

15          MR. CHRISTIE:  Right.  Well, you're not penalizing

16   them, Judge, because while we may not have originally provided

17   the requisite level of detail that went to them in May, 2017,

18   they still had sufficient notice as of January, 2017 in our

19   non-infringement contentions that there was overseas

20   activities.

21          And of course by that time, as we said in our

22   briefs, we had given them, you know, 1,300-or-so documents to

23   that effect and being in the same industry in the same

24   business as we are, they also have overseas outsourcing.

25          THE COURT:  So if I rule in your favor --

1          MR. CHRISTIE:  Yes, Judge.

2          THE COURT:  -- on this one and say in effect that

3    plaintiffs can't rely on your answers to interrogatories, does

4    that incentivize parties to delay supplementing their answers

5    to interrogatories to provide accurate information?

6          MR. CHRISTIE:  I don't think so, Judge, because --

7          THE COURT:  But isn't that what happened here?  You

8    waited over a year to provide information that should have

9    been provided in February, '16.

10          MR. CHRISTIE:  Judge, in a perfect world we would

11    have all the knowledge and be able to provide it all at once.

12    As Your Honor acknowledges, this is a complex case involving a

13    lot of moving parts and --

14          THE COURT:  I'm not sure you want to make that

15    argument because that's the argument plaintiffs are making

16    about why they didn't make fulsome infringement contentions --

17          MR. CHRISTIE:  I understand, but --

18          THE COURT:  -- in December, '15.

19          MR. CHRISTIE:  I understand, Judge.  But, you know,

20    when we're dealing with the infringement issues here, you

21    know, overseas activities, you know, may not have been on the

22    top of the list of things to nail down, and we had a lot of

23    interrogatories to respond to.  We at the time provided the

24    requisite detail --

25          THE COURT:  No excuse.

1          MR. CHRISTIE:  I -- look, I understand, we could

2    always be better, we could always be more diligent.  But I

3    think the critical point here is that they were on sufficient

4    notice as of January, 2017 on this issue and didn't do

5    anything about it.  They could have moved and they should have

6    moved earlier to amend.

7          They had the documents that we produced to them,

8    they could easily have done key word searching, did not, and

9    now of course are raising it at the last minute to do so.

10   You're right, Judge, we could have been more detailed and

11   hindsight is 20/20 in many respects, but we did not of course

12   deliberately delay in producing this for any reason.

13         THE COURT:  I'm not suggesting there was any bad

14   faith in no way, shape or form --

15         MR. CHRISTIE:  Thank you.

16         THE COURT:  -- but the facts are the facts.

17         MR. CHRISTIE:  I understand what your perception is,

18   Judge.

19         THE COURT:  So let's hear from the plaintiff on this

20   issue.

21         MR. CUTRI:  Your Honor, I'll -- I'll be as brief as

22   I can because I think you've said what -- you know, I'm going

23   to say, which is we relied on their interrogatories.  They

24   were -- in February, 2016 they said Utah.  On May 9th -- it's

25   not May 5th actually it's May 9th, 2017 they amended.  I will

1    say that I think I know why they did that is because on May

2    1st Your Honor said get all of your positions out on the

3    table, and you actually said if you go back to the transcript

4    -- I'm paraphrasing -- and that goes for defendants too.

5          And I think that they may have recognized that in

6    light of Your Honor's instructions, that was the appropriate

7    time to make a more fulsome disclosure of, you know, what you

8    see here on the screen, which is that the development, use and

9    testing activities are performed not just in Utah but in

10   additional locations.

11         So if we're going to do the amendment analysis, our

12   start date in this instance is May 9th and we finished on June

13   20 -- June 6th.  I think that's 27 or 28 days and I think we

14   were extremely diligent.  I will point out that there was a

15   large production that accompanied this interrogatory response.

16         That production included what they have acknowledged

17   are foreign use documents that we had to quickly evaluate and

18   incorporate into our infringement contentions.  We did so,

19   there has been no argument with respect to prejudice and

20   there's none in the brief and there's none today.

21         THE COURT:  Okay.  Let's go to what I consider one

22   of the more difficult issues, the ground point -- and I don't

23   necessarily disagree that we can -- unless you disagree, that

24   we can deal with these three together, the ground point theory

25   under the 436 patent and the aero-triangulation theory issues

1    under the 436 and 153 patents.

2              MR. CHRISTIE:   Yes, Judge, we agree with the Court

3    that all three of them can be combined in the same argument.

4    It's part and parcel of the same analysis.   You know, this,

5    Judge, harks back to the impermissible amendment issue.   In

6    the motion to compel, you know, they were trying to justify

7    and say, you know, we don't need to supplement, "it's all

8    there unambiguously."

9              And in their brief when they were describing how

10   unambiguously their constructions are with regard to this

11   correlate issue, you know, they made it crystal clear that it

12   involved the drawing -- correlation as to drawing of roof

13   features, and I'm flashing on the screen their brief in

14   opposition to the motion to compel, Docket 183 at page 10.

15             They're talking about matching up images and that's

16   what they're saying further down on the page.   The screen

17   shots themselves unambiguously demonstrate infringement so

18   they don't need any further explanation because that's what it

19   means.   But, you know, true to form, Judge, when we get their

20   second amended infringement contentions, it's a completely

21   different story.

22             Now we have what they have bullet-pointed out as

23   three separate and distinct correlation theories -- ground

24   point and aero-triangulation in addition to what they arguably

25   were referencing earlier which is the drawing -- the

1    correlation from the drawing of the roof features.

2              THE COURT:   What do you say to their argument,

3    "Those are not new theories, but interrelated mechanisms used

4    by defendants to perform the claimed elements at issue in the

5    very same aspects of the same instrumentalities accused of

6    infringement all along."

7              MR. CHRISTIE:   What I say to that, Judge, it is

8    lawyer argument which is not based upon any sound evidence and

9    moreover, it's incorrect.   What they're trying to do is to say

10   well look, the feature was already there and it's all

11   interrelated stuff and you should have known that because we

12   were pointing to the correlation of the roof features from the

13   drawings that we included all this other functionality, and

14   that's nonsense, Judge.

15             They are required as you know to crystalize their

16   theories so we know what they claim is infringement.   And more

17   importantly, Judge, and critically they point to this, and

18   this is slide 11 of defendant's, to show that this which was

19   in their infringement contentions -- again, the deficient

20   ones, the picture book ones that the Court and defendants had

21   issues with, this unambiguously shows the ground point theory

22   and the aero-triangulation theory.   You know, Your Honor can

23   see it right there.   There's no explanatory text at all.

24             THE COURT:   So didn't they give you exactly what you

25   asked for?   You asked for explanatory text and that's what

1     they gave you.

2                MR. CHRISTIE:  It's a slippery slope, Judge.  They

3     -- what they want to do is to say well, we gave you all the

4     detail you asked for so why are you complaining when in fact

5     they're trying to slip in new infringement theories.  This is

6     not something that is from their perspective interrelated

7     functionality.  These are --

8                THE COURT:  That's what they said.

9                MR. CHRISTIE:  They do but, you know, turning back

10    to the prior slide, you know, they themselves delineate this

11    as three distinct theories, and it is three distinct theories.

12    They're trying to gloss over that by saying oh, it's all part

13    of the same thing, it's all interrelated, Judge, you know,

14    don't look behind the curtain here.

15               But in fact, it is three theories requiring

16    different analyses and, you know, frankly again, something

17    happening after we've already crystalized our claim

18    construction positions, done the briefing, done the expert

19    reports, done the expert depositions.

20               Now we get sandbagged with this new nonsense after

21    the fact and again, Judge, if you look at this picture which

22    they say unambiguously discloses the aero-triangulation and

23    the ground point theory, I would be hard pressed to say how

24    the heck could you possibly figure that out.  Two pictures

25    side by side of roofs, of buildings.  There's no annotation,

1    there's nothing that delineates the fact that they're talking

2    about anything other than what they talk about earlier which

3    is correlation of the roof figures.

4           There's nothing to indicate at all that there's

5    discussion about ground points about aero-triangulation.  It

6    doesn't exist.  They're making it up out of whole cloth.

7    They're trying to shove things in at the last minute after we

8    have our claim construction positions crystalized and it's

9    unfair and prejudicial to us.

10          THE COURT:  How is it prejudicial?

11          MR. CHRISTIE:  Well because by now, Judge, we're

12   going to a Markman hearing next week before Judge Kugler and

13   they have now raised these new issues that we haven't had a

14   chance to address in claim construction, either briefing with

15   our experts or have expert depositions as to it --

16          THE COURT:  Is this a claim construction issue?

17          MR. CHRISTIE:  It does affect claim construction

18   because it affects the correlation -- one of the key claims

19   that's being construed is correlating two aerial images, and

20   this goes right to the heart of it with regard to the 436

21   patent, Judge.

22          MR. CUTRI:  Thank you, Your Honor.  I'm going to see

23   if I can convince my colleague to switch the projector over.

24   The defendants did ask that the plaintiff explain how

25   correlation occurs.  That is exactly what they said in their

1    brief if we go to slide 11, and specifically on the claim --

2    on the correlation limitation.

3         "Plaintiff's" -- this is their brief, "Plaintiff's

4    failure to explain how the accused products meet this

5    correlate-the-first-aerial-image-with-the-second-aerial-image-

6    limitation makes it impossible for the defendants to

7    understand the plaintiff's infringement theory because later

8    limitations are based in the earlier correlation limitation."

9         "Likewise later limitations suffer from the same

10   deficiencies because plaintiffs do not explain how the screen

11   shots they copied and pasted are linked to or demonstrate

12   infringement of the corresponding claim limitations."

13        Now, you had asked how they respond to our assertion

14   that these are interrelated functionalities that are in the

15   accused products, and I'll take that in pieces.  What we're

16   conveying to Your Honor is this is not a new accused

17   instrumentality, there's not another piece of software coming

18   in.  There's not anything in the way of additional claims

19   coming in.

20        But the second point I would make is this is their

21   software.  They have the guys who designed it at their

22   disposal.  They can take any one of these claim -- any one of

23   these screen shots and put that in front of their defendant

24   witness -- their own witness and say what is going on in this

25   screen shot.

1    Now I'm going to show you what's going on, we're

2    going to have a -- if it's okay with the Court I'd like to

3    have a little bit of an explanation of what happens inside

4    their system because I think it goes directly to this issue.

5    If we go to the next slide, this is our infringement

6    contention, this is our amended contention providing the how

7    of the correlation.  I'll start at the highlighted portion on

8    slide 12, the Property InSight mass production tool -- now

9    again, this is the tool that was just added in November,

10   that's what this relates to.

