IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| EAGLE VIEW TECHNOLOGIES, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> XACTWARE SOLUTIONS, INC. et al., <br><br> Defendants. | Civil No. 15-7025 (RBK/JS) |

## **OPINION**

This case is a classic example of the mischief that occurs when a party does not faithfully follow the requirements in the Local Patent Rules. As will be explained in more detail, as a result of plaintiffs' incomplete infringement contentions, and plaintiffs' four (4) versions of their answer to defendants' key interrogatory 7, the Court is now unfortunately compelled to wade through the parties' mind-numbing arguments and decide defendants' Motion to Strike New Infringement Theories and New Invention and Priority Dates [Doc. No. 282], and plaintiffs' Cross-Motion to Amend [Doc. No. 393]. The Court held oral argument on October 5 and 18, 2017, and pored over scores of technical and contention documents to get to the bottom of the

complicated issues in dispute. For the reasons to be discussed, the parties' motions will be granted in part and denied in part.

Background

Plaintiffs filed this patent infringement action on September 23, 2015. The patents are generally directed to software technology for imaging, modeling and rendering aerial rooftop measurements and reports. Plaintiffs and defendants compete in this market. At present, seven (7) patents are at issue.

After the December 9, 2015 Fed. R. Civ. P. 16 scheduling conference, the Court's Scheduling Order mirrored the deadlines in the Local Patent Rules. Plaintiffs served their infringement contentions on December 23, 2015. After the Court granted plaintiffs' motion to amend infringement contentions on October 28, 2016 [Doc. No. 139], plaintiffs served their first amended infringement contentions on November 4, 2016. Not being satisfied that the contentions supplied the necessary details required by the Local Rules, defendants attempted on numerous occasions to try and convince plaintiffs to serve fulsome contentions. Defendants' efforts were unsuccessful.[1] Justifiably not being satisfied that plaintiffs' infringement contentions were adequate, and that plaintiffs wrongfully insisted on taking

---

[1] Plaintiffs eventually relented and agreed to supplement their contentions but only after they took defendants' deposition. The Court ruled plaintiffs' contentions had to be supplemented before the deposition was taken.

defendants' deposition before they complied with the Local
Rules, defendants filed their "Motion to Compel Amended
Infringement Contentions to Comply with Local Patent Rule 3.1"
[Doc. No. 158] on January 27, 2017. In short, defendants argued
plaintiffs' infringement contentions lacked required detail and
specificity, they provided no explanatory text or narrative
analysis as to how or why the accused products infringed the
asserted claims, or how plaintiffs' screenshots demonstrated the
alleged infringement required by L. Pat. R. 3.1. <u>See</u> Defendants'
Memorandum in Support of Motion at 1, Doc. No. 159. Defendants
argued plaintiffs simply provided "picture books" without the
textual analysis required by the Local Rules, and required
defendants to guess at plaintiffs' infringement theories. <u>Id.</u>
Not surprisingly, plaintiffs disagreed and insisted their
infringement contentions complied with the Local Rules.
Plaintiffs argued, "there is no question that Plaintiffs'
contentions meet the standards of this District's Local Patent
Rules." Plaintiffs' Opposition at 1, Doc. No. 183.

On May 1, 2017, the Court held oral argument on defendants'
Motion to Compel and issued its Oral Opinion. The Court
expressed its dismay at plaintiffs' position and ruled that
plaintiffs' contentions were plainly deficient. <u>See</u> Transcript
of May 1, 2017 Oral Argument at 42:7 – 53:1, Doc. No. 231. What
was unsettling was the fact that even though plaintiffs argued

their contentions were sufficient, plaintiffs' briefs provided explanatory text not included in their contentions. Plaintiffs also acknowledged source code citations were available to supplement their contentions that they did not identify. Thus, plaintiffs essentially acknowledged they did not produce the fulsome infringement contentions the Local Rules require. Id. at 51:2-20. The Court agreed. The Court, therefore, granted defendants' Motion to Compel on May 2, 2017, Doc. No. 213. Importantly, the Court merely granted plaintiffs leave to "supplement" their deficient contentions. On the same day the Court granted defendants' motion to amend their invalidity contentions to add the Sungevity reference as prior art. See May 2, 2017 Order, Doc. No. 212.

Purporting to comply with the May 1, 2017 Order, plaintiffs served their amended supplemental infringement contentions on June 6, 2017. Plaintiffs also served a supplemental answer to defendants' interrogatory 7 on July 12, 2017, and amended the answer on July 19, 2017. Not coming as a surprise, defendants object to plaintiffs' supplement/amendment to their infringement contentions and July 12 and 19, 2017 answers to interrogatory 7. Defendants argue instead of supplementing, plaintiffs amended their contentions and required L. Pat. R. 32(b) disclosures.[2]

---

[2] By way of example, defendants point out that plaintiffs' original and first amended contentions did not cite any Xactware document or portion of source code. Defts.' Memo. at 9. However,

Defendants' present motion argues plaintiffs cannot show good cause to amend and seeks to strike portions of plaintiffs' amendments. Defendants argue plaintiffs served "entirely new substantive technical and legal theories." Defendants' Memorandum ("Defts.' Memo.") at 5-6, Doc. No. 282. Defendants claim plaintiffs served "drastically new substantive infringement theories that differ substantially from those previously disclosed for a number of claim elements." Id. at 6.

Defendants' specific objections and requested relief seeks to strike references to the following:

- Plaintiffs' doctrine of equivalents theories;

- Plaintiffs' theories pursuant to 35 U.S.C. § 271(f)-(g);

- Plaintiffs' "ground point" theory offered in the '436 patent infringement contentions;

- Plaintiffs' "aerotriangulation" theory offered in the '436 patent infringement contentions;

- Plaintiffs' "aerotriangulation" theory offered in patent infringement contentions, particularly for the "receiving an indication of a feature" and "modifying a three-dimensional model" limitations;

- Plaintiffs' citations to Xactware source code Bates-numbered higher than XWSC648;

- Plaintiffs' amended L. Pat. R. 3.2(b) disclosures listed in their July 12 and 19, 2017 supplemental answers to

_____

the June 6, 2017 contentions at issue contained approximately 1,693 citations to Xactware source code and 4,151 citations to non-source code documents. Id. at 10. In addition, the June 6, 2017 contentions added an additional 408 pages of contentions and 25 citations to documents produced by plaintiffs. See Defts.' October 5, 2017 Slide 5.

interrogatory 7 regarding documents and source code
evidencing conception and reduction to practice; and

- New conception and reduction to practice dates
  included in plaintiffs' July 12 and 19, 2017 answers to
  interrogatory 7.

