# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| Eagle View Technologies, Inc. *et al.*, | ) |
| Plaintiffs, | ) Civil No. 15-07025 (RBK/JS) |
| v. | ) **Opinion** |
| Xactware Solutions, Inc. *et al.*, | ) |
| Defendants. | ) |

This is a patent infringement action brought by Eagle View Technologies and Pictometry International (together "Plaintiffs") against Xactware Solutions and Verisk Analytics (together "Defendants"). Before the Court are two motions by Plaintiffs: one under Federal Rule of Civil Procedure ("Fed. R. Civ. P." or "Rule") 12(b) 6 to dismiss the Inequitable Conduct Counterclaim (Count XIX) in Defendants' Second Amended Answer ("Answer"), and the other under Fed. R. Civ. P. 12(f) to strike from the Answer Defendants' Twelfth Affirmative Defense of Inequitable Conduct.

For the reasons below, Plaintiffs' motion to dismiss under Rule 12(b) (6) is granted without prejudice and with leave for Defendants to amend; and, Plaintiffs' motion to strike under Fed. R. Civ. P. 12(f) is also granted without prejudice and with leave for Defendants to amend in accordance with the Rules.

An appropriate Order accompanies this Opinion.

## 1.0 Background
## 1.1 Parties' Business Relationship

Plaintiffs are the owners of the patents at issue[1] that recite, among other things, business methods, systems, and computer readable storage media for providing a roof repair estimate. The claimed invention applies photogrammetric methods, that is, trigonometric calculations, to images of rooves in aerial photographs to compute measurements of those rooves. Defendant Xactware Solutions, Inc., is a subsidiary of Defendant Verisk Analytics, and provides online technology tools and systems to insurance carriers, remodelers and construction service

---

[1] US8,078,436, re-examined ('436 patent); US8,170,840 (' 840 patent); US8,818,770 ( '770 patent); US9,129,376 ('376 patent); US8,209,152 ('152 patent); US8,825,454 ('454 patent); US9,135,737 ('737 patent)

1

providers for determining replacement-cost calculations for damaged buildings and construction estimates. The parties have asserted they are competitors to each other (Doc. 15:¶1)[2].

### 1.2 Relevant Procedural History

On 23 September 2015, plaintiffs filed their original complaint against defendants and on 30 November 2015, an amended complaint. Both of these (Docs. 1 and 30) allege direct and indirect infringement under 35 U.S.C. §§ 271(a) and (b) of at least one claim of each patent at issue. On 12 November 2015, defendants answered the complaint (Doc. 15) and counterclaimed, asserting the invalidity of each of plaintiffs' claims at issue and that defendants' software tools and systems can therefore not infringe. On 18 May 17, on leave from the Court, Defendants filed a Second Amended Answer, including affirmative defenses and counterclaims ("Amended Answer") (Doc. 238). On June 2017, Plaintiffs filed a joint motion (Doc. 245) to dismiss Defendants' inequitable conduct Counterclaim (Count XIX in the Amended Answer) and to strike the twelfth affirmative defense relating to that counterclaim. On 3 July 2017, defendants opposed these joint motions (Doc. 255); and on 13 July 2017, plaintiffs replied to defendants' opposition (Doc. 266). The parties' arguments focus on whether the inequitable conduct counterclaim has been pled with required particularity and therefore complies with the pleading standards of the Federal Circuit and the Third Circuit.

### 2.0 Pleading Standards

### 2.1 General Pleading Standard for Motion to Dismiss under Rule 12(b)(6)

As a general rule, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to "state a claim to relief that is plausible on its face.' "Ashcroft *v. Iqbal*, 556 U.S. 662, 677, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) [quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.544, 570, 127 S.Ct. 1955, 167 L.Ed. 2d 929 (2007)]. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Twombly*, 550 U.S. at 556. This pleading requirement applies to pleadings made under Rule 9. *Iqbal*, 556 U.S. at 686-87.

