IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| EAGLE VIEW TECHNOLOGIES, INC., et al., | |
| Plaintiffs, | Civil No. 15-7025 (RBK/JS) |
| v. | |
| XACTWARE SOLUTIONS, INC. et al., | |
| Defendants. | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on defendants' "Motion for Leave to Amend Defendants' Second Amended Answer, Affirmative Defenses, Counterclaims, and Jury Demand." [Doc. No. 374]. Defendants seek to amend their answer to add: (1) a Fourteenth Affirmative Defense that plaintiffs' '152, '840, '770, '454, '376 and '737 patents are invalid for "mis-joinder of inventors"; (2) a Fifteenth Affirmative Defense that the patents are "unenforceable due to inequitable conduct"; (3) a Sixteenth Affirmative Defense that all necessary parties have not been joined; (4) Count XVI to their counterclaim seeking a declaratory judgment that the patents are invalid for incorrect inventorship; and (5) Count XVII to their counterclaim seeking a declaratory judgment of unenforceability (inequitable conduct)

as to the patents.[1] The Court received plaintiffs' opposition [Doc. No. 401], defendants' reply [Doc. No. 407], and held oral argument. For the reasons to be discussed, defendants' Motion to Amend is denied.[2]

Background

This is a bitter patent dispute between business competitors that was filed on September 23, 2015. The patents at issue are generally directed to software technology for imaging, modeling and rendering aerial rooftop measurements and reports. Plaintiffs are the owners of the patents at issue. Defendant Xactware Solutions is a subsidiary of defendant Verisk Analytics, and provides online tools and systems for determining replacement-cost calculations for damaged buildings and construction estimates. The amended complaint alleges defendants infringe seven patents: '436, '840, '152, '770, '454, '376 and '737. The '436 patent was filed on October 16, 2008 and names Christopher Pershing and David P. Carlson as co-inventors. The other six patents at issue name Pershing as the sole inventor.

---

[1] See Defendants' Proposed Amended Pleading, Doc. No. 376-2.

[2] This is defendants' second attempt to assert an inequitable conduct defense. On March 28, 2018, the Honorable Robert B. Kugler granted plaintiffs' motions to dismiss and strike defendants' inequitable conduct counterclaim and affirmative defense. See 2018 U.S. Dist. LEXIS 51192. Defendants alleged plaintiffs' prosecution attorneys deliberately withheld relevant information regarding the prosecution of the '061 Kennedy patent that was relevant to the patentability of the '436 patent. Although the dismissal was without prejudice, defendants did not move to amend the dismissed counterclaim and defense.

Defendants' proposed amendments essentially raise two new defenses. One, defendants claim Carlson was improperly omitted as an inventor on the six patents at issue thus rendering the patents invalid.[3] Two, defendants engaged in inequitable conduct by providing incorrect inventorship information to the Patent Office with an intent to deceive the Patent Office.

The procedural history of the case is instructive. After the December 9, 2015 Fed. R. Civ. P. 16 scheduling conference, the Court's first Scheduling Order mirrored the deadlines in the Local Patent Rules. The first deadline to amend pleadings, including amendments to add claims as to inequitable conduct, was set for September 6, 2016. See December 10, 2015 Order, Doc. No. 38. At the parties' request the amendment deadline was later extended to February 28, 2017, May 12, 2017, May 15, 2017 and eventually to May 16, 2017. See Doc. Nos. 148, 163, 224, 226 and 228. Defendants filed the present motion to amend on February 9, 2018, approximately nine (9) months after the last deadline to move to amend pleadings, and seventeen (17) months after the first deadline to amend pleadings was set. The Markman Opinion and Order were filed on December 5, 2017. [Doc. No. 332].

Recognizing that their motion is late, defendants attempt to explain away their delay by arguing they filed their motion "as soon as it had sufficient evidence to support all of its

---

[3] Pershing was listed as the sole inventor on the patents.

allegations." Defendants' Memorandum in Support of Motion at 2 ("Defts.' Memo."), Doc. No. 375. Carlson and Pershing founded Eagle View. Carlson was deposed on September 28, 2017 and Pershing was deposed on November 7 and 8, 2017. After Pershing was deposed, defendants served plaintiffs with supplemental interrogatories asking plaintiffs to describe the contributions of Carlson. Plaintiffs answered the interrogatories on December 21, 2017 and supplemented the response on January 21, 2018.[4]

As to their new inventorship defense, defendants aver that Pershing and Carlson testified at deposition that Carlson contributed to conception of the roof estimate reports recited in the claims of the '436 patent. See Proposed Amended Counterclaim ("PAC") ¶122, Doc. No. 376-1. However, although Pershing and Carlson are listed as co-inventors on the '436 patent, defendants emphasize only Pershing is listed as the inventor on the six patents at issue even though plaintiffs' patents contain nearly identical roof estimate report limitations. Defendants argue Carlson should, therefore, be listed as a co-inventor on the six patents.

