Scott S. Christie
Matthew A. Sklar
Ravin R. Patel
**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
Newark, New Jersey  07102
Phone: (973) 848-5388
Fax: (973) 297-3981

Lee Carl Bromberg
Thomas R. Fulford
**McCARTER & ENGLISH, LLP**
265 Franklin St.
Boston, Massachusetts 02110
Phone: (617) 449-6500
Fax: (617) 607-9200

*Counsel for Defendants Xactware
Solutions, Inc. and Verisk Analytics, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| EAGLE VIEW TECHNOLOGIES, INC. and PICTOMETRY INTERNATIONAL CORP., <br><br> Plaintiffs, <br><br> v. <br><br> XACTWARE SOLUTIONS, INC. and VERISK ANALYTICS, INC., <br><br> Defendants. | Civil Action No. 15-cv-07025-RBK-JS <br><br> **Motion Date:** *See* D.E. 458 <br><br> **FILED UNDER SEAL** <br><br> **ORAL ARGUMENT REQUESTED** |

**DEFENDANTS XACTWARE SOLUTIONS, INC.'S AND VERISK
ANALYTICS, INC.'S MEMORANDUM IN SUPPORT OF THEIR MOTION
<u>FOR SUMMARY JUDGMENT OF EQUITABLE ESTOPPEL</u>**

ME1 27999991v.1

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................1

II. UNDISPUTED FACTS ................................................................................3

III. ARGUMENT ................................................................................................8

    A. Summary Judgment of Equitable Estoppel Should Be Granted ...........8

    B. Defendants Reasonably Relied on EagleView's Misleading Conduct and Will Be Prejudiced If This Suit Proceeds .......................8

IV. CONCLUSION ...........................................................................................10

# **TABLE OF AUTHORITIES**

Page(s)

**FEDERAL CASES**

*Aspex Eyewear Inc. v. Clariti Eyewear, Inc.*,
   605 F.3d 1305 (Fed. Cir. 2010) ................................................................................ 8, 10

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ........................................................................................................ 8

*Marra v. Philadelphia Hous. Auth.*,
   497 F.3d 286 (3d Cir. 2007) .......................................................................................... 9

*Scholle Corp. v. Blackhawk Molding Co.*,
   133 F.3d 1469 (Fed. Cir. 1998) .................................................................................. 8, 9

**FEDERAL RULES**

FED. R. CIV. P. 56 .................................................................................................................. 8

FED. R. EVID. 801(d)(2) ........................................................................................................ 9

I.  **INTRODUCTION**

Plaintiff EagleView Technologies, Inc. ("EagleView") and Defendants Xactware Solutions, Inc. ("Xactware") and Verisk Analytics, Inc. ("Verisk") (collectively, "Defendants"), have had a business relationship since 2008, seven years before this case was filed. Defendants permitted EagleView to include access to their roof estimate reports on Xactware's industry-leading Xactimate cost estimation platform ▮▮▮▮▮▮▮▮▮▮▮▮. From time to time after 2008, EagleView personnel made unspecified assertions of patent infringement against Xactware based upon EagleView's developing portfolio of patents. However, while EagleView sued others for patent infringement, it never sued Defendants. Indeed, EagleView sued Xactware for breach of contract in 2012, obtaining an injunction on the ground that if EagleView lost access to the Xactimate platform, it would destroy EagleView's entire business. No patent infringement claim was asserted in that case. Yet strikingly, the Xactimate platform is an accused product in this case, filed three and a half years later.

Next, EagleView agreed to be acquired by Verisk in an agreement dated January 14, 2014. In that agreement, EagleView ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. The January 14, 2014 Agreement remained in effect until December

16, 2014, when the Federal Trade Commission ("FTC") blocked the acquisition deal. EagleView was subsequently acquired by private equity firm Vista Capital based on an agreement dated June 15, 2015, which ███████████ ████████████████████████████████████████████████████████████ ████. To Defendants' shock and consternation, EagleView sued Defendants for patent infringement three and a half months later.