11   The Property InSight mass production tool correlates

12   two aerial images by at least correlating aerial images when

13   an operator selects ground points in each aerial image that

14   correspond to each other.

15   I'm going to skip number two because they don't have

16   an issue with number two.  And number three, correlating

17   aerial images when an operator performs aero-triangulation and

18   selects three points in the aerial image that correspond to

19   each other.

20   And go to the next slide, this is the slide, this is

21   the screenshot that defendant's counsel just had up and saying

22   what is this, how could I possibly know what's going on.  This

23   is a screenshot of their software.  At the top -- and this is

24   what it looks like on the screen, you log into their software

25   -- they're the people who create the roof reports log in and

1    they can see two images.  This is a house and you can see that

2    if you're looking at the orientation of the house there's a --

3    in that circle there's a blue car in the driveway and it's

4    facing south, right?

5              And then in the picture to the right the blue car is

6    facing north.  If you're the operator the first thing you need

7    to do is relate these two images -- correlate these two images

8    to each other.  There is a tool called the ground point tool.

9    They can ask their -- and I'm sure they did ask --

10             THE COURT:  So why wasn't this all provided in

11   December, '15?  What was your strategic reason for providing

12   incomplete contentions in December, '15?

13             MR. CUTRI:  We did not have this software in

14   December, '15.  This is software -- the mass production tool

15   is behind the curtain, so to speak.  They -- they used this

16   software internally.

17             There is no way to get a hold of it and they did not

18   disclose it to us until late -- until the later part of 2016

19   at which point we prepared contentions and we put these ground

20   points -- we clicked on the ground point tool in this picture

21   and we provided it to them.

22             THE COURT:  Why did you wait until June, 2017 to

23   provide this information?

24             MR. CUTRI:  As you know, Your Honor, we had a -- we

25   had a view that we would like to talk to their witnesses, but

1   I'll tell you that with respect to that issue, when we get the

2   -- when we get the mass production tool in 2016, as you'll

3   recall, we moved to add it to the case and we put this

4   infringement contention in and they do not take issue with it.

5           So when they say we raised issues about this --

6   about these non-infringement contentions in April, that is

7   factually untrue because we did not --

8           THE COURT:  The explanation wasn't there though, was

9   it?

10          MR. CUTRI:  The explanation in when we submitted our

11  October, November -- you're talking about in October --

12          THE COURT:  The explanation that was provided in

13  June, '17 that we're now arguing about, all the narrative,

14  that wasn't provided.

15          MR. CUTRI:  In October of 2016?  That's correct.

16  That's correct.  I -- we understand that --

17          THE COURT:  Why not?

18          MR. CUTRI:  Because, Your Honor, at that time we had

19  the view that we -- we would like to -- what we were concerned

20  about at that time was putting a position out there and then

21  being in the opposite of where we are now, which is where we

22  took a guess at what we thought was going on --

23          THE COURT:  I hope you learned a lesson from this.

24          MR. CUTRI:  Absolutely, Your Honor, absolutely, and

25  as we understand the Court's procedures now I think -- I

Cutri - Argument                    50

1    think --

2              THE COURT:   It's not just this Court --

3              MR. CUTRI:   And I --

4              THE COURT:   -- we're in New Jersey.

5              MR. CUTRI:   Right.  I think what we've learned now

6    is that --

7              THE COURT:   Plus, I think every Court takes the same

8    position.

9              MR. CUTRI:   I think what we've learned now, Your

10   Honor, is we had a -- we had a strange circumstance in this

11   case where we didn't have depositions.  We were trying to be

12   conservative and make sure we wouldn't end up --

13             THE COURT:   It happens in every case.  It's the same

14   reason why you rolled into this Court and asserted 153 claim

15   terms when nobody could understand it, why you took that

16   position.

17             MR. CUTRI:   Well, Your Honor, I -- I think we

18   reduced those claim terms ultimately, we did at Your Honor's

19   instruction and urging and we -- and we did do our best and I

20   think by the time that this issue arises in the fall of 2016

21   we did not hear from the defendants that this was an issue

22   that they didn't understand what was going on until January.

23             And I take the Court -- and we definitely understand

24   the Court's instructions now on this issue, but if we could, I

25   don't know whether Your Honor is viewing this as a

1    supplementation issue or an amendment issue but I'll take it

2    -- if it's a supplementation issue I think that the plaintiffs

3    are on -- the plaintiff is on solid ground because this is

4    additional detail that Your Honor said that we should provide

5    and the defendants asked for.

6          So if this is supplementation, I do believe that at

7    the beginning of the hearing Your Honor said that is what I

8    was asking you to provide, and if that's the case, I do think

9    that we succeed.  I can take on amendment if Your Honor views

10   this as a different theory.

11         We do not view it as a different theory but if it

12   was an amendment, I think that the notice of when we had --

13   when they raised the issue of this is insufficient doesn't

14   arise until December when they say and by the way, the mass

15   production tool contentions that the Court just allowed and

16   that we did not raise an issue about sufficiency of, we do

17   have a concern with the sufficiency of it, that was not until

18   December of 2016.

19         And so and then we had the briefing practice, we had

20   the motion practice and we had the stay and it's on May 1st

21   that Your Honor resolves that issue and I do think there would

22   be diligence and there's no prejudice to them in this instance

23   by adding additional detail.

24              THE COURT:  Thank you.  Counsel?

25              MR. RUIZ:  Your Honor, may I add one thing very

1    briefly?  On the issue of whether it's a supplement, it is our

2    position as we understand it because we haven't had a

3    technical deposition yet that these are interrelated features

4    and that the two features that we are addressing require the

5    use of the first.

6              Once we get to talk to witnesses, we'll be able to

7    explore that, but they are all interrelated correlation and so

8    we do look at this as a supplementation of or accusation of

9    the correlation which we understood Your Honor to be -- if we

10   -- if it is a supplementation which we do believe it is

11   because they are all interrelated and that's what our

12   understanding is from looking at the documents, that that

13   would be permitted in accordance with the order that you

14   issued in May.

15             THE COURT:  Thank you.

16             MR. RUIZ:  Thank you, Your Honor.

17             MR. CHRISTIE:  Your Honor, may I just briefly be

18   heard on a few points on this issue?  Number one, it needs to

19   be made clear, Judge, that they have had access to our source

20   code and had their source code expert visit it regularly from

21   April through September, 2016.  They easily could have

22   developed and raised this -- these two new theories when they

23   served their amended infringement contentions back in

24   September of 2016.

25             No question they deliberately waited and delayed in

1   doing that so their contention that it's our software and we

2   should have known what it does belies the fact that its their

3   burden with the information that we have produced to them to

4   do a requisite analysis which they did with their expert and

5   they did not -- and had ample opportunity to and did not

6   supplement by September, 2016.

7           They themselves as you saw identified these as three

8   separate theories and it's crystal clear that that is their

9   perception now --

10          THE COURT:   Three separate --

11          MR. CHRISTIE:   -- and they're trying to justify it

12  out.

13          THE COURT:   -- interrelated theories.

14          MR. CHRISTIE:   They're trying to justify after the

15  fact that this is all interrelated and it's one big happy

16  harmonious world, but again, it's three different theories as

17  you saw from our slide in which we said -- we showed that they

18  were nowhere -- that it was bullet -- bullet-pointed as three

19  distinct theories.

20          But more importantly, Judge, you know, I want to

21  take issue with what you see if you want the screen which is

22  their slide 13.   This is ostensibly what they produced to us

23  by way of their infringement contentions at page 38, but

24  that's not accurate.

25          That supplementation with regard to the circles with

1    the explanatory text was not there.  And for the Court's

2    edification, I'll be happy to hand up what we received --

3              THE COURT:  I'll take your word for it.

4              MR. CHRISTIE:  This is page 38.  There are no red

5    circles.  There are no verbal annotations of any sort.  It's

6    disingenuous for them to suggest that that is what we received

7    by way of their infringement contentions to show us about the

8    aero-triangulation and ground point theories.

9              It wasn't.  It was two side by side images which

10   we've disclosed to the Court, and there was no way that we

11   were able to -- and as Your Honor found on May 1 with their

12   deficiencies, able to understand in any respect what they were

13   contending.

14             But we do know, Judge, what they said in their

15   motion to compel brief, and I'll hark back and finish with

16   that.  In their motion to compel brief they said Judge, it's

17   there unambiguously, and what's there unambiguously is the

18   correlation of the roof drawing features.

19             That's what they put us on notice of, that was their

20   correlation theory.  They set it forth clearly and succinctly

21   and now they're trying to expand it after the fact, after they

22   had access to our source code and didn't amend the

23   infringement contentions in September, 2016 which they easily

24   could have done.  Thank you.

25             THE COURT:  Okay.  Going to the next issue which is

1    the source code.  Defendant, I just have a question or two.

2                MR. CHRISTIE:  Yes, Judge.

3                THE COURT:  I'm correct, aren't I, that your

4    position is that after May 1st, May 2nd, 2017 the plaintiffs

5    went back and looked for more -- looked at the source code

6    again --

7                MR. CHRISTIE:  Yes.

8                THE COURT:  -- and printed out 228 pages.

9                MR. CHRISTIE:  Correct, 228 additional pages, yes.

10               THE COURT:  And am I correct that it's your position

11   that you want to strike citations to any of the source code on

12   those 228 pages?

13               MR. CHRISTIE:  That is correct, Judge.

14               THE COURT:  The 228 pages that were printed between

15   May 11, 2017 and June 2nd, 2017, were they available when the

16   plaintiffs reviewed the source code from April 28th, 2016 to

17   August 5th, 2016?

18               MR. CHRISTIE:  Unequivocally, yes.

19               THE COURT:  That's -- those are the questions that I

20   had.

21               MR. CHRISTIE:  And further to your point, Judge,

22   they already reviewed and spent significant time -- their

23   source code expert between April and September, 2016 reviewing

24   code, printing out -- they had already printed out 648 pages

25   so, you know, at the end of the day, they had already reviewed

1    and printed out a significant number of pages.

2          There was no need for them to go back and it is

3    unfortunately their lack of diligence in doing so, but to the

4    point, Judge, there's one slide we have I just want to draw

5    your attention to to show that starkness of what we were

6    dealing with.  Their September, 2016 contentions, 463 pages,

7    958 citations, but only to their documents.

8          Then in June when they finally get religion and do

9    it their way, perhaps not the right way but their way, we are

10   inundated with a total of over 1,800 pages of contentions --

11   1,800 pages.  And there's, you know, a number of citations to

12   their documents but for the first time --

13         THE COURT:  So what happens to those 1,871 pages if

14   the Court grants your request to strike the citations to the

15   source code --

16         MR. CHRISTIE:  Yes.

17         THE COURT:  -- do they come out?

18         MR. CHRISTIE:  I think they are -- I think they come

19   out of the case.  I don't know that we necessarily have to

20   remove them physically, but they --

21         THE COURT:  I mean, I guess what I'm asking is those

22   1,871 pages of contentions --

23         MR. CHRISTIE:  Yes.

24         THE COURT:  -- do they have any value if there's no

25   citations to source code in them?