Plaintiffs' Cross-Motion to Amend seeks leave of court to assert
the foregoing matters in the event the Court deems leave is
necessary.

Insofar as the general status of the case is concerned, the
Markman hearing was recently held and the parties are awaiting
the ruling. The fact discovery deadline expires on December 28,
2017, and no expert reports have been produced. No trial date
has been set.

Discussion

    1.   May 1, 2017 Ruling

Since plaintiffs mis-read the Court's May 1, 2017 ruling
and accompanying May 2, 2017 Order, the Court's analysis starts
with what it did and did not Order. To the extent plaintiffs
assume the Court granted them carte blanche to amend their
infringement contentions they are dead wrong. Plaintiffs were
only granted leave to supplement their contentions to comply
with the Local Rules. Plaintiffs are well aware that in order to
amend contentions a motion to amend must be filed. Horizon
Pharma AG v. Watson Laboratories, Inc. - Florida, C.A. No. 13-
5124 (JEI/JS), 2015 WL 12850575, at *2 (D.N.J. Feb. 24,
2015)("New Jersey L. Pat. R. 3.7 provides that contentions may

only be amended upon Order of the Court 'upon a timely application and showing of good cause.'") The Court did not dispense with Local Rule 3.7. Instead, the Court directed plaintiffs to comply with the Local Rules requiring fulsome contentions. The Court could not have granted plaintiffs carte blanche to amend because it did not have a record on which to determine if good cause existed.

If, as plaintiffs seem to argue, they were free to amend their contentions at their leisure, it would minimize the mandatory nature of the Local Rules. If the Court accepted plaintiffs' argument plaintiffs could amend without good cause simply by serving deficient infringement contentions and waiting for their adversary to ask for a supplement. This is unacceptable. The Court agrees with defendants that what the Court directed at the May 1, 2017 hearing and in its May 2, 2017 Order was that plaintiffs "would supplement their contentions to provide additional information and detail, not add entirely new theories of infringement." Defendants' Reply ("Defts.' Reply") 5-6, Doc. No. 298 (emphasis removed). See also Tr. at 52:12-13 ("We'll give plaintiffs a reasonable time to supplement their contentions. [Plaintiffs will] rise or fall with them.")[3]

---

[3] In fact, plaintiffs represented they only "want[ed] to supplement [their] contentions to include [a] second layer of detail." Tr. 43:24-44:1, 44:10-11. Plaintiffs did not ask for leave to amend to assert new theories.

Having made it clear that plaintiffs were only granted leave to supplement but not amend their infringement contentions, the Court must decide into what category plaintiffs' changes fit. Admittedly, the line is not always clear. However, supplementary disclosures "do not permit a party to introduce new opinions after the disclosure deadline under the guise of a supplement." Medtronic Inc. v. Edwards Lifesciences Corp., Case No. SACV 12-00327-JFV (MLGx), 2013 WL 12131746, at *2 (C.D. Ca. July 24, 2013)(citation and quotation omitted). Claims and issues which should have been included in plaintiffs' original contentions may not be added under the guise of a supplement. See Plumley v. Mockett, 836 F. Supp. 2d 1053, 1062 (C.D. Ca. 2010).

If the Court determines plaintiffs merely supplemented their contentions, defendants' motion will be denied because plaintiffs will be in compliance with the Court's Order. If the Court decides plaintiffs amended rather than supplemented their contentions, the Court must then decide whether plaintiffs show good cause for the amendment. If good cause does not exist, plaintiffs' Motion to Strike will be granted and defendants' Cross-Motion to Amend will be denied.

The standard to establish good cause to amend is well established. The key factor courts look at is the diligence of the moving party. O2 Micro Intern. Ltd. v. Monolithic Power

Sys., Inc., 467 F.3d 1355, 1366 (Fed. Cir. 2006). Diligence has two aspects to it. One is whether the moving party acted diligently to discover that an amendment was appropriate. The second aspect is whether the moving party promptly moved to amend its contentions after it learned an amendment was necessary. See generally id.; AS America, Inc. v. Masco Corp. of Indiana, C.A. No. 13-05 (JBS/JS), 2013 WL 4084237, at *2 (D.N.J. Aug. 13, 2013). Other factors courts consider to determine whether good cause exists to grant an amendment are: (1) the reason for the delay, including whether it was within the reasonable control of the party responsible for it; (2) the importance of what is to be excluded; (3) the danger of unfair prejudice; and (4) the availability of a continuance and the potential impact of a delay on judicial proceedings. LMT Mercer Group, Inc. v. Maine Ornamental, LLC, C.A. Nos. 10-4615, 10-6699 (FLW), 2014 WL 2842338, at *6 (D.N.J. Jan. 24, 2014); see also Oyajt Ltd. v. Vatech Amer., Inc., C.A. No. 10-4875 (PGS/DEA), 2012 WL 1067900, at *20 (D.N.J. March 29, 2012). Only if the court finds diligence does it need to determine if the non-party would suffer prejudice as a result of an amendment. LMT Mercer Group, at *6.

2. Plaintiffs' Supplements/Amendments

The Court will separately address each of defendants' requests.

## A.    Doctrine of Equivalents Theories

L. Pat. R. 3.1(e) requires a plaintiff to identify whether a limitation is asserted to be met literally or under the doctrine of equivalents (hereinafter "DOE"), "[n]ot later than 14 days after the Initial Scheduling Conference." Defendants argue plaintiffs' December 23, 2015 contentions and November 4, 2016 amended contentions did not contain any DOE contentions. According to defendants, plaintiffs did not add their DOE theory until their second amended contentions on June 6, 2017. Plaintiffs added allegations regarding DOE for only two specific claim requirements. The "memory" and "roof estimation module" references in claim 1 of the '436 Patent and claim 10 of the '840 Patent. Defendants ask the Court to strike these contentions because plaintiffs cannot show good cause to amend. Specifically, defendants argue plaintiffs did not act diligently and they will be prejudiced by the amendment.

Plaintiffs respond by pointing out their November 4, 2016 amended contentions stated, "Xactware has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents claims … of the '436 Patent[.]" See Exhibit 1[4] at 3.[5] In addition, plaintiffs' L. Pat. R. 3.1(c)

---

[4] Citations to numbered exhibits refer to the exhibits attached to the Declaration of Scott S. Christie, Esquire in support of defendants' Motion to Strike [Doc. No. 281-5]. Citations to lettered exhibits refer to the exhibits attached to the

chart reserved the right to supplement plaintiffs' contentions as to the DOE. <u>See</u> Exhibit 4 ("Plaintiffs further reserve the right to supplement these contentions as to the Doctrine of Equivalents[.]")