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), "the Court must 'accept all factual allegations as true and construe the complaint in the light most favorable to the plaintiff [or challenger]." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 291 F.3d 361, 374 n. 7 (3d Cir.2002)). "[J]udging the sufficiency of a pleading is a context-dependent exercise" (*West Penn Allegheny Health System, Inc. v. UPMC*, 627 F.3d. 85, 98 (3d Cir.2010)) since "[s]ome claims require more factual explication than others to state a plausible claim for relief". *Id.*

---
[2] "Doc." numbers refer to the document listed in the CM/ECF database of the District of New Jersey found on www.pacer.gov

Specifically, the more complicated ones may demand more factual allegations. *Id.* In the determination of fact sufficiency, courts may consider allegations in the complaint and exhibits attached thereto, information in the public record, and documents forming the basis of a claim. *Lum v. Bank of Am.*, 361 F.3d 271, 222 n. 3 (3d Cir.2004).

*Bistrain v. Levi*, 696 F.3d 352, 365 (3d Cir. 2014) details three steps to determine whether a complaint meets the pleading standard: 1) the court first outlines the elements a plaintiff must plead to state claim for relief; 2) then peels away allegations that are only conclusions, and 3) then identifies well-pled factual allegations, assumes their veracity and analyzes "whether they plausibly give rise to an entitlement of relief." *Id.*

## 2.2   Inequitable Conduct Pleading Standard for a Rule 12(b)(6) Motion

A claim of inequitable conduct in acquiring or maintaining a patent has two elements: intent to deceive and materiality of the omission / misrepresentation to the PTO. Determining sufficiency of a motion pleading inequitable conduct before the PTO is a question of patent law and, as such, governed by Federal Circuit law. *Exergen Corporation v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1312 (Fed.Cir. 2009).

The standard for pleading inequitable conduct is different than that for proving it. See *Phillips v. County of Allegheny,* 515 F.3d 224, 230 (3d Cir.2008) [stating generally that pleading a claim does not require proving it]. The Federal Circuit recently heightened the merits standard of proving inequitable conduct, requiring that deception before the PTO be "but-for" material. *Therasense, Inc. v. Becton Dickinson and Co.,* 649 F.3d 1276, 1291-92 (Fed.Cir. 2011). No longer is it enough to show the omission/misrepresentation was highly material to patentability and reasonably implied intent to deceive. Now, it must be shown that, because of the misrepresentation or omission, the patent at issue is not patentable. *Id.* at 1291.

Even though different, the pleading standard for inequitable conduct is related to the merits standard in that both allegations must be pled with Rule 9(b) specificity. As with alleging fraud, inequitable conduct must be pled with the particularity required by Rule 9(b). *Exergen*, 575 F.3d at 1326.

The standard for pleading inequitable conduct standard is set forth in *Exergen* 575 F.3d at 1326-1337, which demands the inclusion of sufficient allegations of material facts so that a court may reasonably infer that a specific individual either knew information was withheld from, or falsely reported to, the PTO, and did so with specific intent. *Id*. at 1328-29. "A reasonable inference is one that is plausible and that flows logically from the facts alleged." *Depomed, Inc. v. Purdue Pharma, L.P. et al.*, No. 13-571, 2017 WL 2804953, at *4 (D.N.J. 28 June 2017) [quoting *Exergen*, 575 F.3d at 1329 n.5.] That is, the factual allegations must present something more than the mere possibility of legal misconduct. *Id.* at 1326-27; *In re Lipitor Antitrust Litigation*, MDL 2332, 2013 WL 4780496, at *13 (D.N.J. 5 September 2013) [citing *Iqbal*, 556 U.S. at 681].

To the point, pleading inequitable conduct properly requires identifying the specifics of who, what, when, where, why, and how of the material misrepresentation / omission before the PTO. *Exergen*, 575 F.3d at 1328; *see also Fresenius Kabi USA, LLC v. Fera Pharm.* LLC, No. 15-3654, 2016 WL 5348866, at * 10 (D.N.J. 23 September 2013). The "who" must be pled with the name of the person who withheld or misrepresented the information; the "what' and "where" pled by identifying the germane claims and claim terms, their connection to the withheld or false information, and what segments of the information are relevant; the "why" pled by explaining why the information is material; and the "how" pled by showing how the information is relevant to a PTO examiner's assessment of patentability of the claims. *Exergen*, 575 F.3d at 1327; *Fresenius Kabi USA*, 2016 WL 5348866, * 10; *Senju Pharmaceutical Co., Ltd et al. v. Apotex Inc. et al.*, 921 F.Supp. 2d 297, 306-307 (D.De. 2013).