The background of defendants' new inequitable conduct defense is more involved. In February 2016 plaintiffs produced portions of Thornberry deposition transcripts from a patent suit

---

[4] On January 26, 2018 [Doc. No. 363], the Court denied defendants' application that plaintiffs be Ordered to supplement their response to interrogatory 22.

Eagle View filed against Aerialogics in 2012. Dale and Chris Thornberry worked for Thornberry Consulting, a company that developed a program that competed with Eagle View. Defendants contend that in November 2009, after Carlson left Eagle View in early 2009, he explored employment with Eagle View's competitor, Aerialogics. The Thornberrys' deposition testimony confirmed this fact. Defendants argue because Carlson did not assign his rights in the '904 Provisional to Eagle View, and because he could transfer this interest to any competitor, this gave Eagle View, Pershing and Eagle View's attorneys an incentive not to identify Carlson as a co-inventor on the six patents at issue.

Although portions of the Thornberrys' transcripts were produced as early as February 2016, defendants did not follow up and request a full copy of the transcripts until November 21, 2017 (Defts.' Memo. at 18-19), which was produced on December 20, 2017. Id. at 20. The exhibits to the deposition were produced on January 25, 2018. Id. Defendants argue the transcripts "revealed an entirely new and important fact," i.e., that Eagle View knew about Carlson's conversation with the Thornberrys shortly after the conversation occurred. Id. According to defendants, this shows plaintiffs were "concerned about Mr. Carlson's career path after Eagle View" and, therefore, plaintiffs "had reason to prefer Mr. Carlson not be included as an inventor on the remaining patents." Id. at 21. In

addition, defendants surmise that plaintiffs did not name Carlson as a co-inventor on the six patents because he had knowledge of prior art plaintiffs did not want to disclose.

In opposition to defendants' motion, plaintiffs argue the motion was filed late and will prejudice them if granted. In addition, plaintiffs argue defendants' inventorship and inequitable conduct claims are futile. Plaintiffs also argue defendants' proposed amendment does not sufficiently plead facts to support their inequitable conduct claim. In particular, plaintiffs argue defendants have not pleaded sufficient facts to show plaintiffs intended to deceive the Patent Office.

Discussion

    1.   Leave to Amend

Pursuant to Fed. R. Civ. P. 15(a)(2), courts "should freely give leave [to amend pleadings] when justice so requires." A court should allow a party to amend its pleading so long as there is no undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies, undue prejudice or futility of the amendment. See Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000). Despite this liberal standard for permitting amendments, a motion to amend is committed to the "sound discretion of the district court." Cureton v. Nat'l Collegiate Athletic Ass'n, 252 F.3d 267, 272 (3d Cir. 2001).

While "mere passage of time does not require that a motion to amend a complaint be denied on grounds of delay ... at some point, the delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party." Id. at 283 (quoting Adams v. Gould Inc., 739 F.2d 858, 868 (3d Cir. 1984)). Delay is "undue" if plaintiff had previous opportunities to amend. In re Caterpillar Inc., 67 F. Supp. 3d 663, 668 (D.N.J. 2014) (citing Estate of Oliva ex rel. McHugh v. New Jersey, 604 F.3d 788, 803 (3d Cir. 2010)). Therefore, the issue of undue delay requires courts to "focus on the movant's reasons for not amending sooner." CMR D.N. Corp. v. City of Philadelphia, 703 F.3d 612, 629 (3d Cir. 2013) (explaining that the Third Circuit has "refused to overturn denials of motions for leave to amend where the moving party offered no cogent reason for the delay in seeking the amendment").