Since 2009, Xactware has continued to develop and enhance its own roof estimate report products, building upon its Sketch software program that was introduced in 1999. Xactware eventually introduced Aerial Sketch, Roof InSight, (now called Geomni Roof) and Property InSight (now called Geomni Property)—all of which EagleView knew of well before it filed this suit. And while developing those products, Xactware reasonably relied upon its business relationship with EagleView and EagleView's litigation conduct, including its patent infringement suits against others, in concluding that it would not be sued for patent infringement. Likewise, Xactware reasonably relied upon EagleView's ████████████████████████████████████████ by Xactware of EagleView's patents to proceed in the expectation that it would not be sued.

████████████████████████████████████
████████████████████████ and would be economically prejudiced if EagleView were to proceed with this patent infringement case. Indeed, the case

2

itself ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Because EagleView's conduct and written representations convinced Defendants that EagleView would not sue for infringement, because Defendants reasonably relied on that conduct, and because Defendants will be materially prejudiced if the patentee is allowed to proceed with its claims, summary judgment of equitable estoppel should be entered, dismissing EagleView's patent infringement case.

**II.     UNDISPUTED FACTS**

Verisk's Xactware and Geomni subsidiaries provide the products accused of infringing in this case.  (SMF ¶¶ 10-12.)  Xactware maintains a website and database of cost-estimating software used by insurance companies and others to estimate building and construction costs, called Xactimate.  (SMF ¶ 13.) Xactimate has been the leading cost estimate platform used in the insurance industry for many years.  (SMF ¶¶ 13, 24, 36.)  Xactware has built upon its cost-estimation products, including its Sketch program—which has used aerial imagery as an underlay to sketch roofs since at least as early as 2005—to develop roof estimation products.  (SMF ¶¶ 17, 42.)  The products at issue here were introduced in subsequent years; Aerial Sketch was introduced in 2011, Roof InSight in 2012, and Property InSight in 2015.  (SMF ¶ 18.)

3

EagleView, a 2008 start-up, sells roof reports, and the asserted patents are all directed to methods and systems for generating roof estimate reports. (SMF ¶ 14-15.) In 2008, Xactware agreed to permit EagleView to sell its roof reports on the Xactimate platform, pursuant to a contract. (SMF ¶ 16.) Since 2008, EagleView has pursued applications for patents directed to roof estimate reports, the patents currently asserted in this case. (SMF ¶¶ 1-9.) EagleView obtained the following patents (*see* SMF ¶¶ 1-9):

| Patent No. | Title | Application Date | Issue Date |
|---|---|---|---|
| 8,078,436 ("the '436 Patent") | Aerial Roof Estimation Systems and Methods | October 16, 2008 | December 13, 2011 August 27, 2014 (Amended Claims)[1] |
| 8,170,840 ("the '840 Patent") | Pitch Determination Systems and Methods for Aerial Roof Estimation | May 15, 2009 | May 1, 2012 |
| 8,818,770 ("the '770 Patent") | Pitch Determination Systems and Methods for Aerial Roof Estimation | April 3, 2012 | August 26, 2014 |
| 8,825,454 ("the '454 Patent) | Concurrent Display Systems and Methods for Aerial Roof Estimation | May 17, 2012 | September 2, 2014 |
| 9,129,376 ("the '376 Patent") | Pitch Determination Systems and Methods for Aerial Roof Estimation | July 31, 2014 | September 8, 2015 |
| 9,135,737 (the '737 Patent) | Concurrent Display Systems and Methods for Aerial Roof Estimation | August 1, 2014 | September 15, 2015 |

In the past, EagleView CEO Chris Barrow has ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (SMF ¶ 19.) For example, in

---

[1] The '436 Patent originally issued on December 13, 2011, and the amended claims after reexamination issued on August 27, 2014.