1        MR. CHRISTIE:  There's -- well, you know, I'm not

2    quite sure how they would view that and therefore answer the

3    question but our perception is that the additional citations

4    that they have raised, you know, largely deal with the

5    impermissible amendment.

6        THE COURT:  Okay.  But you're not -- you're not

7    seeking to strike the citations to the source code that were

8    produced before May 1st?

9        MR. CHRISTIE:  We think it would be warranted but we

10   are not specifically seeking that -- that remedy from the

11   Court, correct.

12       THE COURT:  Okay.  Let's hear from plaintiffs.  I

13   guess my question to you is, plaintiffs, to cut to the chase,

14   if these 228 pages of contentions that you printed after May

15   1st were important to your case, you had visited wherever the

16   source code was according to my count 27 separate times before

17   May 1st, so why couldn't you get these 228 pages earlier and

18   does that show lack of diligence?  If they're so important to

19   cite in your June 27 supplement, why didn't you get them

20   before May 1st?

21       MR. CUTRI:  So, Your Honor, we are citing everything

22   that we think may end up being relevant in this case with

23   respect to source code.  I don't think it would be accurate to

24   describe this as everything that we know is important.  Your

25   Honor's instruction at the last hearing was to put as much out

Cutri - Argument                                        58

1   there as possible and I think this is a supplementation

2   question rather than --

3               THE COURT:  No, it's not.

4               MR. CUTRI:  Oh.

5               THE COURT:  No, it's not.  I don't think it is --

6               MR. CUTRI:  Okay, Your Honor --

7               THE COURT:  -- because it's a supplementation

8   question as to a source code you already had in your

9   possession.  I agree with that and defendants concede that so

10  we don't have to argue that point.  But why should the Court

11  permit you to go back and take a redo because you served

12  inadequate contentions in December, of '16?

13              MR. CUTRI:  So, Your Honor, I don't -- I think what

14  we -- the way we would view it is this is additional evidence

15  in support of existing theories --

16              THE COURT:  So why didn't you get it before May 1st?

17              MR. CUTRI:  Because we are trying to put everything

18  that's possible out --

19              THE COURT:  Well, shouldn't you have done that

20  before May 1st?

21              MR. CUTRI:  Well, Your Honor --

22              THE COURT:  Does it take a Court to tell you to do

23  that?

24              MR. CUTRI:  Your Honor, we understand that -- we

25  certainly understand that that's the preferred procedure now

Cutri - Argument                                    59

1    and we will -- and we will --

2              THE COURT:  Did you not understand that when you

3    came into this case?

4              MR. CUTRI:  Well, Your Honor, to be clear, we did

5    not want a --

6              THE COURT:  You've got to be kidding me.

7              MR. CUTRI:  To be --

8              THE COURT:  You've got to be kidding me that you're

9    going to deny that.

10             MR. CUTRI:  No, Your Honor, we understand that we

11   have an obligation to put our cards on the table --

12             THE COURT:  In this patent world --

13             MR. CUTRI:  -- as much as we can.

14             THE COURT:  -- do you think you get redos?

15             MR. CUTRI:  No, Your Honor, we don't, we don't.  We

16   don't.

17             THE COURT:  So let's not go there, counsel.

18             MR. CUTRI:  No, and I -- I didn't mean to suggest

19   that we didn't understand Your Honor's position and the court

20   procedures --

21             THE COURT:  I don't think --

22             MR. CUTRI:  -- and I apologize.

23             THE COURT:  -- you meant that because it's --

24             MR. CUTRI:  I apologize for that.

25             THE COURT:  -- it's just wrong.

Cutri - Argument                                    60

1          MR. CUTRI:  I apologize for that, Your Honor.  What

2     we are trying to convey is when the defendants came to us and

3     when the defendants came to your Court -- came to Your Honor,

4     what they said is we want the additional detail that's in the

5     source code and anything that you may be relying on, you know,

6     potentially relying on put in there.

7          And so Your Honor's point about what would happen if

8     you were to grant this, one thing that could theoretically

9     happen is when we take the deposition of their source code --

10    the person who they designated on source code on October 24th

11    and 25th, Mr. Lewis (phonetic), if we put source code in front

12    of him that we either -- you know, whenever we printed it out

13    and he acknowledges at that point well no, that's not the

14    right source code, it's this other piece of source code, or if

15    he acknowledges that you have got the right source code or if

16    he says no, it's actually something else, then that is

17    potentially an issue.  But I -- I can see Your Honor shaking

18    your head so I'm not going to go there --

19          THE COURT:  It doesn't work like that, counsel.

20          MR. CUTRI:  But --

21          THE COURT:  You --

22          MR. CUTRI:  -- Your Honor --

23          THE COURT:  You were at wherever the source code was

24    27 separate days --

25          MR. CUTRI:  Right.

1          THE COURT:  -- 27 separate days.  You had all the

2    opportunity in the world to get whatever source code you

3    wanted.  Why should you get a redo?  And if the Court grants

4    you the redo, am I incentivizing parties not to do a complete

5    search of the source code when they have an opportunity to do

6    it, that they should wait for the other side to file a motion

7    to compel and the Court says you supplement and then days

8    before the Markman hearing we have this uncertainty about

9    what's in and what's not in the case?

10          MR. CUTRI:  Your Honor, I think if we're doing the

11   amendment analysis we start with diligence and we -- then we

12   look at prejudice, and I think that we were reasonably

13   diligent up until -- up until the time that we became on

14   notice that the -- you know, that we had to put everything in

15   and I -- and I think that, Your Honor -- I don't want to go

16   back to that, Your Honor, but to the point --

17          THE COURT:  Don't go there, counsel, because you

18   cannot --

19          MR. CUTRI:  Your Honor, let me --

20          THE COURT:  -- you cannot stand there and say to

21   this Court that in this patent world you did not know that you

22   had to serve fulsome contentions, that you had to be diligent,

23   that you had to crystalize your theories early and the Court's

24   distaste for this "shifting sands" approach.  You cannot stand

25   there and say that.  You know that and I know that.

1           MR. CUTRI:  I agree, Your Honor, we're not -- we're

2    not saying that.  We -- this source code is largely about the

3    mass production tool that was produced late so if we're going

4    to start with diligence, we would start when they produce that

5    I believe in the August time frame -- August of 2016.

6           And then the -- so when Mr. Christie said that we

7    had it since April, I don't think that's correct.  I think we

8    did not get the mass production tool until later and we

9    started doing that as --

10          THE COURT:  When do you say it was first available?

11          MR. CUTRI:  I would have to go back and look.  I

12   believe it was -- if it wasn't early August, it was the end of

13   July.

14          THE COURT:  Approximately August, '16?

15          MR. CUTRI:  Yes.  And then we -- then we were

16   analyzing an entirely new product at that point.  That was an

17   entirely new product.  And by the way, Your Honor, it's --

18          THE COURT:  So you waited from August, '16 to May,

19   2017 to start looking at this source code?

20          MR. CUTRI:  No, we were -- we were looking at the

21   source code during that time frame and we prepared our

22   infringement contentions --

23          THE COURT:  That wasn't on the logs.

24          MR. CUTRI:  I believe that we -- after we got the

25   source code analyst analysis in advance -- I believe in

Cutri - Argument                                  63

1    advance of adding the mass production tool, I think we did in

2    fact look at source code.  I could go back and check but I

3    think --

4            THE COURT:  Well, the exhibit is in the record.  The

5    record shows that you, according to my count, looked at the

6    source code 27 times from April 28, 2016 to August 5th, 2016.

7    You didn't go back to review the source code until May 11th,

8    2017 to June 2nd, 2017 on six days, so there's a gap between

9    August 5th and May 11th.

10           MR. CUTRI:  Right, Your Honor.  So when we get the

11   source code I believe it might have been -- if it wasn't the

12   end of July, it might have been the middle of July, we

13   immediately went to the source code room and started analyzing

14   that so that we could put it in -- in our supplement that was

15   allowed in November.

16           And so our practice is to get the source code and to

17   try to -- you know, review it once it's been printed out and

18   we sent attorneys and an expert to go and do that and we

19   prepared supplemental contentions on that issue and we

20   provided them to the defendants.

21           They did not agree to that supplementation and it

22   was allowed -- ordered by the Court because it had been

23   produced late on November 4th, and so then the question

24   becomes when they raise the issue in December and they say,

25   you know, we still don't think you're sufficient and then from

Cutri - Argument                        64

1    there you can measure diligence according to what we talked

2    about previously.

3         We had, you know, additional document production, we

4    had claim construction that we were working on, we had the

5    joint claim construction statement that comes in in February,

6    we have a stay of the case and then we ultimately have Your

7    Honor's ruling and I believe date to put that in.

8         And I would add with respect to prejudice, I don't

9    think that there's been a showing of prejudice with respect to

10   any of the issues in this case.  This is additional evidence

11   and what we understood the Court to be saying on May 1st is

12   that additional evidence should be added in so the case can be

13   decided on the merits, and that's what we were trying to do in

14   trying to get this evidence in on the merits.

15        And there hasn't been any assertion that because of

16   the source code, that they have any prejudice with respect to

17   claim construction for with understanding what our positions

18   are, they understand the source code and we've supplied it and

19   so we don't think that -- we don't think there's been any

20   showing of prejudice at this --

21        THE COURT:  Isn't the law that I don't get to the

22   prejudice analysis unless a party satisfies the diligence

23   prong?

24        MR. CUTRI:  I believe that is stated in some of Your

25   Honor's cases, yes.

1          THE COURT:  Okay.  Thank you.  All right, let's move

2     on to the next issue, the priority date -- invention date and

3     I have a couple of questions here that hopefully will clarify

4     it because I think we can divide this up.  First dealing with

5     the priority date issue, defendant, is there any priority date

6     issue other than the fact that you're alleging that they can't

7     assert alternative dates?

8          MR. CHRISTIE:  Yeah, just let me be clear if it's

9     not entirely clear.  They, under Federal Circuit law,

10    unfortunately are permitted to assert alternative dates for

11    priority.  The gravamen of the problem with us is the shifting

12    sands issue which Your Honor has acknowledged.  They vacillate

13    back and forth.  Initially in December --

14         THE COURT:  No, before we get there --

15         MR. CHRISTIE:  Okay.

16         THE COURT:  -- I just want to know if that's the

17    only priority date issue.  On the invention dates --

18         MR. CHRISTIE:  Yes.

19         THE COURT:  -- you're saying they changed them.  Are

20    you on the priority date issue --

21         MR. CHRISTIE:  Yes.

22         THE COURT:  -- are we only dealing with this

23    alternative date issue?  Is that the only issue we have to

24    deal with with regard to the priority date?