In response to plaintiffs' arguments defendants counter that plaintiffs never articulated any DOE theory for any limitation of any asserted claim for any patent. And, therefore, plaintiffs' new DOE theories are entirely new. Defts' Reply at 8. Defendants also argue good cause does not exist to grant plaintiffs' DOE amendment.

The Court agrees with defendants that plaintiffs' DOE theories are new. Plaintiffs' first (December 23, 2015) and second (November 4, 2016) infringement contentions provided no substantive information regarding their DOE theories and merely included general boilerplate. Plaintiffs did not provide the detailed, limitation-by-limitation DOE contentions required by the Local Rules. Plaintiffs' boilerplate amounted to a reservation of their right to assert a DOE theory. This is not permitted. As noted in <u>Howmedica Osteonics Corp. v. Depuy Orthopaedics, Inc.</u>, C.A. No. 11-6498 (SDW), 2014 WL 6675923, at *4 (D.N.J. Nov. 24, 2014, "[t]he Local Patent Rules … demand of

Declaration of Liza M. Walsh, Esquire [Doc. No. 293-1] submitted in support of defendants' Response and Cross-Motion.
[5] <u>See also id.</u> at 6 ("The chart attached as Exhibit A shows that each limitation of each asserted claim of the '436 Patent is literally present in the accused products or is present under the Doctrine of Equivalents.")

the patentee precision and specificity in identifying its theories of infringement, including DOE." This is why in Howmedica the struck Stryker's general reservation of rights that was included in its infringement contentions. Id. at *2. ("Stryker's failure to specifically delineate its DOE infringement theory either in its original Infringement Contentions or via amended contentions precludes Stryker from asserting that theory [.]"). Id. The Local Rules do not permit parties to "reserve" a DOE theory so they can "supplement" rather than amend later. "[I]t would seem self-evident that a mere reservation of the right to assert the doctrine of equivalents is insufficient to satisfy the exacting requirements of L. Pat. R. 3.1." Id. at *5; see also Thought, Inc. v. Oracle Corporation, et al., Case No. 12-cv-05601-WHO, 2015 WL 5834064, at *6 (N.D. Ca. Oct. 7, 2015)("[Plaintiffs'] desire to add the DOE theory to its infringement contentions is not properly considered 'supplementation' to the infringement contentions, but is instead an amendment…. [C]ourts regularly treat additions of DOE argument in motions to amend contentions[.]") Therefore, having determined that plaintiffs are seeking to amend rather than supplement their DOE theories, the Court must determine if plaintiffs demonstrate good cause to amend.

Plaintiffs are seeking to assert their new DOE theories 17 months after their December 2015 infringement contentions and 7

months after their November 2016 first amended contentions. The Court finds that plaintiffs did not act diligently to assert their DOE theories and, therefore, good cause to amend is not established. Defendants' initial non-infringement position with regard to "memory" and "roof estimation module" stated that the accused products did not "include[] a roof estimation module that is stored on the memory." See Exhibit G at 1. In April 2016, defendants proposed a construction that required "a single software module." Exhibit F at 7. Plaintiffs should have included their DOE theory in their December 2015 infringement contentions. At the latest, however, in response to defendants' April 2016 position plaintiffs could have and should have moved to assert a DOE theory. Instead, plaintiffs argue, out of an abundance of caution they included the DOE theory in June 2017 even though defendants dropped the construction in February 2017. Plaintiffs' Response ("Pltfs.' Response") at 18, Doc. No. 293. Plaintiffs argue they "included [their] DOE position in case Defendants later attempted to rely on the 'single' module argument." Id.

Plaintiffs' arguments are not convincing. If plaintiffs acted diligently they would have asserted their DOE theories in December 2015 or at the latest shortly after April 2016. They should not have waited until over a year later when they served their second supplemental/amended contentions in June 2017 to

include their DOE theories. See, e.g., Apple Inc. v. Samsung
Elecs. Co., Ltd., No. 12-cv-0630-LHK (PSG), 2013 WL 3246094, at
**2-4 (N.D. Cal. June 26, 2013)(rejecting request to add DOE
theories for asserted patents in response to non-infringement
theories). What is also noteworthy is the fact that defendants
repeatedly pointed out to plaintiffs the deficiencies in their
contentions. Nevertheless, plaintiffs erroneously insisted their
contentions were adequate. It should not take a motion to compel
and a Court Order to require sophisticated patent litigation
parties and lawyers to provide timely fulsome contentions. If
plaintiffs acted diligently they would have asserted their DOE
theories more than a year before their June 2017 contentions.
The Court acknowledges and agrees with defendants' argument:

> There are no changed circumstances here that would
> support a finding of good cause. No adverse claim
> construction order has issued; plaintiffs do not cite
> any newly discovered evidence necessitating their
> belated DOE disclosures; and no other circumstance
> exists that could remotely excuse or even explain
> plaintiffs' year-plus-long refusal to disclose any
> substantive DOE theories.

Defts' Reply at 11.[6] The Court also agrees with Howmedica, at *5,
where the Court stated: "[a] patentee cannot be permitted to
assert a general DOE theory of infringement and then proffer a
more specific DOE theory whenever it becomes convenient for it
to do so. To allow such a practice would be to place the

---

[6] The Court need not decide if defendants are prejudiced by
plaintiffs' DOE amendment because it finds plaintiffs did not
act diligently to assert the theory.

adversary in the position of having to constantly guess at the contours of the patentee's infringement theories."

Plaintiffs repeatedly argue their June 2017 contentions are appropriate because they complied with the Court's direction at the May 1, 2017 oral argument to "put all [Plaintiff's] cards on [the] table." Tr. at 46:11-15. The problem with plaintiffs' argument is that the Court was simply reminding plaintiffs of their duty under the Local Patent Rules. It could not be clearer that parties are required to serve fulsome contentions as early as possible. Merck Sharp & Dohme Corp. v. Sandoz, Inc., C.A. No. 12-3289 (PGS)(LHG), 2014 WL 1494592, at *8 (D.N.J. April 16, 2014) ("[T]he Local Patent Rules strive to have the parties establish their contentions early on")(citation and quotation omitted); Celegne Corp. v. Natco Pharma Ltd., C.A. 10-5197 (SDW)(SCM), 2015 WL 4138982, at *4 (D.N.J. July 9, 2015)("The Local Patent Rules are designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed.")(citation and quotation omitted). Plaintiffs did not need to be reminded of their obligations under the Local Patent Rules. The Court's reminder does not excuse plaintiffs from doing what they should have done in the first instance.