Even though *Exergen* did not concern a Rule 12(b) (6) motion,[3] this court has consistently applied the *Exergen* pleading standard to such motions relating to inequitable conduct claims in patent infringement cases. Judge Simandle of this Court has pointed out the Federal Circuit extended its *Exergen* standard in *Delano Farms Co. et al. v. California Table Grape Comm'n*, 655 F.3d 1337, 1350 (Fed.Cir. 2011), which expressly concerned, *post-Therasense*, a Rule 12(b)(6) motion of inequitable conduct. *Mycone Dental Supply Co., Inc. v. Creative Nail Design, Inc.et al.*, No. 11-4380, 2013 WL 3216145, at *4-5 (D.N.J. 24 June 2013). Moreover, this Court in *Depomed*, 2017 WL 280-4953, at *4 acknowledged that *Delano Farms* exemplified *Exergen's* standard in a Rule 12(b)6 context. *See also* W*arner Chilcott Co., LLC et al. v. Amneal Pharmaceuticals, LLC, et al.*, Nos. 11-5989, 11-6936, and 12-1474, 2013 WL 6627694, at *3 (D.N.J. 20 December 2013) and *Taro Pharmaceuticals N.A. et al.* v. *Suven Life Sciences, Ltd.*, No. 11-2452, 2012 WL 2513523, at * 5 (D.N.J. 28 June 2012) [each *citing Exergen* and *Delano Farms* together as setting the standard]. Further, Judge Wolfson of this Court cites *Exergen* 575 F.3d at 1331 to emphasize that fact allegations must suggest the deliberate nature of the fraud on the PTO. *Jersey Asparagus Farms, Inc.* v. *Rutgers University*, 803 F. Supp.2d 295, 308 (D.N.J.2011).

Moreover, other courts in this Circuit have relied on the *Exergen* standard in a motion to dismiss inequitable conduct claims. For example, Chief Judge Conti interpreted the *Exergen* standard to mean that a factual deficiency with respect to the required who, what, where, where, how, and why elements is "fatal under Rule 9(b).' " ILIFE *Technologies Inc. v Body Media, Inc.*, No. 14-990, 2015 WL 1000193, at *2 (W.D.Pa. 6 March 2015). *See also IBM Corp. v. The Priceline Group, Inc.*, No. 15-137, 2017 WL 1349175 at *4 (D.De. 4 Apr 2017); *Courtesy Products, L.L.C. v. Hamilton Beach Brands*, Inc., No. 13-2012, 2015 WL 6159113, at *4 (D.De. 20 October 2015); *Senju Pharmaceutical,* 921 F.Supp. 2d at 306; and *Bayer Cropscience AG v. Dow Agrosciences, L.L.C.*, No. 10-1045, 2012 WL 1253047, at *2 (D.De. 12 April 2012) [Schneider, MJ of this Court, sitting by designation].

---

[3] but rather concerned a post-trial motion for a directed verdict (judgment as a matter of law).

In summary, the heightened merits standard of *Therasense* for proving inequitable conduct is reflected in the heightened standards of pleading inequitable conduct at the motion to dismiss stage. *See Mycone*, 2013 WL 3216145, *6; *Exergen*, 575 F.3d at 1327-28 (Fed.Cir.2009); *Delano Farms,* 655 F.3d at 1350 (Fed.Cir.2011). A properly pled Rule 12(b)(6) motion of inequitable conduct calls for sufficient and particularized facts that allow the court to reasonably infer the challenged party is liable for intent to deceive the PTO by a material representation / omission. *Mycone*, at *5; *Senju Pharmaceutical,* 921 F.Supp. 2d at 306-307. The reasonable inference inquiry has 3 steps: identifying the elements of the inequitable conduct claim; striking conclusory allegations; and, evaluating the particularity of the pled elements of who, what, where, when, how and why to determine if they reasonably infer "that discovery will reveal evidence of the necessary element [here, intent to deceive]." *Taro Pharmaceuticals,* 2012 WL 2513523 at *4, citing *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d.Cir. 2009); *see generally Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016; *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 (internal quotation marks omitted).