In assessing futility, the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6). Travelers Indemnity Co. v. Dammann & Co., Inc., 594 F.3d 238, 243 (3d Cir. 2010) (citation omitted). Accordingly, the Court must accept as true all well-pleaded factual allegations and must determine whether the facts as alleged raise a facially plausible claim on the grounds asserted. Warren Gen. Hosp. v. Amgen Inc., 643 F.3d 77, 84 (3d Cir. 2011). A complaint need not

provide detailed factual allegations but must provide facts sufficient to show a plausible cause of action. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

   2.   Good Cause, Excusable Neglect and Undue Delay

In addition to the requirements under Rule 15(a), Rule 16(b) regarding scheduling orders must also be satisfied. There is no dispute defendants' motion to amend filed on February 9, 2018 was filed after the May 17, 2017 deadline to amend pleadings. Nonetheless, although late, the late filing is not necessarily fatal to defendants. Pursuant to Rule 16(b)(4), a Scheduling Order may be modified for good cause. Pursuant to Rule 6(b)(1)(B), the court may extend a deadline for good cause "after the time has expired if the party failed to act because of excusable neglect." Since defendants' motion was filed after May 17, 2017, defendants must meet the good cause and excusable neglect standards to be granted.

Good cause requires that a party demonstrate that an existing schedule cannot be met despite the diligence of the party seeking the extension. See Rule 16, Advisory Committee Note on Subdivision (b). The determination of good cause depends upon the diligence of the moving party. Spring Creek Holding Co. v. Keith, C.A. No. 02376, 2006 WL 2403958, at *3 (D.N.J. Aug. 18, 2006).

In determining whether a party has demonstrated excusable neglect the Court must consider the following factors:

> 1) whether the inadvertence reflected professional incompetence such as ignorance of rules of procedure, 2) whether an asserted inadvertence reflects an easily manufactured excuse incapable of verification by the court, 3) counsel's failure to provide for a readily foreseeable consequence, 4) a complete lack of diligence or 5) whether the inadvertence resulted despite counsel's substantial good faith efforts towards compliance.

Dominic v. Hess Oil V.I. Corp., 841 F.2d 513, 517 (3d Cir. 1988). The Supreme Court has explained that the "excusable neglect" inquiry is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission," including, "the danger of prejudice to the [other party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. Partnership, 507 U.S. 380, 395 (1993).

For the reasons to be discussed, the Court finds defendants have not shown good cause or excusable neglect to excuse their late filing. The Court also finds defendants' motion was unduly delayed. Therefore, defendants' motion will be denied.

As already noted, defendants' motion was filed nine months after the last deadline to amend pleadings. Not only is this fact significant, but the motion was filed almost 2½ years after

the case was filed and was made returnable after the fact discovery deadline expired. In addition, this Opinion and Order is being filed after the deadline passed for the service of expert reports.[5]

Defendants argue they were diligent because they allegedly filed their motion as soon as they learned of the information to support their inventorship and inequitable conduct defenses. The record does not support defendants' argument. As to defendants' inventorship claim, they were on notice of the defense no later than after Carlson was deposed on September 28, 2017. Nonetheless, defendants waited over four months to file their motion to amend.

In addition, defendants' proposed amended pleading relies almost exclusively on the depositions of Carlson and Pershing. ("[I]nventor testimony was critical to understanding the relative contributions of the two inventors[.]" Defendants' Reply ("Defts.' Reply") at 2, Doc. No. 407). Defendants do not give a valid reason why they waited until September 28, 2017 to depose Carlson and November 7 and 8, 2017 to depose Pershing. These inventors were key witnesses whose depositions should not have been saved for the tail end of discovery. Sophisticated parties and attorneys should have anticipated the inventors'

---

[5] See January 26, 2018 Order, Doc. No. 364, setting an April 6, 2018 deadline for expert reports for parties with the burden of proof on an issue and a May 4, 2018 deadline for responsive expert reports.

testimony might lead to necessary follow up discovery. This must be taken into account when scheduling depositions.

Two facts are particularly significant to the Court's decision finding that defendants' motion was unduly delayed. One, the first scheduling order in the case deliberately set an extended time for the parties to move to amend pleadings. The Rule 16 Conference was held on December 9, 2016 and the deadline to amend pleadings was set nine months later—September 6, 2016. An extended deadline was given to assure that defendants had sufficient time to conduct discovery that might lead to potential counterclaims. Defense counsel stated as follows when he was questioned about why defendants proposed an extended amendment deadline:

> THE COURT: Motions to amend or add parties, September 6th. Why so late?
>
> MR. CHRISTIE: I think we want it to be later rather and earlier in order to make sure we had enough discovery to flesh out any potential counterclaims that we might bring. Well, currently, we have referring to noninfringement and invalidity, declaratory judgment counterclaims, but we envision that there may be others that discovery would prove are warranted.
>
> THE COURT: Inequitable conduct?
>
> MR. CHRISTIE: Potentially, Judge. Yes.
>
> THE COURT: Do you have reason to believe that might happen? I might, are you just –
>
> MR. CHRISTIE: No. I'm not really speculating. We have certain theories that include inequitable conduct

> which we're hoping that discovery will flesh out, and
> we'll have the basis for properly alleging.