4

April 2012, Mr. Barrow ████████████████████████████████████████████. (SMF ¶ 19.) Furthermore, ████████████████████████████████ ████████████████████████████. (SMF ¶ 20.) Despite such assertions, EagleView did not sue Xactware for infringement. EagleView did, however, sue others for patent infringement and sued Xactware in a contract action. (SMF ¶¶ 21-22.)

In view of their contractual relationship, Xactware ████████████ ████████████████████, but ultimately no deal was reached. (SMF ¶ 25.) Relations between the companies continued to become strained and Xactware sought to terminate the contract in 2012 after its initial 4-year term. (SMF ¶¶ 27, 43.) However, EagleView obtained an injunction against termination of the contract in federal court in Washington state, on the stated basis that EagleView's business selling roof reports would be destroyed if it were not able to maintain its prominent position on the Xactimate platform. (SMF ¶¶ 22-24.)

The contract litigation proceeded. In 2014, Verisk sought to acquire EagleView. (SMF ¶¶ 28, 46.) EagleView Technology Corporation, the parent of both EagleView and its sister organization, Pictometry International Corp., agreed to be acquired. (SMF ¶¶ 28-29, 46.) On January 14, 2014, Verisk and EagleView Technology Corporation signed an agreement for the acquisition of EagleView by Verisk through a merger transaction (the "January 14, 2014 Agreement"). (SMF

5

¶¶ 28-29, 46.) ██████████

██████████

██████████. (SMF ¶¶ 28-32, 44, 46.) The January 14, 2014 Agreement, signed on behalf of EagleView by its CEO, Chris Barrow, remained in effect pending FTC review. (SMF ¶¶ 29, 46.)

At the signing of the January 14, 2014 Agreement, the '436 and '840 Patents had issued. (SMF ¶¶ 2-3.) During the eleven-month pendency of the January 14, 2014 Agreement, through December 16, 2014, the asserted '770 and '454 Patents issued, and the reexamined claims of the '436 Patent also issued, on August 27, 2014. (SMF ¶¶ 2, 4-5.) The '376 and '737 Patents issued later, in 2015, but applications for both had been filed while the January 14, 2014 Agreement was in effect. (SMF ¶¶ 6-7.) In other words, while EagleView had earlier made unspecified assertions of patent infringement against Xactware, ██████████

██████████

██████████. (SMF ¶¶ 28-32, 44, 46.)

Prior to the January 14, 2014 Agreement, EagleView had knowledge of the accused products—Aerial Sketch, Property InSight, and Roof InSight. (SMF ¶ 33.) By 2011, EagleView was aware of Aerial Sketch. (SMF ¶ 33.) Similarly,

6

EagleView knew of Roof InSight at least as early as 2013, and of the Property Insight product by late 2013, even though it was introduced later. (SMF ¶ 33.)

Despite assertions of patent infringement, however, the conduct of EagleView led Defendants to believe that EagleView would not bring suit for patent infringement. Although it had initiated litigation against others and filed a contract suit against Xactware, EagleView refrained from suing Xactware for patent infringement. (SMF ¶¶ 21-22.) And, it even ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (SMF ¶¶ 28-32, 37-41, 44, 46-47.) Defendants ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (SMF ¶¶ 48-50.), and indeed, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

The FTC prevented the Verisk-EagleView transaction from going forward, and EagleView was subsequently acquired by Vista Capital on June 15, 2015. (SMF ¶¶ 34-38, 47.) That acquisition used a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (SMF ¶¶ 28-32, 37-41, 44, 46-47.) Nonetheless, less than four months later, on September 23, 2015, EagleView sued Defendants for patent infringement. (SMF ¶ 45.)