25         MR. CHRISTIE:  Not entirely, Judge.  I'll set forth

1    in a few sentences the issue.  The issue is that they have

2    also vacillated and changed their position on priority dates.

3    They start off in December of 2017 with an alternative --

4    April, 2017 -- I'm sorry, April, 2007 or April, 2008.

5              THE COURT:  Right.

6              MR. CHRISTIE:  But critically in September, 2016

7    when they amended, they picked April, 2007.  April, 2007 is

8    the priority date, unequivocal, no alternative, that's it.

9    Then --

10             THE COURT:  Am I --

11             MR. CHRISTIE:  Sorry.

12             THE COURT:  Sorry, I don't mean to interrupt because

13   I want to get to the crux of this, I thought from plaintiff's

14   papers they were taking the position that this never changed,

15   that it was the same dates, 2007, 2008 in their preliminary

16   infringement contentions, their first amended or supplemental

17   contentions and their second amended contentions, are you

18   denying that that's in fact the case?

19             MR. CHRISTIE:  I'm saying that that's not entirely

20   accurate.  What I'm saying is that their position on priority

21   dates has not remained the same in each of their three efforts

22   at --

23             THE COURT:  That's not what they say though.

24             MR. CHRISTIE:  Okay, I understand that and that's --

25             THE COURT:  Am I right, plaintiffs?

1          MR. RUIZ:  Yeah, it --

2          THE COURT:  Do you say it hasn't changed?

3          MR. RUIZ:  -- it hasn't changed.

4          THE COURT:  Okay.

5          MR. CHRISTIE:  Okay, and I'll put it quickly in a

6     nutshell, Judge.

7          (Transcriber change)

8          THE COURT:  Where -- well, what are you relying on

9     to say that there was one date that's different from the

10    preliminary infringement contentions?

11         MR. CHRISTIE:  Judge, specifically with regard to

12    their response to Interrogatory number 7, which we had to

13    fight them on as you know, you know, we first -- initially, in

14    their December 2015 contentions they said "priorities in the

15    alternative."  It's at least as early as April 2007, you know,

16    but it could be April 2008.

17         However, I'm looking at the issue with regard to

18    their first amended, which was in September 2016, and they are

19    referencing, it's not equivocal, it's April 2007.

20         THE COURT:  September 17?  I'm sorry, September --

21         MR. CHRISTIE:  Their September 2016 first amendment.

22         THE COURT:  What exhibit is that?

23         MR. CHRISTIE:  It is Exhibit 14 at -- at 3, Judge.

24         THE COURT:  Let's take a look.

25         MR. CHRISTIE:  Sure.

1          THE COURT:  Oh, you're referring to the answers to

2     interrogatories?

3          MR. CUTRI:  Yes.

4          THE COURT:  Okay.  The invention was reduced to

5     practice at least as early as April 17, 2007; is that what

6     you're relying on?

7          MR. CUTRI:  Correct, Judge.  Yes.

8          THE COURT:  Okay.

9          MR. CHRISTIE:  And then --

10         THE COURT:  But do you acknowledge their contentions

11    didn't change?

12         MR. CHRISTIE:  Acknowledge that their contentions

13    didn't change.  Just like you've taken us to task with regard

14    to the sufficiency of our interrogatory responses, Judge, you

15    know, their interrogatory responses tell a story.  They were

16    under oath.  They were required to tell us what their priority

17    dates were, and they said April 2007.

18         THE COURT:  But I have a feeling -- I could be wrong

19    -- that when they stand up, they're going to say that all we

20    were saying was it was at least as early as April 17, 2007.

21    We were not excluding 2008.  I have a feeling they may argue

22    that.

23         MR. CHRISTIE:  That may well be what they argue,

24    Judge, but, again, you know, as Your Honor has acknowledged

25    with regard to an earlier issue in this argument, you know, we

Christie - Argument                    69

1   asked for their earliest priority date by way of the

2   interrogatory.  We had to fight them to get it.

3               THE COURT:  You got it.

4               MR. CHRISTIE:  Right.

5               THE COURT:  April 17, 2007.

6               MR. CHRISTIE:  But -- but they say at least as

7   early.  You know, maybe it's earlier than that, right?  How

8   are we to know, Judge?

9               THE COURT:  Well, I guess that's what depositions

10  are for.

11              MR. CHRISTIE:  Understood.

12              THE COURT:  That's why you get the hourly fees you

13  get, because you had answers like that.

14              MR. CHRISTIE:  Thank you, Judge.  So I guess our

15  larger point is they have not been consistent on that issue

16  with regard to their representations and their contentions and

17  in their sworn interrogatories, as we know from our efforts to

18  fight them to get a final response as to interrogatory number

19  7.  So to the extent that it was not clear, that is the issue

20  with regard to priority dates, Judge.

21              THE COURT:  All right.  Let's go to invention.

22              MR. CHRISTIE:  Yes.

23              THE COURT:  I understand -- I understood your

24  position to be that plaintiff is asserting new invention dates

25  for all seven patents?

1          MR. CHRISTIE:  Yes, that is correct.

2          THE COURT:  Yes.  I think the plaintiff says that's

3    incorrect, so we'll have to get that straightened out.  All

4    right?  What is the change in plaintiff's conception story and

5    reduction to practice story that you allege was made?

6          MR. CHRISTIE:  Let me turn your attention to slide

7    25, Judge.  We've, you know, been trying to get from them this

8    issue of the invention date, the reduction to practice and

9    conception dates.  And, you know, it's been like pulling

10   teeth, unfortunately.  We -- they were required --

11         THE COURT:  Well, you got it now.

12         MR. CHRISTIE:  Yes, Judge, we did get it now.  But

13   again, you know, under the local rules, as Your Honor knows,

14   they're required to give us this information up front.

15         THE COURT:  Yes, indeed.

16         MR. CHRISTIE:  And they didn't.  And they were

17   hiding the ball and not being responsive, and, you know,

18   finally, when pressed, we had to threaten to move to compel in

19   order to get this information, no less, Judge.

20         THE COURT:  Can I predict they're going to disagree

21   with you?

22         MR. CHRISTIE:  You can -- your predictions are

23   generally prescient, Judge, and they may well say that, but,

24   you know -- and then they had to go on their -- their

25   expedition to figure out what their invention dates are by

1   going to various unknown third parties.  They --

2              THE COURT:  Question for you.  Is it your -- I guess

3   I should have asked this.  I'm going to ask them, too.  Is it

4   your position that if you're going to change an invention

5   date, you must do it by a motion to amend contentions rather

6   than supplementing interrogatories?

7              MR. CHRISTIE:  Yes.

8              THE COURT:  Do you agree or disagree with that,

9   plaintiffs?

10             MR. CUTRI:  We disagree with that, Your Honor, for

11  conception reduction to practice dates as distinguished from

12  priority dates.

13             THE COURT:  Got it.

14             MR. CHRISTIE:  So the point, Judge, is that not only

15  do we have the local rules in our corner, but we had, as you

16  know, a specific interrogatory, you know, saying what is your

17  earliest conception and reduction to practice date.  And they

18  -- they fought us on it, fought us on it, fought us on it,

19  and, you know, ultimately we -- we had to threaten to move to

20  compel in September 2016.

21             And, you know, then, of course, the Sungevity issue

22  comes up.  So what this is, Judge, is a transparent effort by

23  them to try and address this Sungevity reference, which is now

24  part of the case, by back-pedaling and scrambling in order to

25  try and come out from under that reference because --

1          THE COURT:  Well, let's assume that's true --

2          MR. CHRISTIE:  Yes.

3          THE COURT:  -- just for the sake of argument.

4          MR. CHRISTIE:  Yes.

5          THE COURT:  Didn't this Court say when that

6  amendment was granted that the Court was not going to let

7  plaintiffs be prejudiced by that amendment?

8          MR. CHRISTIE:  You're absolutely right, Judge.  And

9  you know what, they weren't prejudiced by that amendment.  And

10  the reason we know that is because they take issue with the

11  fact time and again that the Sungevity reference is indicated

12  on the face of each of the asserted patents, and that we,

13  defendants, should then therefore have known about it.

14          Well, Judge, what about them?  It's on their

15  patents.  It's on the face of each of their asserted patents.

16  They knew about it when they were prosecuting those patents.

17  For them to point the finger at us in that regard is

18  ridiculous.  Of course they knew, and there was no prejudice.

19          THE COURT:  It just shows to go you that depending

20  on whose ox is being gored, right?

21          MR. CHRISTIE:  Indeed, Judge.  There are a lot of

22  oxes being gored.

23          THE COURT:  That affects what position you take in

24  the case, right?

25          MR. CHRISTIE:  That is absolutely true.  So there's

1    absolutely no prejudice, as they themselves acknowledge.

2    Their face of their patents reference this -- this Sungevity.

3    They knew about it.  They had to argue over it in order to get

4    the 436 patent allowed.  So, you know, there is no prejudice.

5    Therefore, they knew about it, and their efforts here are an

6    effort now, oh -- oh, no, defendants figured out Sungevity,

7    now we're really in trouble.  We got to do something.  We got

8    to scramble.  And that's what this is all about.  They're

9    trying to scramble --

10             THE COURT:  So what are you saying?  The Court

11   said --

12             MR. CHRISTIE: Yes.

13             THE COURT:  -- I'm going to permit the amendment,

14   but I'm not going to let plaintiffs be prejudiced by it.

15             MR. CHRISTIE:  Right.

16             THE COURT:  Are you saying, what, that they asserted

17   this too late?  Is that what you're argument is?

18             MR. CHRISTIE:  I'm saying that what they are now

19   trying to do, with Sungevity in the picture, is scramble to

20   change their invention dates when they knew all about

21   Sungevity years earlier, and so that there is no prejudice to

22   them.

23             THE COURT:  But it wasn't in the case.

24             MR. CHRISTIE:  It was not in the case.

25             THE COURT:  Okay.

1          MR. CHRISTIE:  Only by virtue of the fact that we

2    hadn't picked up on it quite yet.

3          THE COURT:  Okay.  So it wasn't in the case?

4          MR. CHRISTIE:  Yes.

5          THE COURT:  And now it's in the case?

6          MR. CHRISTIE:  Yes.

7          THE COURT:  And the Court said, now it's in the

8    case, plaintiffs, I'm not going to let you be prejudiced.  Why

9    shouldn't I let them supplement or amend if it's their

10   position that they're changing something, which I don't think

11   they're going to say they are, because of the Sungevity

12   reference being included in the case?