B.  Plaintiffs' Theories Pursuant to 35 U.S.C §271 (f)-(g)

Defendants argue plaintiffs assert new infringement theories based on 35 U.S.C §271(f)-(g) which address extraterritorial activity. Defendants argue the theory must be stricken because plaintiffs should have pursued these theories as early as September 2016 based on defendants' document production showing reliance on outsourcing from India and China.[7]

In response plaintiffs argue they simply provided details where the infringement activity is occurring, and was made in response to defendants' May 9, 2017 supplemental interrogatory response that allegedly contended for the first time that defendants' infringing activity occurred outside the United States. Pltfs.' Response at 20-21. Plaintiffs emphasize until defendants' May 9, 2017 supplement defendants indicated in their February 29, 2016 interrogatory answers that all research, design, etc. occurred in Lehi, Utah. Id. at 22.

Plaintiffs' §271(f)-(g) theories are plainly amendments rather than supplements because the theories are new. However, the Court still finds plaintiffs have demonstrated good cause to assert these new theories. Plaintiffs' amendment was made shortly after defendants supplemented their interrogatory answers on May 9, 2017 to specifically identify their foreign activities. Prior to that time plaintiffs could legitimately

---

[7] Defendants provided a list of documents referencing their overseas operations that were produced before September 1, 2016. Exhibit 19.

rely on defendants' February 29, 2016 interrogatory answer that
defendants' activities were focused in Utah. <u>See</u> Exhibit I at
10.

The Court is aware that some of defendants' documents
revealed foreign activity. Nonetheless, plaintiffs had every
reason to rely on defendants' interrogatory answers. The
information supplemented on May 9, 2017 was available to
defendants on February 29, 2016. The Court will not permit
defendants to benefit because their February 29, 2016 answers
were not accurate and they waited over a year to supplement
their answers with complete information. <u>See</u> Fed. R. Civ.
26(g)(a party's signature to an interrogatory answer certifies
that any disclosures were complete and accurate at the time they
were made and a reasonable investigation was done). Further,
defendants make no credible argument they will be prejudiced by
plaintiffs' amendment.

### C. "Ground Point" Theory – '436 Patent

Defendants seek to strike plaintiffs' theories labeled (1)
and (3) for how the "correlate" limitation in the '436 patent is
met. <u>See</u> Exhibit 2, Exh. A at 27. Defendants argue plaintiffs
cannot show good cause to assert three distinct theories, only
one of which was previously disclosed. Defts.' Memo. at 6-7.
According to defendants, the documents to support plaintiffs'
new theories were available since April 2106 and, therefore,

plaintiffs were not diligent in asserting their contentions. Defendants also argue plaintiffs are limited to the disclosures they made in their response to defendants' Motion to Compel which does not include the alleged new theories.

Plaintiffs' response to defendants' argument is not surprising. Plaintiffs argue they produced the detail defendants requested, they are not presenting whole new theories, and their second supplemental contentions provide an explanation of three related mechanisms. At bottom, plaintiffs argue they "provided exactly what was requested, which was further detail concerning how [the] limitation was met and did so by focusing on the same accused instrumentalities." Pltfs.' Response at 14; see also Plaintiffs' Reply ("Pltfs.' Reply") at 4, Doc. No. 310. (Plaintiffs' "supplemental contentions provided the detailed technical narratives explaining how the accused instrumentalities infringe, as requested by Defendants.")

As to defendants' "ground point" argument the decision is a close call as to whether plaintiffs supplemented or amended. On the whole, however, the Court sides with plaintiffs that they provided the detail defendants requested. Defendants' Motion to Compel asked the Court to require plaintiffs to identify "what 'correlate' means, what constitutes 'correlating,' or what 'the correlation' is." See Defendants' January 4, 2017 Letter to Plaintiffs at 3, Doc. No. 159-13. Plaintiffs produced what was

18

demanded. Defendants complained that plaintiffs did not explain how the accused products met the "correlate" limitation and how their screenshots are linked to or demonstrated infringement of the corresponding claim limitations. Defts.' Memo. in Support of Motion to Compel at 7. This is the detailed explanation plaintiffs provided in their supplement. For present purposes the Court credits plaintiffs' argument that they responded to the Court's Order to "include narrative details identifying the specific components and functionality in the accused products that meet each claim limitation[.]" Pltfs' Reply at 1; see also Pltfs.' Response at 10-11. ("[T]hese are not new theories but interrelated mechanisms used by Defendants to perform the claim elements at issue, in the very same aspects of the same instrumentalities accused of infringement all along.") The Court does not credit defendants' argument that plaintiffs are limited to the explanations in their earlier Briefs. The Court did not ask for, and plaintiffs did not intend to, provide exhaustive descriptions of their contentions.[8]

D.     "Aerotriangulation" Theories –'436 and '153
        Patents

The Court's decision as to defendants' request to strike plaintiffs' "aerotriangulation" theory offered in the '436 and

_____

[8] Further, defendants have not made a convincing case they are prejudiced by plaintiffs' supplement in view of the fact that no expert reports have been produced and defendants have time to prepare their case before the fact discovery deadline expires.

'152 patents, particularly for the "receiving an indication of a feature" and "modifying a three-dimensional model" limitations, is the same as for the "ground point" theory argument. Although a close call, the Court finds plaintiffs supplemented rather than amended their contentions. The Court also finds no material prejudice will result from the supplement.

E.    <u>Xactware Source Code Citations</u>

Plaintiffs' initial and first amended infringement contentions did not cite to a single line of Xactware source code.[9] The June 6, 2017 second supplemental contentions added approximately 1,693 citations. These contentions were based in part on 228 pages of source code plaintiffs printed after May 1, 2017. Defendants argue the Court should strike plaintiffs' references to source code that was obtained after May 1, 2017. Defendants argue, and the Court agrees, that the Court's May 2, 2017 Order directed plaintiffs to supplement their contentions with the information they already had. The Court did not give plaintiffs a license to conduct a new search so they could in effect amend their contentions and cure any deficiencies from their first source code review.