### 2.3  Rule 12(f) Pleading Standard

Rule 12(f) grounds a legal challenge to the sufficiency of an affirmative defense. Courts in this Circuit have determined that the heightened pleading standard of *Twombly* and *Iqbal* does not apply to Rule 12(f) motions. *FTC v. Hope Now Modifications, LLC*, No. 09–1204, 2011 WL 883202 at *2 (D.N.J. 10 March 2011); *see also Bayer Cropscience v. Dow Agrosciences, LLC*, No. 10-1045, 2011 WL6934557, at *1 (D.De. 30 Dec 2011) [Bumb, DJ of this Court, sitting by designation].

As a general matter, motions to strike under Rule 12(f) are highly disfavored (*See Garlanger v. Verbeke,* 223 F.Supp.2d 596, 609 (D.N.J.2002)) as they are often sought as a dilatory tactic. *FTC v. Hope Now Modifications, LLC*, 2011 WL 883202 at *1 quoting *Waste Mgmt. Holdings v. Gilmore,* 252 F.3d 316, 347 (4th Cir.2001). Moreover, the Third Circuit disfavors granting motions to strike affirmative defenses "unless the insufficiencies of the defense is 'clearly apparent' ". *See Cipollone v. Liggett Groups, Inc.*, 789 F.2d 181, 188 (3d Cir.1986), rev'd on other grounds, 505 U.S. 504 (1992).

An affirmative pleading under Rule 12(f) may be struck when it is legally insufficient as a matter of law under any set of facts that may be inferred from the pleadings. *In re Gabapentin Patent Litigation*, 395 F.Supp.2d 340, 346 (D.N.J.2005). An affirmative defense is legally insufficient if "it is not recognized as a defense to the cause of action." *Tonka Corp. v. Rose Art Indus., Inc.,* 836 F.Supp. 200, 217 (D.N.J.1993) [quoting *Total Containment, Inc. v. Environ Products, Inc.,* Civ. No. 91–7911, slip op. 1992 WL 208981 at *1 (E.D.Pa. 19 August 1992)]. On pleadings alone, " ' an affirmative defense can be stricken only if the defense asserted could not possibly prevent recovery under any pleaded or inferable set of facts.' " FTC *v. Hope Now Modifications, LLC*, 2011 WL 883202 at *1 quoting *Tonka Corp,* 836 F. Supp. at 218 (quotations omitted). The district court's decision whether to grant a motion to strike under Rule 12(f) is discretionary. *Tonka Corp.*, 836 F.Supp. at 217 citing *River Road Development Corp. v. Carlson*

*Corp.,* Civ. No. 89–7073, 1990 WL 69085 at *2 (E.D.Pa. 23 May 1990).

## 3.0 Discussion

### 3.1 Rule 12(b)(6) Motion to Dismiss Inequitable Conduct Claim

Since this matter arises on plaintiffs' motion, all factual allegations by defendants of inequitable conduct are regarded as true and the challenge is construed in the light most favorable to the defendant. See *Phillips v. County of Allegheny*, 515 F.3d at 231 (3d Cir. 2008).

The Third Circuit[4], and accordingly this Court,[5] have adopted a three step analysis for determining a reasonable inference of deceptive intent: first, identifying the pled who, what, where, when, how and why allegations; second, striking conclusory allegations; and third, evaluating the particularity of the pled allegations for their power to reasonably point out deceptive intent. In actual practice, these steps converge. The 3-step analysis begins with reviewing defendants' arguments that plaintiffs' behavior demonstrates a reasonable inference of inequitable conduct, set forth in Docs. 238[6] and 255[7].

Defendants' "who" "what", "when", "how", and "where" elements relate to their "why" allegation. Ultimately, defendants plead that plaintiffs' prosecution attorneys, David Carlson and Jeremiah Baunach—i.e., the "who"—committed inequitable conduct by deliberately withholding from the PTO specifics of the prosecution of U.S. Patent No.8,417,061 to Kennedy ("the Kennedy patent"), because these specifics are material to the patentability of the '436 patent. Doc. 238, ¶¶105-106; Doc. 255, pg. 12, 24-27. Specifically, defendants assert that plaintiffs never disclosed to the PTO that the Kennedy patent was allowed solely because the Kennedy examiner found plaintiffs' '436 patent not entitled to its earliest priority date of 17 April 2007.