Transcript of December 9, 2015 Rule 16 Conference at 29:19 to 30:10, Doc. No. 431. Despite the fact the Court accommodated defendants by setting an extended amendment deadline, defendants filed their motion to amend seventeen months after the deadline. This evidences defendants' undue delay.

In addition, as early as November 30, 3016, the Court told the parties they should start taking fact depositions regarding potential inequitable conduct claims. See Transcript of November 30, 2016 Oral Argument at 100:8 to 101:6, Doc. No. 151. Defendants ignored the Court's direction and did not depose Carlson and Pershing until months later. By the time the depositions were taken, the deadline to amend pleadings long passed. Parties must accept the risk and consequences if they save key depositions for after the deadline to amend pleadings passes. See Pfizer Inc. v. Sandoz Inc., C.A. No. 12-654-GMS/MPT, 2013 WL 5934635 (D. Del. Nov. 4, 2013)(denying as unduly delayed defendants' motion to amend to add inequitable conduct defense filed six months from the deadline to amend and after the close of fact discovery); Carrier Corporation v. Goodman Global, Inc., 49 F. Supp. 3d 430 (D. Del. 2014)(denying motion to amend to add inequitable conduct defense filed ten months after the deadline to amend and two months after the close of fact discovery).

Defendants argue they diligently sought to depose Pershing. Defendants are mistaken. Defendants first contacted plaintiffs about deposing Pershing in February 2017. However, they did not follow up on the request until August 2017. See Defendants' Reply ("Defts.' Reply") Exhibits A, B, and C, Doc. No. 407. This hardly shows diligence.[6]

Defendants argue they could not file their motion as to their inequitable conduct claim until they received the complete Thornberry deposition testimony on December 20, 2017, and exhibits on January 25, 2018. Other than their conclusory statement, defendants provide no evidence to support their argument. The first set of Thornberry transcripts were produced in February 2016. Defendants do not explain what they learned in the full transcript and exhibits that they did not already know in February 2016. Defendants also do not explain why they waited "over 20 months after the production of the transcripts and over six months after the extended amended pleading deadline, to seek the full transcripts." Plaintiffs' Opposition ("Pltfs.' Opp.") at 18, Doc. No. 401. Further, defendants do not explain why they waited to file their inventorship claim when they had notice of the claim no later than when Carlson was deposed in September 2017. In addition, if the Thornberrys' transcripts and exhibits

---

[6] No evidence exists to support the notion that plaintiffs strategized to deliberately delay the depositions of Carlson and Pershing to prejudice defendants.

were as important as defendants' claim, defendants could have and should have contacted the Court long ago about any problems they were having regarding obtaining the information. Throughout the course of the case defendants have not been shy about bringing discovery disputes to the Court's attention. Defendants did not raise with the Court any problems about scheduling the depositions of Carlson and Pershing. Nor did defendants raise any issue about the Thornberry transcripts or exhibits. It is too late to rely on plaintiffs' alleged transgressions when defendants did not take diligent steps to request discovery they supposedly needed to support their defenses.

Defendants' lack of diligence is also demonstrated by the fact that long before they filed their motion on February 8, 2018, they could have and should have asked for an extension of the May 15, 2017 deadline to amend pleadings. See Stallings ex rel. Estate of Stallings v. IBM Corp., C.A. No. 08-3121 (RBK/JS), 2009 WL 2905471, at *16 (D.N.J. Sept. 8, 2009)(denying late motion to amend where plaintiffs could have moved for an extension of the amendment deadline, which was not done and not explained); Assadourian v. Harb, C.A. No. 06-896 (JAG), 2008 WL 4056361, at *4 (D.N.J. Aug. 28, 2008)(denying plaintiff's motion to amend because, in part, plaintiff did not move for an extension of time to file an amended pleading). Thus, not only did defendants unduly delay taking the depositions of Carlson

and Pershing, but after taking Carlson's deposition and being on notice of their potential inventorship defense, they delayed filing their motion to amend. In addition, defendants did not seek Court relief for allegedly delayed discovery, nor did they seek to extend the Court Ordered deadline to amend pleadings.