7

## III. ARGUMENT

### A. Summary Judgment of Equitable Estoppel Should Be Granted

Summary judgment of equitable estoppel should be granted where there is no genuine issue of material fact and the moving party demonstrates it is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Scholle Corp. v. Blackhawk Molding Co.*, 133 F.3d 1469, 1471 (Fed. Cir. 1998); FED. R. CIV. P. 56. Equitable estoppel "may serve as an absolute bar to a patentee's claim of infringement." *Scholle*, 133 F.3d at 1471. Three elements, established on the undisputed facts here, bar patent infringement claims based on equitable estoppel:

> (1) the patentee, through misleading conduct, led the alleged infringer to reasonably believe that the patentee did not intend to enforce its patent against the infringer; (2) the alleged infringer relied on that conduct; and (3) due to its reliance, the alleged infringer would be materially prejudiced if the patentee were permitted to proceed with its charge of infringement.

*Aspex Eyewear Inc. v. Clariti Eyewear, Inc.*, 605 F.3d 1305, 1310 (Fed. Cir. 2010).

### B. Defendants Reasonably Relied on EagleView's Misleading Conduct and Will Be Prejudiced If This Suit Proceeds

Although EagleView made assertions of patent infringement against Xactware, it only filed a breach of contract suit prior to this lawsuit, despite its knowledge of the accused products. Meanwhile, by contrast, EagleView did sue other competitors for patent infringement. Furthermore, in the January 14, 2014 Agreement, EagleView ████████████████████████████████

███████████████████████. EagleView subsequently agreed to be acquired by Vista Capital, in an agreement signed on June 15, 2015, ███████████████████████████████████████████████████████

It is undisputed that EagleView had knowledge of accused products when it ███████████████████████████████████████████████ in the January 14, 2014 Agreement, which remained in effect until December 16, 2014.[2] EagleView's representations and subsequent inaction, therefore, relate to every patent asserted in this case. *See Scholle Corp.*, 133 F.3d at 1472. As noted above, by the time the FTC blocked the merger, five asserted patents had issued and the applications for the remaining two asserted patents had been filed. It was "wholly reasonable" for Xactware to infer from EagleView's course of conduct "that it would not be sued for infringement." *Scholle,* 133 F. 3d at 1472.[3] Based on this course of conduct, Xactware reasonably assumed that

---

[2] EagleView Technology Corporation, the parent of EagleView, was a party to the January 14, 2014 Agreement. (SMF ¶¶ 28, 46.) At least in view of EagleView Technology Corporation's agency relationship with its wholly-owned subsidiary, Plaintiff EagleView, the statements in the January 14, 2014 Agreement can be attributed to EagleView. *See Marra v. Philadelphia Hous. Auth.*, 497 F.3d 286, 297 (3d Cir. 2007); FED. R. EVID. 801(d)(2).

[3] The '376 and '737 Patents issued in 2015 after the FTC blocked Verisk's attempted acquisition of EagleView Technology Corporation, but the applications for those patents had been filed earlier in 2014. These continuation patents are closely related to the other asserted patents, and indeed, share a virtually identical specification and relate to the same subject matter. ███████

9

EagleView would not bring suit. Defendants 

Defendants will be materially prejudiced if EagleView is allowed to proceed with its claims, and Defendants are experiencing "a change of economic position flowing" from EagleView's actions. *Aspex*, 605 F.3d at 1312.

Moreover, this case has involved aggressive tactics forcing The prejudice that Defendants face includes At the very least, this litigation serves as a hindrance to the development of Defendants' business and should be put to an end given the circumstances.

## IV.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant summary judgment in their favor and declare that Plaintiff's claims are barred by equitable estoppel.

. (SMF ¶¶ 28-32, 44, 46.)

10

ME1 27999991v.1

Dated: August 31, 2018               Respectfully submitted,

s/Scott S. Christie
Scott S. Christie
Matthew A. Sklar
Ravin R. Patel
**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
Newark, New Jersey  07102
Phone: (973) 848-5388
Fax: (973) 297-3981

Lee Carl Bromberg
Thomas R. Fulford
**McCARTER & ENGLISH, LLP**
265 Franklin St.
Boston, Massachusetts 02110
Phone: (617) 449-6500
Fax: (617) 607-9200

*Counsel for Defendants Xactware Solutions, Inc. and Verisk Analytics, Inc.*

ME1 27999991v.1