13         MR. CHRISTIE:  I mean, I guess it comes down to,

14   Judge, what we have in the slide.  We're dealing with their

15   inventor notebooks.  And their inventor notebooks are clear.

16   You know, they had an opportunity to address this issue by way

17   of local rule deadlines and requirements.  They didn't.

18   They've added all this new material.  They professed that they

19   had to go on a third-party fishing expedition to figure out

20   when their invention dates were.  You know, it's ludicrous for

21   them to say, oh, two years after we filed suit we're still

22   trying to figure out the invention dates.  Nonsense.  Your

23   Honor knows this is stuff that should happen up front and be

24   produced early with regard to the local rules.

25         THE COURT:  And the prejudice to defendants is what,

 1   because you did your prior art search already?

 2              MR. CHRISTIE:  We did our prior art search, we found

 3   the Sungevity reference.  It's right on point.  They're

 4   nervous about, and they are trying to swear behind it and to

 5   get -- get out from under it.

 6              THE COURT:  So now you're going to have to do if --

 7   if, capital I, capital F, IF the Court permits the

 8   supplement/amendment to go forward on the invention dates,

 9   what, you're going to have to do a new prior art search?

10              MR. CHRISTIE:  We're going to have to do a new prior

11   art search, and, you know, it may, you know, negatively affect

12   our positions on some of our non-infringement contentions that

13   we would have to take a look at.

14              THE COURT:  That's the prejudice, you're going to do

15   a new prior art search?

16              MR. CHRISTIE:  Among other things, Judge.  But

17   again, the point is also the timing.  This is a week before

18   the Markman hearing.  They're, you know, raising this issue,

19   supplementing, supplementing, supplementing, giving more and

20   more information to us in July.  We're -- we're having the

21   hearing now and trying to resolve this issue a week before the

22   Markman hearing.  And, you know, then we're thrust to the

23   wolves with regard to Markman arguments, when they knew this

24   information earlier.  They could have raised it earlier.

25              Sungevity was within their -- their sights years

1    earlier, and, you know, the invention dates are what they are.

2    They keep changing them, Judge.  They keep making these new

3    modifications and revisions, and it's patently obvious as to

4    why they're doing it.  It's because of Sungevity.  They're

5    scrambling, they're nervous, and it's inuring to our

6    detriment.  We had reasonable reliance upon, you know, the

7    earlier invention dates, and now they're trying to scramble us

8    and make us have a different -- take a different position and

9    affect theories of the case, and it's improper and --

10             THE COURT:  Where do I look --

11             MR. CHRISTIE: Yes.

12             THE COURT:  -- to substantiate your contention that

13   they changed the invention dates?

14             MR. CHRISTIE:  Well, Judge, we -- there was -- as

15   you can see from the slide that's on the screen, there were

16   two supplemental revisions, July 12 and July 19 of this year.

17   There was a --

18             THE COURT:  There's no question that there was a

19   change between July 12 and July 19th; understood.

20             MR. CHRISTIE:  They added -- they added some -- some

21   additional -- right.

22             THE COURT:  Okay.  So --

23             MR. CHRISTIE:  And --

24             THE COURT:  -- let's take July -- what is listed

25   before that they -- in your view they changed?  Interrogatory

1    number 7, the answer?

2            MR. CHRISTIE:  It's -- right.  Right.  You know, by

3    default we can look to interrogatory number 7.  They had --

4    you know, we kept pressing them for a response.  They agreed

5    -- if you can look at the bottom of slide 24, you know, they

6    finally agreed in September of 2016, fine, you know, you've

7    battered us enough, we'll finally supplement interrogatory

8    number 7.

9            And then the Sungevity issue came up and that threw

10   them into a tailspin.  And, you know, it's -- you know, then

11   they're scrambling to try and finally honor the commitment to

12   supplement and, you know, address the Sungevity issue in the

13   process.

14           So, you know, what they're doing is they're changing

15   the reduction to practice dates and professing that they

16   didn't know about this.  You know, this is basic concept,

17   Judge, you know that, patent cases.  You should know this when

18   you file suit, when was the reduction to practice, when was

19   the conception of your claimed inventions.  And, you know, for

20   them two years after the fact to still not know and have to go

21   out on a -- an expedition involving talking to third parties,

22   you know, smacks of lack of due diligence.  Thank you.

23           THE COURT:  Real quickly, plaintiffs, on the

24   invention date issue.

25           MR. CUTRI:  Your Honor, Mr. Alper is going to

1    address this issue as to --

2         MR. ALPER:  I'm going to address the invention date

3    issue, and Mr. Brown can answer any questions on the priority

4    date issue.  I'm happy to proceed on invention dates if you'd

5    like.

6         So there are a couple of issues that I'd like to

7    address, Your Honor.  The first is whether we made a change,

8    and then what that -- the impact of that is on local rule

9    compliance and supplementation of interrogatory.  And then,

10   lastly, to address how that relates to the addition of

11   Sungevity and what happened at our hearing in May.

12        So, first of all, we have not changed dates.  The --

13   we made a production of documents in December 2015.  It was

14   actually before they served their interrogatory on us.  And

15   that involved  conception documents per the local Rule 3.2(b)

16   that occurred prior to the priority date or the application

17   date, whichever is earlier.  And those are still materials

18   that we are relying on to pinpoint the conception --

19   conception dates -- invention date, excuse me, for the patent.

20        In September of 2016, by an agreement that counsel

21   just showed you was filed with the Court, we supplemented our

22   interrogatory response to -- I'm sorry, let me start one step

23   back.  Initially we referred by Federal Rule of Civil

24   Procedure 33(d) to the documents that we had produced

25   regarding conception reduction to practice.  By agreement of

1    the parties we were asked to provide a supplemental response

2    to that interrogatory and we did.

3             And at that point we said that the -- the -- we've

4    been using the 436 patent as representative.  I think both

5    parties in the briefing using the 436 patent as representative

6    of the other responses.  I will for purposes of my discussion

7    here.  At that point we said that the conception occurred in

8    the second half of 2006 and we -- because the interrogatory

9    asked for the earliest conception reduction to practice date

10   we identified the April 2007 date, which was a constructive

11   reduction to practice at that early date.

12            And, then we cited documents that related to those

13   topics and also diligence.  Those are -- we are not changing

14   from those dates.  When it came to -- after Sungevity was

15   allowed in the case, we first provided our local rule in our

16   validity contentions in response to Sungevity, where we

17   explained that one of our responses was going to be on which

18   came first.

19            And, then in response to further correspondence from

20   the plain -- defendants, excuse me, we provided these further

21   supplements in July on the interrogatories related to

22   invention dates.  And, I want to be very clear what we did

23   there so Your Honor can evaluate it, because we didn't change

24   the dates in the way that they are suggesting.

25            So in the July 2017 supplements, which by the way,

Alper - Argument                              80

1    they came after Sungevity so I'm not going to say it's only

2    because they were just asking us to put more detail in place.

3    They obviously wanted more detail.  We obviously had Sungevity

4    in view.

5          But we did a couple things.  If you recall I said we

6    previously said that conception occurred in the second half of

7    2016.  They asked for a specific date, we gave them a specific

8    date.  It related to a notebook that we had produced in

9    December 2015.  It's in the notebook.  I can show you the

10   slide of the notebook pages and so forth.

11         So we picked a particular date within the range that

12   we had previously provided them on that.  We then, in response

13   to their request, gave additional details about the story of

14   diligence, essentially like what happened along the way.  We

15   are -- we have never changed our reduction -- that earliest

16   reduction to practice date, although in connection with

17   providing more of the story, we identified a January 2008

18   date, which is later in time, as the time that the product was

19   first final -- shipped, basically, finalized and shipped, and

20   we put that in there.

21         Now, the interrogatory itself doesn't call for that

22   date because it only asked for the earliest date that we're

23   claiming.  But in response to their request, for obvious

24   reasons we wanted to put -- you know, put that in there.  That

25   date is derived from materials that were produced back in

1    December of 2015 in accordance with our local rule

2    obligations.  And, it was something that was -- those

3    materials were acknowledged in other circumstances in this

4    case over the course of 2016, including the Section 101

5    invalidity motion to dismiss that was evaluated back in March

6    2016.

7         In any event, to this day we are still claiming the

8    same conception date, although we pinpointed it within that

9    range, and we are claiming the same constructive reduction to

10   practice date, and then we've given an even later actual

11   reduction to practice date.  So you might ask, what in July,

12   other than filling in additional details, was new.  And, I

13   want to be very clear about that as well, Your Honor, unless

14   -- I can provide that additional detail if you'd like.

15        We, subsequent to Sungevity being allowed in the

16   case, we went back and looked to make sure whether there is

17   additional diligence materials.  By and large, these are all

18   in 2008 and are after the earlier -- the dates that you'd be

19   producing materials for under the local rules, because those

20   are -- the local rules regard materials prior to the priority

21   date or the application date, whichever is earlier.

22        And, so there are some additional diligence

23   materials and then there is a small amount of source code

24   files that the company and the inventor did not think were in

25   existence anymore at the time that we made the original

1    collection that show our additional corroboration to some of

2    the conception.

3              THE COURT: Good question.  Is this source code the

4    initial source code you obtained or the subsequent 228 pages?

5              MR. ALPER: This is separate.  This would be Eagle

6    View's or source code that the inventor had that --

7    we're talking about that's Xactware source code so this is

8    separate.  Does that make sense, Your Honor?

9              THE COURT: Yes, I got it.

10             MR. ALPER: Okay.  And, so the real change, if you

11   will, Your Honor, is the addition of references and the

12   production of these additional diligence materials and this

13   small amount of additional source code which corroborates the

14   conception dates and of course the notebooks and so forth.

15             And, so we -- so where does that leave us?  And,

16   I'll just sum it up.

17             THE COURT: In your view this is a supplement not an

18   amendment?

19             MR. ALPER: Yes.  And, so that's what I'll get to

20   right.  I'll sum it all up.  So, we are not changing our

21   dates.  We disagree with that.  And, secondly, the things that

22   we are adding are by the way of supplement.  They weren't

23   called for by the local rule and we are just focusing on the

24   interrogatory at this point.

25             And, given -- there's two things I want to say about

1    that.  Given the nature of these materials they are in the

2    form of a supplement because they are filling in additional --

3    they are supplemental to the, you know, our, what would

4    ultimately be, you could call, our contentions on invention

5    dates, right.  That's what we put in the interrogatories that

6    asked for that.  We filled that in.