Plaintiffs argue they produced precisely what defendants asked for, <u>i.e.</u>, pinpoint citations to source code. However,

─────────────────
[9] This is remarkable considering the fact plaintiffs reviewed defendants' source code on 27 different days before August 5, 2016. <u>See</u> discussion <u>infra</u>.

plaintiffs overreach. Defendants' Motion to Compel asked plaintiffs to produce narrative text articulating what their unexplained screenshots allegedly showed. Implicit in this request was the condition that plaintiffs' supplement would be based on the information plaintiffs already possessed. Consequently, the Court rules that plaintiffs' citation to source code obtained after May 1, 2017 is an amendment. The Court rejects plaintiffs' argument that their additional review of defendants' source code, "was directly responsive to the Court's order[.]" Pltfs.' Response at 16. As already noted, plaintiffs were granted leave to supplement, not amend.

As to the post-May 1, 2017 source code citations, the Court has no trouble finding that plaintiffs cannot establish good cause for the amendments. This is so because plaintiffs were not diligent in obtaining the source code they are now relying on. All of the Xactware source code plaintiffs obtained after May 1, 2017 was available before May 1, 2017. If plaintiffs acted diligently they would have obtained all of the source code they needed before May 1, 2017.

Defendants' log of plaintiffs' source code review supports the Court's ruling. See Exhibit 18. Plaintiffs reviewed defendants' source code on approximately 27 different days from April 28, 2016 to August 5, 2016. Through August 5, 2016, plaintiffs printed 648 pages of Xactware source code. However,

after the Court's May 2, 2017 Order, plaintiffs went back and reviewed the source code on six (6) more days from May 11, 2017 to June 2, 2017, and printed an additional 228 pages. If plaintiffs acted diligently they would have obtained all the source code they needed as of August 5, 2016. The fair inference from plaintiffs' 2017 review is they wanted to be sure their citations were complete. Unfortunately for plaintiffs, however, the Local Rules do not give them an automatic "second bite at the apple" in the absence of a showing of diligence. Since the source code plaintiffs printed in May/June 2017 was available to plaintiffs before May 1, 2017, and plaintiffs provided no justifiable explanation for why the new source code was not obtained and cited earlier, plaintiffs were not diligent in obtaining the 228 pages they obtained in May/June 2017. Therefore, since plaintiffs do not show good cause to amend their contentions to cite to source code obtained after May 1, 2017, plaintiffs' amendment citing the source code in the 228 pages is stricken. Defendants represent this is the source code Bates-stamped higher than XWSC648.

> F. New Invention and Alternative Priority Dates, and New Invention Dates

> (1) Priority Dates

L. Pat. R. 3.1 requires initial infringement contentions to disclose, "[f]or any patent that claims priority to an earlier application, the priority date to which each asserted claim

allegedly is entitled." Defendants complain that plaintiffs'
priority dates have shifted over time. Defts.' Memo at 3.
Defendants also complain plaintiffs improperly reserved the
right to rely on one of two priority dates for several patents.
Id. Defendants argue that if plaintiffs want to assert new
priority dates they must file a motion to amend their
contentions rather than through responses to Xactware's
invalidity contentions and supplemental interrogatory answers.
Ultimately, defendants argue, plaintiffs cannot amend because
they were not diligent.

    Defendants challenge plaintiffs' priority dates for the
'436 patent on the ground they changed. Plaintiffs disagree and
argue their priority dates have remained essentially the same.
The Court agrees with plaintiffs. Plaintiffs have demonstrated
that their asserted priority dates have remained essentially
consistent in their December 23, 2015 infringement contentions
(Exh. 8 at 6), November 4, 2016 amended contentions (Exh. 1 at
6), and June 6, 2017 second amended contentions (Exh. A at 12).[10]

    To the extent defendants argue plaintiffs are barred from
asserting alternative priority dates the Court disagrees. See
Ajinomoto Co. Inc. v. Int'l Trade Comm'n, 597 F.3d 1267, 1277
(Fed. Cir. 2010)("A patentee may seek to rely on an earlier

_____
[10] Defendants may fail to recognize that their interrogatory 7
only asked for the earliest priority date, not all possible
alternatives. Exh. 12. at 2.

priority date to overcome intervening prior art …. A patentee
may also argue in the alternative for different priority dates
at trial"); accord <u>Collaborative Agreements, LLC v. Adobe Sys.,</u>
<u>Inc.</u>, No. 15-cv-3853-EMC, 2016 WL 1461487, at \*2 (N.D. Cal. Apr.
17, 2016)(plaintiff "could have claimed various priority dates"
in the alternative….) Defendants argue plaintiffs must file a
motion to amend their invalidity contentions to amend a priority
or invention date rather than amending interrogatory answers.
However, since defendants acknowledge the issue is the same
(Defts.' Memo. at 30), and plaintiffs filed a Cross-Motion to
Amend, the Court will not require plaintiffs to formally include
(if not already done) the substance of their response to
interrogatory 7 in their amended infringement contentions.

(2)  <u>Invention Dates and Document Disclosures</u>

Defendants' invention date arguments and plaintiffs'
response is not easy to grasp. Part of the problem is the
parties' arguments involve the interplay of the Local Patent
Rules and plaintiffs' multiple answers to defendants'
interrogatory 7. As opposed to L. Pat. R. 3.1(f) which requires
the disclosure "[f]or any patent that claims priority to an
earlier application, the priority date to which each asserted
claim allegedly is entitled," the Local Rules do not
specifically require the disclosure of specific conception and
reduction to practice dates. Instead, L. Pat. R. 3.2(b) requires

the production of "[a]ll documents evidencing the conception [and] reduction to practice … of each claimed invention." These documents must be produced 14 days after the initial scheduling conference with the "Disclosure of Asserted Claims and Infringement Contentions." On December 23, 2015, plaintiffs served their infringement contentions and responsive Rule 3.2(b) disclosures for all seven patents.[11]

In order to obtain specific conception and reduction to practice dates, defendants served interrogatory 7 which specifically asked plaintiffs to identify separately for each asserted claim the <u>earliest</u> <u>date</u> plaintiffs contended the alleged invention was conceived and reduced to practice. Exh. 12 at 2 (emphasis supplied). Plaintiffs' first answer to interrogatory 7 on February 29, 2016 did not identify any specific dates but instead referred defendants to their document disclosures under L. Pat. R. 3.1, 3.2(b) and 3.2(c). <u>Id.</u> at 3.[12]

---

[11] Relying on authority from outside New Jersey, the Court acknowledges defendants argue plaintiffs are required to specifically set forth their conception and reduction to practice dates similar to what is required for priority dates. See Defts.' Memo at 27-28. However, defendants have not cited a New Jersey case that adopts this position.