Defendants regard this non-disclosure as material because it was only when the Kennedy examiner decided the '436 patent filing date was no longer earlier than the Kennedy filing date, that the Kennedy application was allowed. Thus, the Kennedy patent examiner's decision reversed the prior art status of the '436 patent. Namely, it removed the '436 patent as prior art from the Kennedy prosecution, caused Kennedy to be granted, and allowed it to be invalidating prior art against the '436 patent. Doc. 238, ¶¶96-100 110; Doc. 255, pg. 15.

---

[4] *Bistrain v. Levi*, 696 F.3d 352, 365 (3d Cir. 2014).
[5] *Taro Pharmaceuticals N.A. et al.* v. *Suven Life Sciences, Ltd.*, No. 11-2452, 2012 WL 2513523, at * 5 (D.N.J. 28 Jun 2012).
[6] Defendants' Second Amended Answer, Affirmative Defenses, Counterclaims, and Jury Demand.
[7] Defendants' Opposition of Plaintiffs' Motion to Dismiss Defendants' Inequitable Conduct Counterclaim and to Strike Defendants' Twelfth Affirmative Defense

Plaintiffs assert, that during the Kennedy patent prosecution and later, they knew nothing why the Kennedy reference had been allowed (Doc. 245[8]: pp.12, 14-20, 266[9]), and therefore could not have disclosed specifics during the re-examination of the '436 patent, conducted in 2013. They do not assert that the specifics of the Kennedy patent prosecution are not material.

The step of striking conclusory allegations involves weighing whether the parties' allegations have credible factual support or are mere assertions. Here, defendants' allegations are conclusory. Defendants present no factual support of plaintiffs' knowledge of the Kennedy prosecution specifics. They assume and assert plaintiffs' prosecution attorneys must have known of the Kennedy patent examiner's decision as early as 3 July 2013.[10] Doc. 238: ¶93, Doc. 255, pp. 7-8. For their part, plaintiffs merely allege they knew nothing of the Kennedy prosecution specifics. They do not marshal facts that support their asserted lack of knowledge; they in effect ask this court to believe.

Plaintiffs also argue their duty of candor owed to the PTO[11] during the supplemental examination of the '436 patent and the subsequent '004 Re-exam does not include the duty to review every event in the prosecution history of a patent reference submitted in an IDS. They argue the duty of candor does require the disclosure to the PTO of all information **known** to relevant persons[12] to be material to patentability of any claim during prosecution or re-examination. 37 C.F.R. 1.56 (a) (emphasis added).

Defendants counter that plaintiffs, even if lacking actual knowledge of the Kennedy patent prosecution, "should have known" what was in it because plaintiffs disclosed that patent in IDSs during the '004 Re-exam. Doc.255: pg. 18-19 citing *Monsanto Co. v. Bayer Bioscience N.V.*, 514 F.3d 1229, 1241 (Fed. Cir. 2008) (citation omitted). *Monsanto* relates not to the standard for a Rule 12(b)6 pleading but a determination of inequitable conduct on the merits before the materiality standard changed in *Therasense*.

"Known" is the operative word in the regulation. Resolving plaintiffs' duty to disclose also resolves whether defendants have met the Rule 12(b)(6) pleading standard here. However, defendants appear to have pled a tautology. That is, defendants argue that the information plaintiffs assert was unknown to them "should in fact have been known" because it is material. Doc. 155, pg. 15. And, because of its materiality, that unknown information should have been disclosed to the PTO. *Id.* But,

---

[8] Plaintiffs' Motion to Dismiss Defendants' Inequitable Conduct Counterclaim (Count XIX) under Fed. R. Civ. P. 12(b)6 and Motion to Strike Defendants' Twelfth Affirmative Defense under Fed. R. Civ. P. 12(f).
[9] Plaintiffs' Reply Brief in Support of Motion to Dismiss Defendants' Inequitable Conduct Counterclaim (Count XIX) under Fed.R.Civ.P. 12(b)(6) and Motion to Strike Defendants' Twelfth Affirmative Defense Under Fed.R.Civ.P.12(f).
[10] *See* Table 1 *infra*, showing why plaintiffs could reasonably have known of the Kennedy reference by 3 July 2013.
[11] Technically, since the '436 patent was issued from an application filed before 16 Sept 2012, pre-AIA 37 C.F.R. 1.56 applies to the patent grant. Moreover, since the duty of candor is on-going, information known to be material to patentability after the '436 patent was issued and during the '004 Re-exam would be governed by a post-AIA 37 C.F.R. 1.56. Under either pre- or post-AIA 37 C.F.R. 1.56, the duty to disclose to the PTO information "material to the patentability of any claim issued in a patent" is the same.
[12] Relevant persons include the inventor(s) and anyone substantively involved in the preparation or prosecution of the patent. 37 C.F.R. 1.56 (c).