The Court rejects defendants' argument: "[t]here was nothing Defendants could do to raise [their new] defenses earlier, no way to know what relevant, discoverable information Plaintiff had failed to turn over, and no way to foresee the startling testimony of the inventors." Defts.' Reply at 2. To the contrary, defendants did not have to wait until the tail end of the case to depose Carlson and Pershing, they could have heeded the Court's direction to take early fact depositions as to inequitable conduct issues, they could have asked to extend the deadline to amend pleadings, if genuinely needed they could have followed up earlier to request the Thornberry complete transcripts and exhibits, they could have followed up on Carlson's inventorship testimony immediately after he was deposed, and they could have timely filed their motion to amend so that it was not returnable after the fact discovery deadline. The Court rejects defendants' excuse they were stymied by plaintiffs' delay as to the Thornberry transcripts and exhibits and the inventors' depositions. As noted, defendants never brought these issues to the Court's attention even though they

regularly raised discovery disputes throughout the course of the case. Given defendants' habit of raising discovery disputes with the Court, if plaintiffs were as obstructive as defendants now claim them to be, defendants most assuredly would have raised the issue with the Court. In other words, the Court would not have heard about plaintiffs' alleged foot-dragging until defendants had to justify their late motion to amend. In sum, therefore, the Court finds that defendants' motion to amend was unduly delayed, and defendants cannot show good cause or excusable neglect for their late filing. Therefore, defendants' motion to amend will be denied.

3.  Prejudice

Defendants' undue delay, and their failure to show good cause or excusable neglect to explain their late filing, is not the only reason defendants' motion is denied. Plaintiffs will be materially prejudiced if defendants' motion is granted. From the outset of the case plaintiffs have pointed out defendants are fierce competitors and plaintiffs are losing business on account of defendants' alleged infractions. If defendants' motion is granted, it will inevitably lead to a further delay in the resolution of the case. This is an appropriate basis upon which to deny defendants' motion. See BTG International Limited v. Actavis Laboratories FL, Inc., C.A. No. 15-5909 (KM), 2017 WL 529446 (D.N.J. Feb. 8, 2017)(denying plaintiff's motion to amend

complaint on ground, <u>inter alia</u>, the amendment would "needlessly strain an already tight schedule and significantly delay resolution" of the case). Further, defendants' amendments may result in additional discovery and delay of an already old case. <u>Stallings</u>, 2209 WL 2905471, at \*17. ("Prejudice may … result where the amendment will require re-opening of discovery, which would delay resolution of the matter, or would unnecessarily increase the cost of litigation").

The Court credits plaintiffs' argument that they need time to conduct an investigation and additional discovery to rebut defendants' new inventorship and inequitable conduct defenses.[7] This is especially true since defendants will not commit that their trial evidence will be limited to just the statements in their proposed amendment. Transcript of April 2, 2018 Oral Argument at 41:15 to 42:4, Doc. No. 423. The Court also credits plaintiffs' assertion that they may need to retain expert testimony to rebut defendants' new defenses. Plaintiffs are prejudiced because of their compressed time frame for developing a response to defendants' new allegations prior to trial. <u>Pfizer, Inc.</u>, 2013 WL 5934635, at \*5. "[C]ertain prejudice to

---

[7]Similar to the amendment deadline, the deadline to complete fact discovery has also been extended numerous times. The original December 1, 2016 deadline was extended to May 30, 2017, September 15, 2017, October 23, 2017, December 28, 2017, January 31, 2018, and February 28, 2018. <u>See</u> Doc. Nos. 38, 163, 224, 285, 302, 344, 364. Defendants cannot be heard to argue they have not had an adequate opportunity to complete discovery.

plaintiff[s] is inherent on [such a] timeline." <u>Carrier Corporation</u>, 49 F. Supp. 3d at 433 (citation omitted). In addition, granting defendants' motion at this late stage of the case and reopening liability discovery on a new defense theory would place an unwarranted burden on the Court and prejudice plaintiff. <u>Id.</u>; <u>see also</u> <u>In re Caterpillar Inc.</u>, 67 F. Supp. 3d 663, 668 (D.N.J. 2014)(explaining that "[[p]rejudice involves the irretrievable loss of evidence, the dimming of witnesses' memories, or the excessive irremediable burdens or costs imposed on the non-moving party if an amendment is granted").