7            And, they are particularly appropriate given -- this

8    is where I get to the Sungevity situation because as Your

9    Honor noted a moment ago, in order to -- a very important

10   argument to defendants in introducing Sungevity was that by

11   doing it we would have an opportunity -- a full opportunity to

12   respond.  You know, of course Your Honor acknowledged that in

13   your order.

14           And, there is something very important about

15   Sungevity that I want to note and then we can evaluate whether

16   this is an acceptable response.  And, that is, the defendants

17   contend that Sungevity is essentially identical to at least

18   some or one of the patents in suit.  But the reason for that

19   is they -- is that when Sungevity was prosecuted they actually

20   saw the Eagle View patents and copied the claims from the

21   Eagle View patents.

22           So according to defendants, whether these things

23   have the same disclosure rights, Sungevity as prior art and

24   the 436 claims is a fait accompli.  It's a decided issue

25   because they are similar in that regard.  And, so when -- a

1  primary issue when it comes to Sungevity is going to be who is

2  first between Sungevity and the Eagle View patents.  And, so

3  when defendants are saying back a number of months ago that

4  we'll have a full opportunity to respond, that's the primary

5  response and so we think it would be very unfair at this point

6  and we will be highly prejudiced if we weren't able to make

7  that response.

8           All of that, of course, assumes that we are making a

9  change which we really aren't.

10          Thank you.

11          THE COURT: Counsel, if you're going to be more than

12 a minute or two, I just have to take a brief break to do

13 something.

14          COUNSEL: Oh, yes, sure.  Do you mind if we take a

15 break Judge and --

16          THE COURT: Yes, let's take a -- I have to take a

17 short break and then I'll be back and we'll finish up.

18          COUNSEL: Thank you.

19          (Recess at 3:58 to 4:29 p.m.)

20          COURTROOM DEPUTY:  All rise.

21          THE COURT:  Back on the record.  I think, defendant,

22 we're up to you.

23          MR. ALPER:  Your Honor, I'm sorry to interrupt.

24 Just one thing that I realized over the break that I hadn't

25 addressed, if I may for 30 seconds.  You asked a question of

1    defendants about prejudice to them, and defendants said that

2    they would have to do a new invalidity search and then said

3    the timing of it all, I think I have in my notes.  But just

4    very briefly, as I said, we haven't changed our dates and so

5    we don't think that there would be prejudice, but I think the

6    important thing that we -- I wanted to put out there is they

7    have other prior art in the case, and you probably saw this in

8    our briefing, that all the rest of the prior art is earlier,

9    and it's so early that it avoids any issue with respect to the

10   invention date.

11          So the prior art they were previously relying on and

12   have been relying on for the entirety of the case and clearly

13   was the subject of searches --

14          THE COURT: So they don't have to do another search.

15          MR. ALPER: That's my point.  Thank you, Your Honor.

16          THE COURT: See he -- plaintiff said you don't have

17   to do anymore searching defendant.

18          MR. CHRISTIE: Well, it's wonderful that he's

19   directing how we can conduct our validity strategy and perhaps

20   I should have consulted him earlier, but I think we beg to

21   differ.

22          THE COURT: Now, now, now.

23          MR. CHRISTIE: I know.  I'm sorry, Judge, it's late,

24   but thank you for being accommodating.  You've spent a lot of

25   time with us and I will try to be brief because you've

1    indulged us.

2           A couple key points, Judge.  Number one, there has

3    been changes in the reduction to practice dates.  I won't

4    belabor it but I will point Your Honor to Exhibit 11, which is

5    the second supplemental response to interrogatory number 7,

6    which is a whopping 65 pages.

7           Without going into excruciating detail, you know,

8    please take a look at that.

9           THE COURT: This was served what date?

10          MR. CHRISTIE: It was July 12, 2017, Judge.  That

11   will dictate and show you that there has been changes in the

12   production to practice dates.  But, you know, the points that

13   I quickly want to make are, the issue is two sided here.

14   Local rule based as well as interrogatory based.

15          Your Honor is intimately aware of the local rules

16   and the requirement that we need to give invention dates and

17   the accompanying documents early.  It clearly never happened.

18          The point that we're dealing with now with Sungevity

19   is they're trying to hide behind Sungevity and say, oh, Judge,

20   now that Sungevity has been added to the case, you know, we

21   need to do all this new stuff.  But, again, they knew about

22   Sungevity when they were prosecuting their patents.  It's on

23   the face of all their patents.  Sungevity is a smoke screen

24   that they are hiding behind to try to cramp all this new stuff

25   in earlier that they should have put in in December of 2015

1    under the local rules as they're required to do.

2            Separate and apart from the failure to comply with

3    the local rules, Judge, I pointed Your Honor to Exhibit 11,

4    which is the second supplemental response, Interrogatory 7,

5    which demonstrates that under our interrogatory which asks for

6    the earliest of the reduction to practice and conception

7    dates, we still get different dates over time.  And, it's

8    clear there and I won't belabor that.

9            But the point is that also in July of 2017 when we

10   are getting these new responses to interrogatories, we're

11   getting additional documents, and not just a few documents,

12   Judge, we're getting 2000 documents, 2000 pages of documents,

13   let me be clearer.

14           Again, this is not Sungevity related.  This is not

15   arising from Sungevity, it has nothing to do with Sungevity.

16   It's the quintessential issue with regard to patent cases as

17   Your Honor knows.  When was reduction to practice?  When was

18   conception of your invention, something that most plaintiffs

19   know before they file suit and therefore can provide in their

20   first attempt at complying with the local rules and in their

21   contentions.

22           So, they're salting the record now with these 2000

23   plus new pages of documents which they should have provided

24   early on, they did not.  And, again, what it is doing Judge,

25   is incentivizing as Your Honor has mentioned periodically

1  throughout the day, incentivizing a party from holding back

2  having information at their disposal, waiting, waiting,

3  waiting, and then all of a sudden trying to cram it in at the

4  last minute.

5            It is a consistent pattern unfortunately that we've

6  been dealing with on that issue and it pervades this issue as

7  well with the regard to the priority and reduction to practice

8  dates.

9            You know, plaintiff claims that they are prejudiced.

10 Judge, we're prejudiced.  No, that's not part of the inquiry,

11 Judge, respectfully.  They are not prejudiced as a result of

12 Sungevity for the reasons I previously stated.  Otherwise,

13 they are not prejudiced and the prejudice is not something the

14 Court needs to take into account because that is not part of

15 the issue with regard to due diligence, good cause, in other

16 words, which as Your Honor knows is diligence and lack of

17 prejudice to us, to defendants.

18            So the prejudice argument carries no weight.

19      (Transcriber change)

20            THE COURT:  Is it your position --

21            MR. CHRISTIE:  Yes, Judge.

22            THE COURT:  -- that if the Court compares the

23 reduction to practice dates in the invalidity contentions to

24 the answers to Interrogatory 7, they're going to be different?

25 And I'm trying to understand --

1          MR. CHRISTIE:  Yes.

2          THE COURT:  -- you're taking the position that

3     they're changing their reduction to practice dates and I want

4     to know where I have to look to document that.

5          MR. CHRISTIE:  May I take a moment, please, Your

6     Honor?

7          THE COURT:  Of course.

8        (Pause in proceedings)

9          MR. CHRISTIE:  The answer to that, Judge, is that in

10    their initial response to invalidity contentions, we didn't

11    get an answer with regard to the -- that issue.  But what you

12    do need to do, Judge, is to look strictly at what I've

13    referenced, Exhibit 11, the second supplemental response to

14    Interrogatory Number 7.

15          That document will show earlier iterations of their

16    response as well as the later iterations of their response and

17    show the shifting reduction to practice dates.

18          THE COURT:  So -- okay, let's be clear.

19          MR. CHRISTIE:  Yes.

20          THE COURT:  Is it only going to show me a difference

21    between July 12th and July 19th?

22          MR. CHRISTIE:  No, no, no.  No, no, no.  What it's

23    going to show is their initial response to Interrogatory

24    Number 7, their first supplemental response as well as their

25    second supplemental response, and it's all contained within

Christie - Argument                                    90

1    Exhibit 11 which is a whooping again 65 pages.  So that one

2    document, Judge, if you look seriatim through the various

3    efforts that they made to provide a response to Interrogatory

4    Number 7 --

5              THE COURT:  Am I looking at just the 436 patent?

6              MR. CHRISTIE:  Sure, Judge.  Let's -- you want to

7    take an example, let's take an example.  So, for example, if

8    you look on page three of Exhibit 11, the first supplemental

9    response to Interrogatory Number 7, the last -- start at the

10   last full paragraph on that page.

11             THE COURT:  So the first supplemental response is

12   dated --

13             MR. CHRISTIE:  That's again, Judge, in September of

14   2016.

15             THE COURT:  Okay.  So let's --

16             MR. CHRISTIE:  So --

17             THE COURT:  -- let's use this as an example.

18             MR. CHRISTIE:  Okay.  So they're saying, as you see

19   at the bottom of page three, the invention of the 436 patent

20   was conceived at least as early as the second half of 2006 and

21   the invention was reduced to practice at least as early as

22   April 17, 2007.

23             So then if you shift gears to the second

24   supplemental response to Interrogatory Number 7 which is --

25   the same document, Exhibit 11, page seven, and I'm looking at

1    the paragraph in the middle of the page, you know, we're

2    talking about again with the 436 patent.  Again, it says, you

3    know, by no later than January, 2008, we have reduction to

4    practice of the 436 patent.

5              And, you know, further examples, Judge, in the first

6    supplemental response for -- for most if not all of the other

7    patents, they claim a reduction to practice date at least as

8    early as October 31st, 2008.  And, you know, then, you know,

9    when you look at the second supplemental, it talks about no

10   later than November, 2006.

11             THE COURT:  What page is that?

12             MR. CHRISTIE:  So, for example, I'm looking at page

13   11 of Exhibit 11 under the heading the 840 patent, again, the

14   last full paragraph stating in substance, you know, no later

15   than 2006.

16             THE COURT:  No, I'm sorry.  On page 11 where am I --

17   that's the 840 patent --

18             MR. CHRISTIE:  It is.  I was giving you another

19   example out --

20             THE COURT:  No, no, I want to just -- if we just

21   deal with the 346 patent, you want me to compare the September

22   6th answer --

23             MR. CHRISTIE:  Yes.

24             THE COURT:  -- second half of 2006 --

25             MR. CHRISTIE:  Correct.

1          THE COURT:   -- to --

2          MR. CHRISTIE:   Right.   Sorry.   To page seven --

3          THE COURT:   -- page seven where it says January,

4     2008?

5          MR. CHRISTIE:   Among other things, Judge --

6          THE COURT:   Okay.   Among other things.

7          MR. CHRISTIE:   -- and I would ask you to read

8     further, because it goes on further.