[12] The Court questions the appropriateness of plaintiffs' reliance on Rule 33(d) which provides a party may answer an interrogatory by producing its business records. This may only be done if "the burden of deriving or ascertaining the answer [is] substantially the same for either party[.]" The Court suspects, but is not certain, that the burden to review the produced inventor's notebooks was substantially more difficult for defendants than it was for plaintiffs. This is demonstrated by the fact that plaintiffs provided specific dates in their

25

At the behest of defendants, plaintiffs supplemented their response to interrogatory 7 on September 9, 2016. Id. This answer provides specific conception and reduction to practice dates and identified additional documents responsive to L. Pat. R. 3.2(b). Plaintiffs later supplemented their answer to interrogatory 7 on July 12, 2017 (id. at 6) and July 19, 2017 (id. at 40). In July 2017, plaintiffs only produced additional reduction to practice documents, not conception documents. Transcript of October 18, 2017 Oral Argument ("Tr.2") at 6:17-25.

Defendants argue plaintiffs' July 2017 dates differ from their September 9, 2016 dates. Defendants also argue plaintiffs produced new documents responsive to L. Pat. R. 3.2(b) in July 2017 that should have been produced earlier if plaintiffs exercised reasonable diligence. Plaintiffs argue they did not change dates for the '436 patent but admit dates for their six (6) other patents were changed. Tr.2 35:15-19. Plaintiffs acknowledge new responsive documents were produced in July 2017, but argue since they exercised reasonable diligence the supplemental production is appropriate.

Defendants' motion directed to plaintiffs' invention dates raises several issues which will be separately addressed. These

September 9, 2016, July 12, 2017 and July 19, 2017 supplemental answers to interrogatory 7. Nevertheless, defendants are not seeking to strike plaintiffs' December 23, 2015 answer to interrogatory 7.

issues include the specific relief defendants request, whether plaintiffs' late produced documents and source code should be stricken, and whether plaintiffs' July 2017 new conception and reduction to practice dates should be stricken.

(a) Requested Relief

The first important question to address is the specific relief plaintiffs are requesting as to plaintiffs' conception and reduction to practice disclosures. Although defendants' motion only asked the Court to strike invention dates not included in plaintiffs' December 2015 infringement contentions, defendants later acknowledged they do not object to plaintiffs' September 2016 supplement to interrogatory 7. Tr.2 at 39:17-23. Defendants, however, are seeking to strike the alleged new invention dates for all seven patents asserted after this date, i.e., the July 12 and 19, 2017 answers to interrogatory 7. Id. at 29:11-13. In addition, defendants clarified they are not only seeking to strike the new dates in plaintiffs' July 2017 answers to interrogatory 7, but also the new documents produced with these answers. Defendants explain that to the extent this relief was not specifically set forth it was an oversight. Defendants argue they intended to strike plaintiffs' supplemental document production as "part and parcel" of their motion. Id. at 30:25 to 31:14. The Court credits defendants' argument. The Court finds the request to strike plaintiffs' late document disclosures was

implicit in plaintiffs' request to strike the new invention dates. It makes little sense to strike new invention dates but not the late produced documents and source code plaintiffs produced to support their new dates. Defendants' motion repeatedly criticizes plaintiffs for not disclosing the evidence (i.e., documents and source code) they relied upon to support the invention dates in their September 9, 2016 answer to interrogatory 7. For example, defendants argued:

> That Plaintiffs would withhold their evidence on which their supplemental answer to Interrogatory No. 7 was based in the face of a potential motion to compel, only to sandbag Defendants with that evidence in the closing months of fact discovery smacks of gamesmanship. The Local Patent Rules prohibit it, and Plaintiffs should be precluded from relying on these late-disclosed invention dates.

Defts.' Memo at 32. Defendants also argued: "Plaintiffs have had the material they purport to rely on for years. It is hard to comprehend why Plaintiffs were … unable to name these [new] invention dates in December 2015." Id. Thus, it is apparent defendants intended to strike plaintiffs' newly cited documents and source code as well as their new conception and reduction to practice dates. Thus, for clarification purposes defendants are seeking to strike the new conception and reduction to practice dates identified in plaintiffs' July 2017 interrogatory answers for all seven patents. Defendants are also seeking to strike all documents responsive to L. Pat. R. 3.2(b) that were produced in July 2017.

(b)  Plaintiffs' Late Document and Source Code
          Production

The next important issue to address is whether plaintiffs should be granted leave to amend or supplement their response to interrogatory 7 to add the new documents they disclosed with their July 2017 supplemental answers to interrogatory 7. In this regard the Court is again required to apply L. Pat. R. 3.7 since the Rule not only applies to amendments to contentions but also to "[a]mendment of any … disclosures, or other documents required to be filed or exchanged" pursuant to the Local Patent Rules. Rule 3.7 applies because the new reduction to practice documents plaintiffs produced in July 2017 were originally required to be produced in December 2015, and at the latest by September 2016 when plaintiffs supplemented their answers to interrogatory 7 with their L. Pat. R. 3.2(b) document disclosures. Thus, plaintiffs did not supplement their Rule 3.2(b) disclosures in July 2017 but instead amended their disclosures. As noted, the key to showing good cause to amend pursuant to L. Pat. R. 3.7 is that a party must act diligently to discover that an amendment was appropriate. O2 Micro Intern. Ltd., 467 F.3d at 1366; AS America, Inc., 2013 WL 4084237, at *2. The Court, therefore, will examine plaintiffs' diligence with respect to the new documents they disclosed in July 2017.

Plaintiffs disclosed two categories of new documents in July 2017. These two categories are paper documents and old

29

Eagle View source code. (The "source code that was uncovered from the – an earlier implementation of the invention … shows reduction to practice of all of the patents." Tr.2 at 9:4-9). Plaintiffs contend their late production was caused by the Court's May 2, 2017 Order granting defendants leave to amend to add the Sungevity reference. After Sungevity was added plaintiffs' counsel, "asked folks to … look for materials that they previously said were not in existence … and in places that they felt were highly unlikely that had anything. And that's how these things were discovered." Id. at 8:4-9.[13] Counsel added, "it was after Sungevity was brought in that we did that extra searching." Id. at 8:10-12. When squarely presented with the question why the July 2017 materials were not produced earlier counsel stated, "relevant third-parties like the lead inventor did not believe that other materials were in existence." Id. at 10:11-14. According to counsel, when Sungevity came into play counsel "asked the folks who [they] were working with to [double check]." Id. at 10:16-18.