how can information, of which plaintiffs claim they did not know, create a reasonable inference of deceptive intent when plaintiffs did not disclose what they did not know? And, defendants offer no evidence of plaintiffs' scienter, other than the undisclosed information was material.

Defendants' allegations of "why" plaintiffs engaged in deceptive intent can be considered conclusory and lacking factual support. Similarly, plaintiffs' allegations of why they had no deceptive intent are also conclusory. To resolve the inquiry, the court reviews defendants' other allegations of what- when- where-how as well as official information that informs on the timing of plaintiffs' behavior during the '436 prosecution and the '004 Re-exam.

Table 1 lists information that comes directly from the U.S. Patent Office's Image File Wrappers (electronic prosecution histories) of the '436 patent, the '004 Re-exam, and of the Kennedy patent, or from the Federal Judiciary's electronic filing Pacer system. Since this information is "not subject to reasonable dispute because it … can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned", the Court therefore takes judicial notice of the information in Table 1. FED. R. EVID. 201(a)-(b).

| Events | '436 Patent Prosecution At: Public Pair, Image File Wrapper, for Patent Number No. 8,078,436 | Kennedy Prosecution At: Public Pair, Image File Wrapper, for Patent Number 8,417,061 | *Eagle View v. Aerialogics* At: Pacer.gov for 2:12-cv-618 W.D.Wa | Supplemental Exam ("SE") / '004 Re-Exam AT: Public Pair, Image File Wrapper for Control No. 96/000,004 |
|---|---|---|---|---|
| **Priority Date- Provisional Filing** | 17 Apr 2007 | 4 Oct 2007 & 1 Feb 2008 | | |
| **App. Filing Date** | 16 Oct 2008 | 6 Oct 2008 (PCT) | | |
| **Earliest Publication Date** | | 9 Apr 2009 (PCT): **Earliest possible date** when Ps could have known of Kennedy | | |
| **Dates when IDSs Submitted** | 26 Feb 2010 & 23 Jun 11: Kennedy NOT Cited 15 Sep 2011: Cites sister application to Kennedy **No IDSs cite Kennedy** | | | |
| **'436 Patent Notice of Allowance** **Patent Grant** | 14 Oct 2011: Examiner **did NOT cite** Kennedy **NO** 312 Amendment 13 Dec 2011: '436 Prosecution History: Kennedy **NOT cited as prior art** | | | |

| | | | | |
|---|---|---|---|---|
| Complaint filed in Aerialogics Patent Infringement Suit | | | 12 Apr 2012 | |
| Response to Last Office Action | | 04 Sep 2012: Kennedy patentee **argues '436 priority claim improper** | | |
| Aerialogics Suit: Motion to Stay Requested | | | 4 Oct 2012: Ps argue, since Aerialogics **cites 2 non-US references,** need supplemental exam to confirm '436 patentability. Aerialogics does **not cite Kennedy** | |
| Initial Request of '436 SE  Corrected SE Request | | | | 3-4 Oct 2012: Includes First IDS  28 Dec 2012: includes First IDS **Kennedy NOT cited** |
| Kennedy Notice of Allowance | | 12 Dec 2012: **Examiner ACCEPTS** argument that **'436 priority claim is improper**  **Earliest possible date** when Ps could have known of Kennedy vitiating '436 earliest priority claim | | |
| PTO initiates '004 Re-exam | | | | 27 March 2013 |