    4.  <u>Futility</u>

    For the sake of completeness the Court will address plaintiffs' futility arguments.

        (a) <u>Inventorship</u>

    As to defendants' new inventorship defense, plaintiffs claim the defense is futile for three reasons: (1) defendants cannot meet the good cause standard under L. Pat. R.3.7 which is necessary to amend their invalidity contentions, (2) defendants' new invalidity counterclaim fails to allege sufficient facts establishing Carlson actually contributed to any claims in the six patents at issue, and (3) even if Carlson should have been named as an inventor, the Court can correct inventorship in the course of the case.

The Court does not need much time to deny plaintiffs' futility arguments as to defendants' inventorship defense. One, it is premature to decide if defendants' will meet the good cause standard to amend invalidity claims pursuant to L. Pat. R. 3.7. That motion and record is not before the Court. Two, fact questions exist as to whether defendants have sufficiently alleged Carlson actually contributed to any claims in the six patents. See PAC ¶¶115-154. Three, at this time, and in the present context, it is not completely beyond doubt that inventorship can be corrected. Plaintiffs argue "[t]here is no possibility that Plaintiffs would be unable to correct inventorship under §256." Pltfs.' Opp. at 26. Since defendants' dispute plaintiffs' argument, at this time the Court is not prepared to accept plaintiffs' argument that they are right and defendants are wrong.

(b) Inequitable Conduct

As to defendants' inequitable conduct claim, plaintiffs argue the claim is futile because defendants have not pleaded with particularity sufficient facts so that a court may reasonably infer plaintiffs acted with the specific intent to deceive the PTO by withholding relevant information. Defendants argue plaintiffs intended to deceive the PTO by not including Carlson as a named inventor on the six patents at issue. Defendants argue that since Carlson did not assign his rights in

the '904 Provisional to Eagle View, he could transfer his interest to plaintiffs' competitors. Defts.' Memo. at 17. According to defendants, this created an incentive for plaintiffs to deceive the PTO because plaintiffs knew Carlson was speaking with plaintiffs' competitors. Defendants argue:

> If Mr. Carlson were properly named as an inventor on the six asserted patents, he would be free to license the patents to another company or practice the patents himself. Whether or not Mr. Carlson in fact sought to pursue these rights, Mr. Pershing and Eagle View had reason to be concerned that he might, and therefore had reason to prefer Mr. Carlson not be included as an inventor on the remaining six patents.

Id. at 21.

For the same reasons Judge Kugler deemed defendants' prior inequitable conduct claim futile, the Court finds defendants' new claim to be deficient. Defendants have not pleaded sufficient facts to show plaintiffs acted with the specific intent to deceive the PTO. The mere possibility of legal misconduct is insufficient. 2018 U.S. Dist. LEXIS 51192, at *6. Defendants fact allegations "must suggest the deliberate nature of the fraud on the PTO." Id. at *8. Specifically, defendants offer no evidence of plaintiffs' scienter. Defendants have not pleaded facts, for example, that plaintiffs or their attorneys thought or believed Carlson was an inventor of the six patents. Nor are there pleaded facts directly showing plaintiffs intended to deceive the PTO. In addition, there are no facts that plaintiffs were concerned that the prior art defendants cite to

was material. Nor do defendants aver that plaintiffs were concerned Carlson was speaking with plaintiffs' competitors. In short, no facts have been pleaded to show deceptive intent on the part of plaintiffs. Instead, defendants merely plead circumstantial facts and ask the Court to draw general inferences from those facts. Thus, defendants new inequitable conduct claim based on improper inventorship is futile. The Court is aware that if this were the sole basis to deny defendants' motion, the motion would be denied without prejudice to leave to amend. Since defendants' motion is denied on other grounds, their motion to amend is denied with prejudice. Further, defendants' affirmative defense raising inequitable conduct is denied for the same reasons Judge Kugler previously expressed, i.e., the deficiencies in the defense are clearly apparent. 2018 U.S. Dist. LEXIS 51192, at *24.

<u>Conclusion</u>

For all the foregoing reasons, defendants' Motion for Leave to Amend is DENIED.

<u>ORDER</u>

Accordingly, it is hereby ORDERED this 31st day of May, 2018, that defendants' Motion for Leave to Amend is DENIED.


                              s/Joel Schneider
                              JOEL SCHNEIDER
                              United States Magistrate Judge

Dated: May 31, 2018