9          THE COURT:   And do the invalidity contentions have

10    the reduction to practice dates?

11         MR. CHRISTIE:   No, they punted on that, Judge.   They

12    didn't give us anything definitive.

13         THE COURT:   Okay.   So the second supplemental, is

14    that July 12 or July 19?

15         MR. CHRISTIE:   The second supplemental is July 12th.

16    The third supplemental is July 19th.

17         THE COURT:   So did they change this and -- did they

18    change this in the third supplemental?

19         MR. CHRISTIE:   They did, Judge, and I'll dig that

20    out as well.   The third supplemental is Exhibit 12.   Okay.   So

21    I'm looking again at page 40 of that document, Exhibit 12, in

22    which they are, you know, changing the reduction to practice

23    date for all seven of the asserted patents and --

24         THE COURT:   Where are you looking at?

25         MR. CHRISTIE:   I'm looking at the bottom half of

1   page 40, starting with the words "Render House."  Render House

2   software dated January 5, 2008, reflects an actual reduction

3   to practice with the inventions of the asserted claims, the

4   seven asserted patents.

5           THE COURT:  So that's January 5?

6           MR. CHRISTIE:  January 5, 2008.  So, you know, to

7   the extent one document crystalizes their shifting reduction

8   to practice dates, Judge, this is it.  It's here in spades.

9           THE COURT:  Okay.  So in September, '16 it was at

10  least as early as April 17, 2007, and July 12, '17, it was no

11  later than 2008, and on July 19, it was January 5th, 2008,

12  which is pretty close to January, 2008.

13          MR. CHRISTIE:  I understand.  But the point, Judge,

14  is they should have known this information before they filed

15  suit.  They were obliged to give it to us early.  This is

16  basic information that any plaintiff knows in their case.

17          THE COURT:  So --

18          MR. CHRISTIE:  Yes.

19          THE COURT:  -- do the patent rules require these

20  dates to be disclosed, and, if so, where and when?

21          MR. CHRISTIE:  Well, you know, based upon -- yes.

22  Based on the local rules as we flashed up on the screen, you

23  know, 3.1 and 3.2 are pretty clear, you know, not later than

24  14 days after the initial scheduling conference we're supposed

25  to -- we're supposed to be getting that information as well as

1    the accompanying documents.

2              But further to the point, Judge, we've cited a bunch

3    of cases which I think are very instructive including Richtek

4    and Harvatek which dispense with these shenanigans.  You know,

5    you're supposed to give this information early on, and this is

6    in our brief.

7              But -- and I also want to bring the Court's

8    attention to, you know, Richtek, in particular has very close

9    facts and are parallel to the ones here, you know, the Court

10   denying the motion to amend invention dates because, again,

11   there's a certain pattern that calls here.

12             They're required to give this information early on

13   before we do our invalidity contentions.  And by virtue of

14   their holding things close to the vest and delaying and then

15   thrusting it on us at the last minute, it frustrates -- it's

16   not only unfair and prejudicial, but it frustrates the local

17   rules and incentivizes and encourages plaintiffs to do this,

18   which, again, is not something I think the Court --

19             THE COURT:  So let's --

20             MR. CHRISTIE:  -- wants to encourage.

21             THE COURT:  -- let's now zero in on exactly,

22   specifically what you want with regard to these invention

23   dates.

24             MR. CHRISTIE:  Yes.

25             THE COURT:  Is it only directed to the 436 patent or

Christie - Argument                              95

1    is it directed to all patents or some but not all patents?

2              MR. CHRISTIE:  It is directed to all patents.

3    Judge, we want to hold them to their original contentions with

4    regard to invention dates.

5              THE COURT:  And I -- but I thought you said in their

6    original contentions they didn't put a date.

7              MR. CHRISTIE:  Okay.  Let me be, you know, let --

8    let me be clear.  You know, to the extent that they initially

9    gave us their invention dates, they should be held to those

10   invention dates and not to their supplements after the fact.

11   So --

12             THE COURT:  Well, let's take it hypothetically --

13             MR. CHRISTIE:  Yes.

14             THE COURT:  -- let's take another patent, 840.

15             MR. CHRISTIE:  Correct.

16             THE COURT:  So what do you want me to do -- what

17   orders do you want me to order?

18             MR. CHRISTIE:  Okay.  You know, essentially, Judge,

19   we're seeking an order forcing them again to rely on the

20   earliest of their disclosed invention dates.

21             THE COURT:  Okay.  So you want an order striking any

22   invention dates not included in the December 15 contentions.

23             MR. CHRISTIE:  Right.

24             THE COURT:  What is there's no date?

25             MR. CHRISTIE:  If there's no date, then we also

1    would like the Court to order them to be held to the earliest

2    date that they have given us.

3              THE COURT:  No matter when that was?

4              MR. CHRISTIE:  Well, which would be the September,

5    2016, as opposed --

6              THE COURT:  Okay.

7              MR. CHRISTIE:  -- as opposed --

8              THE COURT:  Is there -- is there dates for all of

9    the patents in September, '16?

10             MR. CHRISTIE:  I believe so, yes, they are.

11             THE COURT:  Okay.  So let me be clear.  You're

12   requesting that we hold plaintiff to reduction in practice

13   dates -- is that the same as the invention date?

14             MR. CHRISTIE:  In essence, yes, Judge.

15             THE COURT:  Invention set forth in the 9-16 what,

16   answers to interrogatories or contentions?

17             MR. CHRISTIE:  There were -- there were other

18   responses, Judge, at that point in time.

19             THE COURT:  Okay.  So you want me to say that

20   plaintiffs can't supplement their answers to interrogatories?

21             MR. CHRISTIE:  Well, no.  You mean, what I'm asking

22   now is for you to order them to be held to their earlier

23   representations with regard to invention dates and not the

24   newly found ones in which they're trying to use to get around

25   Sungevity.  Does that make sense?

1          THE COURT:  September, '16 was before -- September,

2      '16 was before Sungevity.

3          MR. CHRISTIE:  That's before the issue came before

4      the Court, that's correct.

5          THE COURT:  But June, '17 was post-Sungevity --

6          MR. CHRISTIE:  That's correct also, Judge.

7          THE COURT:  -- and you want those stricken?

8          MR. CHRISTIE:  In essence, correct.

9          THE COURT:  And in order to do that, I have to say

10     that the standard to amend Interrogatory 7 is the same as to

11     amend the contention under the patent rules?

12         MR. CHRISTIE:  Well, what they are essentially doing

13     is trying to have their cake and eat it, too, Judge.  They are

14     trying to use, you know, this different vehicle, this

15     interrogatory response to do what they should have done by way

16     of amending their local rule disclosures.

17         So I'm not advocating and saying that all revisions

18     to interrogatory responses should be held to the same

19     standard.  What I'm saying, in this instance where they're

20     using the interrogatory responses as a way to get around a

21     formal amendment to their local rule obligations, then, yes,

22     it's applicable under this narrow area.

23         THE COURT:  Okay.  I want to be clear --

24         MR. CHRISTIE:  Yes.

25         THE COURT:  -- going back to the priority date

1   issue --

2           MR. CHRISTIE:  Correct, yes.

3           THE COURT:  -- because I asked you this at the

4   beginning.  I thought that the only priority issue left is

5   this alternative date issue.  Am I right about that?

6           MR. CHRISTIE:  For the most part, and I'm sorry --

7   I'm sorry for belaboring it.  You're right that the defendants

8   have pointed out Third Circuit -- I'm sorry, not Third Circuit

9   -- Federal Circuit law, which allows unfortunately for

10  asserting alternative priority dates.

11          The issue that we have with the priority dates is

12  not that they are doing it in the alternative, although we

13  think under the local rules it's inappropriate and Your Honor

14  can make that call, but that they have vacillated.  They

15  started out in the alternative.  Then when it came to their

16  December, 2016, interrogatory responses, they changed it, and

17  it was just as -- I think we showed earlier, not in the

18  alternative.  It was merely April, 2007.

19          What we are asking is that they be held to that

20  subsequent representation, that you can't --

21          THE COURT:  And did they change it again?

22          MR. CHRISTIE:  And then they changed it back --

23          THE COURT:  In your view, right?

24          MR. CHRISTIE:  -- and said, oh, no, now it should

25  be --

1          THE COURT:  In July, '17?

2          MR. CHRISTIE:  In June, 2017, they changed it again

3    back to the alternative.

4          THE COURT:  Is that in the contentions or the logs?

5          MR. CHRISTIE:  That -- that's in the contentions,

6    Judge.

7          THE COURT:  Okay.

8          MR. CHRISTIE:  So our point is you can't unring the

9    bell.  You've said in September, 2016, unequivocally it is --

10   it is April, 2007.  You know, we have the right -- that's a

11   corporate admission.  We have the right to hold you to that,

12   and you can't come back now and say, oh, you know, changed the

13   position again, we want to make it alternative between April,

14   2007, and April, 2008.  So I hope that helps to crystalize our

15   issues on that -- the priority dates.

16         THE COURT:  It does.

17         MR. CHRISTIE:  So, again, not merely the alternative

18   basis of alleging them but their shifting between positions

19   over time, if that make sense to the Court?

20         THE COURT:  I understand your argument.

21         MR. CHRISTIE:  Okay.  Thank you, Judge.

22         THE COURT:  I guess, plaintiff, I have this question

23   of you now.  I think we -- I think it's plain from using the

24   436 patent as an example and looking at Exhibits 11 and 12

25   that the reduction in practice dates changed.  But I thought

1   you were taking the position that there was no change in

2   invention dates?

3          MR. ALPER:  They -- they haven't changed, Your

4   Honor, and I can explain how that is, so --

5          THE COURT:  Okay.

6          MR. ALPER:  And then I'll circle back to the issue

7   of how priority and the local rules affect this, but I want to

8   answer your question very directly.

9          So in our first supplemental response, the

10  September, 2016, response -- first of all, I guess you have to

11  start off with what does the interrogatory ask for.  I think

12  that's an important thing for context.  And the interrogatory

13  asks for the earliest date of conception in reduction to

14  practice.

15         And it doesn't say exclude constructive reduction to

16  practice, which is the type of reduction to practice that

17  occurs when you file a patent application.  It doesn't say

18  limit it to when you first put the product together.  It just

19  says the earliest date of reduction to practice -- excuse me

20  -- and conception.  And so when we look at our -- and that's a

21  requirement for the interrogatory.

22         When you look at our first supplemental

23  interrogatory response which you have in -- you can look at

24  Exhibit -- I have Exhibit 12 which has all of the -- you know,

25  has all the answers.  It's on page three of Exhibit 12 for the

1    436 patent.