The Court finds that plaintiffs have not shown good cause to amend their disclosures to include the documents, including source code, disclosed in July 2017. In other words, plaintiffs

---

[13] To be clear, although plaintiffs did a more vigorous search after Sungevity was added to the case, not all of the new documents address Sungevity. This is because Sungevity is only asserted against the '436, '840 and '376 patents, not against the other four patents. Tr.2 at 8:14-22.

have not satisfied their burden to show they acted diligently to amend their L. Pat. R. 3.2(b) disclosure.[14] No good reason has been given for why the documents disclosed in July 2017, could not have been disclosed earlier if a diligent search was done.[15] As noted in <u>Harvatek Corporation v. Cree, Inc.</u>, No. C14-05353 WHA, 2015 WL 4396379, at *3 (N.D. Cal. July 17, 2015), the requirement that L. Pat. R. 3.2(b) documents be produced early in a case "poses a minimal burden for a patent holder, who should already know the conception date of a patented invention prior to commencing litigation." Although it is plaintiffs' burden to show they acted diligently, the only evidence they submitted to support their Cross-Motion to Amend was the conclusory August 25, 2017 Declaration of Gianni Cutri, Esquire (Doc. No. 292-1), a partner at plaintiffs' law firm. The sum and substance of the Declaration is that after Sungevity was added to the case and defendants asked for more information about invention dates, plaintiffs contacted "numerous third parties, including former employee-inventors and former prosecution attorneys" for more information. <u>Id.</u> at ¶4. This conclusory

---

[14] As is obvious, plaintiffs attempted to do this by supplementing their answer to interrogatory 7 in July 2017.

[15] It is not insignificant that until recently the inventor was the Chief Technology Officer at Eagle View Technologies and an officer of the company. Tr.2 28:24 to 29:4. It is also noteworthy that this inventor did not find the relevant USB drive located in his house in the Seattle area until July 2017. <u>See</u> Defts.' November 13, 2017 Letter Brief, Exh. A, Vol. 1, at 200:9-21, Doc. No. 328.

statement does not satisfy plaintiffs' burden to show they acted diligently to discover and produce documents responsive to L. Pat. R. 3.2(b). Plaintiffs have not shown why the witnesses were not contacted earlier. Simply stated, it should not have been necessary for plaintiffs to "double-check" after Sungevity was added to the case. A relevant case is Richtek Technology Corp. v. uPI Semiconductor Corp., No. C09-05659 WHA, 2016 WL 4269095 (N.D. Cal. Aug. 15, 2016), where the Court denied the plaintiff's request to assert a new priority date after the defendant successfully moved to amend its invalidity contentions to address prior art. The Court reasoned that the Local Patent Rules contemplate a specific sequence of disclosures – "the patent owner must produce or make available all documents evidencing a conception date prior to the date of the application for the patent, and the accused infringer then discloses its invalidity theories." Id. at *2 (emphasis in original).

It appears that what happened here is that plaintiffs did not look very hard for documents responsive to L. Pat. R. 3.2(b) until after May 2, 2017, when Sungevity was added to the case.[16] This is apparent from plaintiffs' argument that their first

---

[16] This conclusion is supported by the fact that plaintiffs' July 2017 answers to interrogatory 7 added citations to their own old source code and cited to 2033 pages defendants claim should have been included in plaintiffs' L. Pat. R. 3.2(b) disclosure. See Defts.' October 5, 2017 Slide 25.

search for documents did not turn up the documents they later found because they "just became relevant for the first time in view of Defendants' assertion of Sungevity." Pltfs.' Response at 28; see also Pltfs.' Reply at 13. ("Upon adding Sungevity, Plaintiff promptly supplemented its responses [July 2017] – only two months later – to provide more detail, as then and only then did the detail become relevant. Defendants do not dispute that aside from Sungevity, all asserted prior art pre-dates Plaintiff's December 2006 conception date, making Plaintiff's invention dates irrelevant to those references.")(emphasis in original). In fact, plaintiffs acknowledge they found the new documents and source code "in response to Sungevity coming into the case." Tr.2 at 13:24 to 14.1. The problem with plaintiffs' argument is that L. Pat. R. 3.2(b) is not dependent on plaintiffs' notion of relevancy. Rule 3.2(b) is mandatory in the sense that it requires the production of "all documents evidencing the conception [and] reduction to practice … of each claimed invention[.]"[17]   Thus, the Court rejects plaintiffs'

---

[17] The focus of plaintiffs' argument changed from when they filed their Briefs and when the second oral argument was held on October 18, 2017. Plaintiffs now concede their relevancy argument carries little weight. ("We're not … suggesting that the rules have a relevance carve out." Tr.2 13:6-10; "I think the crux of our argument is, we exercised diligence." Id. at 16:11-12.) Instead of relevance, plaintiffs now focus on the assertion that they exercised reasonable diligence to produce required L. Pat. R. 3.2(b) disclosure documents. Plaintiffs make this argument even though it took them until July 2017 to produce a cache of key documents and source code.

argument that, "[m]ore specificity with respect to invention dates was not relevant until Defendants raised Sungevity as allegedly invalidating prior art." Pltfs.' Response at 31. Even if plaintiffs had a duty to supplement under Rule 26(e), they could not avoid the requirement that they must show good cause to amend a L. Pat. R. 3.2(b) disclosure. Otherwise, parties could avoid having to show diligence to amend by simply citing to Rule 26(e).

Under New Jersey's patent rules and well established case law, plaintiffs do not get a "do over" when their sense of relevancy changes. The Court will not enable this sort of conduct. This is inconsistent with the goal of the Rules to require "full, timely discovery and provide all parties with adequate notice and information with which to litigate their cases." Depomed, Inc. v. Purdue Pharma L.P., et al., C.A. No. 13-571 (MCC), 2016 WL 8677317, at *3 (D.N.J. 2016)(citation and quotation omitted). As is well known, the Local Patent Rules "are designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed." Id. Plaintiffs should have taken this into account when they did their initial production in December 2015 and supplemental production in June 2016. This is especially true since Sungevity was listed on the

face of each of plaintiffs' asserted patents. Plaintiffs do not get "three bites at the apple."