10

| | | | | |
|---|---|---|---|---|
| '004 Re-Exam Search Report by PTO Central Reexamination Unit ("CRU") | | | | 3 Jul 2013: CRU Search Report: cites **Kennedy patent, Kennedy publication &** gives **core terms** characterizing Kennedy content<br><br>**Earliest OFFICIAL date** when Ps could have known of Kennedy |
| IDSs in '004 Re-exam | | | | 18 Jul 2013:<br>Ps cite **Kennedy publication**; & Submit **Office Actions & Notices of Allowance of Ps patents.**<br><br>23 Sep 2013: Ps cite **Kennedy publication**<br><br>25 Oct 2013: Ps cite Kennedy sister publication<br><br>21 Mar 2014: **Kennedy NOT Cited** |
| Office Actions in '004 Re-exam | | | | 25 Jul 2013: **Kennedy NOT Cited** |
| '004 Re-Exam Certificate Issued | | | | 16 April 2014: Re-exam Complete **Kennedy NOT CITED as prior art or invalidating reference** |
| Re-exam Certificate of Correction | | | | 15 Nov 2015;<br>minor corrections to specification |

Besides arguing that plaintiffs should have known the details of the Kennedy patent prosecution, defendants also pled that plaintiffs filed a previous patent infringement action against Aerialogics, LLC (a different defendant than named here) ("Aerialogics suit").[13] Defendants allege that, since Aerialogics considered filing an *ex parte* re-examination against the '436 patent, plaintiffs should have been on notice that the validity of the '436 patent was questionable. Doc. 238, ¶90. *See Aerialogics* suit, Doc. 29.

On 4 Oct 2012, plaintiffs requested a stay of the *Aerialogics* suit because they had just requested in the PTO a supplemental examination of the '436 patent in the PTO. *Aerialogics* suit, Doc. 29, pg. 1. Defendants assert that it was Aerialogics' threat of an *ex parte* examination that prompted plaintiffs' request of the supplemental examination of the '436 patent. Doc. 238, ¶90. *See also Aerialogics* suit, Doc. 29, pp. 2-3.

In plaintiffs' motion to stay, they state Aerialogics alerted them of two prior art references[14] that were possibly invalidating of the '436 claims. Neither of these is the Kennedy reference, which means that by the beginning of October 2012, there is no independent, official evidence that plaintiffs knew about the Kennedy application.

In October 2012, at plaintiffs' initial request of the supplemental examination, the Kennedy application had not yet been allowed. Importantly, it was only because Kennedy had been allowed on 12 Dec 2012 that the plaintiffs, or indeed the public, could know that the earliest priority claim of the '436 patent had been deemed improper. *See* Image File Wrapper, Kennedy Patent: 1) Notice of Allowance dated 12 Dec 2012: Reasons for Allowance, pg. 2; and 2) Applicant Arguments/Remarks Made in an Amendment dated 04 Sep 2012. Therefore, 12 Dec 2012 is the earliest official date by which plaintiffs could have known of the infirm priority claim in the '436 patent.

By March 2013, the PTO had found a substantial new question of patentability ("SNQ") in the supplemental examination and initiated *sua sponte* a re-examination of the '436 patent, which became the '004 Re-exam. Together, the supplemental examination and '004 Re-exam took sixteen months, from 28 Dec 2012 to 16 April 2014.

By 3 Jul 2013, the Central Reexamination Unit ("CRU") issued its sole search report of the '004 Re-exam, listing both the Kennedy patent and its earlier publication, which could have alerted plaintiffs to its significance as prior art. Also importantly, since Kennedy was cited in the CRU search report, it can be reasonably inferred that plaintiffs knew about the Kennedy reference at least from 3 Jul 2013.

On 18 Jul 2013, two weeks after the CRU search report, plaintiffs filed an IDS, citing the Kennedy publication back to the CRU examiner. They also submitted a large number of Office Actions

---

[13] The *Aerialogics* suit, docket no. 2:12-cv-0618 in the Western District of Washington, commenced 12 Apr 2012.
[14] These were EP 1010966B1, a European patent, and DE 19857667A1, a German published patent application, both assigned to Aerowest GmbH. Both had been published at least one year before the earliest priority date of the '436 patent, which under pre-AIA law would make them 35 USC 102(b) and/or 35 USC 103(a) references.

and Notices of Allowance of their own patents.   On 23 Sep 2013, two months later, plaintiffs filed another IDS in which they again cited back to the CRU examiner the Kennedy publication.  *See* in the '004 Re-exam Image File Wrapper: 1) List of Items of Information dated 18 July 2013; and, 2) IDS dated 23 Sep 2013.  And, on 25 October 2013, a month later, plaintiffs filed a third IDS, citing a sister publication to the Kennedy reference.