2            Conception is identified as the second half of 2006,

3    and then it says the invention was reduced to practice at

4    least as early as April 17th, 2007.  That date is still in the

5    supplements, but because they asked for more detail, we said,

6    okay, that was related to the filing of an application.

7    Subsequent to that, there was additional work that was done on

8    the products and that culminated in the reduction to practice

9    in the product in January of 2008.

10           Now, in the -- how does this relate to our local

11   rule obligations and so forth?  All right.  The local rules

12   when it comes to conception, reduction to practice have a

13   requirement in Local Rule 3.2(b) to make a production of

14   documents that relate to the conception and reduction to

15   practice that's before the application date for the patent or

16   the priority date, whatever is earliest.  And we did that.

17           And in connection with that production, we produced

18   a document which is a declaration from the applicant that goes

19   through and lays out that -- various dates including this

20   January, 2008, date.  We cited that in our first supplemental

21   response, the September, 2016, response, but in accordance

22   with the request in the interrogatory, we put the earlier date

23   of April 17, 2007.

24           When the -- when Sungevity came in the case, we did,

25   as I said, our invalidity contentions and told the plaintiffs

1    in those that our response to Sungevity was going to include

2    showing that our patents came from an earlier date in

3    accordance with the conception dates that we had previously

4    put in here.

5            And at that time, the defendants asked us, we need

6    to know more detail about the whole entire story.  And that is

7    when we put the July supplement in which included the earliest

8    date, which is the date that the -- and I can show you where

9    that is, Your Honor, if you'd like to see it in the

10   supplement.  It's -- sorry -- it's on page ten.

11           It says -- in the first full paragraph on page ten

12   of Exhibit 12 -- it says, by at least as early as April 17,

13   2007, the inventors constructively reduced to practice the

14   invention, the 436.  That's still --

15           THE COURT:  On page 12.

16           MR. ALPER:  I'm sorry, page ten of Exhibit 12.

17           THE COURT:  By at least as early as April 17th,

18   2007.

19           MR. ALPER:  So we -- we still put in the earliest

20   date.  That's what the interrogatory asked us to do.  But in

21   response to the plaintiffs' -- I'm sorry, defendants' request,

22   we detailed out additional parts of the story which were

23   reflected in the documents that we previously had cited in

24   September, including the January, 2008, product basically,

25   actual reduction to practice date.

1          So we -- answering the interrogatory did not change

2     our answer to the interrogatory with the earliest date and

3     then we added stuff at their request.  This is all by way of

4     supplements to interrogatories and by way of supplements to

5     interrogatories in view of their addition to Sungevity.

6          And I think that what that brings me to is I want to

7     make a clear distinction between what the local rules require

8     and what -- what is a supplement to an interrogatory and

9     what's a required supplement when you look at the

10    interrogatory itself which only asked for the earliest date of

11    reduction to practice.

12         So if we could go to -- actually plaintiffs' slide

13    had it all, but this is -- this is just good enough, slide 47

14    of our -- of our slides I'll show you.  So when it comes to

15    the local rule requirement of what you put in your invalidity

16    contentions itself, it asks -- it talks about priority dates.

17         So it talks about for any patent that claims

18    priority to an earlier application, put the priority date to

19    which each asserted claim is -- allegedly is entitled.  That

20    is talking about a claim to an earlier application, that's a

21    priority claim.  That is different than what we're calling the

22    invention date which is the date of conception as guided by

23    diligent reduction to practice.

24         And so the local rules when it comes to what you put

25    in your invalidity contentions don't require conception

1   reduction to practice dates to be specified.  They do require,

2   under 3.2(b) for you to make that document -- but I don't have

3   it on there.  I'm sorry, Your Honor.  They -- we were looking

4   at it earlier, I could hand it up if you want from their

5   slides, defendants' slides, but they -- it does require all

6   documents evidencing conception reduction to practice that

7   occur before the -- the priority date.

8           And so -- and we made that production, and I don't

9   think people are arguing about that.  So when it comes to the

10  local rule requirement, we put our -- that's where we get the

11  two priority claims in the first part, and two -- it's always

12  been those two priority claims.

13          When it comes to conception reduction to practice,

14  that's when defendants' December 31st, I think it was, 2015,

15  interrogatory comes into play, and that's when we start

16  talking about these various interrogatory -- yes,

17  interrogatory responses.

18          And the two important points there are, first of

19  all, we're not guided by the local rule amendment

20  requirements.  This is a supplementation to an interrogatory.

21          And second of all, you have to look at what the

22  interrogatory asks for, and in this case, it's asking for the

23  earliest date.  And the earliest dates that we put in our

24  interrogatory response have never changed.  And so all we have

25  done -- and this is what I was saying before -- was fill --

Alper - Argument                                    105

1    was do a supplement that added some documents, additional

2    documents to the diligence story and -- largely in 2008.

3          And the one other point that I wanted to make, Your

4    Honor, on this is, I just wanted to direct Your Honor because

5    I want there to be no confusion about this, that if you look

6    at -- back at page three of Exhibit 12 in that -- in that

7    first -- that September, 2016, response to the interrogatory,

8    we say that conception for the 436 patent, as an example, was

9    at least as early as the second half of 2006.

10          And then you go to -- when you go to the supplement

11   in July -- but if you go to either supplement, because this

12   didn't change -- we said that the 436 -- inventions of the 436

13   patent were conceived in the second half of 2006 by no later

14   than December 2nd, 2006, which, of course, is in the second

15   half of 2006.  Because -- and that was because defendants

16   asked us to pinpoint a date.

17          We did that.  And we showed them where it shows that

18   date, and I can show you on that slide, Mr. Brown, if you

19   could go to it.  It's in the materials that we originally

20   produced way back in December 23rd, 2015, in accordance with

21   what is our local rule requirement to produce the conception

22   documents and reduction to practice documents that occurred

23   before your priority claim.

24          And we produced that in December, 2015, before they

25   even ever asked an interrogatory.  Because you can see all

1    over this document, it says December 2nd, 2006, and that's --

2    and we put it in our September interrogatory and then we

3    pinpointed it and we cited those documents there, and then we

4    pinpointed it in our July -- July interrogatories.

5            And so when you consider all of that, we have not

6    changed dates.  We've faithfully answered their -- we've

7    faithfully complied with the local rules.  We've faithfully

8    answered their interrogatory which asked for the earliest

9    dates.  And so what we're left with is a supplement which, by

10   the way, they asked us to make, but putting that aside, a

11   supplement that came in view of Sungevity where they -- they

12   said there's no prejudice to us.

13           It's very different.  They just now said there's no

14   prejudice.  You shouldn't consider prejudice to us.  It's very

15   different from what they were saying when we were here before

16   you on their motion to amend when they were saying, to the

17   extent that there's any prejudice, it's erased because they

18   will have a fully opportunity to respond to Sungevity.  And

19   Your Honor relied on that in issuing your order.

20           And the final thing that I will say, Your Honor, is

21   this.  The case law that defendants are relying on is

22   inapplicable because every one of those cases involved a

23   situation where someone was trying to change the date.  They

24   were trying to say I am, in effect -- change their concession

25   date.  I'm trying to get an earlier date than what I had said

1    before in order to get behind prior art.  We are sticking with

2    the same dates.  In fact, if -- we've now -- we've told them

3    we'll take December 2nd.

4          Our earlier response let us go all the way back to

5    the first -- the end of the first half of 2006, but it's even

6    an earlier date.  We're actually just pointing to the

7    documents now to -- within that range, essentially towards the

8    tail end of that range.

9          And so none of those cases apply because we are not

10   changing the date, nor do any of those cases have a situation

11   where in order to bring in other prior art, the plaintiff said

12   -- actually said they can -- they can respond in any way that

13   they need to, so there's no prejudice.  Thank you, Your Honor.

14         MR. CHRISTIE:  May I make three quick points, Judge?

15         Quickly, Mr. Alper conveniently does not point Your

16   Honor to page seven of Exhibit 11 which, again, deals with the

17   436 patent and says, by no later than January, 2008, the

18   inventors had actually reduced the inventions to practice.  So

19   he's doing a little bit of obfuscation here, Judge, from our

20   perspective.  And, in fact, if you do look at the exhibit as

21   we've stated, there is changes to the reduction to practice

22   dates.

23         Number two, plaintiff has focused on this

24   declaration.  Can you get to Slide 37, please.  You see that

25   in their Slide 37 they talk about a declaration that Mr.

1    Pershing made to the U.S. Patent Office.  You know, they've

2    admitted, Judge, that much of what they included in their

3    supplemental response, the second supplemental response to

4    Interrogatory Number 7 is information that they've had for

5    years because it comes from this declaration that was

6    submitted by Mr. Pershing as part of the prosecution of the

7    436 patent.

8          So, again, this is another example of them having

9    information, holding it close to the vest and failing to

10   provide it in a timely fashion, any interrogatories that we've

11   asked for.

12         And, third, Judge, with regard to their

13   interpretation of the cases, we disagree with plaintiffs as to

14   their applicability.  And, again, I've pointed Your Honor to

15   the Richtek and the Harvatek cases which are right on point

16   which demonstrate that their efforts here, plaintiffs' efforts

17   here are inappropriate, and the Court should not countenance

18   it because it does violence to the local rules.  It encourages

19   plaintiffs to hold things close to the vest and sandbag

20   defendants later in the case when they should be giving

21   information up front as the local rules require.

22         And plaintiffs' efforts to conflate obligations

23   under the local rules with regard to responding to

24   interrogatories has no merit either, Judge.  Again, it's a

25   smoke screen to allow them to skirt their obligations under

Christie - Argument                                        109

1    the local rules by claiming that they don't -- aren't held up

2    to the high standard because they can just supplement it by

3    way of interrogatory.  Thank you.

4              THE COURT:  Thank you, counsel.  Okay.  I think the

5    record's closed.  Let me just make a note here.

6              Thank you, counsel --

7              MR. CHRISTIE:  Thank you, Your Honor.

8              THE COURT:  -- for your excellent briefs and oral

9    argument on some sticky issues.  The Court will get out its

10   decision promptly.  And if it's not before the Markman

11   hearing, I wish you good luck next week.

12             MR. CHRISTIE:  Thank you, Judge.

13             MR. ALPER:  Thank you, Your Honor.

14             THE COURT:  Have a good week.

15        (Proceedings concluded at 5:06 p.m.)

16                          *  *  *

17

18

19

20

21

22

23

24

25

110

**C E R T I F I C A T I O N**

        We, Diane Gallagher, Brenda Boulden and Lois A. Vitarelli, court approved transcribers, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.


_____        October 17, 2017
DIANE GALLAGHER


_____

BRENDA BOULDEN


_____

LOIS A. VITARELLI

DIANA DOMAN TRANSCRIBING, LLC