Plaintiffs' arguments are not convincing. Plaintiffs repeatedly argue their late disclosures should be permitted because when the Court granted defendants leave to add Sungevity it assured plaintiffs they would not be prejudiced. In one sense plaintiffs are correct. However, the Court did not intend to give plaintiffs a "free pass" and they could not reasonably expect this to be the case. The Court never excused plaintiffs from complying with their obligations under the Local Patent Rules. In terms of scheduling deadlines or the number of permissible depositions or other discretionary issues of this sort, the Court was prepared to accommodate plaintiffs. However, the Court did not excuse plaintiffs from complying with the good cause/diligence standard in L. Pat. R. 3.7 to amend their Rule 3.2(b) document disclosure. The Court did not and will not excuse plaintiffs from complying with the Local Patent Rules.

Further, defendants' amendment that added Sungevity to the case was due in part to plaintiffs' original unwieldly strategic decision about how to litigate the case. The Court stated at the May 1, 2017 oral argument:

> The Court is sympathetic to defendants' argument about why it took time to finally formulate their present invalidity positions. This was occasioned in part by the fact plaintiffs asserted an unreasonable and unwieldly number of patents and asserted claims in the case…. [T]hese numbers evolved over time. Up until

September 2016, plaintiffs were asserting nine patents
and 153 asserted claims. It wasn't until September
2016, that plaintiff reduced their claims to 46, and
then 24 on December 20, 2016.

The Court is concerned that if it denied defendants'
amendment because of delays occasioned by excessive
asserted claims, it could encourage gamesmanship in
the future. This is not how our patent rules and
litigation should work in this District.

Tr. 37:22 to 38:11. Plaintiffs should have foreseen the
consequences of their misguided strategic decisions when they
were made. Plaintiffs have themselves to blame for the
consequences of their decisions.

As to all but the '436 patent, plaintiffs concede the
reduction to practice documents and source code they disclosed
in July 2017 should have been produced pursuant to L. Pat. R.
3.2(b). Tr.2 12:3 to 13:10. This is true because the documents
are dated before the earliest priority dates for the six (6)
patents. As to the '436 patent, however, plaintiffs argue that
since the earliest priority date is April 2007, and the material
at issue is from 2008, they had no duty to produce the material
under Rule 3.2(b). Therefore, plaintiffs argue, the material
should not be stricken as to the '436 patent. The Court
disagrees. Plaintiffs ignore the fact they claimed April 2008 as
an alternative priority date. Plaintiffs must produce Rule
3.2(b) documents earlier than each of their proposed priority
dates, not just the earlier of the two dates. Otherwise,
documents dated earlier than the later of the two possible

priority dates, but after the first alternative priority date, may not be produced. This is an unacceptable result. Plaintiffs' interpretation of Rule 3.2(b) is not consistent with the full and early disclosure requirements of the Local Patent Rules.

Plaintiffs emphasize the importance of the newly discovered source code to contest Sungevity and the fact that the old code was found in a state different form the inventor's home. Tr.2 at 10:24 to 11:4. However, knowing the importance of old versions of source code, plaintiffs should have exhausted their efforts to find the source code no later than July 2016. The Court is not losing sight of the fact that as late as May 1, 2017 when defendants' motion to compel was argued, plaintiffs steadfastly insisted their disclosures were complete. This was false. Moreover, the Court is not ignoring the fact plaintiffs have always been aware of Sungevity from the face of the asserted patents.

Plaintiffs argue "unique circumstances" and a "unique situation" exist here because Sungevity was added to the case in May, 2017. Tr.2 17:23 to 18:2, 18:10-11. Plaintiffs contend it would be "unfair" to allow defendants to add Sungevity "late" but not let plaintiffs use the documents they found because they are "directly responsive." The Court disagrees. It is not unfair to require plaintiffs to do what the rules require and to deny an amended disclosure where reasonable diligence was not

exercised to locate and produce responsive L. Pat. R. 3.2(b) documents. This is not the first nor will it be the last case where enforcement of the Local Patent Rules results in the exclusion of otherwise relevant evidence.

Although not clear, plaintiffs may also be arguing that since diligence was not the focus of defendants' motion they should not be held accountable if their "reasonable diligence" or good cause evidence was not as detailed or fulsome as it could have been. Again, the Court disagrees. Whether or not defendants focused on plaintiffs' diligence plaintiffs knew their Cross-Motion to Amend had to satisfy the good cause diligence standard. The burden of proof to show good cause is plaintiffs' responsibility whether or not defendants focused on this argument in their Motion to Strike. Plaintiffs cannot foist blame on defendants because plaintiffs chose not to submit "diligence" evidence when they knew from a long line of New Jersey cases, including several from this Court, that this was an essential element of their burden of proof.

### (c)  Conception and Reduction to Practice Dates

Having struck the new documents and Eagle View source code plaintiffs produced with their July 2017 answers to interrogatory 7, the Court must now address whether to strike any new conception and reduction to practice dates in plaintiffs' July 12 and 19, 2017 answers to interrogatory 7.

Plaintiffs take the position that these dates did not change for the '436 patent but they changed for the other six patents. Tr.2 35:15-19.[18] Defendants do not agree with plaintiffs. Tr.2 29:8-14. In any event, if any of the dates in plaintiffs' July 2017 answers are solely based on the stricken documents and source code, the dates must also be stricken. However, to the extent the dates are based on documents produced earlier in the case, such as the inventor's notebooks, the dates will not be stricken. This result is necessary because the standard for plaintiffs to amend their L. Pat. R. 3.2(b) disclosures is different than the standard to supplement interrogatory 7. In other words, if the dates plaintiffs provided in their July 2017 answers to interrogatory 7 are based on documents timely produced, the Court considers any new dates to be a legitimate supplement rather than an amendment requiring a showing of good case. However, plaintiffs may not rely on any of the stricken documents to support any of the dates in their answers to interrogatory 7.

---

[18] At the October 5, 2017 oral argument defendants presented Slide 25 documenting that plaintiffs' July 12, 2017 answer to interrogatory 7 added "new conception/reduction to practice story and dates" for all seven asserted patents, added 65 pages of new material and cited to 1,916 new pages that should have been produced with plaintiffs' L. Pat. R. 3.2(b) disclosures. The July 19, 2017 answer provided new reduction to practice dates for all seven asserted patents and cited to 117 new pages.

## Conclusion

In sum, for the reasons discussed herein the parties' motions will be granted in part and denied in part. The accompanying Order summarizes the rulings set forth in this Opinion.

s/Joel Schneider
JOEL SCHNEIDER
United States Magistrate Judge

Dated: November 29, 2017