In summary, within four months of the Kennedy reference first appearing in the CRU search report, plaintiffs had filed 3 IDSs, all of which cited a Kennedy reference.  In addition, they had submitted a large number of their own Office Actions, Responses, and Notices of Allowance to the CRU examiner.  The implication of this behavior is that plaintiffs were attempting to comply with their Rule 1.56 duty to disclose information material to the SNQ.

By way of background, prosecution history documents of any U.S. filed patent application are readily available to all PTO examiners via the PTO's Image File Wrapper for each patent.  Because of their ready availability, these prosecution documents need only have been listed in the IDS.  However, it can be inferred that plaintiffs' providing the documents back to the PTO exhibits a willingness to make the '004 Re-exam more convenient for the CRU examiner.  In addition, plaintiffs' citing back the Kennedy reference not once, but twice, to the CRU examiner indicates a willingness to ensure the CRU examiner was alerted to, and considered, Kennedy in the '004 Re-exam.  Both behaviors belie an intent to withhold material information from the CRU examiner.

The CRU examiner checked off on his listing of reviewed documents that he had in fact considered the Kennedy reference during the '004 Re-exam. The CRU examiner did not, however, assert that the '436 earliest priority date was improper.  Unknown is whether the CRU examiner considered that Kennedy could vitiate the '436 priority claim.[15]  The court makes no inferences about what the CRU examiner knew or did not know about the specifics of the Kennedy patent prosecution.

Plaintiffs are as subject to Rule 9(b) pleading requirements as defendants are.  *Senju Pharmaceuticals,* 921 F.Supp. 2d at 306-307.  Since they allege no facts to support they did not know the Kennedy prosecution details, this court cannot reasonably infer that alerting the CRU examiner to the Kennedy reference in two IDSs sufficiently discharged their duty of disclosure before the PTO.

On the other side, an inference could be drawn that plaintiffs knew how damaging the details of the Kennedy prosecution were, else why cite Kennedy back to the CRU examiner twice during the '004 Re-exam.  But, defendants allege no facts to support of plaintiffs' scienter to withhold Kennedy prosecution details.

The swirl of parties' conclusory allegations notwithstanding, the details of what-where-when-how are too few and too far in-between to support a reasonable inference of plaintiffs' deceptive intent

---

[15] Even if the CRU examiner did not consider the priority date issue in the same detail or with as close a scrutiny as the Kennedy examiner had, it is appreciated that reasonable examiners can differ as to their patentability conclusions.

during the '004 Re-exam.  For these reasons, plaintiffs' motion under Rule 12(b)(6) to dismiss defendants' inequitable conduct claim is granted without prejudice and with leave to amend in accordance with the Rules.

### 3.2  Rule 12(f) Motion to Strike Affirmative Defense of Inequitable Conduct

Even though motions to strike are disfavored in this Circuit and are decided under a different standard than Rule 12(b)(6) motions, defendants have pled no facts that support an affirmative defense of inequitable conduct.  They plead the affirmative defense is tied to the inequitable conduct counterclaim and have asserted plaintiffs' express knowledge of the Kennedy prosecution history without setting forth any facts that support such knowledge.

Theirs is a tautological argument: defendants allege the omission to disclose Kennedy prosecution specifics by itself necessarily indicates deception. That is, the omission itself is its own reason for the omission.  Neither have defendants addressed plaintiffs' behavior during the prosecution of the '004 Re-exam that weighs against deceptive intent.

An affirmative defense can be stricken if it cannot possibly prevent recovery under any pled or inferable set of facts.   The only way this motion can be upheld is if the court simply believes defendants' assertion that plaintiffs engaged in deceptive conduct before the PTO.  Since the insufficiencies of the defense are 'clearly apparent' " (*Cipollone v. Liggett Groups, Inc.*, 789 F.2d at 188 (3d Cir.1986), rev'd on other grounds, 505 U.S. 504 (1992)), plaintiffs' motion to strike the twelfth affirmative defense of the Second Amended Complaint is granted without prejudice and with leave to amend in accordance with the Rules.

Dated:  28 March 2018                               s/ Robert B. Kugler
                                                    ROBERT B. KUGLER
                                                    District Court Judge