# Exhibit A

## FILED UNDER SEAL

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

Liza M. Walsh
Hector D. Ruiz
Eleonore Ofosu-Antwi
WALSH PIZZI O'REILLY FALANGA LLP
One Riverfront Plaza
1037 Raymond Blvd., Suite 600
Newark, New Jersey 07102
(973) 757-1100

**OF COUNSEL** (admitted *pro hac vice*):

Adam R. Alper
Brandon Brown
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
(415) 439-1400

Gianni Cutri
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

Michael W. De Vries
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, CA 90071
(213) 680-8400

Jared Barcenas
KIRKLAND & ELLIS LLP
601 Lexington Ave.
New York, NY 10022
(212) 446-4800

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| EAGLE VIEW TECHNOLOGIES, INC., and PICTOMETRY INTERNATIONAL CORP., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No. ) 1:15-cv-07025-RBK-JS ) |
| XACTWARE SOLUTIONS, INC., and VERISK ANALYTICS, INC., | ) **SECOND AMENDED** ) **DISCLOSURE OF ASSERTED** ) **CLAIMS AND INFRINGEMENT** |
| Defendants. | ) **CONTENTIONS PURSUANT TO** ) **L. PAT. R. 3.1** |

Pursuant to the Court's May 1, 2017 Order and the agreed upon scheduling order, dated on

May 12, 2017, D.I. 224,  Plaintiffs Eagle View Technologies, Inc. ("Eagle View") and Pictometry

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

International Corp. (collectively, "Plaintiffs") hereby provide to Defendants Xactware Solutions, Inc., ("Xactware") and Verisk Analytics, Inc. ("Verisk") (collectively, "Defendants") the following Second Amended Disclosure of Asserted Claims and Infringement Contentions ("Contentions") for the asserted claims of U.S. Patent Nos. 8,078,436 ("the '436 Patent"), 8,170,840 ("the '840 Patent"), 8,209,152 ("the '152 Patent"), 8,818,770 ("the '770 Patent"), 8,825,454 ("the '454 Patent"), 9,129,376 ("the '376 Patent"), and 9,135,737 ("the '737 Patent") (collectively, "the asserted patents").[1]

Subject to the Federal Rules of Civil Procedure and the District of New Jersey's Local Civil Rules—including the Local Patent Rules—Plaintiffs reserve all rights to modify and supplement these Contentions as they deem necessary and/or appropriate as discovery in this case progresses and/or if the Court construes the asserted claims.  Additionally, Plaintiffs reserve the right to move to amend and/or supplement these disclosures based on any information that is gathered through discovery or further investigation, including fact and expert discovery.  Plaintiffs incorporate by reference any and all expert reports, declarations, disclosures and testimony in support of the information disclosed herein.  Plaintiffs further reserve all rights under Federal Rule of Civil Procedure 8 to assert additional claims or defenses.

---

[1] Plaintiffs maintain their belief that Defendants infringe at least the originally-asserted claims identified in Plaintiffs' December 23, 2015 Disclosure of Asserted Claims and Infringement Contentions Pursuant to L. Pat. R. 3.1.  Those claims remain valid and enforceable.  In accordance with the Court's August 3, 2016 and September 13, 2016 Orders and solely in the interest of streamlining the parties' disputes and these proceedings, Plaintiffs provide updated contentions here with a reduced set of patents and claims.  Presently, the parties have not yet completed discovery, Defendants have not provided any witnesses for deposition and the Court has not yet conducted any *Markman* proceedings with respect to any of the patents-in-suit.

**HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY**

These contentions shall not be construed as: (1) an adoption of any particular claim scope or construction; (ii) an admission that any particular claim limitation requires construction; or (iii) an admission that any particular claim language constitutes a substantive claim limitation.

The Contentions set forth below are based solely on Plaintiffs' current knowledge and belief based on the information presently available to Plaintiffs given that no depositions have occurred to date in the above-captioned action. Additional fact and expert discovery concerning Defendants' infringement is forthcoming.

The information provided by Plaintiffs in these contentions does not constitute a waiver of any information protected from discovery by the attorney-client privilege, the work-product doctrine, Fed. R. Civ. P. 26(b)(4), or which is otherwise privileged or immune from discovery. Any inadvertent disclosure of privileged or immune information will not constitute a waiver of privilege. *See, e.g.*, Fed. R. Civ. P. 26(b)(5)(B); Fed. R. Evid. 502(b).

I.      **U.S. Patent No. 8,078,436 – Infringement by Xactware**

   A.      **Claims Infringed By the Accused Products and Statutory Basis (L. Pat. R. 3.1(a))**

Xactware has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, claims 1-2, 5, 8, 18, 21, 36, and 37 of the '436 Patent under 35 U.S.C. § 271(a) by making and using the rooftop aerial measurement products identified in Section I.B *infra* within the United States.

In addition to directly infringing the '436 Patent, Xactware has in the past and continues to indirectly infringe claims 1-2, 5, 8, 18, 21, 36, and 37 of the '436 Patent under 35 U.S.C. § 271(b) by inducing direct infringement by others, such as end users of the rooftop aerial measurement products identified in Section I.B *infra*.

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

In addition to directly and indirectly infringing the '436 Patent, Xactware has in the past and continues to directly infringe claims 1-2, 5, 8, 18, 21, 36, and 37 of the '436 Patent under 35 U.S.C. § 271(g).  On information and belief, Xactware imports into the United States, offers to sell, sells and/or uses within the United States products, including, but not limited to, roof reports, made by the rooftop aerial measurement products identified in Section I.B *infra*.   *See, e.g.*, XW00029702-XW00029705;   XW00030553-XW00030556;   XW00341848-XW00341857; XW00661537-XW00661550;   XW00223927-XW00223931;   XW00224192-XW00224194; XW00248624-XW00248626;   XW00250779-XW00250781;   XW00251063-XW00251075; XW00215399-XW00215416; XW00311079-XW00311085. [2]

In addition to directly and indirectly infringing the '436 Patent, Xactware has in the past and continues to directly infringe claims 1-2, 5, 8, 36, and 37 of the '436 Patent under 35 U.S.C. § 271(f)(1). On information and belief, Xactware supplies from the United States all or a substantial portion of the components (including, but not limited to, software and computer code) of the rooftop aerial measurement products identified in Section I.B *infra* in such a manner as to actively induce the combination of such components in a manner that would infringe the '436

---

[2]  Xactware's February 29, 2016 response to EagleView's Interrogatory 5 stated that its "research, design, development, marketing, and testing" of the accused products is "performed and coordinated at 1100 West Traverse Parkway Lehi, Utah." Xactware also identified well over *twenty-two thousand* pages, essentially its entire production at the time of the response, as containing relevant information.  On May 9, 2017, Xactware served a Supplemental Response to Interrogatory 5, asserting that "research, design, development, use, and testing activities" for the Accused Products are allegedly performed at three overseas locations, specifically in Spain, China, and India.  Xactware's May 9 Supplemental Response provides no support for these claims, does not identify documents relevant to these assertions, nor provides any other details. Furthermore, since the beginning of May 2017, Xactware has produced over 70,000 documents, totaling nearly 550,000 pages, many of which appear potentially relevant to Xactware's overseas activities. Given Xactware's late disclosure of its foreign operations, the enormous volume of its recent productions, and the fact that discovery is ongoing, Eagle View reserves its right to further supplement its infringement contentions with respect to infringement under Sections 271(f) and (g) for all asserted patents.

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

Patent if such combination occurred in the United States. *See, e.g.*, XW00027996-XW00028001; XW00029702-XW00029705;   XW00034268-XW00034275;   XW00661537-XW00661550; XW00674046-XW00674050;   XW00223927-XW00223931;   XW00224192-XW00224194; XW00224770-XW00224773;   XW00224836-XW00224838;   XW00225334-XW00225336; XW00215399-XW00215416;   XW00335695-XW00335696;   XW00336784-XW00336788; XW00337419-XW00337421; XW00337449-XW00337450.

   In addition to directly and indirectly infringing the '436 Patent, Xactware has in the past and continues to directly infringe claims 1-2, 5, 8, 36, and 37 of the '436 Patent under 35 U.S.C. § 271(f)(2).  Upon information and belief, Xactware supplies from the United States components (including, but not limited to, software and computer code) of the rooftop aerial measurement products identified in Section I.B *infra*, which are especially adapted for use in the rooftop areal measurement products, and knowing and intending that the components will be combined outside of the United States in a manner that would infringe the '436 Patent if such combination occurred in the United States. *See, e.g.*, XW00027996-XW00028001; XW00029702-XW00029705; XW00034268-XW00034275;   XW00661537-XW00661550;   XW00674046-XW00674050; XW00223927-XW00223931;   XW00224192-XW00224194;   XW00224770-XW00224773; XW00224836-XW00224838;   XW00225334-XW00225336;   XW00215399-XW00215416; XW00335695-XW00335696;   XW00336784-XW00336788;   XW00337419-XW00337421; XW00337449-XW00337450.

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

**B.**     **The Accused Products (L. Pat. R. 3.1(b))**

The accused products for each asserted claim of the '436 Patent are Defendants' rooftop aerial measurement products, including Xactimate, Property Insight/Roof InSight, and the "Mass Production Tool."

**C.**     **Chart Identifying Where Each Claim Limitation of Each Asserted Claim is Found Within Each Accused Product (L. Pat. R. 3.1(c))**

Based on information presently available to Plaintiffs, attached as Exhibit A is a chart specifically identifying how the accused products meet each limitation of each asserted claim of the '436 Patent.  Plaintiffs reserve all rights to modify and supplement Exhibit A as discovery progresses.  For each dependent claim, Plaintiffs incorporate by reference their contention(s) for any claims from which it depends.  Plaintiffs provide illustrative examples identifying where each limitation is found within the accused products, and reserve the right to rely upon the same, similar or supporting information found elsewhere.

Plaintiffs further reserve the right to supplement these contentions as to the Doctrine of Equivalents if needed as discovery progresses and if the Court further construes the asserted claims.

**D.**     **For Indirectly Infringed Claims, Identification of Any Direct Infringement and a Description of the Acts of the Indirect Infringer That Would Contribute to or Induce That Direct Infringement (L. Pat. R. 3.1(d))**

Xactware has induced and continues to induce the direct infringement of claims 1-2, 5, 8, 18, 21, 36, and 37 of the '436 Patent under 35 U.S.C. § 271(b) of the '436 Patent by at least end users of the accused products.  Such end users' use of these products constitutes direct infringement.  *See* 35 U.S.C. § 271(a); *see also* Exhibit A.

On information and belief, Xactware has had knowledge of the '436 Patent since at least as early December 2014, in connection with Verisk's intended acquisition of Eagle View Technology Corporation ("EVT").   Verisk performed due diligence related to its intended acquisition of EVT, including with respect to Eagle View's patent holdings. ████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████ Xactware also has had knowledge of the '436 Patent since at least as early as May 22, 2012, when it submitted an Information Disclosure Statement (IDS) identifying the '436 Patent to the USPTO during the prosecution of its own U.S. Patent Application No. 13/397,325.   EV032076- EV032078.

Xactware knew or should have known that use of the accused products by its end users infringes the asserted claims of the '436 Patent since at least as early as the first such infringing use of such products after May 22, 2012.  Xactware knowingly induced such use of those products in a manner that infringes the '436 Patent, including through at least promotional, advertising, and instructional materials, and Xactware had the requisite intent to encourage such infringement.  *See, e.g.*,   EV032102-EV032103;   EV032121;   EV032093-EV032094;   EV032088-EV032089; EV032090-EV032092;  EV032095-EV032097;  EV032098-EV032099;  EV032111-EV032112; EV032109-EV032110;  EV032104-EV032108.   As such, Xactware has indirectly infringed and continues to indirectly infringe the asserted claims of the '436 Patent under 35 U.S.C. § 271(b).

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

E.    **Whether Each Limitation of Each Asserted Claim Is Literally Present or Present Under the Doctrine of Equivalents in the Accused Products (L. Pat. R. 3.1(e))**

The chart attached as Exhibit A shows that each limitation of each asserted claim of the '436 Patent is literally present in the accused products or is present under the Doctrine of Equivalents.   Plaintiffs reserve all rights to modify and supplement Exhibit A as discovery progresses.   Plaintiffs further reserve the right to supplement contentions as to the Doctrine of Equivalents if needed as discovery progresses and as the Court further construes the asserted claims.

F.    **The Priority Date To Which Each Asserted Claim Is Entitled (L. Pat. R. 3.1(f))**

Claims 1-2, 5, 8, 18, 21, 36, and 37 of the '436 Patent are entitled to the benefit of priority to at least U.S. Provisional Patent Application No. 60/925,072, filed on April 17, 2007.

The '436 Patent is a continuation-in-part of U.S. Patent Application No. 12/148,439 (the "'439 application") and therefore claims 1-2, 5, 8, 18, 21, 36, and 37 of the '436 Patent also are entitled to the benefit of priority of the '439 application, filed on April 17, 2008.  *See* Plaintiffs' Response To Defendants' Revised Invalidity Contentions, dated May 22, 2017 and as amended at Defendants' request on June 1, 2017, which are incorporated herein by reference.

G.    **Identification of Plaintiffs' Product That Practices the Claimed Invention in Each Asserted Claim (L. Pat. R. 3.1(g))**

Plaintiffs' Render House and Twister rooftop aerial measurement products practice the invention claimed in asserted claims 1-2, 5, 8, 18, 21, 36, and 37 of the '436 Patent, including with respect to the generation of at least Eagle View PremiumReports, Wall Reports, Extended Coverage Reports, QuickSquares Reports, SolarReports, and ClaimsReady Reports.

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

**H.** **Identification of Basis For Willful Infringement Allegations (L. Pat. R. 3.1 (h))**

Xactware's infringement of the '436 Patent has been and continues to be willful.  As detailed in Section I.D *supra*, Xactware has had knowledge of the '436 Patent since at least as early as May 22, 2012.  Xactware has acted with knowledge of the '436 Patent and without a reasonable basis for a good-faith belief that it would not be liable for infringement of the '436 Patent.  For example, subsequent to being informed of the '436 Patent, Xactware continued to make and use the accused products within the United States in a manner that infringes the '436 Patent, as well as to induce ends users to use those products in a manner that infringes the '436 Patent.  Xactware has disregarded and continues to disregard its infringement and/or an objectively high likelihood that its actions constitute infringement of the '436 Patent.  This objectively-defined risk was known or is so obvious that it should have been known to Xactware.

**II.**  **U.S. Patent No. 8,078,436 – Infringement by Verisk**

**A.** **Claims Infringed By the Accused Products and Statutory Basis (L. Pat. R. 3.1(a))**

Verisk has indirectly infringed and continues to indirectly infringe claims 1-2, 5, 8, 18, 21, 36, and 37 of the '436 Patent under 35 U.S.C. § 271(b) by inducing direct infringement by Xactware, including Xactware's making and using the rooftop aerial measurement products identified in Section II.B *infra* within the United States.

**B.** **The Accused Products (L. Pat. R. 3.1(b))**

The accused products for each asserted claim of the '436 Patent are Defendants' rooftop aerial measurement products, including Xactimate, Property Insight/Roof InSight, and the "Mass Production Tool."

9

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

**C.** **Chart Identifying Where Each Claim Limitation of Each Asserted Claim is Found Within Each Accused Product (L. Pat. R. 3.1(c))**

Based on information presently available to Plaintiffs, attached as Exhibit A is a chart specifically identifying how the accused products meet each limitation of each asserted claim of the '436 Patent. Plaintiffs reserve all rights to modify and supplement Exhibit A as discovery progresses. For each dependent claim, Plaintiffs incorporate by reference their contention(s) for any claims from which it depends. Plaintiffs provide illustrative examples identifying where each limitation is found within the accused products, and reserve the right to rely upon the same, similar or supporting information found elsewhere.

Plaintiffs further reserve the right to supplement these contentions as to the Doctrine of Equivalents if needed as discovery progresses and if the Court further construes the asserted claims.

**D.** **For Indirectly Infringed Claims, Identification of Any Direct Infringement and a Description of the Acts of the Indirect Infringer That Would Contribute to or Induce That Direct Infringement (L. Pat. R. 3.1(d))**

Verisk has induced and continues to induce the direct infringement of claims 1-2, 5, 8, 18, 21, 36, and 37 of the '436 Patent by inducing direct infringement by Xactware, including Xactware's making and using the accused products within the United States.

On information and belief, Verisk has had knowledge of the '436 Patent since at least as early as December 2014, in connection with its intended acquisition of EVT. In January 2014, Verisk signed an agreement to acquire EVT. Verisk performed due diligence related to its intended acquisition of EVT, including with respect to Eagle View's patent holdings. ████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████ On information and

**HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY**

belief, Verisk also has had knowledge of the '436 Patent since at least as early as May 22, 2012,

when Xactware submitted an IDS identifying the '436 Patent to the USPTO during the prosecution

of Xactware's U.S. Patent Application No. 13/397,325.  EV032076-EV032078. ██████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

Verisk knew or should have known that Xactware's actions infringe the claims of the '436

Patent since at least as early as Xactware's first such act of direct infringement with respect to

those products after May 22, 2012. ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████ As such, Verisk has

indirectly infringed and continues to indirectly infringe the asserted claims of the '436 Patent under

35 U.S.C. § 271(b).

11

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

     E.       **<u>Whether Each Limitation of Each Asserted Claim Is Literally Present or Present Under the Doctrine of Equivalents in the Accused Products (L. Pat. R. 3.1(e))</u>**

The chart attached as Exhibit A shows that each limitation of each asserted claim of the '436 Patent is literally present in the accused products or is present under the Doctrine of Equivalents.   Plaintiffs reserve all rights to modify and supplement Exhibit A as discovery progresses.   Plaintiffs further reserve the right to supplement contentions as to the Doctrine of Equivalents if needed as discovery progresses and as the Court further construes the asserted claims.

     F.       **<u>The Priority Date To Which Each Asserted Claim Is Entitled (L. Pat. R. 3.1(f))</u>**

Claims 1-2, 5, 8, 18, 21, 36, and 37 of the '436 Patent are entitled to the benefit of priority to at least U.S. Provisional Patent Application No. 60/925,072, filed on April 17, 2007.

The '436 Patent is a continuation-in-part of U.S. Patent Application No. 12/148,439 (the "'439 application") and therefore claims 1-2, 5, 8, 18, 21, 36, and 37 of the '436 Patent also are entitled to the benefit of priority of the '439 application, filed on April 17, 2008.  *See* Plaintiffs' Response To Defendants' Revised Invalidity Contentions, dated May 22, 2017 and as amended at Defendants' request on June 1, 2017, which are incorporated herein by reference.

     G.       **<u>Identification of Plaintiffs' Product That Practices the Claimed Invention in Each Asserted Claim (L. Pat. R. 3.1(g))</u>**

Plaintiffs' Render House and Twister rooftop aerial measurement products practice the invention claimed in asserted claims 1-2, 5, 8, 18, 21, 36, and 37 of the '436 Patent, including with respect to the generation of at least Eagle View PremiumReports, Wall Reports, Extended Coverage Reports, QuickSquares Reports, SolarReports, and ClaimsReady Reports.

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

### H.   Identification of Basis For Willful Infringement Allegations (L. Pat. R. 3.1 (h))

Verisk's infringement of the '436 Patent has been and continues to be willful.  As detailed in Section II.D *supra*, Verisk has had knowledge of the '436 Patent since at least as early as May 22, 2012.  Verisk has acted with knowledge of the '436 Patent and without a reasonable basis for a good-faith belief that it would not be liable for infringement of the '436 Patent. For example, subsequent to being informed of the '436 Patent, Verisk continued to induce Xactware's making and using of the accused products in a manner that infringes the '436 Patent. Verisk has disregarded and continues to disregard its infringement and/or an objectively high likelihood that its actions constitute infringement of the '436 Patent.  This objectively-defined risk was known or is so obvious that it should have been known to Verisk.

### III.   U.S. Patent No. 8,170,840 – Infringement by Xactware

### A.   Claims Infringed By the Accused Products and Statutory Basis (L. Pat. R. 3.1(a))

Xactware has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, claims 4, 10-11, 15-16, and 18 of the '840 Patent under 35 U.S.C. § 271(a) by making and using the rooftop aerial measurement products identified in Section III.B *infra* within the United States.

In addition to directly infringing the '840 Patent, Xactware has in the past and continues to indirectly infringe claims 4, 10-11, 15-16, and 18 of the '840 Patent under 35 U.S.C. § 271(b) by inducing direct infringement by others, such as end users of the rooftop aerial measurement products identified in Section III.B *infra*.

13

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

In addition to directly and indirectly infringing the '840 Patent, Xactware has in the past and continues to directly infringe claims 4, 10-11, 15-16, and 18 of the '840 Patent under 35 U.S.C. § 271(g).  On information and belief, Xactware imports into the United States, offers to sell, sells and/or uses within the United States products, including, but not limited to, roof reports, made by the rooftop aerial measurement products identified in Section I.B infra.  *See, e.g.*, XW00029702-XW00029705;   XW00030553-XW00030556;   XW00341848-XW00341857;   XW00661537-XW00661550;   XW00223927-XW00223931;   XW00224192-XW00224194;   XW00248624-XW00248626;   XW00250779-XW00250781;   XW00251063-XW00251075;   XW00215399-XW00215416; XW00311079-XW00311085

In addition to directly and indirectly infringing the '840 Patent, Xactware has in the past and continues to directly infringe claims 10-11 and 15 of the '840 Patent under 35 U.S.C. § 271(f).  On information and belief, Xactware supplies from the United States all or a substantial portion of the components (including, but not limited to, software and computer code) of the rooftop aerial measurement products identified in Section I.B *infra* in such a manner as to actively induce the combination of such components in a manner that would infringe the '840 Patent if such combination occurred in the United States. *See, e.g.*, XW00027996-XW00028001; XW00029702-XW00029705;   XW00034268-XW00034275;   XW00661537-XW00661550;   XW00674046-XW00674050;   XW00223927-XW00223931;   XW00224192-XW00224194;   XW00224770-XW00224773;   XW00224836-XW00224838;   XW00225334-XW00225336;   XW00215399-XW00215416;   XW00335695-XW00335696;   XW00336784-XW00336788;   XW00337419-XW00337421; XW00337449-XW00337450.

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

In addition to directly and indirectly infringing the '840 Patent, Xactware has in the past and continues to directly infringe claims 10-11 and 15 of the '840 Patent under 35 U.S.C. § 271(f)(2).  Upon information and belief, Xactware supplies from the United States components (including, but not limited to, software and computer code) of the rooftop aerial measurement products identified in Section I.B *infra*, which are especially adapted for use in the rooftop areal measurement products, and knowing and intending that the components will be combined outside of the United States in a manner that would infringe the '840 Patent if such combination occurred in the United States. *See, e.g.*, XW00027996-XW00028001;  XW00029702-XW00029705; XW00034268-XW00034275;     XW00661537-XW00661550;     XW00674046-XW00674050; XW00223927-XW00223931;     XW00224192-XW00224194;     XW00224770-XW00224773; XW00224836-XW00224838;     XW00225334-XW00225336;     XW00215399-XW00215416; XW00335695-XW00335696;     XW00336784-XW00336788;     XW00337419-XW00337421; XW00337449-XW00337450.

## B.     The Accused Products (L. Pat. R. 3.1(b))

The accused products for each asserted claim of the '840 Patent are Defendants' rooftop aerial measurement products, including Xactimate and Aerial Sketch; and Xactimate, Property Insight/Roof InSight, and the "Mass Production Tool."

## C.     Chart Identifying Where Each Claim Limitation of Each Asserted Claim is Found Within Each Accused Product (L. Pat. R. 3.1(c))

Based on information presently available to Plaintiffs, attached as Exhibit B is a chart specifically identifying how the accused products meet each limitation of each asserted claim of the '840 Patent.  Plaintiffs reserve all rights to modify and supplement Exhibit B as discovery progresses.  For each dependent claim, Plaintiffs incorporate by reference their contention(s) for

15

**HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY**

any claims from which it depends.  Plaintiffs provide illustrative examples identifying where each limitation is found within the accused products, and reserve the right to rely upon the same, similar or supporting information found elsewhere.

Plaintiffs further reserve the right to supplement these contentions as to the Doctrine of Equivalents if needed as discovery progresses and if the Court further construes the asserted claims.

**D.      For Indirectly Infringed Claims, Identification of Any Direct Infringement and a Description of the Acts of the Indirect Infringer That Would Contribute to or Induce That Direct Infringement (L. Pat. R. 3.1(d))**

Xactware has induced and continues to induce the direct infringement of claims 4, 10-11, 15-16, and 18 of the '840 Patent by at least end users of the accused products.  Such end users' use of these products constitutes direct infringement. *See* 35 U.S.C. § 271(a); *see also* Exhibit B.

On information and belief, Xactware has had knowledge of the '840 Patent since at least as early December 2014, in connection with Verisk's intended acquisition of EVT.   Verisk performed due diligence related to its intended acquisition of EVT, including with respect to Eagle View's patent holdings. ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

Xactware also has had knowledge of the '840 Patent since at least as early as May 22, 2012, when it submitted an Information Disclosure Statement (IDS) identifying the '840 Patent to the USPTO during the prosecution of its own U.S. Patent Application No. 13/397,325.  EV032076-EV032078.

16

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

Xactware knew or should have known that use of the accused products by its end users infringes the asserted claims of the '840 Patent since at least as early as the first such infringing use of such products after May 22, 2012.  Xactware knowingly induced such use of those products in a manner that infringes the '840 Patent, including through at least promotional, advertising, and instructional materials, and Xactware had the requisite intent to encourage such infringement.  *See, e.g.*,   EV032113-EV032114;   EV032126;   EV032111-EV032112;   EV032109-EV032110; EV032104-EV032108.   As such, Xactware has indirectly infringed and continues to indirectly infringe the asserted claims of the '840 Patent under 35 U.S.C. § 271(b).

Xactware further knowingly induced its customers to infringe the asserted claims of the '840 Patent by presenting instructional web-based video chats with its customers teaching, demonstrating, and encouraging infringing use of the accused products.  *See, e.g.*, XW00045021-XW00045027 (webcast demonstrating features of Aerial Sketch to 509 individuals).  Xactware also knowingly induced its customers to infringe the asserted claims of the '840 Patent by creating and  distributing  instructional  videos  for  customers  that  teach,  demonstrate,  and  encourage infringing use of the accused products.  *See, e.g.*, XW00049732.  Xactware additionally knowingly induced its customers to infringe the asserted claims of the '840 Patent by creating and distributing training  materials  to  customers  that  teach,  demonstrate,  and  encourage  infringing  use  of  the accused products.  *See, e.g.*, XW0016112.  Xactware further knowingly induced its customers to infringe the asserted claims of the '840 Patent by creating and distributing advertising materials that  teach,  demonstrate,  and  encourage  infringing  use  of  the  accused  products.  *See, e.g.*, XW00083145 - XW00083219.

17

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

E.     **Whether Each Limitation of Each Asserted Claim Is Literally Present or Present Under the Doctrine of Equivalents in the Accused Products (L. Pat. R. 3.1(e))**

The chart attached as Exhibit B shows that each limitation of each asserted claim of the '840 Patent is literally present in the accused products or is present under the Doctrine of Equivalents.   Plaintiffs reserve all rights to modify and supplement Exhibit B as discovery progresses.   Plaintiffs further reserve the right to supplement contentions as to the Doctrine of Equivalents if needed as discovery progresses and as the Court further construes the asserted claims.

F.     **The Priority Date To Which Each Asserted Claim Is Entitled (L. Pat. R. 3.1(f))**

Claims 4, 10-11, 15-16, and 18 of the '840 Patent are entitled to the benefit of priority to at least U.S. Provisional Patent Application No. 61/197,904, filed on October 31, 2008.

G.     **Identification of Plaintiffs' Product That Practices the Claimed Invention in Each Asserted Claim (L. Pat. R. 3.1(g))**

Plaintiffs' Render House and Twister rooftop aerial measurement products practice the invention claimed in asserted claims 4, 10-11, 15-16, and 18 of the '840 Patent, including with respect to the generation of at least Eagle View PremiumReports, Wall Reports, Extended Coverage Reports, QuickSquares Reports, SolarReports, and ClaimsReady Reports.

H.     **Identification of Basis For Willful Infringement Allegations (L. Pat. R. 3.1 (h))**

Xactware's infringement of the '840 Patent has been and continues to be willful.   As detailed in Section III.D *supra*, Xactware has had knowledge of the '840 Patent since at least as early as May 22, 2012.  Xactware has acted with knowledge of the '840 Patent and without a reasonable basis for a good-faith belief that it would not be liable for infringement of the '840

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

Patent.  For example, subsequent to being informed of the '840 Patent, Xactware continued to make and use the accused products within the United States in a manner that infringes the '840 Patent, as well as to induce ends users to use those products in a manner that infringes the '840 Patent.  Xactware has disregarded and continues to disregard its infringement and/or an objectively high likelihood that its actions constitute infringement of the '840 Patent.  This objectively-defined risk was known or is so obvious that it should have been known to Xactware.

## IV.   U.S. Patent No. 8,170,840 – Infringement by Verisk

### A.   Claims Infringed By the Accused Products and Statutory Basis (L. Pat. R. 3.1(a))

Verisk has indirectly infringed and continues to indirectly infringe claims 4, 10-11, 15-16, and 18 of the '840 Patent under 35 U.S.C. § 271(b) by inducing direct infringement by Xactware, including Xactware's making and using the rooftop aerial measurement products identified in Section IV.B *infra*.

### B.   The Accused Products (L. Pat. R. 3.1(b))

The accused products for each asserted claim of the '840 Patent are Defendants' rooftop aerial measurement products, including Xactimate and Aerial Sketch; and Xactimate, Property Insight/Roof InSight, and the "Mass Production Tool."

### C.   Chart Identifying Where Each Claim Limitation of Each Asserted Claim is Found Within Each Accused Product (L. Pat. R. 3.1(c))

Based on information presently available to Plaintiffs, attached as Exhibit B is a chart specifically identifying how the accused products meet each limitation of each asserted claim of the '840 Patent.  Plaintiffs reserve all rights to modify and supplement Exhibit B as discovery progresses.  For each dependent claim, Plaintiffs incorporate by reference their contention(s) for

any claims from which it depends.  Plaintiffs provide illustrative examples identifying where each limitation is found within the accused products, and reserve the right to rely upon the same, similar or supporting information found elsewhere.

Plaintiffs further reserve the right to supplement these contentions as to the Doctrine of Equivalents if needed as discovery progresses and if the Court further construes the asserted claims.

### D.    For Indirectly Infringed Claims, Identification of Any Direct Infringement and a Description of the Acts of the Indirect Infringer That Would Contribute to or Induce That Direct Infringement (L. Pat. R. 3.1(d))

Verisk has induced and continues to induce the direct infringement of claims 4, 10-11, 15-16, and 18 of the '840 Patent by inducing direct infringement by Xactware, including Xactware's making and using the accused products within the United States.

On information and belief, Verisk has had knowledge of the '840 Patent since at least as early as December 2014 in connection with its intended acquisition of EVT.  In January 2014, Verisk signed an agreement to acquire EVT.  Verisk performed due diligence related to its intended acquisition of EVT, including with respect to Eagle View's patent holdings. ███████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████ On information and belief, Verisk also has had knowledge of the '840 Patent since at least as early as May 22, 2012, when Xactware submitted an IDS identifying the '840 Patent to the USPTO during the prosecution of Xactware's U.S. Patent Application No. 13/397,325.  EV032076-EV032078. ██████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

**HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY**

Verisk knew or should have known that Xactware's actions infringe the claims of the '840 Patent since at least as early as Xactware's first such act of direct infringement with respect to those products after May 22, 2012.



As such, Verisk has indirectly infringed and continues to indirectly infringe the asserted claims of the '840 Patent under 35 U.S.C. § 271(b).

**E.  Whether Each Limitation of Each Asserted Claim Is Literally Present or Present Under the Doctrine of Equivalents in the Accused Products (L. Pat. R. 3.1(e))**

The chart attached as Exhibit B shows that each limitation of each asserted claim of the '840 Patent is literally present in the accused products or is present under the Doctrine of Equivalents. Plaintiffs reserve all rights to modify and supplement Exhibit B as discovery progresses. Plaintiffs further reserve the right to supplement contentions as to the Doctrine of

**HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY**

Equivalents if needed as discovery progresses and as the Court further construes the asserted claims.

### F.   The Priority Date To Which Each Asserted Claim Is Entitled (L. Pat. R. 3.1(f))

Claims 4, 10-11, 15-16, and 18 of the '840 Patent are entitled to the benefit of priority to at least U.S. Provisional Patent Application No. 61/197,904, filed on October 31, 2008.

### G.   Identification of Plaintiffs' Product That Practices the Claimed Invention in Each Asserted Claim (L. Pat. R. 3.1(g))

Plaintiffs' Render House and Twister rooftop aerial measurement products practice the invention claimed in asserted claims 4, 10-11, 15-16, and 18 of the '840 Patent, including with respect to the generation of at least Eagle View PremiumReports, Wall Reports, Extended Coverage Reports, QuickSquares Reports, SolarReports, and ClaimsReady Reports.

### H.   Identification of Basis For Willful Infringement Allegations (L. Pat. R. 3.1 (h))

Verisk's infringement of the '840 Patent has been and continues to be willful.  As detailed in Section IV.D *supra*, Verisk has had knowledge of the '840 Patent since at least as early as May 22, 2012.  Verisk has acted with knowledge of the '840 Patent and without a reasonable basis for a good-faith belief that it would not be liable for infringement of the '840 Patent.  For example, subsequent to being informed of the '840 Patent, Verisk continued to induce Xactware's making and using of the accused products in a manner that infringes the '840 Patent. Verisk has disregarded and continues to disregard its infringement and/or an objectively high likelihood that its actions constitute infringement of the '840 Patent. This objectively-defined risk was known or is so obvious that it should have been known to Verisk.

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

V.      **U.S. Patent No. 8,209,152 -- Infringement by Xactware**

A.      **Claims Infringed By the Accused Products and Statutory Basis (L. Pat. R. 3.1(a))**

Xactware has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, claim 8 of the '152 Patent under 35 U.S.C. § 271(a) by making and using the rooftop aerial measurement products identified in Section V.B *infra* within the United States.

In addition to directly infringing the '152 Patent, Xactware has in the past and continues to indirectly infringe claim 8 of the '152 Patent under 35 U.S.C. § 271(b) by inducing direct infringement by others, such as end users of the rooftop aerial measurement products identified in Section V.B *infra*.

In addition to directly and indirectly infringing the '152 Patent, Xactware has in the past and continues to directly infringe claim 8 of the '152 Patent under 35 U.S.C. § 271(g). On information and belief, Xactware imports into the United States, offers to sell, sells and/or uses within the United States products, including, but not limited to, roof reports, made by the rooftop aerial measurement products identified in Section I.B infra.   *See, e.g.*, XW00029702-XW00029705;   XW00030553-XW00030556;   XW00341848-XW00341857;   XW00661537-XW00661550;   XW00223927-XW00223931;   XW00224192-XW00224194;   XW00248624-XW00248626;   XW00250779-XW00250781;   XW00251063-XW00251075;   XW00215399-XW00215416; XW00311079-XW00311085.

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

**B.    The Accused Products (L. Pat. R. 3.1(b))**

The accused products for each asserted claim of the '152 Patent are Defendants' rooftop aerial measurement products, including Xactimate and Aerial Sketch; and Xactimate, Property Insight/Roof InSight, and the "Mass Production Tool."

**C.    Chart Identifying Where Each Claim Limitation of Each Asserted Claim is Found Within Each Accused Product (L. Pat. R. 3.1(c))**

Based on information presently available to Plaintiffs, attached as Exhibit C is a chart specifically identifying how the accused products meet each limitation of each asserted claim of the '152 Patent.  Plaintiffs reserve all rights to modify and supplement Exhibit C as discovery progresses.  For each dependent claim, Plaintiffs incorporate by reference their contention(s) for any claims from which it depends.  Plaintiffs provide illustrative examples identifying where each limitation is found within the accused products, and reserve the right to rely upon the same, similar or supporting information found elsewhere.

Plaintiffs further reserve the right to supplement these contentions as to the Doctrine of Equivalents if needed as discovery progresses and if the Court further construes the asserted claims.

**D.    For Indirectly Infringed Claims, Identification of Any Direct Infringement and a Description of the Acts of the Indirect Infringer That Would Contribute to or Induce That Direct Infringement (L. Pat. R. 3.1(d))**

Xactware has induced and continues to induce the direct infringement of claim 8 of the '152 Patent by at least end users of the accused products.  Such end users' use of these products constitutes direct infringement. *See* 35 U.S.C. § 271(a); *see also* Exhibit C.

On information and belief, Xactware has had knowledge of the '152 Patent since at least as early December 2014 in connection with Verisk's intended acquisition of EVT.   Verisk

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

performed due diligence related to its intended acquisition of EVT, including with respect to Eagle View's patent holdings. ███████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

Xactware also has had knowledge of the '152 Patent since at least as early as May 22, 2012, when it submitted an Information Disclosure Statement (IDS) identifying the '152 Patent to the USPTO during the prosecution of its own U.S. Patent Application No. 13/397,325.  EV032076- EV032078.

Xactware knew or should have known that use of the accused products by its end users infringes the asserted claims of the '152 Patent since at least as early as the first such infringing use of such products after June 26, 2012.  Xactware knowingly induced such use of those products in a manner that infringes the '152 Patent, including through at least promotional, advertising, and instructional materials, and Xactware had the requisite intent to encourage such infringement.  *See, e.g.*,  EV032113-EV032114;   EV032126;   EV032111-EV032112;   EV032109-EV032110; EV032104-EV032108.   As such, Xactware has indirectly infringed and continues to indirectly infringe the asserted claims of the '152 Patent under 35 U.S.C. § 271(b).

Xactware further knowingly induced its customers to infringe the asserted claims of the '152 Patent by presenting instructional web-based video chats with its customers teaching, demonstrating, and encouraging infringing use of the accused products.  *See, e.g.*, XW00045021-XW00045027 (webcast demonstrating features of Aerial Sketch to 509 individuals).  Xactware also knowingly induced its customers to infringe the asserted claims of the '152 Patent by creating

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

and distributing instructional videos for customers that teach, demonstrate, and encourage infringing use of the accused products. *See, e.g.*, XW00049732. Xactware additionally knowingly induced its customers to infringe the asserted claims of the '152 Patent by creating and distributing training materials to customers that teach, demonstrate, and encourage infringing use of the accused products. *See, e.g.*, XW0016112. Xactware further knowingly induced its customers to infringe the asserted claims of the '840 Patent by creating and distributing advertising materials that teach, demonstrate, and encourage infringing use of the accused products. *See, e.g.*, XW00083145 - XW00083219.

E.     **Whether Each Limitation of Each Asserted Claim Is Literally Present or Present Under the Doctrine of Equivalents in the Accused Products (L. Pat. R. 3.1(e))**

The chart attached as Exhibit C shows that each limitation of each asserted claim of the '152 Patent is literally present in the accused products or is present under the Doctrine of Equivalents. Plaintiffs reserve all rights to modify and supplement Exhibit C as discovery progresses. Plaintiffs further reserve the right to supplement contentions as to the Doctrine of Equivalents if needed as discovery progresses and as the Court further construes the asserted claims.

F.     **The Priority Date To Which Each Asserted Claim Is Entitled (L. Pat. R. 3.1(f))**

Claim 8 of the '152 Patent is entitled to the benefit of priority to at least U.S. Provisional Patent Application No. 61/197,904, filed on October 31, 2008.

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

### G.   Identification of Plaintiffs' Product That Practices the Claimed Invention in Each Asserted Claim (L. Pat. R. 3.1(g))

Plaintiffs' Render House and Twister rooftop aerial measurement products practice the invention claimed in asserted claim 8 of the '152 Patent, including with respect to the generation of at least Eagle View PremiumReports, Wall Reports, Extended Coverage Reports, QuickSquares Reports, SolarReports, and ClaimsReady Reports.

### H.   Identification of Basis For Willful Infringement Allegations (L. Pat. R. 3.1 (h))

Xactware's infringement of the '152 Patent has been and continues to be willful.  As detailed in Section V.D *supra*, Xactware has had knowledge of the '152 Patent since at least as early as May 22, 2012.  Xactware has acted with knowledge of the '152 Patent and without a reasonable basis for a good-faith belief that it would not be liable for infringement of the '152 Patent.  For example, subsequent to being informed of the '152 Patent, Xactware continued to make and use the accused products within the United States in a manner that infringes the '152 Patent, as well as to induce ends users to use those products in a manner that infringes the '152 Patent.  Xactware has disregarded and continues to disregard its infringement and/or an objectively high likelihood that its actions constitute infringement of the '152 Patent.  This objectively-defined risk was known or is so obvious that it should have been known to Xactware.

## VI.   U.S. Patent No. 8,209,152 -- Infringement by Verisk

### A.   Claims Infringed By the Accused Products and Statutory Basis (L. Pat. R. 3.1(a))

Verisk has indirectly infringed and continues to indirectly infringe claim 8 of the '152 Patent under 35 U.S.C. § 271(b) by inducing direct infringement by Xactware, including

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

Xactware's making and using the rooftop aerial measurement products identified in Section VI.B *infra* within the United States.

### B.   The Accused Products (L. Pat. R. 3.1(b))

The accused products for each asserted claim of the '152 Patent are Defendants' rooftop aerial measurement products, including Xactimate and Aerial Sketch; and Xactimate, Property Insight/Roof InSight, and the "Mass Production Tool."

### C.   Chart Identifying Where Each Claim Limitation of Each Asserted Claim is Found Within Each Accused Product (L. Pat. R. 3.1(c))

Based on information presently available to Plaintiffs, attached as Exhibit C is a chart specifically identifying how the accused products meet each limitation of each asserted claim of the '152 Patent.  Plaintiffs reserve all rights to modify and supplement Exhibit C as discovery progresses.  For each dependent claim, Plaintiffs incorporate by reference their contention(s) for any claims from which it depends.  Plaintiffs provide illustrative examples identifying where each limitation is found within the accused products, and reserve the right to rely upon the same, similar or supporting information found elsewhere.

Plaintiffs further reserve the right to supplement these contentions as to the Doctrine of Equivalents if needed as discovery progresses and if the Court further construes the asserted claims.

### D.   For Indirectly Infringed Claims, Identification of Any Direct Infringement and a Description of the Acts of the Indirect Infringer That Would Contribute to or Induce That Direct Infringement (L. Pat. R. 3.1(d))

Verisk has induced and continues to induce the direct infringement of claim 8 of the '152 Patent by inducing direct infringement by Xactware, including Xactware's making and using the accused products within the United States.

**HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY**

On information and belief, Verisk has had knowledge of the '152 Patent since at least as early as December 2014 in connection with its intended acquisition of EVT.  In January 2014, Verisk signed an agreement to acquire EVT. Verisk performed due diligence related to its intended acquisition of EVT, including with respect to Eagle View's patent holdings. ██████████████ ████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████ On information and belief, Verisk also has had knowledge of the '152 Patent since at least as early as May 22, 2012, when Xactware submitted an IDS identifying the '152 Patent to the USPTO during the prosecution of Xactware's U.S. Patent Application No. 13/397,325.  EV032076-EV032078. ████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

Verisk knew or should have known that Xactware's actions infringe the claims of the '152 Patent since at least as early as Xactware's first such act of direct infringement with respect to those products after June 26, 2012. ██████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████

29

**HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY**



As such, Verisk has indirectly infringed and continues to indirectly infringe the asserted claims of the '152 Patent under 35 U.S.C. § 271(b).

### E.   Whether Each Limitation of Each Asserted Claim Is Literally Present or Present Under the Doctrine of Equivalents in the Accused Products (L. Pat. R. 3.1(e))

The chart attached as Exhibit C shows that each limitation of each asserted claim of the '152 Patent is literally present in the accused products or is present under the Doctrine of Equivalents.  Plaintiffs reserve all rights to modify and supplement Exhibit C as discovery progresses.  Plaintiffs further reserve the right to supplement contentions as to the Doctrine of Equivalents if needed as discovery progresses and as the Court further construes the asserted claims.

### F.   The Priority Date To Which Each Asserted Claim Is Entitled (L. Pat. R. 3.1(f))

Claim 8 of the '152 Patent is entitled to the benefit of priority to at least U.S. Provisional Patent Application No. 61/197,904, filed on October 31, 2008.

### G.   Identification of Plaintiffs' Product That Practices the Claimed Invention in Each Asserted Claim (L. Pat. R. 3.1(g))

Plaintiffs' Render House and Twister rooftop aerial measurement products practice the invention claimed in asserted claim 8 of the '152 Patent, including with respect to the generation of at least Eagle View PremiumReports, Wall Reports, Extended Coverage Reports, QuickSquares Reports, SolarReports, and ClaimsReady Reports.

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

### H.  Identification of Basis For Willful Infringement Allegations (L. Pat. R. 3.1 (h))

Verisk's infringement of the '152 Patent has been and continues to be willful.  As detailed in Section VI.D *supra*, Verisk has had knowledge of the '152 Patent since at least as early as May 22, 2012.  Verisk has acted with knowledge of the '152 Patent and without a reasonable basis for a good-faith belief that it would not be liable for infringement of the '152 Patent. For example, subsequent to being informed of the '152 Patent, Verisk continued to induce Xactware's making and using of the accused products in a manner that infringes the '152 Patent. Verisk has disregarded and continues to disregard its infringement and/or an objectively high likelihood that its actions constitute infringement of the '152 Patent. This objectively-defined risk was known or is so obvious that it should have been known to Verisk.

## VII.  U.S. Patent No. 8,818,770 – Infringement by Xactware

### A.  Claims Infringed By the Accused Products and Statutory Basis (L. Pat. R. 3.1(a))

Xactware has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, claim 12 of the '770 Patent under 35 U.S.C. § 271(a) by making and using the rooftop aerial measurement products identified in Section VII.B *infra* within the United States.

In addition to directly infringing the '770 Patent, Xactware has in the past and continues to indirectly infringe claim 12 of the '770 Patent under 35 U.S.C. § 271(b) by inducing direct infringement by others, such as end users of the rooftop aerial measurement products identified in Section VII.B *infra*.

31

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

In addition to directly and indirectly infringing the '770 Patent, Xactware has in the past and continues to directly infringe claim 12 of the '770 Patent under 35 U.S.C. § 271(g). On information and belief, Xactware imports into the United States, offers to sell, sells and/or uses within the United States products, including, but not limited to, roof reports, made by the rooftop aerial measurement products identified in Section I.B *infra*.   *See, e.g.*, XW00029702-XW00029705;   XW00030553-XW00030556;   XW00341848-XW00341857;   XW00661537-XW00661550;   XW00223927-XW00223931;   XW00224192-XW00224194;   XW00248624-XW00248626;   XW00250779-XW00250781;   XW00251063-XW00251075;   XW00215399-XW00215416; XW00311079-XW00311085.

### B.    The Accused Products (L. Pat. R. 3.1(b))

The accused products for each asserted claim of the '770 Patent are Defendants' rooftop aerial measurement products, including Xactimate and Aerial Sketch; and Xactimate, Property Insight/Roof InSight, and the "Mass Production Tool."

### C.    Chart Identifying Where Each Claim Limitation of Each Asserted Claim is Found Within Each Accused Product (L. Pat. R. 3.1(c))

Based on information presently available to Plaintiffs, attached as Exhibit F is a chart specifically identifying how the accused products meet each limitation of each asserted claim of the '770 Patent.  Plaintiffs reserve all rights to modify and supplement Exhibit F as discovery progresses.  For each dependent claim, Plaintiffs incorporate by reference their contention(s) for any claims from which it depends.  Plaintiffs provide illustrative examples identifying where each limitation is found within the accused products, and reserve the right to rely upon the same, similar or supporting information found elsewhere.

**HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY**

Plaintiffs further reserve the right to supplement these contentions as to the Doctrine of Equivalents if needed as discovery progresses and if the Court further construes the asserted claims.

**D.** **For Indirectly Infringed Claims, Identification of Any Direct Infringement and a Description of the Acts of the Indirect Infringer That Would Contribute to or Induce That Direct Infringement (L. Pat. R. 3.1(d))**

Xactware has induced and continues to induce the direct infringement of claim 12 of the '770 Patent by at least end users of the accused products.  Such end users' use of these products constitutes direct infringement. *See* 35 U.S.C. § 271(a); *see also* Exhibit F.

On information and belief, Xactware has had knowledge of the '770 Patent since at least as early December 2014 in connection with Verisk's intended acquisition of EVT.   Verisk performed due diligence related to its intended acquisition of EVT, including with respect to Eagle View's patent holdings.  █████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████

Xactware knew or should have known that use of the accused products by its end users infringes the asserted claims of the '770 Patent since at least as early as the first such infringing use of such products after December 2014.  Xactware knowingly induced such use of those products in a manner that infringes the '770 Patent, including through at least promotional, advertising, and instructional materials, and Xactware had the requisite intent to encourage such infringement.  *See, e.g.*, EV032113-EV032114; EV032126; EV032111-EV032112; EV032109-

33

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

EV032110; EV032104-EV032108.  As such, Xactware has indirectly infringed and continues to indirectly infringe the asserted claims of the '770 Patent under 35 U.S.C. § 271(b).

Xactware further knowingly induced its customers to infringe the asserted claims of the '770 Patent by presenting instructional web-based video chats with its customers teaching, demonstrating, and encouraging infringing use of the accused products.  *See, e.g.*, XW00045021-XW00045027 (webcast demonstrating features of Aerial Sketch to 509 individuals).  Xactware also knowingly induced its customers to infringe the asserted claims of the '770 Patent by creating and distributing instructional videos for customers that teach, demonstrate, and encourage infringing use of the accused products.  *See, e.g.*, XW00049732.  Xactware additionally knowingly induced its customers to infringe the asserted claims of the '770 Patent by creating and distributing training materials to customers that teach, demonstrate, and encourage infringing use of the accused products.  *See, e.g.*, XW0016112.  Xactware further knowingly induced its customers to infringe the asserted claims of the '770 Patent by creating and distributing advertising materials that teach, demonstrate, and encourage infringing use of the accused products.  *See, e.g.*, XW00083145 - XW00083219.

E. **Whether Each Limitation of Each Asserted Claim Is Literally Present or Present Under the Doctrine of Equivalents in the Accused Products (L. Pat. R. 3.1(e))**

The chart attached as Exhibit F shows that each limitation of each asserted claim of the '770 Patent is literally present in the accused products or is present under the Doctrine of Equivalents.  Plaintiffs reserve all rights to modify and supplement Exhibit F as discovery progresses.  Plaintiffs further reserve the right to supplement contentions as to the Doctrine of

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

Equivalents if needed as discovery progresses and as the Court further construes the asserted claims.

> **F.** **The Priority Date To Which Each Asserted Claim Is Entitled (L. Pat. R. 3.1(f))**

Claim 12 of the '770 Patent is entitled to the benefit of priority to at least U.S. Provisional Patent Application No. 61/197,904, filed on October 31, 2008.

The '770 Patent is a continuation of U.S. Patent Application No. 12/467,244 (the "'244 application") and therefore claim 12of the '770 Patent also is entitled to the benefit of priority of the '244 application, filed on May 15, 2009.

> **G.** **Identification of Plaintiffs' Product That Practices the Claimed Invention in Each Asserted Claim (L. Pat. R. 3.1(g))**

Plaintiffs' Render House and Twister rooftop aerial measurement products practice the invention claimed in asserted claim 12of the '770 Patent, including with respect to the generation of at least Eagle View PremiumReports, Wall Reports, Extended Coverage Reports, QuickSquares Reports, SolarReports, and ClaimsReady Reports.

> **H.** **Identification of Basis For Willful Infringement Allegations (L. Pat. R. 3.1(h))**

Xactware's infringement of the '770 Patent has been and continues to be willful.  As detailed in Section VII.D *supra*, Xactware has had knowledge of the '770 Patent since at least as early as December 2014.  Xactware has acted with knowledge of the '770 Patent and without a reasonable basis for a good-faith belief that it would not be liable for infringement of the '770 Patent.  For example, subsequent to being informed of the '770 Patent, Xactware continued to make and use the accused products within the United States in a manner that infringes the '770 Patent, as well as to induce ends users to use those products in a manner that infringes the '770

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

Patent.  Xactware has disregarded and continues to disregard its infringement and/or an objectively

high likelihood that its actions constitute infringement of the '770 Patent.  This objectively-defined

risk was known or is so obvious that it should have been known to Xactware.

## VIII.   U.S. Patent No. 8,818,770 – Infringement by Verisk

### A.   Claims Infringed By the Accused Products and Statutory Basis (L. Pat. R. 3.1(a))

Verisk has indirectly infringed and continues to indirectly infringe claim 12of the '770

Patent under 35 U.S.C. § 271(b) by inducing direct infringement by Xactware, including

Xactware's making and using the rooftop aerial measurement products identified in Section VIII.B

*infra* within the United States.

### B.   The Accused Products (L. Pat. R. 3.1(b))

The accused products for each asserted claim of the '770 Patent are Defendants' rooftop

aerial measurement products, including Xactimate and Aerial Sketch; and Xactimate, Property

Insight/Roof InSight, and the "Mass Production Tool."

### C.   Chart Identifying Where Each Claim Limitation of Each Asserted Claim is Found Within Each Accused Product (L. Pat. R. 3.1(c))

Based on information presently available to Plaintiffs, attached as Exhibit F is a chart

specifically identifying how the accused products meet each limitation of each asserted claim of

the '770 Patent.  Plaintiffs reserve all rights to modify and supplement Exhibit F as discovery

progresses.  For each dependent claim, Plaintiffs incorporate by reference their contention(s) for

any claims from which it depends.  Plaintiffs provide illustrative examples identifying where each

limitation is found within the accused products, and reserve the right to rely upon the same, similar

or supporting information found elsewhere.

**HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY**

Plaintiffs further reserve the right to supplement these contentions as to the Doctrine of Equivalents if needed as discovery progresses and if the Court further construes the asserted claims.

**D.**   **For Indirectly Infringed Claims, Identification of Any Direct Infringement and a Description of the Acts of the Indirect Infringer That Would Contribute to or Induce That Direct Infringement (L. Pat. R. 3.1(d))**

Verisk has induced and continues to induce the direct infringement of claim 12 of the '770 Patent by inducing direct infringement by Xactware, including Xactware's making and using the accused products within the United States.

On information and belief, Verisk has had knowledge of the '770 Patent since at least as early as December 2014 in connection with its intended acquisition of EVT. In January 2014, Verisk signed an agreement to acquire EVT. Verisk performed due diligence related to its intended acquisition of EVT, including with respect to Eagle View's patent holdings. ████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████

Verisk knew or should have known that Xactware's actions infringe the claims of the '770 Patent since at least as early as Xactware's first such act of direct infringement with respect to those products after December 2014. ████████████████████████ ██████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████████ ██████████████████████████████████████ ████████████████████████████████████████████████

37

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY



As such, Verisk has indirectly infringed and continues to indirectly infringe the asserted claims of the '770 Patent under 35 U.S.C. § 271(b).

### E.   Whether Each Limitation of Each Asserted Claim Is Literally Present or Present Under the Doctrine of Equivalents in the Accused Products (L. Pat. R. 3.1(e))

The chart attached as Exhibit F shows that each limitation of each asserted claim of the '770 Patent is literally present in the accused products or is present under the Doctrine of Equivalents.  Plaintiffs reserve all rights to modify and supplement Exhibit F as discovery progresses.  Plaintiffs further reserve the right to supplement contentions as to the Doctrine of Equivalents if needed as discovery progresses and as the Court further construes the asserted claims.

### F.   The Priority Date To Which Each Asserted Claim Is Entitled (L. Pat. R. 3.1(f))

Claim 12 of the '770 Patent is entitled to the benefit of priority to at least U.S. Provisional Patent Application No. 61/197,904, filed on October 31, 2008.

The '770 Patent is a continuation of U.S. Patent Application No. 12/467,244 (the "'244 application") and therefore claim 12 of the '770 Patent also is entitled to the benefit of priority of the '244 application, filed on May 15, 2009.

38

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

**G.   Identification of Plaintiffs' Product That Practices the Claimed Invention in Each Asserted Claim (L. Pat. R. 3.1(g))**

Plaintiffs' Render House and Twister rooftop aerial measurement products practice the invention claimed in asserted claim 12 of the '770 Patent, including with respect to the generation of at least Eagle View PremiumReports, Wall Reports, Extended Coverage Reports, QuickSquares Reports, SolarReports, and ClaimsReady Reports.

**H.   Identification of Basis For Willful Infringement Allegations (L. Pat. R. 3.1 (h))**

Verisk's infringement of the '770 Patent has been and continues to be willful.  As detailed in Section VIII.D *supra*, Verisk has had knowledge of the '770 Patent since at least as early as December 2014.  Verisk has acted with knowledge of the '770 Patent and without a reasonable basis for a good-faith belief that it would not be liable for infringement of the '770 Patent.  For example, subsequent to being informed of the '770 Patent, Verisk continued to induce Xactware's making and using of the accused products in a manner that infringes the '770 Patent.  Verisk has disregarded and continues to disregard its infringement and/or an objectively high likelihood that its actions constitute infringement of the '770 Patent.  This objectively-defined risk was known or is so obvious that it should have been known to Verisk.

**IX.   U.S. Patent No. 8,825,454 – Infringement by Xactware**

**A.   Claims Infringed By the Accused Products and Statutory Basis (L. Pat. R. 3.1(a))**

Xactware has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, claims 26 and 33 of the '454 Patent under 35 U.S.C. § 271(a) by using the rooftop aerial measurement products identified in Section IX.B *infra* within the United States.

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

In addition to directly infringing the '454 Patent, Xactware has in the past and continues to indirectly infringe claims 26 and 33 of the '454 Patent under 35 U.S.C. § 271(b) by inducing direct infringement by others, such as end users of the rooftop aerial measurement products identified in Section IX.B *infra*.

In addition to directly and indirectly infringing the '454 Patent, Xactware has in the past and continues to directly infringe claims 26 and 33 of the '454 Patent under 35 U.S.C. § 271(g). On information and belief, Xactware imports into the United States, offers to sell, sells and/or uses within the United States products, including, but not limited to, roof reports, made by the rooftop aerial measurement products identified in Section I.B *infra*.   *See, e.g.*, XW00029702-XW00029705;   XW00030553-XW00030556;   XW00341848-XW00341857;   XW00661537-XW00661550;   XW00223927-XW00223931;   XW00224192-XW00224194;   XW00248624-XW00248626;   XW00250779-XW00250781;   XW00251063-XW00251075;   XW00215399-XW00215416; XW00311079-XW00311085.

### B.    The Accused Products (L. Pat. R. 3.1(b))

The accused products for each asserted claim of the '454 Patent are Defendants' rooftop aerial measurement products, including Xactimate and Aerial Sketch; and Xactimate, Property Insight/Roof InSight, and the "Mass Production Tool."

### C.    Chart Identifying Where Each Claim Limitation of Each Asserted Claim is Found Within Each Accused Product (L. Pat. R. 3.1(c))

Based on information presently available to Plaintiffs, attached as Exhibit H is a chart specifically identifying how the accused products meet each limitation of each asserted claim of the '454 Patent.  Plaintiffs reserve all rights to modify and supplement Exhibit H as discovery progresses.  For each dependent claim, Plaintiffs incorporate by reference their contention(s) for

any claims from which it depends.  Plaintiffs provide illustrative examples identifying where each limitation is found within the accused products, and reserve the right to rely upon the same, similar or supporting information found elsewhere.

Plaintiffs further reserve the right to supplement these contentions as to the Doctrine of Equivalents if needed as discovery progresses and if the Court further construes the asserted claims.

### D. For Indirectly Infringed Claims, Identification of Any Direct Infringement and a Description of the Acts of the Indirect Infringer That Would Contribute to or Induce That Direct Infringement (L. Pat. R. 3.1(d))

Xactware has induced and continues to induce the direct infringement of claims 26 and 33 of the '454 Patent by at least end users of the accused products.  Such end users' use of these products constitutes direct infringement. *See* 35 U.S.C. § 271(a); *see also* Exhibit H.

On information and belief, Xactware has had knowledge of the '454 Patent since at least as early December 2014 in connection with Verisk's intended acquisition of EVT.  Verisk performed due diligence related to its intended acquisition of EVT, including with respect to Eagle View's patent holdings.  ██████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

Xactware knew or should have known that use of the accused products by its end users infringes the asserted claims of the '454 Patent since at least as early as the first such infringing use of such products after December 2014.  Xactware knowingly induced such use of those

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

products in a manner that infringes the '454 Patent, including through at least promotional, advertising, and instructional materials, and Xactware had the requisite intent to encourage such infringement.  *See, e.g.*, EV032113-EV032114; EV032126; EV032111-EV032112; EV032109-EV032110; EV032104-EV032108.  As such, Xactware has indirectly infringed and continues to indirectly infringe the asserted claims of the '454 Patent under 35 U.S.C. § 271(b).

Xactware further knowingly induced its customers to infringe the asserted claims of the '454 Patent by presenting instructional web-based video chats with its customers teaching, demonstrating, and encouraging infringing use of the accused products.  *See, e.g.*, XW00045021-XW00045027 (webcast demonstrating features of Aerial Sketch to 509 individuals).  Xactware also knowingly induced its customers to infringe the asserted claims of the '454 Patent by creating and distributing instructional videos for customers that teach, demonstrate, and encourage infringing use of the accused products.  *See, e.g.*, XW00049732.  Xactware additionally knowingly induced its customers to infringe the asserted claims of the '454 Patent by creating and distributing training materials to customers that teach, demonstrate, and encourage infringing use of the accused products.  *See, e.g.*, XW0016112.  Xactware further knowingly induced its customers to infringe the asserted claims of the '454 Patent by creating and distributing advertising materials that teach, demonstrate, and encourage infringing use of the accused products.  *See, e.g.*, XW00083145 - XW00083219.

### E.   Whether Each Limitation of Each Asserted Claim Is Literally Present or Present Under the Doctrine of Equivalents in the Accused Products (L. Pat. R. 3.1(e))

The chart attached as Exhibit H shows that each limitation of each asserted claim of the '454 Patent is literally present in the accused products or is present under the Doctrine of

Equivalents.  Plaintiffs reserve all rights to modify and supplement Exhibit H as discovery progresses.  Plaintiffs further reserve the right to supplement contentions as to the Doctrine of Equivalents if needed as discovery progresses and as the Court further construes the asserted claims.

**F.**      **The Priority Date To Which Each Asserted Claim Is Entitled (L. Pat. R. 3.1(f))**

Claims 26 and 33 of the '454 Patent are entitled to the benefit of priority to at least U.S. Provisional Patent Application No. 61/197,904, filed on October 31, 2008.

The '454 Patent is a continuation of U.S. Patent Application No. 12/467,250 (the "'250 application") and therefore claims 26 and 33 of the '454 Patent also are entitled to the benefit of priority of the '250 application, filed on May 15, 2009.

**G.**      **Identification of Plaintiffs' Product That Practices the Claimed Invention in Each Asserted Claim (L. Pat. R. 3.1(g))**

Plaintiffs' Render House and Twister rooftop aerial measurement products practice the invention claimed in asserted claims 26 and 33 of the '454 Patent, including with respect to the generation of at least Eagle View PremiumReports, Wall Reports, Extended Coverage Reports, QuickSquares Reports, SolarReports, and ClaimsReady Reports.

**H.**      **Identification of Basis For Willful Infringement Allegations (L. Pat. R. 3.1 (h))**

Xactware's infringement of the '454 Patent has been and continues to be willful.  As detailed in Section IX.D *supra*, Xactware has had knowledge of the '454 Patent since at least as early as December 2014.  Xactware has acted with knowledge of the '454 Patent and without a reasonable basis for a good-faith belief that it would not be liable for infringement of the '454 Patent.  For example, subsequent to being informed of the '454 Patent, Xactware continued to use

43

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

the accused products within the United States in a manner that infringes the '454 Patent, as well as to induce ends users to use those products in a manner that infringes the '454 Patent. Xactware has disregarded and continues to disregard its infringement and/or an objectively high likelihood that its actions constitute infringement of the '454 Patent. This objectively-defined risk was known or is so obvious that it should have been known to Xactware.

**X.    U.S. Patent No. 8,825,454 – Infringement by Verisk**

**A.    Claims Infringed By the Accused Products and Statutory Basis (L. Pat. R. 3.1(a))**

Verisk has indirectly infringed and continues to indirectly infringe claims 26 and 33 of the '454 Patent under 35 U.S.C. § 271(b) by inducing direct infringement by Xactware, including Xactware's using the rooftop aerial measurement products identified in Section X.B *infra* within the United States.

**B.    The Accused Products (L. Pat. R. 3.1(b))**

The accused products for each asserted claim of the '454 Patent are Defendants' rooftop aerial measurement products, including Xactimate and Aerial Sketch; and Xactimate, Property Insight/Roof InSight, and the "Mass Production Tool."

**C.    Chart Identifying Where Each Claim Limitation of Each Asserted Claim is Found Within Each Accused Product (L. Pat. R. 3.1(c))**

Based on information presently available to Plaintiffs, attached as Exhibit H is a chart specifically identifying how the accused products meet each limitation of each asserted claim of the '454 Patent. Plaintiffs reserve all rights to modify and supplement Exhibit H as discovery progresses. For each dependent claim, Plaintiffs incorporate by reference their contention(s) for any claims from which it depends. Plaintiffs provide illustrative examples identifying where each

**HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY**

limitation is found within the accused products, and reserve the right to rely upon the same, similar or supporting information found elsewhere.

Plaintiffs further reserve the right to supplement these contentions as to the Doctrine of Equivalents if needed as discovery progresses and if the Court further construes the asserted claims.

**D.** **For Indirectly Infringed Claims, Identification of Any Direct Infringement and a Description of the Acts of the Indirect Infringer That Would Contribute to or Induce That Direct Infringement (L. Pat. R. 3.1(d))**

Verisk has induced and continues to induce the direct infringement of claims 26 and 33 of the '454 Patent by inducing direct infringement by Xactware, including Xactware's using the accused products within the United States.

On information and belief, Verisk has had knowledge of the '454 Patent since at least as early as December 2014 in connection with its intended acquisition of EVT. In January 2014, Verisk signed an agreement to acquire EVT. Verisk performed due diligence related to its intended acquisition of EVT, including with respect to Eagle View's patent holdings. ████████

████████████████████████████████████████

████████████████████████████

Verisk knew or should have known that Xactware's actions infringe the claims of the '454 Patent since at least as early as Xactware's first such act of direct infringement with respect to those products after December 2014. ████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

**HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY**

 As such, Verisk has

indirectly infringed and continues to indirectly infringe the asserted claims of the '454 Patent under

35 U.S.C. § 271(b).

> **E.**    **Whether Each Limitation of Each Asserted Claim Is Literally Present or Present Under the Doctrine of Equivalents in the Accused Products (L. Pat. R. 3.1(e))**

The chart attached as Exhibit H shows that each limitation of each asserted claim of the

'454 Patent is literally present in the accused products or is present under the Doctrine of

Equivalents.  Plaintiffs reserve all rights to modify and supplement Exhibit H as discovery

progresses.  Plaintiffs further reserve the right to supplement contentions as to the Doctrine of

Equivalents if needed as discovery progresses and as the Court further construes the asserted

claims.

> **F.**    **The Priority Date To Which Each Asserted Claim Is Entitled (L. Pat. R. 3.1(f))**

Claims 26 and 33 of the '454 Patent are entitled to the benefit of priority to at least U.S.

Provisional Patent Application No. 61/197,904, filed on October 31, 2008.

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

The '454 Patent is a continuation of U.S. Patent Application No. 12/467,250 (the "'250 application") and therefore claims 26 and 33 of the '454 Patent also are entitled to the benefit of priority of the '250 application, filed on May 15, 2009.

### G.   Identification of Plaintiffs' Product That Practices the Claimed Invention in Each Asserted Claim (L. Pat. R. 3.1(g))

Plaintiffs' Render House and Twister rooftop aerial measurement products practice the invention claimed in asserted claims 26 and 33 of the '454 Patent, including with respect to the generation of at least Eagle View PremiumReports, Wall Reports, Extended Coverage Reports, QuickSquares Reports, SolarReports, and ClaimsReady Reports.

### H.   Identification of Basis For Willful Infringement Allegations (L. Pat. R. 3.1 (h))

Verisk's infringement of the '454 Patent has been and continues to be willful.  As detailed in Section X.D *supra*, Verisk has had knowledge of the '454 Patent since at least as early as December 2014.  Verisk has acted with knowledge of the '454 Patent and without a reasonable basis for a good-faith belief that it would not be liable for infringement of the '454 Patent. For example, subsequent to being informed of the '454 Patent, Verisk continued to induce Xactware's using of the accused products in a manner that infringes the '454 Patent. Verisk has disregarded and continues to disregard its infringement and/or an objectively high likelihood that its actions constitute infringement of the '454 Patent. This objectively-defined risk was known or is so obvious that it should have been known to Verisk.

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

XI.     **U.S. Patent No. 9,129,376 – Infringement by Xactware**

A.      **Claims Infringed By the Accused Products and Statutory Basis (L. Pat. R. 3.1(a))**

Xactware has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, claims 17, 19-20, and 23 of the '376 Patent under 35 U.S.C. § 271(a) by making and using the rooftop aerial measurement products identified in Section XI.B *infra* within the United States.

In addition to directly infringing the '376 Patent, Xactware has in the past and continues to indirectly infringe claims 17, 19-20, and 23 of the '376 Patent under 35 U.S.C. § 271(b) by inducing direct infringement by others, such as end users of the rooftop aerial measurement products identified in Section XI.B *infra*.

In addition to directly and indirectly infringing the '376 Patent, Xactware has in the past and continues to directly infringe claims 17, 19-20, and 23 of the '376 Patent under 35 U.S.C. § 271(g). On information and belief, Xactware imports into the United States, offers to sell, sells and/or uses within the United States products, including, but not limited to, roof reports, made by the rooftop aerial measurement products identified in Section I.B *infra*.  *See, e.g.*, XW00029702-XW00029705;   XW00030553-XW00030556;   XW00341848-XW00341857;   XW00661537-XW00661550;   XW00223927-XW00223931;   XW00224192-XW00224194;   XW00248624-XW00248626;   XW00250779-XW00250781;   XW00251063-XW00251075;   XW00215399-XW00215416; XW00311079-XW00311085.

In addition to directly and indirectly infringing the '376 Patent, Xactware has in the past and continues to directly infringe claims 20 and 23 of the '376 Patent under 35 U.S.C. § 271(f). On information and belief, Xactware supplies from the United States all or a substantial portion of

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

the components (including, but not limited to, software and computer code) of the rooftop aerial measurement products identified in Section I.B *infra* in such a manner as to actively induce the combination of such components in a manner that would infringe the '376 Patent if such combination occurred in the United States. *See, e.g.*, XW00027996-XW00028001; XW00029702-XW00029705; XW00034268-XW00034275; XW00661537-XW00661550; XW00674046-XW00674050; XW00223927-XW00223931; XW00224192-XW00224194; XW00224770-XW00224773; XW00224836-XW00224838; XW00225334-XW00225336; XW00215399-XW00215416; XW00335695-XW00335696; XW00336784-XW00336788; XW00337419-XW00337421; XW00337449-XW00337450.

In addition to directly and indirectly infringing the '376 Patent, Xactware has in the past and continues to directly infringe claims 20 and 23 of the '376 Patent under 35 U.S.C. § 271(f)(2). Upon information and belief, Xactware supplies from the United States components (including, but not limited to, software and computer code) of the rooftop aerial measurement products identified in Section I.B *infra*, which are especially adapted for use in the rooftop areal measurement products, and knowing and intending that the components will be combined outside of the United States in a manner that would infringe the '376 Patent if such combination occurred in the United States. *See, e.g.*, XW00027996-XW00028001; XW00029702-XW00029705; XW00034268-XW00034275; XW00661537-XW00661550; XW00674046-XW00674050; XW00223927-XW00223931; XW00224192-XW00224194; XW00224770-XW00224773; XW00224836-XW00224838; XW00225334-XW00225336; XW00215399-XW00215416; XW00335695-XW00335696; XW00336784-XW00336788; XW00337419-XW00337421; XW00337449-XW00337450.

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

**B.**     **The Accused Products (L. Pat. R. 3.1(b))**

The accused products for each asserted claim of the '376 Patent are Defendants' rooftop aerial measurement products, including Xactimate and Aerial Sketch; and Xactimate, Property Insight/Roof InSight, and the "Mass Production Tool."

**C.**     **Chart Identifying Where Each Claim Limitation of Each Asserted Claim is Found Within Each Accused Product (L. Pat. R. 3.1(c))**

Based on information presently available to Plaintiffs, attached as Exhibit I is a chart specifically identifying how the accused products meet each limitation of each asserted claim of the '376 Patent.  Plaintiffs reserve all rights to modify and supplement Exhibit I as discovery progresses.  For each dependent claim, Plaintiffs incorporate by reference their contention(s) for any claims from which it depends.  Plaintiffs provide illustrative examples identifying where each limitation is found within the accused products, and reserve the right to rely upon the same, similar or supporting information found elsewhere.

Plaintiffs further reserve the right to supplement these contentions as to the Doctrine of Equivalents if needed as discovery progresses and if the Court further construes the asserted claims.

**D.**     **For Indirectly Infringed Claims, Identification of Any Direct Infringement and a Description of the Acts of the Indirect Infringer That Would Contribute to or Induce That Direct Infringement (L. Pat. R. 3.1(d))**

Xactware has induced and continues to induce the direct infringement of claims 17, 19-20, and 23 of the '376 Patent by at least end users of the accused products.  Such end users' use of these products constitutes direct infringement. *See* 35 U.S.C. § 271(a); *see also* Exhibit I.

On information and belief, Xactware has had knowledge of the '376 Patent since it issued on September 8, 2015. On information and belief, Xactware has had knowledge of the application

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

that issued as the '376 Patent (U.S. Patent App. No. 14/449,045) at least as early December 2014 in connection with Verisk's intended acquisition of EVT.  Verisk performed due diligence related to its intended acquisition of EVT, including with respect to Eagle View's patent holdings.  ████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████  On

information and belief, Xactware also has had knowledge of the'376 Patent since September 23, 2015, the date Plaintiffs filed their Complaint against Xactware and Verisk in *Eagle View Technologies, Inc. et al. v. Xactware Solutions, Inc. et al.*, District of New Jersey Case No. 1:15-cv-07025-RBK-JS.

Xactware knew or should have known that use of the accused products by its end users infringes the asserted claims of the '376 Patent since at least as early as the first such infringing use of such products after September 8, 2015.  Xactware knowingly induced such use of those products in a manner that infringes the '376 Patent, including through at least promotional, advertising, and instructional materials, and Xactware had the requisite intent to encourage such infringement.  *See, e.g.*, EV032113-EV032114; EV032126; EV032111-EV032112; EV032109-EV032110; EV032104-EV032108.  As such, Xactware has indirectly infringed and continues to indirectly infringe the asserted claims of the '376 Patent under 35 U.S.C. § 271(b).

Xactware further knowingly induced its customers to infringe the asserted claims of the '376 Patent by presenting instructional web-based video chats with its customers teaching,

demonstrating, and encouraging infringing use of the accused products. *See, e.g.*, XW00045021-XW00045027 (webcast demonstrating features of Aerial Sketch to 509 individuals). Xactware also knowingly induced its customers to infringe the asserted claims of the '376 Patent by creating and distributing instructional videos for customers that teach, demonstrate, and encourage infringing use of the accused products. *See, e.g.*, XW00049732. Xactware additionally knowingly induced its customers to infringe the asserted claims of the '376 Patent by creating and distributing training materials to customers that teach, demonstrate, and encourage infringing use of the accused products. *See, e.g.*, XW0016112. Xactware further knowingly induced its customers to infringe the asserted claims of the '376 Patent by creating and distributing advertising materials that teach, demonstrate, and encourage infringing use of the accused products. *See, e.g.*, XW00083145 - XW00083219.

E.   **Whether Each Limitation of Each Asserted Claim Is Literally Present or Present Under the Doctrine of Equivalents in the Accused Products (L. Pat. R. 3.1(e))**

The chart attached as Exhibit I shows that each limitation of each asserted claim of the '376 Patent is literally present in the accused products or is present under the Doctrine of Equivalents. Plaintiffs reserve all rights to modify and supplement Exhibit I as discovery progresses. Plaintiffs further reserve the right to supplement contentions as to the Doctrine of Equivalents if needed as discovery progresses and as the Court further construes the asserted claims.

F.   **The Priority Date To Which Each Asserted Claim Is Entitled (L. Pat. R. 3.1(f))**

Claims 17, 19-20, and 23 of the '376 Patent are entitled to the benefit of priority to at least U.S. Provisional Patent Application No. 61/197,904, filed on October 31, 2008.

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

The '376 Patent is a continuation of U.S. Patent Application No. 13/438,288 (the "'288 application") and therefore claims 17, 19-20, and 23 of the '376 Patent also are entitled to the benefit of priority of the '288 application, filed on April 3, 2012.  The '288 application is a continuation of U.S. Patent Application No. 12/467,244 (the "'244 application") and therefore claims 17, 19-20, and 23 of the '376 Patent also are entitled to the benefit of priority of the '244 application, filed on May 15, 2009.

### G.   Identification of Plaintiffs' Product That Practices the Claimed Invention in Each Asserted Claim (L. Pat. R. 3.1(g))

Plaintiffs' Render House and Twister rooftop aerial measurement products practice the invention claimed in asserted claims 17, 19-20, and 23 of the '376 Patent, including with respect to the generation of at least Eagle View PremiumReports, Wall Reports, Extended Coverage Reports, QuickSquares Reports, SolarReports, and ClaimsReady Reports.

### H.   Identification of Basis For Willful Infringement Allegations (L. Pat. R. 3.1 (h))

Xactware's infringement of the '376 Patent has been and continues to be willful.  As detailed in Section XI.D *supra*, Xactware has had knowledge of the '376 Patent since it issued on September 8, 2015.  Xactware has acted with knowledge of the '376 Patent and without a reasonable basis for a good-faith belief that it would not be liable for infringement of the '376 Patent.  For example, subsequent to being informed of the '376 Patent, Xactware continued to make and use the accused products within the United States in a manner that infringes the '376 Patent, as well as to induce ends users to use those products in a manner that infringes the '376 Patent.  Xactware has disregarded and continues to disregard its infringement and/or an objectively

**HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY**

high likelihood that its actions constitute infringement of the '376 Patent. This objectively-defined risk was known or is so obvious that it should have been known to Xactware.

## XII.   U.S. Patent No. 9,129,376 – Infringement by Verisk

### A.   Claims Infringed By the Accused Products and Statutory Basis (L. Pat. R. 3.1(a))

Verisk has indirectly infringed and continues to indirectly infringe claims 17, 19-20, and 23 of the '376 Patent under 35 U.S.C. § 271(b) by inducing direct infringement by Xactware, including Xactware's making and using the rooftop aerial measurement products identified in Section XII.B *infra* within the United States.

### B.   The Accused Products (L. Pat. R. 3.1(b))

The accused products for each asserted claim of the '376 Patent are Defendants' rooftop aerial measurement products, including Xactimate and Aerial Sketch; and Xactimate, Property Insight/Roof InSight, and the "Mass Production Tool."

### C.   Chart Identifying Where Each Claim Limitation of Each Asserted Claim is Found Within Each Accused Product (L. Pat. R. 3.1(c))

Based on information presently available to Plaintiffs, attached as Exhibit I is a chart specifically identifying how the accused products meet each limitation of each asserted claim of the '376 Patent. Plaintiffs reserve all rights to modify and supplement Exhibit I as discovery progresses. For each dependent claim, Plaintiffs incorporate by reference their contention(s) for any claims from which it depends. Plaintiffs provide illustrative examples identifying where each limitation is found within the accused products, and reserve the right to rely upon the same, similar or supporting information found elsewhere. Plaintiffs further reserve the right to supplement these

**HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY**

contentions as to the Doctrine of Equivalents if needed as discovery progresses and if the Court further construes the asserted claims.

### D.     For Indirectly Infringed Claims, Identification of Any Direct Infringement and a Description of the Acts of the Indirect Infringer That Would Contribute to or Induce That Direct Infringement (L. Pat. R. 3.1(d))

Verisk has induced and continues to induce the direct infringement of claims 17, 19-20, and 23 of the '376 Patent by inducing direct infringement by Xactware, including Xactware's making and using the accused products within the United States.

On information and belief, Verisk has had knowledge of the '376 Patent since it issued on September 8, 2015. On information and belief, Verisk has had knowledge of the application that issued as the '376 Patent (U.S. Patent App. No. 14/449,045) since at least as early as December 2014 in connection with its intended acquisition of EVT. In January 2014, Verisk signed an agreement to acquire EVT. Verisk performed due diligence related to its intended acquisition of EVT, including with respect to Eagle View's patent holdings. ████████████████

████████████████████████████████████████████████████

██████████████████████████████████ On information and belief, Verisk also has had knowledge of the '376 Patent since September 23, 2015, the date Plaintiffs filed their Complaint against Xactware and Verisk in *Eagle View Technologies, Inc. et al. v. Xactware Solutions, Inc. et al.*, District of New Jersey Case No. 1:15-cv-07025-RBK-JS.

Verisk knew or should have known that Xactware's actions infringe the claims of the '376 Patent since at least as early as Xactware's first such act of direct infringement with respect to those products after September 8, 2015. ████████████████████████

████████████████████████████████████████████████████

**HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY**



As such, Verisk has indirectly infringed and continues to indirectly infringe the asserted claims of the '376 Patent under 35 U.S.C. § 271(b).

**E.      Whether Each Limitation of Each Asserted Claim Is Literally Present or Present Under the Doctrine of Equivalents in the Accused Products (L. Pat. R. 3.1(e))**

The chart attached as Exhibit I shows that each limitation of each asserted claim of the '376 Patent is literally present in the accused products or is present under the Doctrine of Equivalents. Plaintiffs reserve all rights to modify and supplement Exhibit I as discovery progresses. Plaintiffs further reserve the right to supplement contentions as to the Doctrine of Equivalents if needed as discovery progresses and as the Court further construes the asserted claims.

**F.      The Priority Date To Which Each Asserted Claim Is Entitled (L. Pat. R. 3.1(f))**

Claims 17, 19-20, and 23 of the '376 Patent are entitled to the benefit of priority to at least U.S. Provisional Patent Application No. 61/197,904, filed on October 31, 2008.

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

The '376 Patent is a continuation of U.S. Patent Application No. 13/438,288 (the "'288 application") and therefore claims 17, 19-20, and 23 of the '376 Patent also are entitled to the benefit of priority of the '288 application, filed on April 3, 2012.  The '288 application is a continuation of U.S. Patent Application No. 12/467,244 (the "'244 application") and therefore claims 17, 19-20, and 23 of the '376 Patent also are entitled to the benefit of priority of the '244 application, filed on May 15, 2009.

### G.   Identification of Plaintiffs' Product That Practices the Claimed Invention in Each Asserted Claim (L. Pat. R. 3.1(g))

Plaintiffs' Render House and Twister rooftop aerial measurement products practice the invention claimed in asserted claims 17, 19-20, and 23 of the '376 Patent, including with respect to the generation of at least Eagle View PremiumReports, Wall Reports, Extended Coverage Reports, QuickSquares Reports, SolarReports, and ClaimsReady Reports.

### H.   Identification of Basis For Willful Infringement Allegations (L. Pat. R. 3.1 (h))

Verisk's infringement of the '376 Patent has been and continues to be willful.  As detailed in Section XII.D *supra*, Verisk has had knowledge of the '376 Patent since it issued on September 8, 2015.  Verisk has acted with knowledge of the '376 Patent and without a reasonable basis for a good-faith belief that it would not be liable for infringement of the '376 Patent. For example, subsequent to being informed of the '376 Patent, Verisk continued to induce Xactware's making and using of the accused products in a manner that infringes the '376 Patent. Verisk has disregarded and continues to disregard its infringement and/or an objectively high likelihood that its actions constitute infringement of the '376 Patent. This objectively-defined risk was known or is so obvious that it should have been known to Verisk.

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

### XIII.   U.S. Patent No. 9,135,737 – Infringement by Xactware

#### A.   Claims Infringed By the Accused Products and Statutory Basis (L. Pat. R. 3.1(a))

Xactware has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, claims 8 and 25 of the '737 Patent under 35 U.S.C. § 271(a) by making and using the rooftop aerial measurement products identified in Section XIII.B *infra* within the United States.

In addition to directly infringing the '737 Patent, Xactware has in the past and continues to indirectly infringe claims 8 and 25 of the '737 Patent under 35 U.S.C. § 271(b) by inducing direct infringement by others, such as end users of the rooftop aerial measurement products identified in Section XIII.B *infra*.

In addition to directly and indirectly infringing the '737 Patent, Xactware has in the past and continues to directly infringe claims 8 and 25 of the '737 Patent under 35 U.S.C. § 271(g). On information and belief, Xactware imports into the United States, offers to sell, sells and/or uses within the United States products, including, but not limited to, roof reports, made by the rooftop aerial measurement products identified in Section I.B *infra*.   *See, e.g.*, XW00029702-XW00029705;   XW00030553-XW00030556;   XW00341848-XW00341857;   XW00661537-XW00661550;   XW00223927-XW00223931;   XW00224192-XW00224194;   XW00248624-XW00248626;   XW00250779-XW00250781;   XW00251063-XW00251075;   XW00215399-XW00215416; XW00311079-XW00311085.

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

### B.      The Accused Products (L. Pat. R. 3.1(b))

The accused products for each asserted claim of the '737 Patent are Defendants' rooftop aerial measurement products, including Xactimate and Aerial Sketch; and Xactimate, Property Insight/Roof InSight, and the "Mass Production Tool."

### C.      Chart Identifying Where Each Claim Limitation of Each Asserted Claim is Found Within Each Accused Product (L. Pat. R. 3.1(c))

Based on information presently available to Plaintiffs, attached as Exhibit J is a chart specifically identifying how the accused products meet each limitation of each asserted claim of the '737 Patent.  Plaintiffs reserve all rights to modify and supplement Exhibit J as discovery progresses.  For each dependent claim, Plaintiffs incorporate by reference their contention(s) for any claims from which it depends.  Plaintiffs provide illustrative examples identifying where each limitation is found within the accused products, and reserve the right to rely upon the same, similar or supporting information found elsewhere.

Plaintiffs further reserve the right to supplement these contentions as to the Doctrine of Equivalents if needed as discovery progresses and if the Court further construes the asserted claims.

### D.      For Indirectly Infringed Claims, Identification of Any Direct Infringement and a Description of the Acts of the Indirect Infringer That Would Contribute to or Induce That Direct Infringement (L. Pat. R. 3.1(d))

Xactware has induced and continues to induce the direct infringement of claims 8 and 25 of the '737 Patent by at least end users of the accused products.  Such end users' use of these products constitutes direct infringement. *See* 35 U.S.C. § 271(a); *see also* Exhibit J.

On information and belief, Xactware has had knowledge of the '737 Patent since it issued on September 15, 2015. On information and belief, Xactware has had knowledge of the application

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

that issued as the '737 Patent (U.S. Patent App. No. 14/450,108) at least as early December 2014 in connection with Verisk's intended acquisition of EVT. Verisk performed due diligence related to its intended acquisition of EVT, including with respect to Eagle View's patent holdings. ████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████.   On information and belief, Xactware also has had knowledge of the '737 Patent since September 23, 2015, the date Plaintiffs filed their Complaint against Xactware and Verisk in *Eagle View Technologies, Inc. et al. v. Xactware Solutions, Inc. et al.*, District of New Jersey Case No. 1:15-cv-07025-RBK-JS.

Xactware knew or should have known that use of the accused products by its end users infringes the asserted claims of the '737 Patent since at least as early as the first such infringing use of such products after September 15, 2015.  Xactware knowingly induced such use of those products in a manner that infringes the '737 Patent, including through at least promotional, advertising, and instructional materials, and Xactware had the requisite intent to encourage such infringement.  *See, e.g.*, EV032113-EV032114; EV032126; EV032111-EV032112; EV032109-EV032110; EV032104-EV032108.  As such, Xactware has indirectly infringed and continues to indirectly infringe the asserted claims of the '737 Patent under 35 U.S.C. § 271(b).

Xactware further knowingly induced its customers to infringe the asserted claims of the '737 Patent by presenting instructional web-based video chats with its customers teaching,

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

demonstrating, and encouraging infringing use of the accused products.  *See, e.g.*, XW00045021-XW00045027 (webcast demonstrating features of Aerial Sketch to 509 individuals).  Xactware also knowingly induced its customers to infringe the asserted claims of the '737 Patent by creating and distributing instructional videos for customers that teach, demonstrate, and encourage infringing use of the accused products.  *See, e.g.*, XW00049732.  Xactware additionally knowingly induced its customers to infringe the asserted claims of the '737 Patent by creating and distributing training materials to customers that teach, demonstrate, and encourage infringing use of the accused products.  *See, e.g.*, XW0016112.  Xactware further knowingly induced its customers to infringe the asserted claims of the '737 Patent by creating and distributing advertising materials that teach, demonstrate, and encourage infringing use of the accused products.  *See, e.g.*, XW00083145 - XW00083219.

> **E.**     **Whether Each Limitation of Each Asserted Claim Is Literally Present or Present Under the Doctrine of Equivalents in the Accused Products (L. Pat. R. 3.1(e))**

The chart attached as Exhibit J shows that each limitation of each asserted claim of the '737 Patent is literally present in the accused products or is present under the Doctrine of Equivalents.  Plaintiffs reserve all rights to modify and supplement Exhibit J as discovery progresses.  Plaintiffs further reserve the right to supplement contentions as to the Doctrine of Equivalents if needed as discovery progresses and as the Court further construes the asserted claims.

> **F.**     **The Priority Date To Which Each Asserted Claim Is Entitled (L. Pat. R. 3.1(f))**

Claims 8 and 25 of the '737 Patent are entitled to the benefit of priority to at least U.S. Provisional Patent Application No. 61/197,904, filed on October 31, 2008.

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

The '737 Patent is a continuation of U.S. Patent Application No. 13/474,504 (the "'504 application") and therefore claims 8 and 25 of the '737 Patent also are entitled to the benefit of priority of the '504 application, filed on May 17, 2012. The '504 application is a continuation of U.S. Patent Application No. 12/467,250 (the "'250 application") and therefore claims 8 and 25 of the '737 Patent also are entitled to the benefit of priority of the '250 application, filed on May 15, 2009.

### G.   Identification of Plaintiffs' Product That Practices the Claimed Invention in Each Asserted Claim (L. Pat. R. 3.1(g))

Plaintiffs' Render House and Twister rooftop aerial measurement products practice the invention claimed in asserted claims 8 and 25 of the '737 Patent, including with respect to the generation of at least Eagle View PremiumReports, Wall Reports, Extended Coverage Reports, QuickSquares Reports, SolarReports, and ClaimsReady Reports.

### H.   Identification of Basis For Willful Infringement Allegations (L. Pat. R. 3.1 (h))

Xactware's infringement of the '737 Patent has been and continues to be willful. As detailed in Section XIII.D *supra*, Xactware has had knowledge of the '737 Patent since it issued on September 15, 2015. Xactware has acted with knowledge of the '737 Patent and without a reasonable basis for a good-faith belief that it would not be liable for infringement of the '737 Patent. For example, subsequent to being informed of the '737 Patent, Xactware continued to make and use the accused products within the United States in a manner that infringes the '737 Patent, as well as to induce ends users to use those products in a manner that infringes the '737 Patent. Xactware has disregarded and continues to disregard its infringement and/or an objectively

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

high likelihood that its actions constitute infringement of the '737 Patent.  This objectively-defined risk was known or is so obvious that it should have been known to Xactware.

## XIV.   U.S. Patent No. 9,135,737 – Infringement by Verisk

### A.   Claims Infringed By the Accused Products and Statutory Basis (L. Pat. R. 3.1(a))

Verisk has indirectly infringed and continues to indirectly infringe claims 8 and 25 of the '737 Patent under 35 U.S.C. § 271(b) by inducing direct infringement by Xactware, including Xactware's making and using the rooftop aerial measurement products identified in Section XIV.B *infra* within the United States.

### B.   The Accused Products (L. Pat. R. 3.1(b))

The accused products for each asserted claim of the '737 Patent are Defendants' rooftop aerial measurement products, including Xactimate and Aerial Sketch; and Xactimate, Property Insight/Roof InSight, and the "Mass Production Tool."

### C.   Chart Identifying Where Each Claim Limitation of Each Asserted Claim is Found Within Each Accused Product (L. Pat. R. 3.1(c))

Based on information presently available to Plaintiffs, attached as Exhibit J is a chart specifically identifying how the accused products meet each limitation of each asserted claim of the '737 Patent.  Plaintiffs reserve all rights to modify and supplement Exhibit J as discovery progresses.  For each dependent claim, Plaintiffs incorporate by reference their contention(s) for any claims from which it depends.  Plaintiffs provide illustrative examples identifying where each limitation is found within the accused products, and reserve the right to rely upon the same, similar or supporting information found elsewhere.

**HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY**

Plaintiffs further reserve the right to supplement these contentions as to the Doctrine of Equivalents if needed as discovery progresses and if the Court further construes the asserted claims.

> **D.**    **For Indirectly Infringed Claims, Identification of Any Direct Infringement and a Description of the Acts of the Indirect Infringer That Would Contribute to or Induce That Direct Infringement (L. Pat. R. 3.1(d))**

Verisk has induced and continues to induce the direct infringement of claims 8 and 25 of the '737 Patent by inducing direct infringement by Xactware, including Xactware's making and using the accused products within the United States.

On information and belief, Verisk has had knowledge of the '737 Patent since it issued on September 15, 2015. On information and belief, Verisk has had knowledge of the application that issued as the '737 Patent (U.S. Patent App. No. 14/450,108) since at least as early as December 2014 in connection with its intended acquisition of EVT. In January 2014, Verisk signed an agreement to acquire EVT. Verisk performed due diligence related to its intended acquisition of EVT, including with respect to Eagle View's patent holdings. ███████████████████████ ████████████████████████████████████████████████████ ███████████████████████████████ On information and belief, Verisk also has had knowledge of the '737 Patent since September 23, 2015, the date Plaintiffs filed their Complaint against Xactware and Verisk in *Eagle View Technologies, Inc. et al. v. Xactware Solutions, Inc. et al.*, District of New Jersey Case No. 1:15-cv-07025-RBK-JS.

Verisk knew or should have known that Xactware's actions infringe the claims of the '737 Patent since at least as early as Xactware's first such act of direct infringement with respect to those products after September 15, 2015. ████████████████████████████████████

**HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY**



As such, Verisk has indirectly infringed and continues to indirectly infringe the asserted claims of the '737 Patent under 35 U.S.C. § 271(b).

> **E.**    **Whether Each Limitation of Each Asserted Claim Is Literally Present or Present Under the Doctrine of Equivalents in the Accused Products (L. Pat. R. 3.1(e))**

The chart attached as Exhibit J shows that each limitation of each asserted claim of the '737 Patent is literally present in the accused products or is present under the Doctrine of Equivalents.  Plaintiffs reserve all rights to modify and supplement Exhibit J as discovery progresses.  Plaintiffs further reserve the right to supplement contentions as to the Doctrine of Equivalents if needed as discovery progresses and as the Court further construes the asserted claims.

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

**F.    The Priority Date To Which Each Asserted Claim Is Entitled (L. Pat. R. 3.1(f))**

Claims 8 and 25 of the '737 Patent are entitled to the benefit of priority to at least U.S. Provisional Patent Application No. 61/197,904, filed on October 31, 2008.

The '737 Patent is a continuation of U.S. Patent Application No. 13/474,504 (the "'504 application") and therefore claims 8 and 25 of the '737 Patent also are entitled to the benefit of priority of the '504 application, filed on May 17, 2012.  The '504 application is a continuation of U.S. Patent Application No. 12/467,250 (the "'250 application") and therefore claims 8 and 25 of the '737 Patent also are entitled to the benefit of priority of the '250 application, filed on May 15, 2009.

**G.    Identification of Plaintiffs' Product That Practices the Claimed Invention in Each Asserted Claim (L. Pat. R. 3.1(g))**

Plaintiffs' Render House and Twister rooftop aerial measurement products practice the invention claimed in asserted claims 8 and 25 of the '737 Patent, including with respect to the generation of at least Eagle View PremiumReports, Wall Reports, Extended Coverage Reports, QuickSquares Reports, SolarReports, and ClaimsReady Reports.

**H.    Identification of Basis For Willful Infringement Allegations (L. Pat. R. 3.1 (h))**

Verisk's infringement of the '737 Patent has been and continues to be willful.  As detailed in Section XIV.D *supra*, Verisk has had knowledge of the '737 Patent since it issued on September 15, 2015.  Verisk has acted with knowledge of the '737 Patent and without a reasonable basis for a good-faith belief that it would not be liable for infringement of the '737 Patent.  For example, subsequent to being informed of the '737 Patent, Verisk continued to induce Xactware's making and using of the accused products in a manner that infringes the '737 Patent. Verisk has

66

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

disregarded and continues to disregard its infringement and/or an objectively high likelihood that its actions constitute infringement of the '737 Patent.  This objectively-defined risk was known or is so obvious that it should have been known to Verisk.

## XV.   DOCUMENT PRODUCTION ACCOMPANYING DISCLOSURE, LOCAL PATENT RULE 3.2

Pursuant to Local Patent Rule 3.2(g), the categories of documents identified by production range below are being produced herewith.  The documents in these categories were located and identified after a reasonable search. Plaintiffs reserve the right to supplement their production and identification of documents in these categories as discovery proceeds, including in response to changes and/or clarification in the parties' contentions, and as permitted by the Court and the Local Patent Rules.  Plaintiffs additionally reserve the right to rely upon documents and things produced by Defendants in this action.

### A.   **Local Patent Rule 3.2(a): Documents Regarding Certain Disclosures**

Plaintiffs did not locate any documents in this category after a reasonable search.

### B.   **Local Patent Rule 3.2(b): Documents Evidencing Conception and Reduction to Practice**

Plaintiffs identify at least the following non-privileged documents in this category: EV000015-EV000048;  EV000236-EV000269;  EV000451-EV000693;  EV000694-EV000806; EV000807-EV000845; EV025719-EV026407.

### C.   **Local Patent Rule 3.2(c): File Histories**

Plaintiffs identify at least the following non-privileged documents in this category: EV027139-EV031984; EV032127-EV033457.

**HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY**

### D.    Local Patent Rule 3.2(d): Documents Evidencing Patent Ownership

Plaintiffs identify at least the following non-privileged documents in this category: EV026552-EV027138.

### E.    Local Patent Rule 3.2(e): Documents regarding Plaintiffs' Instrumentalities

Plaintiffs identify at least the following non-privileged documents in this category: EV000001-EV000014;  EV000049-EV000235;  EV000270-EV000450;  EV000846-EV025718; EV026546-EV026551; EV026408- EV026545.

### F.    Local Patent Rule 3.2(f): Documents Supporting Infringement Contentions

Plaintiffs identify at least the following non-privileged documents in this category: EV031985-EV032126; EV033458-EV033462; EV01427838-EV01427930.

**HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY**

Dated:  June 6, 2017                              KIRKLAND & ELLIS LLP

                                                  */s Gianni Cutri*
                                                  Gianni Cutri  (admitted *pro hac vice*)
                                                  KIRKLAND & ELLIS LLP
                                                  300 North LaSalle
                                                  Chicago, IL 60654
                                                  (312) 862-2000

Liza M. Walsh
Hector D. Ruiz
Eleonore Ofosu-Antwi
WALSH PIZZI O'REILLY FALANGA LLP
One Riverfront Plaza
1037 Raymond Blvd., Suite 600
Newark, New Jersey 07102
(973) 757-1100

OF COUNSEL (admitted *pro hac vice*):

Adam R. Alper                          Michael W. De Vries
Brandon Brown                          KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS LLP                   333 South Hope Street
555 California Street                  Los Angeles, CA 90071
San Francisco, CA 94104                (213) 680-8400
(415) 439-1400

Gianni Cutri                           Jared Barcenas
KIRKLAND & ELLIS LLP                   KIRKLAND & ELLIS LLP
300 North LaSalle                      601 Lexington Ave.
Chicago, IL 60654                      New York, NY 10022
(312) 862-2000                         (212) 446-4800

*Attorneys for Plaintiffs*

69

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

## CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2017, I caused a copy of the foregoing to be served by electronic mail to the below counsel of record:

Scott S. Christie
Mark H. Anania
Matthew A. Sklar
Ravin R. Patel
MCCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
Tel: (973) 622-4444
Fax: (973) 624-7070
schristie@mccarter.com

Lee Carl Bromberg (admitted *pro hac vice*)
MCCARTER & ENGLISH, LLP
265 Franklin Street
Boston, MA 02110
Tel: (617) 449-6500
Fax: (617) 607-9200
lbromberg@mccarter.com

Dated:  June 6, 2017                    KIRKLAND & ELLIS LLP

*/s Gianni Cutri*
Gianni Cutri  (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000


*Attorney for Plaintiffs*

70

# Exhibit B

FILED UNDER SEAL

ATTORNEYS' EYES ONLY

Scott S. Christie
Matthew A. Sklar
Ravin R. Patel
**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
Newark, New Jersey  07102
Phone: (973) 848-5388
Fax: (973) 297-3981

Lee Carl Bromberg
Brian J. Larivee
Thomas R. Fulford
**McCARTER & ENGLISH, LLP**
265 Franklin St.
Boston, Massachusetts 02110
Phone: (617) 449-6500
Fax: (617) 607-9200
*Counsel for Defendants Xactware
Solutions, Inc. and Verisk Analytics, Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| EAGLE VIEW TECHNOLOGIES, INC. and PICTOMETRY INTERNATIONAL CORP., | Civil Action No. 15-cv-07025-RBK-JS |
| Plaintiffs, | **ATTORNEYS' EYES ONLY** |
| v. | |
| XACTWARE SOLUTIONS, INC. and VERISK ANALYTICS, INC., | |
| Defendants. | |

**XACTWARE SOLUTIONS, INC.'S SECOND SUPPLEMENTAL RESPONSES TO
EAGLE VIEW TECHNOLOGIES, INC.'S  FIRST SET OF INTERROGATORIES (NOS.
1–21)**

ATTORNEYS' EYES ONLY

Pursuant to Federal Rules of Civil Procedure 26 and 33, Defendant Xactware Solutions, Inc. ("Defendant" or "Xactware") hereby responds and objects to Eagle View Technologies, Inc.'s ("Plaintiff" or "Eagle View") First Set of Interrogatories ("Interrogatories") as follows:

## GENERAL OBJECTIONS

Defendant's  response to the Interrogatories is subject to, and incorporates, the following General Objections.   Defendant specifically incorporates these General Objections into its responses to each Interrogatory, whether or not each such General Objection is expressly referred to in Defendant's response to the Interrogatory.

1.      Defendant objects to any Interrogatory that seeks information protected from disclosure by the attorney-client privilege, the attorney work product doctrine, the joint defense or common interest privilege, or any other applicable privilege or immunity, or information that is otherwise subject to confidentiality obligations to a third party.   Any such Interrogatory has been read to exclude the discovery of such privileged information. Nothing contained in this response is intended to be, or in any way constitutes, a waiver of any such applicable privilege, doctrine, or confidentiality obligation.   The inadvertent disclosure by Defendant of information protected from disclosure by any privilege or doctrine shall not constitute a waiver by Defendant of such objections or protections.

2.      Defendant objects to any Interrogatory that is premature and/or conflicts with the schedule for disclosure or expert opinions entered by the Court or provided for by the Local Rules.

3.      Defendant objects to Plaintiff's "Definitions" and "Instructions" to the extent they purport to impose upon Defendant any duty or obligation that is inconsistent with or in excess of those obligations that are imposed by the Federal Rules of Civil Procedure, the Local Rules, or

2

any other applicable rule. In particular, Defendant objects to any Interrogatory to the extent that it calls for information that is not relevant to any party's claims or defenses and is not proportional to the needs of the case.

4.      Defendant objects to Plaintiff's definition of "Complaint," and responds with the understanding that "Complaint" identifies only the First Amended Complaint filed November 30, 2015.

5.      Defendant objects to Plaintiff's definition of "Defendant", "Xactware", "you", "your", and "yours" as overbroad, unduly burdensome, and vague to the extent it includes any entities other than Xactware Solutions, Inc.

6.      Defendant objects to Plaintiff's definition of "Accused Product(s)" to the extent it includes Xactimate® not in combination with either Roof Insight$^{TM}$, Property Insight$^{TM}$, and/or Aerial Sketch$^{TM}$, or includes any rooftop aerial measurement product not accused of infringement in Plaintiffs' First Amended Complaint or not identified in Plaintiffs' Infringement Contentions.

7.      Defendant objects to Plaintiff's definition of "Xactware Product" to the extent it includes any product not designed, developed, manufactured, marketed, offered for sale or sold by Xactware.

8.      Defendant objects to each Interrogatory to the extent that it seeks information not in Defendant's possession, custody or control.

9.      Defendant objects to each Interrogatory to the extent that it is vague, ambiguous, or confusing.

10.     Defendant objects to any Interrogatory to the extent that it requires Defendant to draw a legal conclusion in order to respond.

ATTORNEYS' EYES ONLY

11.     Defendant objects to each Interrogatory to the extent that it improperly and prematurely seeks the substance of expert reports, opinions and/or trial testimony.

12.     Defendant objects to any Interrogatory that requests information about more than one topic as a compound question.  *See* Fed. R. Civ. P. 33(a)(1).  Defendant will count each discrete subpart that does not relate to a "single topic" or "common theme" as a separate interrogatory to quantify the total number of propounded interrogatories.

13.     Defendant will make, and has made, reasonable efforts to respond to the Interrogatories, to the extent that no objection is made, as Defendant understands and interprets each Interrogatory.  If Plaintiff subsequently asserts an interpretation of any Interrogatory that differs from the interpretation of Defendant, then Defendant reserves the right to supplement and amend its objections and responses.

14.     Defendant's responses to the Interrogatories are made without waiver and with preservation of:

a.      all questions as to competency, relevance, materiality, privilege, and admissibility of the responses and the subject matter thereof for any purpose and in any further proceeding in this lawsuit (including trial) and in any other action or matter;

b.      the right to object to the use of any such responses or the subject matter thereof, on any ground in any further proceeding in this lawsuit (including trial) and in any other action or matter;

c.      the right to object on any ground at any time to a demand or request for further response; and

d.      the right at any time to review, correct, add to, supplement, or clarify any of the responses contained herein.

ATTORNEYS' EYES ONLY

15.     Defendant provides theses objections and responses pursuant to the Federal Rules of Civil Procedure as amended effective December 1, 2015.  Those amendments include, for example, revised definitions of the scope of permissible discovery and updated procedures for objecting and responding to requests for production.  *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burdens or expense of the proposed discovery outweighs its likely benefit."); Fed. R. Civ. P. 34(b)(2).  By making these objections and responses under the revised rules, Defendant expressly incorporates objections under the prior version of the Federal Rules of Civil Procedure (*e.g.*, to requests that are not reasonably calculated to lead to the discovery of admissible evidence) to the extent that the prior version of the Federal Rules of Civil Procedure still applies in this case.

16.     Neither these General Objections nor the specific responses set forth below are an admission relative to the existence of any information sought, to the relevance or admissibility of any response, or to the truth or accuracy of any statement or characterization contained in the Interrogatories.

17.     Unless otherwise indicated, Defendant will not provide any information encompassed by the foregoing objections.

18.     Defendant's investigation of the facts relevant to this action is ongoing. Accordingly, Defendant reserves the right to amend and/or supplement these responses if further information becomes available in the course of its ongoing diligent inquiries, through discovery,

ATTORNEYS' EYES ONLY

or otherwise.  These responses should not be construed as, and do not constitute, a waiver of Defendant's right to adduce additional facts at trial.

## SPECIFIC OBJECTIONS AND RESPONSES

### INTERROGATORY NO. 1:

Identify by any and all product names, product codes, internal product nomenclatures, and/or designations each version of each Accused Product, including but not limited to Xactimate®, Roof InSight$^{TM}$, Property Insight$^{TM}$, Aerial Sketch$^{TM}$, and any other Xactware rooftop aerial measurement product, made, used, offered for sale, sold, or licensed in the United States, or imported into the United States by or on behalf of Xactware since September 23, 2009.

### RESPONSE TO INTERROGATORY NO. 1:

The General Objections are incorporated herein.  Defendant further objects to this Interrogatory as overly broad and unduly burdensome, including to the extent that it seeks identification of "any and all product names, product codes, internal product nomenclatures, and/or designations" for "each version of each Accused Product," and to the extent it seeks information with respect to "any other Xactware rooftop aerial measurement product." Defendant further objects to the unjustified temporal designation.  The scope of this Interrogatory is disproportional to the needs of the case.

Subject to the foregoing objections, Defendant responds that the following list identifies representative versions of products accused of infringement in the Complaint:

- Xactimate 25.5

- Xactimate 27.3

- Xactimate 27.5 UC

- Xactimate 28.0 SU1

ATTORNEYS' EYES ONLY

- Xactimate 28.0 SU16

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1**

The General Objections are incorporated herein. The Objections stated in Xactware's original response to this interrogatory, as well as the original response itself, are incorporated herein. Xactware objects to this interrogatory as overbroad in that it seeks versions of software dating back to September 30, 2009, well before the earliest issued claim-in-suit. Xactware objects to this interrogatory as seeking information about versions of Xactimate that do not contain the accused products, Aerial Sketch, Roof Insight, and Property Insight.

Subject to the foregoing objections, Defendant responds that Aerial Sketch was first sold in February 2011, Roof Insight was first sold in April 2012, and Property Insight was first sold in January 2015.

**INTERROGATORY NO. 2:**

Identify by any and all product names, product codes, internal product nomenclatures, and/or designations each version of each Accused Product, including but not limited to Xactimate®, Roof InSight™, Property Insight™, Aerial Sketch™, and any other Xactware rooftop aerial measurement product, under development by Xactware but not yet offered for sale, that Xactware intends to make, use, sell, license, or import into the United States.

**RESPONSE TO INTERROGATORY NO. 2:**

The General Objections are incorporated herein. Defendant further objects to this Interrogatory as overly broad and unduly burdensome, including to the extent that it seeks identification of "any and all product names, product codes, internal product nomenclatures, and/or designations" for "each version of each Accused Product," and to the extent it seeks information with respect to "any other Xactware rooftop aerial measurement product."

ATTORNEYS' EYES ONLY

Defendant further objects to this Interrogatory as improperly seeking information concerning purported products "under development," which have not been identified by Plaintiff or accused of infringement, and which are therefore irrelevant to this case. Defendant further objects to this Interrogatory to the extent that it calls for information that is not relevant to any party's claims or defenses, or otherwise is disproportional to the needs of the case, including information relating to purported products that may not exist or be released for use and distribution to the public.

**INTERROGATORY NO. 3:**

Separately for each version of each Accused Product, including each Product identified in response to Interrogatory Nos. 1 and/or 2, identify all Documents showing the Accused Product's design, structure, function, operation, and development, including but not limited to user manuals, training guides and/or videos, promotional, advertising, and instructional materials, datasheets, schematics, bills of materials ("BOMs"), technical specifications, functional specifications, including but not limited to software, hardware, and system functional specifications, documents Related To product requirements, concept and design documents, Source Code and documentation related thereto, troubleshooting instructions, testing results, and analysis reports.

**RESPONSE TO INTERROGATORY NO. 3:**

The General Objections are incorporated herein. The Objections to Interrogatories Nos. 1 and 2 are incorporated herein. Defendant further objects to this Interrogatory as overly broad and unduly burdensome, including to the extent that it seeks identification of documents for "each version of each Accused Product." The scope of this Interrogatory is disproportional to the needs of the case.

Subject to the foregoing objections, Defendant responds that documents related to the

ATTORNEYS' EYES ONLY

design, structure, function, operation, and development of the Accused Products identified in response to Interrogatory Nos. 1 and/or 2 have been produced.  *See* Defendant's document production, XW00000001 – XW00022625.  Defendant further states that, to the extent additional relevant documents may exist, it will produce these documents as discovery progresses in lieu of identifying any particular documents.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3:

The General Objections are incorporated herein.  The Objections stated in Xactware's original response to this interrogatory, as well as the original response itself, are incorporated herein.

Subject to the foregoing objections, pursuant to Fed. R. Civ. P. 33(d), Defendant directs Plaintiff to the document bearing Bates number XW00387538, which lists documents containing information responsive to this interrogatory.

## INTERROGATORY NO. 4:

Separately for each version of each Accused Product, including each Product identified in response to Interrogatory Nos. 1 and/or 2, identify by name, title, and work address the Xactware Persons or Entities most knowledgeable about the research, conception, design, development, engineering, and testing of the Accused Product and describe the nature of each Person's or Entity's involvement.  Include in your response the identity of each Document that supports your answer or to which you referred in preparing your answer.

## RESPONSE TO INTERROGATORY NO. 4:

The General Objections are incorporated herein.  The Objections to Interrogatories Nos. 1 and 2 are incorporated herein.  Defendant further objects to this Interrogatory as overly broad and unduly burdensome, including to the extent that it seeks identification of information for

"each version of each Accused Product."  The scope of this Interrogatory is disproportional to the needs of the case.

Subject to the foregoing objections, Defendant responds that the following individuals are most knowledgeable about the research, conception, design, development, engineering, and testing of the Accused Products identified in response to Interrogatory Nos. 1 and/or 2:

| Name | Work Address | Nature of Involvement |
|---|---|---|
| Jeff Taylor | 1100 West Traverse Parkway Lehi, Utah | Research, conception, design, development, engineering, and testing of the Accused Products |
| Jeff Lewis | 1100 West Traverse Parkway Lehi, Utah | Research, conception, design, development, engineering, and testing of the Accused Products |

*See* Defendant's document production, XW00000001 – XW00022625.  Defendant further states it will produce further documents that support this answer as discovery progresses in lieu of identifying any particular documents.

**INTERROGATORY NO. 5:**

Separately for each version of each Accused Product, including each Product identified in response to Interrogatory Nos. 1 and/or 2, state in detail every location where research, design, development, marketing, testing or other use, servicing or other product administration or support activities occur; the nature of the work done at each location; and the number of personnel (employees, contractors, *etc.*) involved in the work at each location. Include in your response the identity of each Document that supports your answer or to which you referred in preparing your answer.

**RESPONSE TO INTERROGATORY NO. 5:**

The General Objections are incorporated herein.  The Objections to Interrogatories Nos. 1

ATTORNEYS' EYES ONLY

and 2 are incorporated herein.  Defendant further objects to this Interrogatory as overly broad and unduly burdensome, including to the extent that it seeks identification of information for "each version of each Accused Product."  Defendant further objects to this Interrogatory on the grounds that the phrases "other use" and "servicing or other product administration or support activities" are vague and ambiguous.  The scope of this Interrogatory is disproportional to the needs of the case.

Subject to the foregoing objections, Defendant responds that research, design, development, marketing, and testing is performed and coordinated at 1100 West Traverse Parkway Lehi, Utah.  *See* Defendant's document production, XW00000001 – XW00022625. Defendant further states it will produce further documents that support this answer as discovery progresses in lieu of identifying any particular documents.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5:

The General Objections are incorporated herein.  The Objections stated in Xactware's original response to this interrogatory, as well as the original response itself, are incorporated herein.

Subject to the foregoing objections, Defendant responds that research, design, development, use, and testing activities are performed at the following locations:



ATTORNEYS' EYES ONLY

██████████

**INTERROGATORY NO. 6**:

Separately for each version of each Accused Product, including each Product identified in response to Interrogatory Nos. 1 and/or 2, describe how the Product has been sold, licensed, and/or used to sell or license any type of report in the United States, identifying the revenue generated by quarter since September 23, 2009, expressed in U.S. dollars and units and identifying the persons most knowledgeable about the same. Include in your response the identity of each Document that supports your answer or to which you referred in preparing your answer.

**RESPONSE TO INTERROGATORY NO. 6:**

The General Objections are incorporated herein.  The Objections to Interrogatories Nos. 1 and 2 are incorporated herein.  Defendant further objects to this Interrogatory as overly broad and unduly burdensome, including to the extent that it seeks identification of information for "each version of each Accused Product."  Moreover, Defendant objects to this Interrogatory on the grounds that the phrase "describe how the Product has been sold, licensed, and/or used to sell or license any type of report in the United States" is vague and ambiguous.  Defendant further objects to the unjustified temporal designation.  The scope of this Interrogatory is disproportional to the needs of the case.

Subject to the foregoing objections, Defendant responds that it is producing a spreadsheet showing revenue generated from Roof Insight$^{TM}$, Property Insight$^{TM}$, and Aerial Sketch$^{TM}$ by month from June 2011 through December 2015 at Bates No. XW00022626.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 6:**

The General Objections are incorporated herein.  The Objections stated in Xactware's

original response to this interrogatory – as well as the original response itself – are incorporated herein.

Subject to the foregoing objections, Defendant directs Plaintiff to Defendant's response to Interrogatory No. 7 below.

## SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 6:

The General Objections are incorporated herein.  The Objections stated in Xactware's original response to this interrogatory, as well as the original response itself, are incorporated herein.

Subject to the foregoing objections, pursuant to Fed. R. Civ. P. 33(d), Defendant directs Plaintiff to the documents bearing Bates numbers XW00387511 – XW00387512, which contains information responsive to this interrogatory.

## INTERROGATORY NO. 7:

Separately for each version of each Accused Product, including each Product identified in response to Interrogatory Nos. 1 and/or 2, identify each and every sales office, distributor, agent, representative, customer or Entity (including any third party) that uses, makes, imports, offers for sale, sells, or licenses such Product or uses such Product to generate any type of report, and identify any Entity (including any third party) with which Xactware has entered into an agreement or contract Relating To the use, sale and/or distribution in the United States of such Product. Include in your response the identity of each Document that supports your answer or to which you referred in preparing your answer.

## RESPONSE TO INTERROGATORY NO. 7:

The General Objections are incorporated herein.  The Objections to Interrogatories Nos. 1 and 2 are incorporated herein.  Defendant further objects to this Interrogatory as overly broad

ATTORNEYS' EYES ONLY

and unduly burdensome, including to the extent that it seeks identification of information for "each version of each Accused Product." Moreover, Defendant objects to this Interrogatory as compound. In addition, Defendant objects to this Interrogatory to the extent that it calls for information that is not relevant to any party's claims or defenses, or otherwise is disproportional to the needs of the case.

Subject to the foregoing objections, Defendant responds that the following is a list of Xactware's U.S. sales representatives:



Defendant further states it will produce documents that support this answer as discovery progresses in lieu of identifying any particular documents.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 7:

The General Objections are incorporated herein. The Objections stated in Xactware's original response to this interrogatory – as well as the original response itself – are incorporated herein.

Subject to the foregoing objections, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

ATTORNEYS' EYES ONLY

██████████████████████████████████████

████████████████.

## INTERROGATORY NO. 8:

Separately for each version of each Accused Product, including each Product identified in response to Interrogatory Nos. 1 and/or 2, describe all attempts or plans to design around or otherwise avoid infringement of the Eagle View Asserted Patents. Include in your response the identity of each Document that supports your answer or to which you referred in preparing your answer.

## RESPONSE TO INTERROGATORY NO. 8:

The General Objections are incorporated herein. The Objections to Interrogatories Nos. 1 and 2 are incorporated herein. Defendant further objects to this Interrogatory as overly broad and unduly burdensome, including to the extent that it seeks identification of information for "each version of each Accused Product." Defendant further objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine and/or is otherwise privileged or protected from disclosure. Defendant further objects to this Interrogatory because it calls for a legal conclusion. Defendant further objects to the form of this Interrogatory because it improperly assumes an unwarranted conclusion of infringement. Defendant is unaware of any infringement of any valid claim of the Eagle View Asserted Patents. The scope of this Interrogatory is disproportional to the needs of the case.

Subject to the foregoing objections, Defendant responds: none.

## INTERROGATORY NO. 9:

Separately for each version of each Accused Product, including each Product identified in response to Interrogatory Nos. 1 and/or 2, describe all interactions between Xactware personnel

ATTORNEYS' EYES ONLY

(employees, contractors, *etc.*) and Verisk Analytics, Inc. ("Verisk") personnel (employees, contractors, *etc.*) related thereto, including by identifying all Xactware and Verisk personnel involved in such interactions and their respective roles and responsibilities. Include in your response the identity of each Document that supports your answer or to which you referred in preparing your answer.

**RESPONSE TO INTERROGATORY NO. 9:**

The General Objections are incorporated herein.  The Objections to Interrogatories Nos. 1 and 2 are incorporated herein.  Defendant further objects to this Interrogatory as overly broad and unduly burdensome, including to the extent that it seeks identification of information for "each version of each Accused Product" and a description of "all interactions" and "all Xactware and Verisk personnel involved in such interactions."  The scope of this Interrogatory is disproportional to the needs of the case.

 Subject to the foregoing objections, Defendant responds that to the extent any interactions took place between Xactware personnel and Verisk personnel concerning any of the Accused Products, they primarily involved James Loveland, Former President of Xactware Solutions, Inc., and Scott Stephenson, Chief Executive Officer for Verisk Analytics, Inc. Defendant further states it will produce documents that support this answer as discovery progresses in lieu of identifying any particular documents.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 9:**

The General Objections are incorporated herein.  The Objections stated in Xactware's original response to this interrogatory, as well as the original response itself, are incorporated herein.

Subject to the foregoing objections, Defendant responds that in January 2016, a group of

ATTORNEYS' EYES ONLY

individuals within Xactware, including Jeffrey Taylor and Jeffrey Lewis, who were focused on

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████   Additionally,

Defendant directs Plaintiff to the document bearing Bates number XW00389388, which lists

documents containing information responsive to this interrogatory.

**INTERROGATORY NO. 10:**

Describe all interactions between Xactware and/or Verisk personnel (employees, contractors, *etc*.) on the one hand and Eagle View and/or Pictometry personnel (employees, contractors, *etc*.) on the other hand, including by identifying all Xactware, Verisk, Eagle View, and/or Pictometry personnel involved in such interactions and their respective roles and responsibilities. Include in your response the identity of each Document that supports your answer or to which you referred in preparing your answer.

**RESPONSE TO INTERROGATORY NO. 10:**

The General Objections are incorporated herein. Defendant further objects to this Interrogatory as improperly unlimited in time and scope, and as overly broad and unduly burdensome. Moreover, Defendant objects to this Interrogatory to the extent it seeks information that is not limited to any of the Accused Products, the Asserted Claims or the Asserted Patents. In addition, Defendant objects to this Interrogatory to the extent the burden of deriving such information is substantially the same for Defendant as it is for Plaintiff. The scope of this

ATTORNEYS' EYES ONLY

Interrogatory is disproportional to the needs of the case.

**INTERROGATORY NO. 11:**

Describe all efforts by Xactware and/or Verisk to emulate, capitalize on, reverse engineer, and/or analyze any Eagle View Product or technology, Identify any and all internal competitive analyses regarding rooftop aerial measurement technology, including with respect to Eagle View and/or any other competitor, and Identify all Eagle View Source Code, Products, and/or technical documentation (including any Document that contains any of Eagle View's proprietary information, including with respect to Eagle View's operating system, software products, Source Code, or any other aspects of Eagle View's technology, including with respect to Eagle View's hardware, software, and/or any other aspects of Eagle View's proprietary technologies) and/or Communications relating to such Eagle View Source Code, Products, and/or technical documentation in your possession, custody, or control, including by identifying the circumstances by which you acquired the same and all Persons knowledgeable about the same.

**RESPONSE TO INTERROGATORY NO. 11:**

The General Objections are incorporated herein. Defendant further objects to this Interrogatory as improperly unlimited in time and scope, and as overly broad and unduly burdensome. Defendant further objects to the form of this interrogatory because it improperly assumes an unwarranted conclusion of "efforts." Defendant is unaware of any such "efforts" related to Eagle View Products or technology. Moreover, Defendant objects to this Interrogatory to the extent the phrase "capitalize on" is vague and ambiguous. In addition, Defendant objects to this Interrogatory as compound.

Subject to the foregoing objections, Defendant responds: none.

ATTORNEYS' EYES ONLY

## INTERROGATORY NO. 12:

Identify each and every current and former employee of Xactware who was employed by Eagle View, either directly or through a subcontractor, third party, or otherwise, at any time prior to such Person's employment by Xactware, either directly or through a subcontractor, third party, or otherwise, with Documents in such Person's possession, custody or control, that were generated while such Person was employed by Eagle View, either directly or through a subcontractor, third party, or otherwise, and/or where such Document contains any of Eagle View's proprietary information, including with respect to Eagle View's operating system, software products, Source Code, or any other aspects of Eagle View's technology, including with respect to Eagle View's hardware, software, and/or any other aspects of Eagle View's proprietary technologies, Eagle View's financial Documents, Eagle View's marketing or sales Documents, and/or any other Eagle View Documents related to Eagle View's business; or that brought such Documents to Xactware.

## RESPONSE TO INTERROGATORY NO. 12:

The General Objections are incorporated herein. Defendant further objects to this Interrogatory as improperly unlimited in time and scope, compound, and incomprehensible, and as overly broad and unduly burdensome, including to the extent that it seeks an identification of "each and every current and former employee of Xactware who was employed by Eagle View, either directly or through a subcontractor, third party, or otherwise." Moreover, Defendant objects to the extent the phrase "or otherwise" is vague and ambiguous. The scope of this Interrogatory is disproportional to the needs of the case.

Subject to the foregoing objections, Defendant responds: none.

## INTERROGATORY NO. 13:

ATTORNEYS' EYES ONLY

If Xactware contends that any Accused Product, including the Products identified in response to Interrogatory Nos. 1 and 2, should not be subject to an injunction in This Case, describe in detail all factual and legal bases for Xactware's contentions; identify all information that supports or rebuts Xactware's contention(s); and identify all Persons most knowledgeable of, and all Documents Relating To, Xactware's contention(s).

**RESPONSE TO INTERROGATORY NO. 13:**

The General Objections are incorporated herein.  The Objections to Interrogatories Nos. 1 and 2 are incorporated herein.  Defendant further objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome, and seeks a legal conclusion.

**INTERROGATORY NO. 14:**

State the time, date, substance and circumstances of any Communications between Xactware and any other Entity, including but not limited to Verisk and/or EagleView Technology Corporation ("EVT"), in the context of Verisk's intended acquisition of, merger with, and/or other corporate transaction involving EagleView or otherwise, Concerning Eagle View, the Eagle View Asserted Patents and any Prior Art related thereto, the Accused Products, Eagle View software products, or This Case. For each Communication, identify all Entities that participated in the Communication, either by providing or receiving information, and all related Documents, including any notes, minutes, or memoranda Concerning the Communication and Documents embodying the Communication.

**RESPONSE TO INTERROGATORY NO. 14:**

The General Objections are incorporated herein.  Defendant further objects to this Interrogatory as improperly unlimited in time and scope, and as overly broad and unduly burdensome, including to the extent that it seeks information relating to "any Communications"

as well as the "time, date, substance, and circumstances" for same.  Moreover, Defendant objects to this Interrogatory to the extent any communications involved Eagle View Technology Corporation because the burden of deriving such information is substantially the same for Plaintiff as it is for Defendant.  The scope of this Interrogatory is disproportional to the needs of the case.

Subject to the foregoing objections, Defendant responds that it will produce documents that contain information responsive to this Interrogatory as discovery progresses.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 14:**

The General Objections are incorporated herein.  The Objections stated in Xactware's original response to this interrogatory, as well as the original response itself, are incorporated herein.

Subject to the foregoing objections, pursuant to Fed. R. Civ. P. 33(d), Defendant directs Plaintiff to the document bearing Bates number XW00387513, which lists documents containing information responsive to this interrogatory.

**INTERROGATORY NO. 15:**

For each of the Eagle View Asserted Patents, state with particularity all facts Concerning how and when Xactware first learned of the patent, including the date, circumstances and who was involved or has knowledge thereof, an identification of all persons within who were informed of the patent, an identification of all actions taken by Xactware as a result of becoming aware of the Eagle View Asserted Patents, including any comparisons made to the Accused Products; an identification of all documents and evidence relating to Xactware's awareness of the Eagle View Asserted Patents, and an identification of all individuals knowledgeable about Xactware's awareness of the Eagle View Asserted Patents and the subject matter known by

them. Include in your response the identity of each Document that supports your answer or to which you referred in preparing your answer.

## RESPONSE TO INTERROGATORY NO. 15:

The General Objections are incorporated herein.  Defendant further objects to this Interrogatory as compound, overly broad, and unduly burdensome.  Moreover, Defendant objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine and/or is otherwise privileged or protected from disclosure.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 14:

The General Objections are incorporated herein.  The Objections stated in Xactware's original response to this interrogatory, as well as the original response itself, are incorporated herein.

Subject to the foregoing objections, Xactware responds that it first learned of U.S. Pat. No 8,078,436 no earlier than the date the *ex parte* Reexamination Certificate was issued, August 27, 2014.  For the other asserted patents, Xactware first learned of each patent no earlier than the date when each such patent was issued.

## INTERROGATORY NO. 16:

Identify all Persons (including both experts and non-experts) that Xactware expects will offer testimony (written or oral) on its behalf at any hearing in This Case, the subject matter upon which each Person is expected to testify, and the facts and/or opinions to which each Person is expected to testify.

## RESPONSE TO INTERROGATORY NO. 16:

ATTORNEYS' EYES ONLY

The General Objections are incorporated herein.  Defendant further objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome.  Moreover, Defendant objects to this Interrogatory as premature.

Subject to the foregoing objections, Defendant responds that it will supplement its answer to this Interrogatory at the time required under the Local Rules and in accordance with the schedule entered in this action.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 16:**

The General Objections are incorporated herein.  The Objections stated in Xactware's original response to this interrogatory, as well as the original response itself, are incorporated herein.

Subject to the foregoing objections, Defendant responds that it expects that Dr. Joseph Mundy will offer expert testimony regarding non-infringement and invalidity issues.  Defendant also expects that Dr. Geoff Cohen will offer expert testimony regarding non-infringement and invalidity issues.

**INTERROGATORY NO. 17:**

Identify each Entity or Person with knowledge of one or more of the facts set forth in Xactware's responses to any Eagle View Interrogatory, including any Entity or Person who supplied information used in preparing responses to any Eagle View Interrogatory, or any facts alleged in the Complaint, and for each Entity or Person state in general terms the knowledge Xactware believes the Entity or Person possesses.

**RESPONSE TO INTERROGATORY NO. 17:**

The General Objections are incorporated herein.  Defendant further objects to this Interrogatory on the grounds that it is compound, overly broad, and unduly burdensome.

ATTORNEYS' EYES ONLY

Subject to the foregoing objections, Defendant responds that the following individuals provided information in support of Defendant's responses to Plaintiff's Interrogatories:

| | Subject Matter of Knowledge |
|---|---|
| | Development, creation, marketing and sales of the Accused Products |
| | Development, creation, marketing and sales of the Accused Products |
| | Knowledge of the Accused Products; correspondence between and among the parties |
| | Sales of the Accused Products |
| | Revenue and profit from sales of the Accused Products |

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 17:

The General Objections are incorporated herein.  The Objections stated in Xactware's original response to this interrogatory, as well as the original response itself, are incorporated herein.

Subject to the foregoing objections, Defendant responds that the following individual provided information in support of Defendant's responses to Plaintiff's Interrogatories:

| | Subject Matter of Knowledge |
|---|---|
| | Revenue and profit from sales of the Accused Products |

## INTERROGATORY NO. 18:

Identify each Person from whom Documents were collected or reviewed for possible production in response to any Eagle View Request for Production to Xactware, and for each Document produced by Xactware in this action, identify the Entity or Person that was in possession, custody or control of such Document at the time of review or collection.

## RESPONSE TO INTERROGATORY NO. 18:

ATTORNEYS' EYES ONLY

The General Objections are incorporated herein.  Defendant further objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome.  Moreover, Defendant objects to this Interrogatory to the extent that it seeks information protected by the work product doctrine.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 18:

The General Objections are incorporated herein.  The Objections stated in Xactware's original response to this interrogatory, as well as the original response itself, are incorporated herein.

Subject to the foregoing objections, Defendant responds that documents and e-mails were collected from ███████████████████████████████████████████

███████████████████████████████████████████████

## INTERROGATORY NO. 19:

Assuming infringement by Xactware of the Eagle View Asserted Patents, state the amount of money that Xactware contends is owed to Eagle View and identify the complete factual and legal bases for that contention, including, without limitation: (i) an identification of each damages theory that you contend should be used in the damages calculation (*e.g.*, reasonable royalty, lost profits, *etc.*); (ii) the specific inputs that you contend should be used under each such theory in the damages calculation (*e.g.*, the royalty rate on net sales); (iii) the date(s) on which you contend damages should begin (and the bases supporting such dates); (iv) the amount of damages attributable to any portion of the Accused Products; and (v) an identification of all documents and things on which such calculation is based. If Xactware contends that Eagle View is not entitled to lost profits, then your answer should include, without limitation, the factual basis for any applicable *Panduit* factors; otherwise, your response should

ATTORNEYS' EYES ONLY

disclose the amount and basis for a claim of lost profits. Your answer should also include all factual bases for any contentions concerning the *Georgia Pacific* factors or other factors relevant to the determination of damages. If you contend that the entire market value of the Accused Products is not the proper damages base, your answer should identify what Xactware contends the proper damages base should be and identify all support for any contention that the basis of consumer demand for the Accused Products does not correspond to one or more elements of the asserted claims of the Eagle View Asserted Patents.

**RESPONSE TO INTERROGATORY NO. 19:**

The General Objections are incorporated herein. Defendant further objects to this Interrogatory on the grounds that it is compound, vague, ambiguous, overly broad, and unduly burdensome. Moreover, Defendant objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine and/or is otherwise privileged or protected from disclosure. Defendant further objects to this Interrogatory because it calls for a legal conclusion. Defendant also objects to this Interrogatory as premature to the extent that this Interrogatory calls for expert opinion and testimony and expert reports are not yet required to be produced. Defendant further objects to this Interrogatory to the extent it is based on the faulty premise that Xactware has infringed a valid claim of any of the Eagle View Asserted Patents.

Subject to the foregoing objections, Defendant will supplement its answer to this Interrogatory at the time required under the Local Rules and in accordance with the schedule entered in this action.

**INTERROGATORY NO. 20:**

ATTORNEYS' EYES ONLY

Describe the identity, content, interpretation, and circumstances surrounding the formation of all patent or technology license agreements executed since January 1, 2000 that: (a) you produced or will produce, identified or will identify in this case, (b) relate to aerial roof estimation systems and/or methods or any other technology related to the Asserted Patents or Accused Products, or (c) that you contend are comparable to a license that you would have taken in a hypothetical negotiation in This Case. For each such license, your answer should include at least the following: (i) names of all parties; (ii) the royalty rate; (iii) the royalty base; (iv) the term; (v) the technology at issue; (vi) the patent numbers for each patent covered by the license; (vii) the total amount of money paid under the license; (viii) whether the license was paid as a lump-sum or as a running royalty; (ix) whether it was assumed that the patents were infringed and valid; and (x) whether there were cross-licenses for any patents and, if so, how each cross-license impacted items (ii), (iii), (vii). Your description must also include all grounds for any contention that the license is comparable to what the parties would have agreed to in the hypothetical negotiation in this case.

**RESPONSE TO INTERROGATORY NO. 20:**

The General Objections are incorporated herein.  Defendant further objects to this Interrogatory on the grounds that it is compound, vague, ambiguous, overly broad, and unduly burdensome.  Moreover, Defendant objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine and/or is otherwise privileged or protected from disclosure.  Defendant further objects to this Interrogatory because it calls for a legal conclusion.  Defendant also objects to this Interrogatory as premature to the extent that this Interrogatory calls for expert opinion and testimony and expert reports are not yet required to be produced.  Defendant further objects to this Interrogatory to the extent it is

ATTORNEYS' EYES ONLY

based on the faulty premise that Xactware has infringed a valid claim of any of the Eagle View Asserted Patents.  Defendant further objects to the unjustified temporal designation.

Subject to the foregoing objections, Defendant responds: none.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 20:**

The General Objections are incorporated herein.  The Objections stated in Xactware's original response to this interrogatory – as well as the original response itself –  are incorporated herein.

Subject to the foregoing objections, Defendant responds that it is not aware of any ███████ ████████████████████████████████████████████████████████████████████ ███████████████████████

**INTERROGATORY NO. 21:**

If Xactware contends that one or more claims of any of the Eagle View Asserted Patents are invalid under 35 U.S.C. § 101, describe in detail all factual and legal bases for Xactware's contention(s); identify all information that supports or rebuts Xactware's contention(s); and identify all Persons most knowledgeable of, and all Documents Relating To, Xactware's contention(s).

**RESPONSE TO INTERROGATORY NO. 21:**

The General Objections are incorporated herein.  Defendant further objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome and seeks a legal conclusion.

Subject to the foregoing objections, Defendant refers Plaintiff to Defendants Xactware Solutions, Inc. and Verisk Analytics, Inc.'s Motion to Dismiss Plaintiffs' Complaint Under 35 U.S.C. § 101 filed on February 9, 2015 [Dkt. No. 50].

ATTORNEYS' EYES ONLY

## <u>SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 21:</u>

The General Objections are incorporated herein.  The Objections stated in Xactware's original response to this interrogatory – as well as the original response itself – are incorporated herein.

Subject to the foregoing objections, Defendant also refers Plaintiffs to its reply papers in support of its Motion to Dismiss Plaintiffs' Complaint Under 35 U.S.C. § 101.

Dated: May 9, 2017

s/Scott S. Christie
Scott S. Christie
Matthew A. Sklar
Ravin R. Patel
**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
Newark, New Jersey  07102
Phone: (973) 848-5388
Fax: (973) 297-3981

Lee Carl Bromberg
Brian J. Larivee
Thomas R. Fulford
**McCARTER & ENGLISH, LLP**
265 Franklin St.
Boston, Massachusetts 02110
Phone: (617) 449-6500
Fax: (617) 607-9200

*Counsel for Defendants Xactware*
*Solutions, Inc. and Verisk Analytics, Inc.*

ATTORNEYS' EYES ONLY

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 9, 2017, I caused a copy of XACTWARE SOLUTIONS, INC. RESPONSES TO EAGLE VIEW TECHNOLOGIES, INC.'S FIRST SET OF INTERROGATORIES (NOS. 1–21) to be served via email on counsel for Plaintiffs.

*/s/Thomas R. Fulford*
Thomas R. Fulford

# Exhibit E

## FILED UNDER SEAL

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

**EXHIBIT C**
**PLAINTIFFS' CONTENTIONS PURSUANT TO L. PAT. R. 3.1(c)**
*Eagle View Technologies, Inc.*, *et al. v. Xactware Solutions, Inc.*, *et al.*, Civ. A. No. 1:15-cv-07025 (D.N.J.)

<u>U.S. Patent 8,209,152</u>

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| **Claim 1:** A computer-implemented method for generating a roof estimate report, the method comprising: | To the extent that the preamble is found to be limiting, the accused products[4] provide "[a] computer-implemented method for generating a roof estimate report," including, for example, as shown in EV032052.  *See also* EV032111- EV032112 (http://www.xactware.com/en-us/solutions/claims-estimating/Xactimate®/28/single-platform/); EV032126 and EV032113-EV032114 (https://www.youtube.com/watch?v=XrgZr6Vq4jo).<br><br>According to Defendants, Defendants' Xactimate® is a "software platform for estimating property claims."  D.I. 132-1 ("Lewis Decl.") ¶ 3.  "Xactimate® can be used with a wide variety of different software systems, components, and/or modules depending on the user's needs."  Lewis Decl. ¶ 4. |

---

[1]   Unless otherwise indicated, all screenshots in this claim chart pertain to version 28 (including SU1 and SU16) of Xactimate®, and the version of Aerial Sketch™ operable therewith, and/or the Property InSight™ Mass Production Tool. Plaintiffs have only received a subset of all versions of Xactimate® and/or Aerial Sketch™ and expressly reserve the right to update these contentions as they receive further discovery.

[2]   Unless otherwise indicated, Plaintiffs' contentions pursuant to Local Patent Rule 3.1(c) are directed to each of the desktop, online, and mobile versions of Xactimate®.  EV032111- EV032112 (http://www.xactware.com/en-us/solutions/claims-estimating/Xactimate®/28/single-platform/).

[3]   All references listed are exemplary and non-exclusive.  Plaintiffs reserve all rights to modify and supplement Exhibit C as discovery progresses. Plaintiffs further reserve the right to supplement these contentions as to the Doctrine of Equivalents if needed as discovery progresses and if the Court construes the asserted claims.

[4]   As defined in Section V.B and VI.B of Plaintiffs' Second Amended Disclosure Of Asserted Claims and Infringement Contentions Pursuant To L. Pat. R. 3.1.

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | For example, "Aerial Sketch™ is Xactware software that can be used by end users in conjunction with Xactimate® to analyze the dimensions of roofs from aerial images." Lewis Decl. ¶ 10.  The Xactimate® platform can generate roof estimate reports from the roof model generated through the Aerial Sketch™ software.  *See generally* XW00029402 (generating roof estimate reports at step-4 "Complete").  In addition, "[t]he Property InSight™ system is used with Xactimate® to facilitate repair estimates and creation of reports describing various aspects of buildings and properties" and Roof InSight™ "is used with Xactimate® to facilitate repair estimates and creation of reports only for the roofs of buildings."  Lewis Decl. ¶ 6.  ▮▮▮ ¶ 7.  ▮▮▮ Lewis Decl. ¶ 8.  ▮▮▮ Lewis Decl. ¶ 11.  <br><br>**1) XACTIMATE® IN COMBINATION WITH AERIAL SKETCH**<br><br>Xactimate® in combination with Aerial Sketch™ is a software program used to create roof estimate reports as demonstrated by technical documentation produced by Defendants that purports to describe Xactimate® 28.0:<br><br>The below exemplary evidence shows that Xactimate® in combination with Aerial Sketch™ is a computer-implemented application that requires at a minimum various computer components including computer processors, memory, hard drives, and an operating system, as demonstrated by Defendants' exemplary documentation: |

**HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY**

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| |  XW00100705 (annotated); *see also* XW00100703 -706. |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | Xactimate Online Requirements-(Subject to Change)<br><br>Local Machines (Workstations and Laptops):<br><br>Operating Systems:<br>• Windows XP<br>• Windows Vista 32-bit<br>• Windows Vista 64-bit (Business or Ultimate)<br>• Windows 7 32-bit<br>• Windows 7 64-bit<br>Processor:<br>• Minimum: A single core processor of 1.5 GHz of faster<br>• Recommended: A dual or quad core processor<br>Video Card:<br>• Minimum: OpenGL 2.0 compatible graphics with 128 MB of VRAM and latest drivers<br>• Recommended: OpenGL 2.0 compatible graphics with 512 MB of VRAM and latest drivers<br>Memory:<br>• Minimum: 1 GB of RAM<br>• Recommended: 2-4 GB of RAM (or more)<br>Resolution:<br>• Minimum: 1024 x 768<br>• Recommended: 1280 x 900<br>Internet:<br>• Broadband internet connection is required<br>Browsers:<br>• Internet Explorer 8.0 or above<br>• JavaScript and Cookies enabled<br>Silverlight:<br>• Latest version of Silverlight at time of release – currently version 5.0 or above<br><br>XW00100706 (annotated); *see also* XW00100703 -706.<br><br>"Aerial Sketch™ is Xactware software that can be used by end users in conjunction with Xactimate® to analyze the dimensions of roofs from aerial images." *See* Lewis Decl. ¶ 10. |

**HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY**

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| |  http://www.verisk.com/archived/2011/xactware-releases-aerial-sketch-for-Xactimate®.html. Aerial Sketch™ is a roof estimating solution within the Xactimate® platform that can generate roof estimate reports, as demonstrated by Defendants' exemplary documentation:  XW00019220.  XW00019238. Xactimate® in conjunction with Aerial Sketch™ allows generating and viewing roof estimate reports based on a sketched three-dimensional model of the roof, as demonstrated by Defendants' exemplary documentation: |

5

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | XW00064999; *see also* XW00098832 ("▮▮▮▮▮▮).<br><br>**2) THE PROPERTY INSIGHT MASS PRODUCTION TOOL, IN COMBINATION WITH PROPERTY INSIGHT, ROOF INSIGHT, AND XACTIMATE** |

**HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY**

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
|  | The Property InSight™ Mass Production Tool is a software program used to generate and modify roof models for use in generating Roof InSight™ and Property InSight™ reports that are delivered through Xactimate®.  Property InSight™ Mass Production Tool practices this element as demonstrated by technical documentation produced by Defendants that purports to describe Property InSight™ Mass Production Tool:<br><br>The below exemplary evidence shows that the Property InSight™ Mass Production Tool is a computer-implemented suite of automated applications and services that allow the production of ▮▮▮▮▮ for Property InSight™.<br><br>▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮<br><br>XW00224419; *see also e.g.*, XW00216843.<br><br>According to Defendants, an operator of the Property InSight™ Mass Production Tool submits a ▮▮▮▮▮▮e" for quality assurance and acceptance, as demonstrated by Defendants' exemplary documentation.<br><br>▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮<br><br>XW00059958. |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | XW00059958.<br><br>The operator submits the model of the roof after the model is generated and modified as needed, as demonstrated by Defendants' exemplary documentation.<br><br>XW00124978.<br><br>XW00224419; *see also e.g.*, XW00216843.<br><br>"Property InSight™ system is used with Xactimate® to facilitate repair estimates and creation of reports describing various aspects of building s and properties."  *See* Lewis Decl. ¶ 6. |

**HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY**

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | The Property InSight™ Mass Production Tool is computer-implemented software as evidenced by the fact that it requires a Windows Operating System, CPU (*i.e.*, computer processor), RAM (*i.e.*, computer memory), and an Internet connection, as demonstrated by Defendants' exemplary documentation:<br><br>**1  System requirements**<br><br>• **Operating System:** Property InSight Mass Production Tool will run on Windows XP, Vista, Windows 7 and Windows 8.<br><br>• **Internet Connection:** Users will require a fast internet connection, please discuss the details of the connection with your Property InSight contact.<br><br>• **CPU:** Intel users will need, minimally, a 2.0 GHz Core2Duo, while our AMD users will need at least an Athlon 64 X2 Dual-Core 4000+.<br><br>• **RAM:** At least 2GB of RAM.<br><br>XW00216843. |
| displaying a first and a second aerial image of a building having a roof, each of the aerial images providing a different view of the roof of the building; | The accused products perform the step of "displaying a first and a second aerial image of a building having a roof, each of the aerial images providing a different view of the roof of the building."<br><br>**1) XACTIMATE® IN COMBINATION WITH AERIAL SKETCH**<br><br>Xactimate® in combination with Aerial Sketch™ is a software program that displays multiple aerial images of a building having a roof, each providing a different view of the roof of the building. |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | The below screenshot of an operational version of Xactimate® in combination with Aerial Sketch™ depicts ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ |

**HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY**

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | EV032043. |

**HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY**

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | Xactimate® in combination with Aerial Sketch™ discloses this element as demonstrated by technical documentation produced by Defendants that purports to describe Xactimate® 28.0:<br><br>The Aerial Sketch™ v.2 documentation demonstrates that ███████████████████████ ██████████████████████████████████ ██████████████████████████████████ ████████████████████████████████ XW00124216.<br><br>Aerial Sketch™ ████████████████████ as demonstrated by Defendants' exemplary documentation:<br><br>███████████████████████████████ ███████████████████████████████ ███████████████████████████████ ███████████████████████████████ XW00124216.<br><br>Aerial Sketch™ uses ████████████████████ ███████████████████████████████ ███████████████████████████████ ███████████████████████████████ |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | XW00043866.<br><br>An operator may ███████████████████████████████████<br>█████████████████████████████████ :<br>████████████████████████<br><br>███████████████████████████████████████<br><br>███████████████████████████████████████<br><br>███████████████████████████████████████<br><br>███████████████████████████████████████<br><br>XW00043866.<br><br>Defendants capture aerial imagery of roofs fro██████████████████<br>██████████████████████  *See* XW00049553 (email re Updated aerial |

**HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY**

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | imagery capture specs v2.0); XW00049554 (Xactware Aerial Imagery Capture Specs v2.0 describing aerial imagery capture requirements, including "███████████████████████████ ███████████████████). <br><br> ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ <br> XW00049570 (Xactware RFP to Aerodata re Oblique Aerial Imagery Capture of Urban Areas). <br><br> Defendants documentation further describes the need to have multiple aerial images taken from different angles: <br><br> ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ <br> XW00124216. <br><br> An operator may select from different images of the roof taken from different angles, as demonstrated by Defendants' exemplary documentation: |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| |  XW00020307.<br><br>An operator may select from different images providing different views from different angles of the same roof, as demonstrated by Defendants' exemplary documentation: |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | <br>XW00020307.<br><br>Additionally, Xactimate® in combination with Aerial Sketch™ discloses this element as demonstrated by exemplary excerpts of source code for Xactimate® 28.0:<br><br> |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | **2) THE PROPERTY INSIGHT MASS PRODUCTION TOOL, IN COMBINATION WITH PROPERTY INSIGHT, ROOF INSIGHT, AND XACTIMATE** |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | The Property InSight™ Mass Production Tool is a software program that displays multiple aerial images of a building having a roof, each providing a different view of the roof of the building.  The Property InSight™ Mass Production Tool ███████████████████████████████████████████████████████████████████████████████████<br><br>The below screenshot of an operational version of the Property InSight™ Mass Production Tool depicts ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████<br>EV01427908. |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | The below screenshot includes ████████████████████ ████████████████████████████████████████<br><br>EV01427908.<br><br>The Property InSight™ Mass Production Tool discloses this element as demonstrated by technical documentation produced by Defendants that purports to describe Property InSight™ Mass Production Tool: |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | The Property InSight™ Mass Production Tool User Guide demonstrates that the Property InSight™ Mass Production Tool software ██████████████████████████ ████████████████████████████████████, as demonstrated by Defendants' exemplary documentation: ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ XW00124978. The Property InSight™ Mass Production Tool provides ███████ ███████████████████████████████████████████ |

**HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY**

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | XW00224419; *see also* XW00224422 (" "). Defendants' documentation for the Property InSight™ Mass Production Tool, for example, describe the need for multiple aerial images, including vertical (i.e., top down view) and oblique (i.e., oblique perspective view) aerial images: XW00059958. |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | Roof InSight™ starts with "high-quality, high-resolution aerial data that includes aerial imagery." EV031995 (http://www.xactware.com/en-us/solutions/roof-data/roof-insight/faqs/).<br><br>Defendants capture aerial imagery of roofs from ███████████████████. *See* XW00049553 (email re Updated aerial imagery capture specs v2.0); XW00049554 (Xactware Aerial Imagery Capture Specs v2.0 describing aerial imagery capture requirements, including "███████████████).<br><br>████████████████████████<br>████████████████████████<br>████████████████████████<br>████████████████████████<br>████████████████████████<br>XW00049570 (Xactware RFP to Aerodata re Oblique Aerial Imagery Capture of Urban Areas).<br><br>Defendants documentation further describes the need to have multiple aerial images taken from different angles:<br><br>████████████████████████<br>████████████████████████ |

22

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | XW00216811.<br><br>Additionally, Xactimate® in combination with Roof InSight™, Property InSight™, and the Property InSight™ Mass Production Tool discloses this element as demonstrated by exemplary excerpts of source code for the Property InSight™ Mass Production Tool: |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
|  | ███████████████████████████████████████████████████████████████████████████████████████ |
| receiving an indication of a feature of the building shown in the first aerial image; | The accused products perform the step of "receiving an indication of a feature of the building shown in the first aerial image." <br><br> **1) XACTIMATE® IN COMBINATION WITH AERIAL SKETCH** <br><br> Xactimate® in combination with Aerial Sketch™ is a software program that receives an indication of a feature of the building shown in the first aerial image from an operator.  The operator ████████████████████████████████████████████████████████████████████████ <br><br> The below screenshot of an operational version of Xactimate® in combination with Aerial Sketch™ depicts ██████████████████████████ |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | EV032047.<br><br>The screenshot below is after |

**HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY**

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | ███████████████████████████████████████████████████████████████████████ EV032049.<br><br>Additionally, Xactimate® in combination with Aerial Sketch™ discloses this element as demonstrated by technical documentation produced by Defendants that purports to describe Xactimate® 28.0:<br><br>The Aerial Sketch™ v.2 documentation demonstrates that the Aerial Sketch™ software ████████████████████████████████████████ |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | XW00043866.<br><br>Aerial Sketch™ also allows |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | XW00043866.<br><br>Defendants' internal workflow documentation describes ███████████████<br>████████ ████████████████████████<br>████████████████████████████<br>████████████████████████████<br>████████████████████████████<br>████████████████████████████<br>████████████████████████████<br>████████████████████████████<br>████████████████████████████<br>XW00064999; *see also* XW00124216.<br><br>Xactimate® in combination with Aerial Sketch™ receives an indication of a feature of the roof, for example, by using the ████████████████████████<br>████████████████████████████<br>██████ █ |

**HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY**

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ XW00375594 at 2:05 (██████████████████████████████████████████). |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
|  | XW00375594 at 2:48 ( ). |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | ██████████████████████████████████<br>██████████████████████████████████<br>██████████████████████████████████<br>██████████████████████████████████<br>██████████████████████████████████<br>██████████████████████████████████<br>██████████████████████████████████<br>██████████████████████████████████<br>XW00375594 at 3:17 (█████████████<br>██████████).<br><br>An operator may also ██████████████<br>██████████████████████████████████<br>██████████████████████████████████ |

**HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY**

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | ██████████████████████████████<br>██████████████████████████████<br>██████████████████████████████<br>██████████████████████████████<br>XW00124216.<br><br>████████████████████████████ as<br>demonstrated by Defendants' exemplary documentation: |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | XW00049843.<br><br>Based on the displayed █████████████████████████, as demonstrated by Defendants' exemplary documentation: |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | <br><br>XW00049843.<br><br>Additionally, Xactimate® in combination with Aerial Sketch discloses this element as demonstrated by exemplary excerpts of source code for Xactimate® 28.0: |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████<br><br>**2) THE PROPERTY INSIGHT MASS PRODUCTION TOOL, IN COMBINATION WITH PROPERTY INSIGHT, ROOF INSIGHT, AND XACTIMATE**<br><br>The Property InSight™ Mass Production Tool is a software program that receives an indication of a feature of a building in a first aerial image.  The Property InSight™ Mass Production Tool includes tools that ███████████████████████████████████████ |

**HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY**

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮<br><br>The below screenshot of an operational version of the Property InSight™ Mass Production Tool depicts ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮<br>EV01427909. |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | The below screenshot of an operational version of the Property InSight™ Mass Production Tool depicts<br><br>EV01427910.<br><br>Additionally, Xactimate® in combination with Roof InSight™, Property InSight™, and the Property InSight™ Mass Production Tool discloses this element as demonstrated by technical documentation produced by Defendants that purports to describe Property InSight™ Mass Production Tool: |

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | ███████████████████████████████████████████████<br>███████████████████████████████████████████████<br>███████████████████████████████████████████████<br>███████████████████████████████████████████████<br>███████████████████████████████████████████████<br>XW00124978.<br><br>██████████████████████████████████████████████, as demonstrated by Defendants' exemplary documentation:<br>██████████████████████████████████████████<br>██████████████████████████████████████████<br>██████████████████████████████████████████<br>██████████████████████████████████████████<br>██████████████████████████████████████████<br>██████████████████████████████████████████<br>██████████████████████████████████████████<br>██████████████████████████████████████████<br>XW00124978. |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | XW00374870-872 (████████████████████████████████).<br><br>The Property InSight™ Mass Production Tool receives an indication of the pitch of the planar roof sections based on ███████████████████████████████, as demonstrated by Defendants' exemplary documentation:<br><br>XW00124978. |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | <br><br><br><br><br><br><br><br><br>XW00124978.<br><br>The Property InSight™ Mass Production Tool receives an indication of the pitch of the planar roof sections based on the ███████████████████████████, as demonstrated by Defendants' exemplary documentation: |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | XW00124978.<br><br>Defendants' instructional videos and internal demonstrations of the Property InSight™ Mass Production Tool show the operator ███████████████ |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | XW00252498 at 3:45 (                                        ); *see also* XW00252499 (                                                         ). |

**HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY**

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
|  | The line drawings and polygons ███████████████████████████ as demonstrated by Defendants' exemplary documentation: ███████████████████████████████████████████████████████████ XW00124978; *see also id.* (███████████████████████████████ ). ███████████████████████████████████████████████████████████ XW00124978. |

**HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY**

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | XW00124978. |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | XW00124978.<br><br>Additionally, Xactimate® in combination with Roof InSight™, Property InSight™, and Property InSight™ Mass Production Tool discloses this element as demonstrated by exemplary excerpts of source code for the Property InSight™ Mass Production Tool: |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | ████████████████████████████████████████████████████████████ |
| modifying a three-dimensional model of the roof based on the received indication of the feature of the building; and | The accused products perform the step of "modifying a three-dimensional model of the roof based on the received indication of the feature of the building." <br><br> **1) XACTIMATE® IN COMBINATION WITH AERIAL SKETCH** <br><br> Xactimate® in combination with Aerial Sketch™ is a software program that modifies a three-dimensional model of the roof based on the received indication of the feature of the building from the previous claim limitation.  The operator ████████████████████████████████████████████████████████████ <br><br> The below screenshots of an operational version of Xactimate® in combination with Aerial Sketch™ depict ████████████████████ |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
|  | EV032047. |

**HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY**

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | EV032049.<br><br>The below two screenshots of an operational version of Xactimate® in combination with Aerial Sketch™ depict |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | EV032065. |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | EV032067.<br><br>Additionally, Xactimate® in combination with Aerial Sketch™ discloses this element as demonstrated by technical documentation produced by Defendants that purports to describe Xactimate® 28.0: |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | XW00049807 ( |

**HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY**

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
|  | XW00048907 (█████████████████████████); XW00124216.<br><br>The Aerial Sketch™ v.2 documentation demonstrates that ██████████████████████ ████████████████████ ████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ XW00043866 (annotated); *see also* XW00049807 (████████████████████). |

**HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY**

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
|  |  |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | XW00043866 (annotated); XW00049807 (████████████████████████ ████████████████████████████).<br><br>Xactimate® in combination with Aerial Sketch™ modifies the three-dimensional model by ██████████████████████████ ██████████, as demonstrated by Defendants' exemplary documentation:<br><br>XW00043866. |

**HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY**

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
|  | Defendants' instructional Aerial Sketch™ videos demonstrate ████████████████████████ ████████████████████████████; XW00049735 (same). <br><br> Defendants' internal workflow documentation describes ████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████ XW00064999; *see also* XW00124216. ████████████████████████████████ |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | XW00064999. <br><br> Defendants' workflow documentation also describes ██████████ <br> ████████████████████████ <br><br> XW00064999; *see also* XW00124216. <br><br> Defendants' workflow documentation describes ████████████ |

**HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY**

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | ███████████████████████████████ ███████████████████████████████ ███████████████████████████████ ███████████████████████████████ ███████████████████████████████ ███████████████████████████████ ███████████████████████████████ XW00124216. <br><br> An operator may ██████████████████████ ████████████████████████████████ ████████ as demonstrated by Defendants' exemplary documentation: ████████████████████████████████ ████████████████████████████████ |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | XW00124216.<br><br>An operator may make changes by ██████████████<br>████████████████<br>██████████████ as demonstrated by Defendants' exemplary documentation:<br><br>████████████████<br>████████████████<br>████████████████<br>████████████████<br>████████████████<br>████████████████<br>XW00124216 (noting "██████████<br>████████").<br><br>Defendants highlight one feature of Aerial Sketch™ is its ability to work with Xactimate® Desktop and Xactimate® Online, and to display three-dimensional sketches of the roof: |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| |  XW00098832.<br><br>Xactimate® in combination with Aerial Sketch™ receives an indication of a feature of the roof, for example, by ████████████████████ |

**HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY**

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | XW00375594 at 2:05 (███████████████████████████████████). |

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | XW00375594 at 2:48 ( ). |

**HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY**

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | XW00375594 at 3:17 ( ). Additionally, Xactimate® in combination with Aerial Sketch discloses this element as demonstrated by exemplary excerpts of source code for Xactimate® 28.0: |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | **2) THE PROPERTY INSIGHT MASS PRODUCTION TOOL, IN COMBINATION WITH PROPERTY INSIGHT, ROOF INSIGHT, AND XACTIMATE**<br><br>The Property InSight™ Mass Production Tool is a software program that modifies a three-dimensional model of the roof based on the received indication of the feature of the building from the previous claim limitation.  The Property InSight™ Mass Production Tool includes ███ |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | ███████████████████████████████████████<br><br>The below screenshot of an operational version of the Property InSight™ Mass Production Tool depicts ███████████████████████████████████████<br>███████████████████████████████████████<br><br>EV01427912. |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | The below screenshot of an operational version of the Property InSight™ Mass Production Tool depicts ▇▇▇▇<br><br>▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇<br><br>EV01427914.<br><br>Additionally, Xactimate® in combination with Roof InSight™, Property InSight™, and the Property InSight™ Mass Production Tool discloses this element as demonstrated by technical |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | documentation produced by Defendants that purports to describe Property InSight™ Mass Production Tool:<br><br>The Property InSight™ Mass Production Tool User Guide demonstrates that the Property InSight™ Mass Production software constructs and modifies a three-dimensional model of the roof and allows an operator to display a graphical representation of the three-dimensional model.<br><br>XW00124978. |

**HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY**

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | Defendants' documentation also describes ████████████████████████████████████████████████████████████████ XW00327153<br><br>Defendants' documentation further describes ████████████████████████████████████████" XW00327153.<br><br>████████████████████████████████████████████████████████████████████████████████████████████████████████<br>XW00374870-872. |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | XW00374870-872 (█████████████████████████████████████████████████).  XW00374870-872 (█████████████████████████████████████████████████). |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | Defendants have used the Mass Production Tool to modify a three-dimensional model of a roof, for example by ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ XW00036780-784 (████████████████████████████████████). |

**HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY**

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | XW00036780-784 (█████████████████████████████████████████████████████████████).<br><br>The Property InSight™ Mass Production Tool includes multiple viewing options, including ████████████████████████ as demonstrated by Defendants' exemplary documentation: |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | <br><br><br><br><br><br>XW00124978.<br><br>Additionally, Xactimate® in combination with Roof InSight™, Property InSight™, and the Property InSight™ Mass Production Tool discloses this element as demonstrated by excerpts of source code related to the Property InSight™ Mass Production Tool:<br><br><br><br><br> |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | ██████████████████████████████████████████████████████████████████████████████████████████ |
| displaying a projection of the feature from the modified three-dimensional model onto the first and second aerial images as a line drawing of the feature, each overlaid on corresponding locations of the feature on the first and second aerial images. | The accused products perform the step of "displaying a projection of the feature from the modified three-dimensional model onto the first and second aerial images as a line drawing of the feature, each overlaid on corresponding locations of the feature on the first and second aerial images." Per Plaintiffs' proposed construction of this claim term, the accused products "display a projection of the feature from the modified three-dimensional model onto the first and second aerial images as a line drawing of the feature, each overlaid on corresponding locations of the feature on the first and second aerial images." |

### 1) XACTIMATE® IN COMBINATION WITH AERIAL SKETCH

Xactimate® in combination with Aerial Sketch™ is a software program that displays a projection of the feature from the modified three-dimensional model onto multiple aerial images as a line drawing of the feature where each line drawing is overlaid on corresponding locations of the feature. After the three-dimensional model is modified, as described in the previous limitation, an operator is able to select different aerial images and Xactimate® in combination with Aerial Sketch™ displays a projection of the modified three-dimensional model, including the indicated feature, onto the other aerial image. ████████████████████████████████████████ ████████████████████████.

The below two screenshots of an operational version of Xactimate® in combination with Aerial Sketch™ depict ████████████████████████████████████████████████████████

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | <br>EV032048 (annotated West view of the roof). |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | EV032050 (annotated North view of the roof).<br><br>The below two screenshots of an operational version of Xactimate® in combination with Aerial Sketch™ depict t |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| |  EV032049 (annotated West view of roof). |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
|  | <br><br>EV032051 (annotated North view of roof).<br><br>Additionally, Xactimate® in combination with Aerial Sketch™ discloses this element as demonstrated by technical documentation produced by Defendants that purports to describe Xactimate® 28.0:<br><br>When an operator selects a different oblique perspective aerial image, Xactimate® in combination with Aerial Sketch™ display ██████████ as demonstrated by Defendants' exemplary documentation: |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | XW00043866.<br><br>The operator aligns the line drawing to the roof of the aerial image by ▮▮▮▮, as demonstrated by Defendants' exemplary documentation: |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | ██████████████████████████████████████████████████<br><br>XW00043866.<br><br>Defendants' instructional Aerial Sketch™ videos demonstrate ████████████████████████████<br>████████████████████████████); XW00049735 (same).<br><br>Xactimate® in combination with Aerial Sketch™ receives an indication of a feature of the roof, for example, by █████████████████████████████████████████████████<br>████████████████████████████████ |

**HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY**

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | XW00375594 at 2:05 (███████████████████████████████████████████. |

**HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY**

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | XW00375594 at 2:48 (            ). |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | XW00375594 at 3:17 ( ).<br><br>Additionally, Xactimate® in combination with Aerial Sketch discloses this element as demonstrated by exemplary excerpts of source code for Xactimate® 28.0: |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | **2) THE PROPERTY INSIGHT MASS PRODUCTION TOOL, IN COMBINATION WITH PROPERTY INSIGHT, ROOF INSIGHT, AND XACTIMATE**<br><br>The Property InSight™ Mass Production Tool is a software program that displays a projection of the feature from the modified three-dimensional model onto multiple aerial images as a line drawing of the feature where each line drawing is overlaid on corresponding locations of the feature.   The Property InSight™ Mass Production Tool displays aerial images side-by-side.  After the three-dimensional model is modified based on a received indication of a feature in one of the aerial images, that modification is reflected in the line drawing displayed in both aerial images.<br><br>The below screenshot of an operational version of the Property InSight™ Mass Production Tool depicts |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | EV01427912.<br><br>The below screenshot of an operational version of the Property InSight™ Mass Production Tool.<br>Each aerial image |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | <br><br>EV01427914.<br><br>Additionally, Xactimate® in combination with Roof InSight™, Property InSight™, and the Property InSight™ Mass Production Tool discloses this element as demonstrated by technical documentation produced by Defendants that purports to describe Property InSight™ Mass Production Tool:<br><br>The Property InSight™ Mass Production Tool generates and modifies a three-dimensional model of the roof.  The below screenshots from an exemplary video demonstrate  |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | XW00374870-872 ( ). |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ XW00374870-872 (████████████████████████████ █████ ).<br><br>The Property InSight™ Mass Production Tool includes ██████████████████ █████████████████████████████████ |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | XW00124978.<br><br>Additionally, Xactimate® in combination with Roof InSight™, Property InSight™, and the Property InSight™ Mass Production Tool discloses this element as demonstrated by exemplary excerpts of source code related to the Property InSight™ Mass Production Tool: |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | <br><br><br><br> |
| **Claim 8:** The method of claim 1 wherein the first image provides a first perspective view of the roof of the building and the second image provides a second perspective view of the roof of the building. | Claim 8 depends from claim 1. Each limitation of claim 1 is met by the accused products for the same reasons described above. *See* analysis for Claim 1.<br><br>Additionally, the accused products perform the step of "[t]he method of claim 1 wherein the first image provides a first perspective view of the roof of the building and the second image provides a second perspective view of the roof of the building."<br><br>### 1) XACTIMATE® IN COMBINATION WITH AERIAL SKETCH<br><br>Xactimate® in combination with Aerial Sketch™ is a software program that displays multiple aerial images of a building having a roof, with different perspective views of the roof of the building. Aerial Sketch™<br><br>The below screenshot of an operational version of Xactimate® in combination with Aerial Sketch™ depicts |

93

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | EV032043. |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | Xactimate® in combination with Aerial Sketch™ discloses this element as demonstrated by technical documentation produced by Defendants that purports to describe Xactimate® 28.0:<br><br>The Aerial Sketch™ v.2 documentation demonstrates ████████████████████████<br><br>XW00043866.<br><br>Aerial Sketch™ ███████████████████████████████████████<br><br>XW00043866.<br><br>Aerial Sketch™ ███████████████████████ |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | XW00043866.<br><br>An operator may ███████████████████████████████<br><br>██████ as demonstrated by Defendants' exemplary documentation:<br><br>████████████████████████████████████████████<br><br>XW00043866.<br><br>When an operator ████████████████████████████████ |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
|  | XW00049843; *see also* XW00049903 (same). |
|  | XW00049843; *see also* XW00049903 (same). |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | Additionally, Xactimate® in combination with Aerial Sketch™ discloses this element as demonstrated by exemplary excerpts of source code for Xactimate® 28.0: |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | ██████████████████████<br>████████████<br><br>██████████████████████████████████████<br>████████████████████████████████████████<br>████████████████████████████████████████████<br>████████████████████████████████████████████<br>████████████████████████████████████████████████<br>████████████████████████████████████████<br><br>**2) THE PROPERTY INSIGHT MASS PRODUCTION TOOL, IN COMBINATION WITH PROPERTY INSIGHT, ROOF INSIGHT, AND XACTIMATE**<br><br>The Property InSight™ Mass Production Tool is a software program that displays multiple aerial images of a building having a roof, each providing a different perspective view of the roof of the building.  The Property InSight™ Mass Production Tool ████████████████████████████████████████████████████████████████████████████████.<br><br>The below screenshot of an operational version of the Property InSight™ Mass Production Tool depicts ████████████████████████████████████████████. |

**HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY**

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | EV01427908.<br><br>The below screenshot includes ■ |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | EV01427908. (annotated) <br><br> The Property InSight™ Mass Production Tool discloses this element as demonstrated by technical documentation produced by Defendants that purports to describe Property InSight™ Mass Production Tool: <br><br> The Property InSight™ Mass Production Tool User Guide demonstrates that the Property InSight™ Mass Production Tool software displays |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | XW00124978.<br><br>The Property InSight™ Mass Production Tool provides<br><br>XW00224419. |

HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY

| Claim Terms in U.S. Patent 8,209,152 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
|  | Additionally, Xactimate® in combination with Roof InSight™, Property InSight™, and the Property InSight™ Mass Production Tool discloses this element as demonstrated by exemplary excerpts of source code related to the Property InSight™ Mass Production Tool: |

# Exhibit H

## FILED UNDER SEAL

# EXHIBIT 1
## <u>HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY</u>

**XACTWARE SOLUTIONS, INC. ET AL. THIRD AMENDED NON-INFRINGEMENT POSITIONS REGARDING U.S. 8,078,436 FOR XACTWARE IN COMBINATION WITH ROOF INSIGHT AND/OR PROPERTY INSIGHT AND/OR MASS PRODUCTION TOOL**

Plaintiffs contend that Xactimate in combination with Property Insight/Roof InSight, and the "Mass Production Tool" literally infringe claims 1, 2, 5, 8, 18, 21, 36, and 37. Until their recent Second Amended Infringement Contentions,[1] Plaintiffs provided no contentions with respect to the Doctrine of Equivalents with respect to any specific limitation of any asserted claim of any asserted patent. Plaintiffs' contentions with respect to the Doctrine of Equivalents are therefore untimely and not diligently pursued. Defendants reserve the right to strike these new theories or, in the alternative, reopen claim construction proceedings to account for Plaintiffs' new and shifting positions.

For several claim elements, Plaintiffs offer new and shifting positions not previously disclosed in Plaintiffs' deficient contentions or Plaintiffs' briefing to the Court. These theories were not diligently pursued and Defendants reserve the right to strike these newly disclosed theories and/or reopen claim construction proceedings to account for newly disclosed theories. Plaintiffs' November 2016 contentions for the '436 Patent did not contain a single citation to any Xactware produced document or source code. Plaintiffs' Second Amended Contentions for the '436 Patent, in contrast, contain citations to at least 704 pages of Xactware documents produced in this case and 280 pages of source code, the vast majority of which were in Plaintiffs' possession at the time of their last amendment. Taken together, these facts suggest Plaintiffs' goal was to conceal their actual infringement theories and evidence for as long as possible in order to sandbag Defendants late in the case, after claim construction proceedings, with new evidence, new legal theories, and new substantive theories.

Plaintiffs bear the burden of proof on infringement on all elements, including by producing evidence it intends to rely on to prove its infringement allegations. Defendants do not have any obligation to address any or all citations or arguments or evidence proffered by Plaintiffs. Defendants noninfringement positions are exemplary. To the extent that Defendants offer a noninfringement position or rebuttal to a specific piece of source code, that position or rebuttal also applies to corresponding non-source code evidence. Likewise, to the extent that Defendants offer a noninfringement position to a specific piece of evidence, that position or rebuttal also applies to source code evidence.

| Claim 1 | Xactware and Verisk Non-Infringement Position |
|---|---|
| 1. *[1.P]* A computing system for generating a roof estimate report, the computing system | **[1.P]**<br><br>For the reasons stated herein, neither Roof Insight™ nor |

---

[1] Defendants object to, and reserve the right to move to strike, Plaintiffs' Second Amended Infringement Contentions as containing entirely new infringement theories outside the scope of the Court's order and/or in violation of the Local Patent Rules' requirements regarding the Doctrine of Equivalents. Defendants do not infringe any claim, either literally or under the doctrine of equivalents.

comprising:

*[1.1]* a memory;

*[1.2]* a roof estimation module that is stored on the memory and that is configured, when executed, to:

*[1.3]* receive a first and a second aerial image of a building having a roof, each of the aerial images providing a different view of the roof of the building, wherein the first aerial image provides a top plan view of the roof and the second aerial image provides an oblique perspective view of the roof, and are not a stereoscopic pair;

*[1.4]* correlate the first aerial image with the second aerial image;

*[1.5]* generate, based at least in part on the correlation between the first and second aerial images, a three-dimensional model of the roof that includes a plurality of planar roof sections that each have a corresponding slope, area, and edges; and

*[1.6]* generate and transmit a roof estimate report that includes one or more top plan views of the three-dimensional model annotated with numerical values that indicate the corresponding slope, area, and length of edges of at least some of the plurality of planar roof sections using at least two different indicia for different

Property Insight™ in combination with Xactimate® is a computing system for generating a roof estimate report, as described in the '436 Patent.

In addition, Defendants' computing system for generating a roof estimate report, if any, is neither made nor used, entirely or primarily, as claimed within the United States, nor is it offered for sale in the United States.

For example, 

*See also* Section II of Defendants' Non-Infringement Contentions and Responses Pursuant to L. Pat. R. 3.2A

## [1.1]

Neither Roof Insight™ nor Property Insight™ in combination with Xactimate® includes "a memory" as claimed in the '436 Patent. For example, Plaintiffs do not identify any memory made, supplied, used, or imported by Defendants, and instead merely point to requirements documents that show that Xactimate and the Property Insight Mass Production *require* memory, not that those accused products, or any of the accused products, *are* memory. Further, Plaintiffs have offered no indirect infringement theories as to this element.

Furthermore, neither Roof Insight™ nor Property Insight™ in combination with Xactimate® includes "a memory" under Plaintiffs' belatedly disclosed Doctrine of Equivalents theories. A distributed computing system is not equivalent to "a memory," as claimed by the '436 Patent. One of skill in the art would not view a distributed computer system (on which the accused products function) as performing substantially the same function as "a memory on a single hardware box" or working in substantially the same manner as "a memory on a single hardware box" or achieving the same result as "a memory on a single hardware box." Ex. A at 10-11. Further, distributed computer systems are not "insubstantially different from a memory on a single hardware box." Distributed

2

HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY

| | |
|---|---|
| types of roof properties. | computer system require, at a minimum, significantly different and additional hardware, software, networking equipment, network protocols, and the like and thus does not work in substantially the same way as a memory, as claimed in the '436 Patent. These differences constitute a substantial difference. |
| | To the extent Plaintiffs are allowed to proceed with their untimely Doctrine of Equivalents "memory" element theories, Defendants reserve the right to move to reopen claim construction proceedings. |
| | **[1.2]** |
| | Neither Roof Insight™ nor Property Insight™ in combination with Xactimate® includes a roof estimation module that is stored on the memory. |
| | For example, the accused products execute in a distributed computing system and there is no single "roof estimation module that is stored on the memory." Plaintiffs cannot meet their burden of proof with their contention for this "module" element and, in any event, Defendants do not infringe this element. For example, Plaintiffs do not adequately identify the metes and bounds of what is accused as the so-called "module." |
| | Plaintiffs' contentions as to "roof estimation module that is stored on the memory" are unavailing. As Plaintiffs' contentions concede, Property InSight™ Mass Production Tool itself consists of a "suite of automated applications and services," 2d A. Contentions, Ex. A at 14. Property InSight™ Mass Production Tool, by Plaintiffs' admission, consists of multiple applications and services (executing on different computing systems), and it is just one of several accused software products accused by Plaintiffs for this claim. |
| | Defendants' Accused System does not meet the "roof estimation module that is stored on the memory" limitation under Plaintiffs' belatedly disclosed Doctrine of Equivalents theory. One of skill in the art would not understand a distributed computing system to be the "roof estimation module that is stored on the memory" as claimed in the '436 Patent. One of skill in the art would not view a distributed computer system which executes a "suite of automated applications and services," 2d A. Contentions, Ex. A at 14, as performing substantially the same function as a roof estimation |

3

 HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY

module stored on the memory or working in substantially the same manner as a roof estimation module stored on the memory or achieving the same result as a roof estimation module stored on the memory. Multiple applications running on logically and physically different computers is not "insubstantially different [from a roof estimation module [stored on the memory]' on a single hardware box and software process." 2d A. Contentions at 18. A distributed computer system consisting of multiple modules, multiple programs, multiple applications, and multiple services requires, at a minimum, different and additional hardware, software, networking equipment, network protocols, and the like and thus does not work in substantially the same way as a roof estimation module stored on the memory.

Furthermore, Plaintiffs have not met their burden to show that the functional components they identify comprise a roof estimation module. A person of ordinary skill in the art would understand a module to be more than an arbitrary grouping of components by function because a module describes the organization of functions and data into a coherent unit that is loosely coupled with other components of the larger environment in which it executes. Modular design is well-known in computer science to be the exact opposite of monolithic design, where the various parts of the program are strongly coupled such that a change in one area of the program often affects other areas. Plaintiffs have made no effort to demonstrate a modular design in the accused products, instead boldly stating that a monolithic design, the opposite of a modular design, would perform the same function in the same manner and achieve the same result as a modular design. In reality, the way the result is achieved is starkly different in the two designs; Plaintiffs' statement that, "[i]t is not a technological change," misses the mark entirely. While both implementations utilize the technology of computers, Plaintiffs seek to improperly erase the word "modular" from the claim language with their argument. Plaintiffs are not entitled to an overly broad claim scope that encompasses implementations beyond "modular" merely because those other implementations also involve computers.

To the extent Plaintiffs are allowed to proceed with their untimely Doctrine of Equivalents "module" element theories, Defendants reserve the right to move to reopen claim construction proceedings.

   HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY

**[1.4]**

Neither Roof Insight™ nor Property Insight™ in combination with Xactimate® correlates a first aerial image with a second aerial image. There is no correlation between a first and second aerial image, as that term is claimed in the '436 Patent. Plaintiffs have only contended infringement under their proposed construction of the term, 2d A. Contentions. Ex. A at 26-27. Therefore, Plaintiffs have waived any claim of infringement if the Court adopts either the plain meaning construction or Defendants' construction. Should Plaintiffs be permitted to amend their infringement theories at some later date to offer infringement theories under either "plain meaning" or Defendants' proposed construction, Defendants reserve their right to respond to those undisclosed theories and/or amend or supplement their noninfringement contentions.

Plaintiffs offer a new substantive theory entitled "**Correlation from Ground Points**" that was not timely disclosed. To the extent Plaintiffs are permitted to proceed with this untimely theory, Defendants do not practice the limitation "correlate the first aerial image with the second aerial image" under Plaintiffs' Correlation from Ground Points theory. By way of non-limiting example, under the evidence proffered by Plaintiffs, the Accused Products do not set a ground point based on "correlat[ing] the first aerial image with the second aerial image." The evidence relied on by Plaintiffs teaches that "at least 3 images – 2 vertical and 1 oblique" must be used to set a ground point. Ex. A at 31. Therefore, "[c]orrelat[ing] the first aerial image with the second aerial image" would not function in the Accused Products. Even if it did, such a relationship does not meet the "correlate the first aerial image with the second aerial image" limitation because any relationship established in between the first and second aerial image is not used to generate a three-dimensional model.

In addition, the belatedly disclosed source code evidence cited by Plaintiffs further confirms that Plaintiffs' "Correlation from Ground Points" allegation does not meet the "correlate the first aerial image with the second aerial image" claim limitation. Plaintiffs accuse the ███████████

ME1 25306392v.2  HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY

█████████████████████████████████████████

█████████████████████████████████████████

████████

Plaintiffs have not offered any infringement theories for constructions other than their own proposed construction. However, and for example, the accused "ground points" process does not, for each reference point on an object, register a pair of points that includes a first point identified in the first aerial image and a second point identified in the second aerial image. The accused process does not register pairs of points. The accused ground points process does not register pairs of points for generating a model. Defendants reserve the right to supplement these noninfringement contentions should Plaintiffs later be permitted to present infringement theories for other constructions.

To the extent Plaintiffs are allowed to proceed with their untimely "correlation from ground points" theory, Defendants reserve the right to move to reopen claim construction proceedings.

Plaintiffs next offer a "**Correlation from Drawing Roof Features**" theory. See Ex. A, 34-44. Defendants do not infringe this element under Plaintiffs' theory. For example, Plaintiffs accuse the ████████ of infringing this element. Ex. A at 35-37. The █████████████████████████████████████████
█████████████████████████████████████████
█████████████████████████████████████████
█████████████████████████████████████████
█████████████████████████████████████████
████████████████████████████████████.
Moreover, in supplemental examination of the '436 Patent, the patentee expressly distinguished the prior art's use of primitives as not practicing the correlate limitation in order to distinguish the '436 Patent. '436 Patent, Corrected Suppl. Exam. Request at 39.

Under Plaintiff's "**Correlation from Drawing Roof Features**" theory, Plaintiffs further allege that "[b]y selecting the vertices on one aerial image and moving a line drawing with respect to a second aerial image such that the vertices in each aerial image on the buildings correspond." Ex. A at 37; *see also id.* at 37-41. Plaintiffs' cited evidence does not support their

ME1 25306392v.2                                    HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY

conclusion that movement of nodes, such as vertices, constitutes correlating the first aerial image with the second aerial image. 

Plaintiffs have not offered any infringement theories for constructions other than their own proposed construction. However, and for example, the accused "drawing roof features" process does not, for each reference point on an object, register a pair of points that includes a first point identified in the first aerial image and a second point identified in the second aerial image.  The accused process does not register pairs of points.  The processes and code identified by Plaintiffs instead relates to projecting a model that has already been generated into a different image.  Defendants reserve the right to supplement these noninfringement contentions should Plaintiffs later be permitted to present infringement theories for other constructions.

Defendants do not infringe this element under Plaintiffs' "**Correlation from Aerotriangulation**" Theory.  Ex. A at 44-47.  The "Correlation from Aerotriangulation" theory was not timely disclosed.  To the extent Plaintiffs are permitted to proceed with this untimely theory, Defendants do not practice the limitation "correlate the first aerial image with the second aerial image" under Plaintiffs' Correlation from Aerotriangulation theory.  For example, aerotriangulation does not correlate features in order to generate a three-dimensional model.  Aerotriangulation is not related to model generation, but rather is associated with                        See XW 124978, XW 00125070 (                        ").

Plaintiffs have not offered any infringement theories for

HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY

constructions other than their own proposed construction. However, and for example, the accused aerotriangulation process does not, for each reference point on an object, register a pair of points that includes a first point identified in the first aerial image and a second point identified in the second aerial image. The accused aerotriangulation process does not register pairs of points for generating a model. Defendants reserve the right to supplement these noninfringement contentions should Plaintiffs later be permitted to present infringement theories for other constructions.

To the extent Plaintiffs are allowed to proceed with their untimely "correlation from aerotriangulation" theory, Defendants reserve the right to move to reopen claim construction proceedings.

[**1.5**]

Neither Roof Insight™ nor Property Insight™ in combination with Xactimate® generates, based at least in part on the correlation between the first and second aerial images, a three-dimensional model of a roof that includes a plurality of planar roof sections that each have a corresponding slope, area, and edges. Plaintiffs explicitly identify three theories for correlation but do not explicitly identify the output or result of their three correlation theories, or how those outputs are used as an input to generate a three-dimensional model, based, at least in part, on the preceding correlation.[2]

As a general matter, Plaintiffs do not identify any source code that they contend is responsible for generating, based at least in part on the correlation between the first and second aerial images, a three-dimensional model of the roof that includes a plurality of planar roof sections that each have a corresponding slope, area, and edges. Instead, Plaintiffs repeat their allegations for the correlation limitation and offer conclusory allegations that a three-dimensional model is somehow generated based on these correlations. For example, Plaintiffs vaguely allege that the "Mass Production Tool generates a

---

[2]     As explained above, Plaintiffs have belatedly offered new Doctrine of Equivalents theories and new substantive theories based on, for example, Correlation From Ground Points and Correlation From Aerotriangulation. Defendants have objected to those new theories and that is a running objection. Therefore, to the extent Plaintiffs' later infringement contentions, such as "generate, based at least in part on the correlation…," are derivative of these late disclosed theories, Defendants reserve the right to move to strike arguments derivative of these limitations or move to reopen claim construction in light of these untimely new theories.

three-dimensional model of the roof based at least in part of the correlation, as demonstrated by the rendering of the three-dimensional model," without offering any allegations of which of Plaintiffs' three separate "correlation" theories they are referring to or how that "correlation" is used to generate a three-dimensional model. Ex. A at 56; *id.* at 67 ("Based at least in part on the correlation of the two aerial images, as described with respect to the previous claim limitation, the Property Insight Mass Production Tool generates a three-dimensional model.").

Defendants do not infringe the "generate" claim element, as set forth in Plaintiffs' Correlation from Ground Points theory. As explained above for this theory, Defendants' Accused Products do not practice the "correlate" limitation and therefore do not and cannot meet the "generate, based at least in part on the correlation…" limitation. In addition, Plaintiffs' belatedly disclosed "Correlation From Ground Points" theory is not explicitly identified in Plaintiffs' contentions for limitation 1.5. Nowhere in the 22 pages of contentions Plaintiffs offer for "generate, based at least in part on the correlation between the first and second aerial images…" do Plaintiffs identify the output of the "Correlation From Ground Points" theory or identify how it is used, at least in part, to generate a three-dimensional model. To the extent Plaintiffs have offered any discernible theory for generation based on correlation of ground points based upon the ███████████████

██████████████████████████████████
██████████████████████████████████
██████████████████████████████████
██████████████████████████████████
██████████████████████████████████
████████████████████████████.

Defendants do not infringe the "generate" claim element, as set forth in Plaintiffs' Correlation from Drawing Roof Features theory. As explained above for this theory, Defendants' Accused Products do not practice the "correlate" limitation and therefore do not and cannot meet the "generate, based at least in part on the correlation…" limitation. In addition, the accused products generate a model before any correlation of image occurs. *See* Ex. A at 63 ("████████████████████

██████████). Plaintiffs appear to allege that these model primitives placed in the first image satisfy both the "correlate"

  HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY

and "generate" limitation, but those claim elements are functionally and logically distinct. Plaintiffs have essentially collapsed multiple claim elements into one. The result is that Plaintiffs are unable to prove or even articulate a legitimate theory of infringement for all the required elements of the claim.

Moreover, because the roof primitive is a model that already exists and, in fact, is accused by Plaintiffs of satisfying the "correlate" limitation, it cannot be "generate[d], based at least in part on the correlation…" Plaintiffs' contentions acknowledge as much and attempt to enlarge the scope of their claim language to cover modification of a roof primitive. *See, e.g.*, Ex. A at 56 ("The Property InSight™ Mass Production Tool generates and modifies a three-dimensional model of the roof based at least in part on the correlation between the aerial images."); *id.* at 58 ("Defendants have used the Mass Production Tool to modify a three-dimensional model of the roof…"). The plain meaning of the claim language, however, is to generate, not to modify.

In addition, Plaintiffs' "Correlation From Roof Features" theory is not explicitly identified in Plaintiffs' contentions for limitation 1.5. Nowhere in the 22 pages of contentions Plaintiffs offer for "generate, based at least in part on the correlation between the first and second aerial images…" do Plaintiffs identify the output of the "Correlation From Roof Features" theory or identify how it is used, at least in part, to generate a three-dimensional model. To the extent Plaintiffs have offered a discernible theory based on source code, that theory is unavailing. Plaintiffs fail to provide evidence that a correlation between a first and second image is used "in part" to generate a model. Plaintiffs' cited evidence does not support their conclusion that movement of nodes constitutes correlation. Plaintiffs' arguments related to node movement, Ex. A at 63-68, citing, e.g., ███████████

██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
███████████.

Likewise, Plaintiffs' citation to ████████████████
██████████████████████████████████████████
██████████████████████████████████████████

   HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY

████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
███████████████

Defendants do not infringe the "generate" claim element, as set forth in Plaintiffs' Correlation from Aerotriangulation theory. As explained above for this theory, Defendants' Accused Products do not practice the "correlate" limitation and therefore do not and cannot meet the "generate, based at least in part on the correlation…" limitation.  In addition, Plaintiffs' belatedly disclosed "Correlation From Aerotriangulation" theory is not explicitly identified in Plaintiffs' contentions for limitation 1.5. Nowhere in the 22 pages of contentions Plaintiffs offer for "generate, based at least in part on the correlation between the first and second aerial images…" do Plaintiffs identify the output of the "Correlation From Aerotriangulation" theory or identify how it is purportedly used, at least in part, to generate a three-dimensional model.   To the extent Plaintiffs have offered a discernible theory for generation based on correlation from aerotriangulation, any such relationship created by use of the AeroTriangulate functions is not used to generate a three-dimensional model.

**[1.6]**

Plaintiffs fail to meet their burden for "generate and transmit a roof estimate report that includes one or more top plan views of the three-dimensional model annotated with numerical values that indicate the corresponding slope, area, and length of edges of at least some of the plurality of planar roof sections using at least two different indicia for different types of roof properties."  Plaintiffs identify a number of data files but do not identify with particularity their theories for this claim element.

In addition, the Accused Products do not constitute "a roof estimation module that is stored on the memory and that is configured, when executed, to: … generate and transmit a roof estimate report that includes one or more top plan views of the three-dimensional model annotated with numerical values that indicate the corresponding slope, area, and length of edges of at least some of the plurality of planar roof sections using at least two different indicia for different types of roof properties."

For example, the accused products execute in a distributed

HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY

computing system and there is no single "roof estimation module [that] is further configured, when executed to: generate and transmit a roof estimate report that includes one or more top plan views of the three-dimensional model annotated with numerical values that indicate the corresponding slope, area, and length of edges of at least some of the plurality of planar roof sections using at least two different indicia for different types of roof properties." Plaintiffs cannot meet their burden of proof with their contention for this "module" element and, in any event, Defendants do not infringe this element.   For example, Plaintiffs do not adequately identify the metes and bounds of what is accused as the so-called "module."

Plaintiffs' contentions as to "roof estimation module that is stored on the memory" are unavailing.   As Plaintiffs' contentions concede, Property InSight™ Mass Production Tool itself consists of a "suite of automated applications and services," 2d A. Contentions, Ex. A at 14.  Property InSight™ Mass Production Tool, by Plaintiffs' admission, consists of multiple applications and services (executing on different computing systems) and it is just one of several accused software products accused by Plaintiffs for this claim.

Defendants' Accused System does not meet the "a roof estimation module that is stored on the memory and that is configured, when executed, to: … generate and transmit a roof estimate report that includes one or more top plan views of the three-dimensional model annotated with numerical values that indicate the corresponding slope, area, and length of edges of at least some of the plurality of planar roof sections using at least two different indicia for different types of roof properties" limitation.   One of skill in the art would not understand a distributed computing system to be the "a roof estimation module that is stored on the memory and that is configured, when executed, to: … generate and transmit a roof estimate report that includes one or more top plan views of the three-dimensional model annotated with numerical values that indicate the corresponding slope, area, and length of edges of at least some of the plurality of planar roof sections using at least two different indicia for different types of roof properties" as claimed in the '436 Patent.   A distributed computer system consisting of multiple modules, multiple programs, multiple applications, and multiple services requires, at a minimum, different and additional hardware, software, networking equipment, network protocols, and the like and thus does not work in substantially the same way as a roof estimation module

12

|  | stored on the memory. |
|  | Furthermore, Plaintiffs have not met their burden to show that the functional components they identify comprise a roof estimation module.  A person of ordinary skill in the art would understand a module to be more than an arbitrary grouping of components by function because a module describes the organization of functions and data into a coherent unit that is loosely coupled with other components of the larger environment in which it executes.  Modular design is well-known in computer science to be the exact opposite of monolithic design, where the various parts of the program are strongly coupled such that a change in one area of the program often affects other areas.  Plaintiffs have made no effort to demonstrate a modular design in the accused products, instead boldly stating that a monolithic design, the opposite of a modular design, would perform the same function in the same manner and achieve the same result as a modular design.  In reality, the way the result is achieved is starkly different in the two designs; Plaintiffs' statement that, "[i]t is not a technological change," misses the mark entirely. While both implementations utilize the technology of computers, Plaintiffs seek to improperly erase the word "modular" from the claim language with their argument.  Plaintiffs are not entitled to an overly broad claim scope that encompasses implementations beyond "modular" merely because those other implementations also involve computers. |
| **Claim 2** | **Xactware and Verisk Non-Infringement Position** |
| 2. The computing system of claim 1 wherein the roof estimation module is further configured to correlate the first and second aerial images by receiving an indication of one or more corresponding points on the building shown in each of the first and second aerial images. | **[2.P]**<br><br>For the reasons stated herein, neither Roof Insight™ nor Property Insight™ in combination with Xactimate® is a computing system of claim 1 wherein the roof estimation module is further configured to correlate the first and second aerial images by receiving an indication of one or more corresponding points on the building shown in each of the first and second aerial images, as described in the '436 Patent.<br><br>Defendants' computing system for generating a roof estimate report, if any, is neither made nor used, entirely or primarily, as claimed within the United States, nor is it offered for sale in the United States.<br><br>For example, ███████████████ |

13

[black redaction bars]

*See also* Section II of Defendants' Non-Infringement Contentions and Responses Pursuant to L. Pat. R. 3.2A

See non-infringement positions identified above in connection with Claim 1.

Neither Roof Insight™ nor Property Insight™ in combination with Xactimate®, meets the following limitation of claim 2: "wherein the roof estimation module is further configured to correlate the first and second aerial images by receiving an indication of one or more corresponding points on the building shown in each of the first and second aerial images."

With respect to Plaintiffs' "Correlation from Drawing Roof Features" theory, Defendants reincorporate as if fully set forth herein their noninfringement contentions to element 1.4 above for Plaintiffs' "Correlation from Drawing Roof Features" theory.

With respect to Plaintiffs' "Correlation from AeroTriangulation" theory, Defendants reincorporate as if fully set forth herein their noninfringement contentions to element 1.4 above for Plaintiffs' "Correlation from Aerotriangulation" Theory.

| Claim 5 | Xactware and Verisk Non-Infringement Position |
|---|---|
| 5. The computing system of claim 1 wherein the roof estimation module is further configured to generate the roof estimate report by generating an electronic file that includes an image of the building along with line drawings of the one or more top plan views of the three-dimensional model. | **[5.P]**<br><br>For the reasons stated herein, neither Roof Insight™ nor Property Insight™ in combination with Xactimate® is a computing system of claim 1 wherein the roof estimation module is further configured to generate the roof estimate report by generating an electronic file that includes an image of the building along with line drawings of the one or more top plan views of the three-dimensional model, as described in the '436 Patent.<br><br>Defendants' computing system for generating a roof estimate report, if any, is neither made nor used, entirely or primarily, as |

HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY

claimed within the United States, nor is it offered for sale in the United States.

For example, ████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████

*See also* Section II of Defendants' Non-Infringement Contentions and Responses Pursuant to L. Pat. R. 3.2A

See non-infringement positions identified above in connection with Claim 1.

Neither Roof Insight™ nor Property Insight™ in combination with Xactimate®, meets the following limitation of claim 5: wherein the roof estimation module is further configured to generate the roof estimate report by generating an electronic file that includes an image of the building along with line drawings of the one or more top plan views of the three-dimensional model.

For example, the accused products execute in a distributed computing system and there is no single "roof estimation module [that] is further configured to generate the roof estimate report by generating an electronic file that includes an image of the building along with line drawings of the one or more top plan views of the three-dimensional model." Plaintiffs cannot meet their burden of proof with their contention for this "module" element and, in any event, Defendants do not infringe this element. For example, Plaintiffs do not adequately identify the metes and bounds of what is accused as the so-called "module."

Plaintiffs' contentions as to "roof estimation module that is stored on the memory" are unavailing. As Plaintiffs' contentions concede, Property InSight™ Mass Production Tool itself consists of a "suite of automated applications and services," 2d A. Contentions, Ex. A at 14. Property InSight™ Mass Production Tool, by Plaintiffs' admission, consists of multiple applications and services (executing on different computing systems) and it is just one of several accused

     HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY

software products accused by Plaintiffs for this claim.

Defendants' Accused System does not meet the "further configured to generate the roof estimate report by generating an electronic file that includes an image of the building along with line drawings of the one or more top plan views of the three-dimensional model" limitation.  One of skill in the art would not understand a distributed computing system to be the "further configured to generate the roof estimate report by generating an electronic file that includes an image of the building along with line drawings of the one or more top plan views of the three-dimensional model" as claimed in the '436 Patent.  A distributed computer system consisting of multiple modules, multiple programs, multiple applications, and multiple services requires, at a minimum, different and additional hardware, software, networking equipment, network protocols, and the like and thus does not work in substantially the same way as  a roof estimation module stored on the memory.

Furthermore, Plaintiffs have not met their burden to show that the functional components they identify comprise a roof estimation module.  A person of ordinary skill in the art would understand a module to be more than an arbitrary grouping of components by function because a module describes the organization of functions and data into a coherent unit that is loosely coupled with other components of the larger environment in which it executes.  Modular design is well-known in computer science to be the exact opposite of monolithic design, where the various parts of the program are strongly coupled such that a change in one area of the program often affects other areas.  Plaintiffs have made no effort to demonstrate a modular design in the accused products, instead boldly stating that a monolithic design, the opposite of a modular design, would perform the same function in the same manner and achieve the same result as a modular design.  In reality, the way the result is achieved is starkly different in the two designs; Plaintiffs' statement that, "[i]t is not a technological change," misses the mark entirely. While both implementations utilize the technology of computers, Plaintiffs seek to improperly erase the word "modular" from the claim language with their argument.  Plaintiffs are not entitled to an overly broad claim scope that encompasses implementations beyond "modular" merely because those other implementations also involve computers.

| Claim 7 | Xactware and Verisk Non-Infringement Position |
|---|---|
| 7. The computing system of claim 1 wherein the different types of roof properties include different roof measurements, and the at least two different indicia include at least one of: length, slope, and area. | **[7.P]**<br><br>For the reasons stated herein, neither Roof Insight™ nor Property Insight™ in combination with Xactimate® is a computing system of claim 1 wherein the different types of roof properties include different roof measurements, and the at least two different indicia include at least one of: length, slope, and area, as described in the '436 Patent.<br><br>Defendants' computing system for generating a roof estimate report, if any, is neither made nor used, entirely or primarily, as claimed within the United States, nor is it offered for sale in the United States.<br><br>For example, ███████████████████<br>███████████████████████<br>███████████████████████<br>███████████████████████<br>███████████████████████<br>███████████████████████<br>███████████████████████<br>███████████████████████<br>██████████████████.<br><br>*See also* Section II of Defendants' Non-Infringement Contentions and Responses Pursuant to L. Pat. R. 3.2A<br><br>See non-infringement positions identified above in connection with Claim 1.<br><br>Neither Roof Insight™ nor Property Insight™ in combination with Xactimate®, meets the following limitation of claim 7: wherein the different types of roof properties include different roof measurements, and the at least two different indicia include at least one of: length, slope, and area.<br><br>Defendants reincorporate as if fully set forth herein their noninfringement contentions to element 1.6 above. |
| Claim 8 | Xactware and Verisk Non-Infringement Position |
| 8. The computing system of claim 7 wherein the length is located adjacent to a line representing a segment, the slope is located next to an | **[8.P]**<br><br>For the reasons stated herein, neither Roof Insight™ nor Property Insight™ in combination with Xactimate® is a computing system of claim 8 wherein the length is located |

          HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY

| arrow indicating direction of the slope and the area is located within a section having the area. | adjacent to a line representing a segment, the slope is located next to an arrow indicating direction of the slope and the area is located within a section having the area, as described in the '436 Patent. |
|---|---|
| | Defendants' computing system for generating a roof estimate report, if any, is neither made nor used, entirely or primarily, as claimed within the United States, nor is it offered for sale in the United States. |
| | For example, ██████ ██████████████████████████████████ ██████████████████████████████████ ██████████████████████████████████ ██████████████████████████████████ ██████████████████████████████████ ██████████████████████████████████ █████████████████ |
| | *See also* Section II of Defendants' Non-Infringement Contentions and Responses Pursuant to L. Pat. R. 3.2A |
| | See non-infringement positions identified above in connection with Claim 1. |
| | See non-infringement positions identified above in connection with Claim 7. |
| | Neither Roof Insight™ nor Property Insight™ in combination with Xactimate®, meets the following limitation of the claim: wherein the length is located adjacent to a line representing a segment, the slope is located next to an arrow indicating direction of the slope and the area is located within a section having the area. |
| | Defendants reincorporate as if fully set forth herein their noninfringement contentions to element 1.6 above. |
| **Claim 18** | **Xactware and Verisk Non-Infringement Position** |
| 18. *[18.P]* A computer-implemented method for generating a roof estimate, the method comprising:<br><br>*[18.1]* receiving a first and a | **[18.P]**<br><br>For the reasons stated herein, neither Roof Insight™ nor Property Insight™ in combination with Xactimate® is a computer-implemented method for generating a roof estimate, as described in the '436 Patent. |

18

                    HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY

second aerial image of a building having a roof, each of the aerial images providing a different view of the roof of the building, wherein the first aerial image provides a top plan view of the roof and the second aerial image provides a view of the roof that is other than a top plan view and neither of the two images are part of a stereoscopic pair;

*[18.2]* correlating the first aerial image with the second aerial image;

*[18.3]* generating, based at least in part on the correlation between the first and second aerial images, a three-dimensional model of the roof that includes a plurality of planar roof sections that each have a corresponding slope, area, and edges; and

*[18.4]* transmitting a roof estimate report that includes one or more top plan views of the three-dimensional model annotated with numerical indications of at least one of the slope, area, and lengths of the edges of the plurality of planar roof sections, wherein the roof estimate report includes at least two different indicia for different types of roof properties.

Any computer-implemented method for generating a roof estimate by Defendants, if any, is practiced entirely or primarily outside of the United States.

For example, .

*See also* Section II of Defendants' Non-Infringement Contentions and Responses Pursuant to L. Pat. R. 3.2A

**[18.2]**

Neither Roof Insight™ nor Property Insight™ in combination with Xactimate® practices the step of correlating the first aerial image with the second aerial image. There is no correlation between a first and second aerial image, as that term is claimed in the '436 Patent. Plaintiffs have only contended infringement under their proposed construction of the term. 2d A. Contentions, Ex. A at 171. Therefore, Plaintiffs have waived any claim of infringement if the Court adopts either the plain meaning construction or Defendants' construction. Should Plaintiffs be permitted to amend their infringement theories at some later date to offer infringement theories under either "plain meaning" or Defendants' proposed construction, Defendants reserve their right to respond to those undisclosed theories and/or amend or supplement their noninfringement contentions.

Plaintiffs offer a new substantive theory entitled "**Correlation from Ground Points**" that was not timely disclosed. To the extent Plaintiffs are permitted to proceed with this untimely theory, Defendants do not practice the limitation "correlate the first aerial image with the second aerial image" under Plaintiffs' Correlation from Ground Points theory. By way of non-limiting example, under the evidence proffered by Plaintiffs, the Accused Products do not set a ground point based on "correlat[ing] the first aerial image with the second aerial image." The evidence relied on by Plaintiffs teaches that "at least 3 images – 2 vertical and 1 oblique" must be used to

                    HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY

set a ground point. Ex. A at 175.  Therefore, "correlating the first aerial image with the second aerial image" would not function in the Accused Products.  Even if it did, such a relationship does not meet the "correlate the first aerial image with the second aerial image" limitation because any relationship established in between the first and second aerial image is not used to generate a three-dimensional model.

In addition, the belatedly disclosed source code evidence cited by Plaintiffs further confirms that Plaintiffs' "Correlation from Ground Points" allegation does not meet the "correlate the first aerial image with the second aerial image" claim limitation. Plaintiffs accuse the ███████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ██████████

Plaintiffs have not offered any infringement theories for constructions other than their own proposed construction. However, and for example, the accused "ground points" process does not, for each reference point on an object, register a pair of points that includes a first point identified in the first aerial image and a second point identified in the second aerial image.  The accused process does not register pairs of points. The accused ground points process does not register pairs of points for generating a model.  Defendants reserve the right to supplement these noninfringement contentions should Plaintiffs later be permitted to present infringement theories for other constructions.

To the extent Plaintiffs are allowed to proceed with their untimely "correlation from ground points" theory, Defendants reserve the right to move to reopen claim construction proceedings.

Plaintiffs next offer a **Correlation from Drawing Roof Features** theory. See Ex. A, 178-88. Defendants do not infringe this element under Plaintiffs' theory.  For example, Plaintiffs accuse the "████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████

HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY

████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████

Moreover, in supplemental examination of the '436 Patent, the patentee expressly distinguished the prior art's use of primitives as not practicing the correlate limitation in order to distinguish the '436 Patent. '436 Patent, Corrected Suppl. Exam. Request at 39.

Under Plaintiffs' Correlation from Drawing Roof Features theory, Plaintiffs further allege that "[b]y selecting the vertices on one aerial image and moving a line drawing with respect to a second aerial image such that the vertices in each aerial image on the buildings correspond." Ex. A at 181; *see also id.* at 179-83. Plaintiffs' cited evidence does not support their conclusion that movement of nodes, such as vertices, constitutes correlating the first aerial image with the second aerial image. ████████████████████

████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
██████████████████████

Plaintiffs have not offered any infringement theories for constructions other than their own proposed construction. However, and for example, the accused "drawing roof features" process does not, for each reference point on an object, register a pair of points that includes a first point identified in the first aerial image and a second point identified in the second aerial image. The accused process does not register pairs of points. The processes and code identified by Plaintiffs instead relates to projecting a model that has already been generated into a different image. Defendants reserve the right to supplement these noninfringement contentions should Plaintiffs later be permitted to present infringement theories for other constructions.

ME1 25306392v.2     HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY

Defendants do not infringe this element under Plaintiffs' **Correlation from Aerotriangulation** theory. Ex. A at 188-90. The "Correlation from Aerotriangulation" theory was not timely disclosed. To the extent Plaintiffs are permitted to proceed with this untimely theory, Defendants do not practice the limitation "correlate the first aerial image with the second aerial image" under Plaintiffs' theory. For example, aerotriangulation does not correlate features in order to generate a three-dimensional model. Aerotriangulation is not related to model generation, but rather is associated ██ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████.

Plaintiffs have not offered any infringement theories for constructions other than their own proposed construction. However, and for example, the accused aerotriangulation process does not, for each reference point on an object, register a pair of points that includes a first point identified in the first aerial image and a second point identified in the second aerial image. The accused aerotriangulation process does not register pairs of points for generating a model. Defendants reserve the right to supplement these noninfringement contentions should Plaintiffs later be permitted to present infringement theories for other constructions.

To the extent Plaintiffs are allowed to proceed with their untimely "correlation from aerotriangulation" theory, Defendants reserve the right to move to reopen claim construction proceedings.

**[18.3]**

Neither Roof Insight™ nor Property Insight™ in combination with Xactimate® practices the step of generating, based at least in part on the correlation between the first and second aerial images, a three-dimensional model of a roof that includes a plurality of planar roof sections that each have a corresponding slope, area, and edges. Plaintiffs explicitly identify three theories for correlation but do not explicitly identify the output or result of their three correlation theories, or how those outputs are purportedly used as an input to generate a three-dimensional model, based, at least in part, on the preceding correlation.

As a general matter, Plaintiffs do not identify any source code

22

HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY

that they contend is responsible for generating, based at least in part on the correlation between the first and second aerial images, a three-dimensional model of the roof that includes a plurality of planar roof sections that each have a corresponding slope, area, and edges. Instead, Plaintiffs repeat their allegations for the correlation limitation and offer conclusory allegations that a three-dimensional model is somehow generated based on these correlations. For example, Plaintiffs vaguely allege that the "Mass Production Tool generates a three-dimensional model of the roof based at least in part on the correlation, as demonstrated by the rendering of the three-dimensional model," without offering any allegations of which of Plaintiffs' three separate "correlation" theories they are referring to or how that "correlation" is used to generate a three-dimensional model. Ex. A at 200; *id.* at 211 ("Based at least in part on the correlation of the two aerial images, as described with respect to the previous claim limitation, the Property Insight Mass Production Tool generates a three-dimensional model.").

Defendants do not infringe the "generate" claim element when it is based on the "correlate" claim element, as set forth in Plaintiffs' Correlation from Ground Points theory. As explained above for this theory, Defendants' Accused Products do not practice the "correlate" limitation and therefore do not and cannot meet the "generate, based at least in part on the correlation…" limitation. In addition, Plaintiffs' belatedly disclosed "Correlation From Ground Points" theory is not explicitly identified in Plaintiffs' contentions for limitation 18.3. Nowhere in the 22 pages of contentions Plaintiffs offer for "generate, based at least in part on the correlation between the first and second aerial images…" do Plaintiffs identify the output of the "Correlation From Ground Points" theory or identify how it is used, at least in part, to generate a three-dimensional model. To the extent Plaintiffs have offered any discernible theory for generation based on correlation of ground points based upon the ███████████████████████

     HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY

Defendants do not infringe the "generate" claim element when it is based on the "correlate" claim element, as set forth in Plaintiffs' Correlation from Drawing Roof Features theory. As explained above for this theory, Defendants' Accused Products do not practice the "correlate" limitation and therefore do not and cannot meet the "generate, based at least in part on the correlation…" limitation. In addition, the accused products generate a model before any correlation of image occurs. *See* Ex. A at 208 ("███████████████████████████

██████). Plaintiffs appear to allege that these model primitives placed in the first image satisfies both the "correlate" and "generate" limitation, but those claim elements are functionally and logically distinct. Plaintiffs have essentially collapsed multiple claim elements into one. The result is that Plaintiffs are unable to prove or even articulate a legitimate theory of infringement for all the required elements of the claim.

Moreoever, because the roof primitive is a model that already exists and, in fact, is accused by Plaintiffs of satisfying the "correlate" limitation, it cannot be "generate[d], based at least in part on the correlation…" Plaintiffs' contentions acknowledge as much and attempt to enlarge the scope of their claim language to cover modification of a roof primitive. *See, e.g.*, Ex. A at 199 ("The Property InSight™ Mass Production Tool generates and modifies a three-dimensional model of the roof based at least in part on the correlation between the aerial images."); *id.* at 204 ("Defendants have used the Mass Production Tool to modify a three-dimensional model of the roof…"). The plain meaning of the claim language, however, is to generate, not to modify.

In addition, Plaintiffs' "Correlation From Roof Features" theory is not explicitly identified in Plaintiffs' contentions for limitation 18.3. Nowhere in the 22 pages of contentions Plaintiffs offer for "generate, based at least in part on the correlation between the first and second aerial images…" do Plaintiffs identify the output of the "Correlation From Roof Features" theory or identify how it is used, at least in part, to generate a three-dimensional model. To the extent Plaintiffs have offered a discernible theory based on source code, that theory is unavailing. Plaintiffs fail to provide evidence that a correlation between a first and second image is used "in part" to generate a model. Plaintiffs' cited evidence does not support their conclusion that movement of nodes constitutes correlation. ██████████████████████

████████████████████████████████████████,

   HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY



Likewise, Plaintiffs' citation to ███████████

Defendants do not infringe the "generate" claim element when it is based on the "correlate" claim element, as set forth in Plaintiffs' Correlation from Aerotriangulation theory. As explained above for this theory, Defendants' Accused Products do not practice the "correlate" limitation and therefore do not and cannot meet the "generate, based at least in part on the correlation…" limitation. In addition, Plaintiffs' belatedly disclosed "Correlation From Aerotriangulation" theory is not explicitly identified in Plaintiffs' contentions for limitation 18.3. Nowhere in the 22 pages of contentions Plaintiffs offer for "generate, based at least in part on the correlation between the first and second aerial images…" do Plaintiffs identify the output of the "Correlation From Aerotriangulation" theory or identify how it is purportedly used, at least in part, to generate a three-dimensional model. To the extent Plaintiffs have offered a discernible theory for generation based on correlation from aerotriangulation, any such relationship created by use of the AeroTriangulate functions is not used to generate a three-dimensional model.

**[18.4]**

Plaintiffs fail to meet their burden for "transmitting a roof estimate report that includes one or more top plan views of the three-dimensional model annotated with numerical indications of at least one of the slope, area, and lengths of the edges of the plurality of planar roof sections, wherein the roof estimate report includes at least two different indicia for different types of roof properties." Plaintiffs identify a number of data files

   HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY

but do not identify with particularity their theories for this claim element.

In addition, any computer-implemented method for generating a roof estimate by Defendants, if any, is practiced entirely or primarily outside of the United States.

For example, ███████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████

Plaintiffs' contention for "transmitting a roof estimate report that includes one or more top plan views of the three-dimensional model annotated with numerical indications of at least one of the slope, area, and lengths of the edges of the plurality of planar roof sections, wherein the roof estimate report includes at least two different indicia for different types of roof properties" is vague and ambiguous and does not provide a discernible, identifiable infringement position. Plaintiffs cannot meet their burden of proof with their contention for this element and, in any event, Defendants do not infringe this element.

*See also* Section II of Defendants' Non-Infringement Contentions and Responses Pursuant to L. Pat. R. 3.2A.

| Claim 20 | Xactware and Verisk Non-Infringement Position |
|---|---|
| 20. The method of claim 18 wherein correlating the first and second aerial images includes receiving an indication of one or more corresponding points shown in each of the first and second aerial images. | **[20.P]**<br><br>For the reasons stated herein, neither Roof Insight™ nor Property Insight™ in combination with Xactimate® is the method of claim 18 wherein correlating the first and second aerial images includes receiving an indication of one or more corresponding points shown in each of the first and second aerial images, as described in the '436 Patent.<br><br>Any computer-implemented method for generating a roof estimate by Defendants, if any, is practiced entirely or primarily outside of the United States. |

HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY

For example, ██████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
███████████████████████

*See also* Section II of Defendants' Non-Infringement Contentions and Responses Pursuant to L. Pat. R. 3.2A

See non-infringement positions identified above in connection with Claim 18.

With respect to Plaintiffs' "Correlation from Ground Points" theory, Defendants reincorporate as if fully set forth herein their noninfringement contentions to element 18.3 above for Plaintiffs' "Correlation from Ground Points" theory.

With respect to Plaintiffs' "Correlation from Drawing Roof Features" theory, Defendants reincorporate as if fully set forth herein their noninfringement contentions to element 18.3 above for Plaintiffs' "Correlation from Drawing Roof Features" theory.

With respect to Plaintiffs' "Correlation from AeroTriangulation" theory, Defendants reincorporate as if fully set forth herein their noninfringement contentions to element 18.3 above for Plaintiffs' "Correlation from Aerotriangulation" Theory.

Any computer-implemented method for generating a roof estimate by Defendants, if any, is practiced entirely or primarily outside of the United States.

For example, ██████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
███████████████████████

ME1 25306392v.2

HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY

| Claim 21 | Xactware and Verisk Non-Infringement Position |
|---|---|
| 21. The method of claim 20 wherein receiving the indication of the corresponding point includes receiving the indication from a user. | **[20.P]**<br><br>For the reasons stated herein, neither Roof Insight™ nor Property Insight™ in combination with Xactimate® is the method of claim 20 wherein receiving the indication of the corresponding point includes receiving the indication from a user, as described in the '436 Patent.<br><br>Any computer-implemented method for generating a roof estimate by Defendants, if any, is practiced entirely or primarily outside of the United States.<br><br>For example, ███████████████████████████ ██████████████████████████████████ ██████████████████████████████████ ██████████████████████████████████ ██████████████████████████████████ ██████████████████████████████████ ██████████████████████████████████ ███████████████████<br><br>See non-infringement positions identified above in connection with Claim 18.<br><br>See non-infringement positions identified above in connection with Claim 20.<br><br>Plaintiffs' contention for "wherein receiving the indication of the corresponding point includes receiving the indication from a user" is vague and ambiguous and does not provide a discernible, identifiable infringement position. Plaintiffs cannot meet their burden of proof with their contention for this element and, in any event, Defendants do not infringe this element.<br><br>With respect to Plaintiffs' "Correlation from Ground Points" theory, Defendants reincorporate as if fully set forth herein their noninfringement contentions to element 18.3 above for Plaintiffs' "Correlation from Ground Points" theory.<br><br>With respect to Plaintiffs' "Correlation from Drawing Roof Features" theory, Defendants reincorporate as if fully set forth herein their noninfringement contentions to element 18.3 above for Plaintiffs' "Correlation from Drawing Roof |

HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY

Features" theory.

With respect to Plaintiffs' "Correlation from Aero-Triangulation" theory, Defendants reincorporate as if fully set forth herein their noninfringement contentions to element 18.3 above for Plaintiffs' "Correlation from Aerotriangulation" Theory.

Any computer-implemented method for generating a roof estimate by Defendants, if any, is practiced entirely or primarily outside of the United States.

For example, ███████████████████████
██████████████████████████████████
██████████████████████████████████
██████████████████████████████████
██████████████████████████████████
██████████████████████████████████
██████████████████████████████████
███████████████████████████.

| Claim 36 | Xactware and Verisk Non-Infringement Position |
|---|---|
| 36. *[36.P]* A non-transitory computer-readable storage medium whose contents, which are computer executable instructions stored on the non-transitory computer-readable storage medium, when executed by a computer processor of a computing system, enable the computing system to generate a roof estimate report for a building having a roof, by causing, when executed by the computer processor of the computing system, the computing system to perform a method comprising:<br><br>*[36.1]* receiving two or more images of the building, wherein at least one of the two or more images provides an | **[36.P]**<br><br>For the reasons stated herein, neither Roof Insight™ nor Property Insight™ in combination with Xactimate® is a non-transitory computer-readable storage medium whose contents, which are computer executable instructions stored on the non-transitory computer-readable storage medium, when executed by a computer processor of a computing system, enable the computing system to generate a roof estimate report for a building having a roof, by causing, when executed by the computer processor of the computing system, the computing system to perform a method, as described in the '436 Patent.<br><br>Any computer-implemented method for generating a roof estimate by Defendants, if any, is practiced entirely or primarily outside of the United States.<br><br>For example, ███████████████████████<br>██████████████████████████████████<br>██████████████████████████████████<br>██████████████████████████████████<br>██████████████████████████████████ |

   HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY

oblique perspective view of the roof and one of the images provides a top plan view of the roof;

*[36.2]* receiving an indication of pairs of points on the two or more images, each pair of points corresponding to substantially the same point on the roof depicted in each of the two or more images;

*[36.3]* generating, based on the two or more images of the building, a three-dimensional model of the roof that includes a plurality of planar roof sections that each have a corresponding area and edges, wherein the generating, based on the two or more images of the building, the model of the roof includes generating the model of the roof based on the receiving the indication of the pairs of points on the two or more images of the building; and

*[36.4]* transmitting a roof estimate report that includes one or more views of the model, the report being annotated with numerical indications of the area and lengths of the edges of at least some of the plurality of planar roof sections, wherein the roof estimate report includes at least two different indicia for different types of roof properties.

█████████████████████████
█████████████████████████
████████████████

Defendants' Accused System does not meet the "a non-transitory computer-readable storage medium whose contents, which are computer executable instructions stored on the non-transitory computer-readable storage medium, when executed by a computer processor of a computing system, enable the computing system to generate a roof estimate report for a building having a roof, by causing, when executed by the computer processor of the computing system" limitation. One of skill in the art would not understand a distributed computing system to be the "a non-transitory computer-readable storage medium whose contents, which are computer executable instructions stored on the non-transitory computer-readable storage medium, when executed by a computer processor of a computing system, enable the computing system to generate a roof estimate report for a building having a roof, by causing, when executed by the computer processor of the computing system" as claimed in the '436 Patent. A distributed computer system consisting of multiple modules, multiple programs, multiple applications, and multiple services requires, at a minimum, different and additional hardware, software, networking equipment, network protocols, and the like and thus does not work in substantially the same way as a roof estimation module stored on the memory.

Furthermore, Plaintiffs have not met their burden to show that the functional components they identify comprise "a non-transitory computer-readable storage medium… " A person of ordinary skill in the art would understand a module to be more than an arbitrary grouping of components by function because a module describes the organization of functions and data into a coherent unit that is loosely coupled with other components of the larger environment in which it executes. Modular design is well-known in computer science to be the exact opposite of monolithic design, where the various parts of the program are strongly coupled such that a change in one area of the program often affects other areas. Plaintiffs have made no effort to demonstrate a modular design in the accused products, instead boldly stating that a monolithic design, the opposite of a modular design, would perform the same function in the same manner and achieve the same result as a modular design. In reality, the way the result is achieved is starkly different in the two designs; Plaintiffs' statement that, "[i]t is not a technological change," misses the mark entirely. While both

                    HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY

implementations utilize the technology of computers, Plaintiffs seek to improperly erase the word "modular" from the claim language with their argument.  Plaintiffs are not entitled to an overly broad claim scope that encompasses implementations beyond "modular" merely because those other implementations also involve computers.

**[36.2]**

Neither Roof Insight™ nor Property Insight™ in combination with Xactimate® practices the step of receiving an indication of pairs of points on the two or more images, each pair of points corresponding to substantially the same point on the roof depicted in each of the two or more images.  There is no receiving an indication of pairs of points on the two or more images, each pair of points corresponding to substantially the same point on the roof depicted in each of the two or more images, as that term is claimed in the '436 Patent.

Plaintiffs next offer a theory entitled **Receiving an Indication from Drawing Roof Features**.  *See* Ex. A, 284-292.  Defendants do not infringe this element under Plaintiffs' theory.   For example, ███████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
███████████████████████████████In supplemental examination of the '436 Patent, the patentee expressly distinguished the prior art's use of primitives as not practicing the correlate limitation in order to distinguish the '436 Patent.  '436 Patent, Corrected Suppl. Exam. Request at 39.

Under the Correlation from Drawing Roof Features theory, Plaintiffs further allege that "[b]y selecting the vertices on one aerial image and moving a line drawing with respect to a second aerial image such that the vertices in each aerial image on the buildings correspond."  Ex. A at 286; *see also id.* at 185-89.  Plaintiffs' cited evidence does not support their conclusion that movement of nodes, such as vertices, constitutes correlating the first aerial image with the second aerial image. ███████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

   HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY



Defendants do not infringe this element under Plaintiffs' **Receiving an Indication from Aerotriangulation** theory. Ex. A at 293-95. The "Receiving an Indication from Aerotriangulation" theory was not timely disclosed. To the extent Plaintiffs are permitted to proceed with this untimely theory, Defendants do not practice the limitation "receiving an indication of pairs of points on the two or more images, each pair of points corresponding to substantially the same point on the roof depicted in each of the two or more images" under Plaintiffs' Receiving an Indication from Aerotriangulation theory. For example,

To the extent Plaintiffs are allowed to proceed with their untimely "aerotriangulation" theory, Defendants reserve the right to move to reopen claim construction proceedings.

**[36.3]**

Neither Roof Insight™ nor Property Insight™ in combination with Xactimate® practices the step of generating, based on the two or more images of the building, a three-dimensional model of the roof that includes a plurality of planar roof sections that each have a corresponding area and edges, wherein the generating, based on the two or more images of the building, includes generating the model of the roof based on the receiving the indication of the pairs of points on the two or more images of the building. Plaintiffs explicitly identify two theories for "generating, based on the received indication…" but do not explicitly identify the output or result of their

HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY

"receiving an indication…," or how those outputs are used as an input to generate a three-dimensional model, based, at least in part, on the preceding "receiving an indication…."

Plaintiffs' contentions illogically erase the distinction between independent claim 36 and claims 1 and 18, stating "As explained with respect to the previous claim limitations, the Property InSight™ Mass Production Tool *correlates* a first and second aerial image based on received indications of pairs of points on the roofs in aerial images. Based on that correlation and the received indications of pairs of points, the Property InSight™ Mass Production Tool then creates a data structure that is a three-dimensional model of the roof that includes multiple planar roof sections and each roof section has a slope or pitch, area, edges, and vertices." Ex. A at 295.

Moreover, as a general matter, Plaintiffs do not identify any source code that they contend is responsible for generating, based on the two or more images of the building, a three-dimensional model of the roof that includes a plurality of planar roof sections that each have a corresponding area and edges, wherein the generating, based on the two or more images of the building, the model of the roof includes generating the model of the roof based on the receiving the indication of the pairs of points on the two or more images of the building. Instead, Plaintiffs repeat their allegations for the correlation limitations and offer conclusory allegations that a three-dimensional model is somehow generated based on these correlations. For example, Plaintiffs vaguely allege that the "Mass Production Tool generates a three-dimensional model of the roof based at least in part of the correlation, as demonstrated by the rendering of the three-dimensional model," without offering any allegations of which of Plaintiffs' three separate "correlation" theories they are referring to or how that "correlation" is used to generate a three-dimensional model. Ex. A at 305; *id.* at 315 ("Based at least in part on the correlation of the two aerial images, as described with respect to the previous claim limitation, the Property Insight Mass Production Tool generates a three-dimensional model.").

Defendants do not infringe the "generate" claim element when it is based on the "receiving" claim element, as set forth in Plaintiffs' Receiving an Indication from Drawing Roof Features theory. As explained above for this theory, Defendants' Accused Products do not practice the "receiving an indication" limitation and therefore do not and cannot meet the "generating, based on the two or more images of the

HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY

building…" limitation.   In addition, the accused products generate a model before any correlation of image occurs.  *See* Ex. A at 312 (███████████████████████████████████

████████████████████████████████████████████████████

███).  Plaintiffs appear to allege that these model primitives placed in the "first receiving image satisfy both the "receiving an indication" and "generate" limitation, but those claim elements are functionally and logically distinct.   Plaintiffs have essentially collapsed multiple claim elements into one.   The result is that Plaintiffs are unable to prove or even articulate a legitimate theory of infringement for all the required elements of the claim.

 Moreoever, because the roof primitive is a model that already exists and, in fact, is accused by Plaintiffs of satisfying the "receiving an indication" limitation, it cannot be "generating, based on the two or more images of the building…" Plaintiffs' contentions acknowledge as much and attempt to enlarge the scope of their claim language to cover modification of a roof primitive. *See, e.g.*, Ex. A at 304-05 ("The Property InSight™ Mass Production Tool generates and modifies a three-dimensional model of the roof based at least in part on the correlation between the aerial images."); *id.* at 308 ("Defendants have used the Mass Production Tool to modify a three-dimensional model of the roof…").  The plain meaning of the claim language, however, is to generate, not to modify.

In addition, Plaintiffs' "Correlation From Roof Features" theory is not explicitly identified in Plaintiffs' contentions for limitation 34.3.   Nowhere in the 22 pages of contentions Plaintiffs offer for "generating, based on the two or more images of the building…" do Plaintiffs identify the output of the "receiving an indication" theory or identify how it is purportedly used, at least in part, to generate a three-dimensional model.  To the extent Plaintiffs have offered a discernible theory based on source code, that theory is unavailing.  Plaintiffs fail to provide evidence that a correlation between a first and second image is used "in part" to generate a model.   Plaintiffs' cited evidence does not support their conclusion that movement of nodes constitutes correlation. Plaintiffs' arguments related to ██████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

          HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY



Likewise, Plaintiffs' citation to

Defendants do not infringe the "generating" claim element when it is based on the "receiving" claim element, as set forth in Plaintiffs' Correlation from Aerotriangulation theory. As explained above for this theory, Defendants' Accused Products do not practice the "correlate" limitation and therefore do not and cannot meet the "generate, based at least in part on the correlation…" limitation. In addition, Plaintiffs' belatedly disclosed "Correlation From Aerotriangulation" theory is not explicitly identified in Plaintiffs' contentions for limitation 34.3. Nowhere in the 22 pages of contentions Plaintiffs offer for "generating, based on the two or more images of the building…" do Plaintiffs identify the output of the "Receiving an Indication From Aerotriangulation" theory or identify how it is purportedly used, at least in part, to generate a three-dimensional model. To the extent Plaintiffs have offered a discernible theory for generation based on correlation from aerotriangulation, any such relationship created by use of the AeroTriangulate functions is not used to generate a three-dimensional model.

Plaintiffs' contentions for this element also includes reference to GroundPoint related code. GroundPoint related code cannot meet this limitation because the claim requires receiving an indication of claims on a roof.

**[36.4]**

Plaintiffs' contention for "transmitting a roof estimate report that includes one or more views of the model, the report being annotated with numerical indications of the area and lengths of the edges of at least some of the plurality of planar roof sections, wherein the roof estimate report includes at least two different indicia for different types of roof properties" is vague and ambiguous and does not provide a discernible, identifiable infringement position. Plaintiffs cannot meet their burden of

HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY

|  | proof with their contention for this element and, in any event, Defendants do not infringe this element.<br><br>Defendants' non-transitory computer readable storage medium which performs a method of generating a roof estimate report for a building having a roof, if any, is neither made nor used, entirely or primarily, as claimed within the United States, nor is it offered for sale in the United States.<br><br>For example, ████████████████████████████<br>████████████████████████████████<br>████████████████████████████████<br>████████████████████████████████<br>████████████████████████████████<br>████████████████████████████████<br>████████████████████████<br><br>*See also* Section II of Defendants' Non-Infringement Contentions and Responses Pursuant to L. Pat. R. 3.2A. |
|---|---|
| **Claim 37** | **Xactware and Verisk Non-Infringement Position** |
| 37. *[37.1]* The non-transitory computer-readable storage medium of claim 36 wherein generating the model of the roof based on the receiving the indication of the pairs of points on the two or more images includes: correlating two of the two or more images by registering the pairs of points; and<br><br>*[37.2]* generating the three-dimensional model based on the correlation between the two of the two or more images. | **[36.P]**<br><br>For the reasons stated herein, neither Roof Insight™ nor Property Insight™ in combination with Xactimate® is a "non-transitory computer-readable storage medium of claim 36…," as described in the '436 Patent.<br><br>Any computer-implemented method for generating a roof estimate by Defendants, if any, is practiced entirely or primarily outside of the United States.<br><br>For example, ████████████████████████<br>████████████████████████████████<br>████████████████████████████████<br>████████████████████████████████<br>████████████████████████████████<br>████████████████████████████████<br>████████████████████████<br><br>See non-infringement positions identified above in connection with Claim 36. |

HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY

**[37.1]**

Neither Roof Insight™ nor Property Insight™ in combination with Xactimate® correlates two of the two or more images by registering the pairs of points.

With respect to Plaintiffs' "Receiving an Indication from Drawing Roof Features" theory, Defendants reincorporate as if fully set forth herein their noninfringement contentions to element 36.2.

With respect to Plaintiffs' "Receiving an Indication from AeroTriangulation" theory, Defendants reincorporate as if fully set forth herein their noninfringement contentions to element 36.2.

**[37.2]**

Neither Roof Insight™ nor Property Insight™ in combination with Xactimate® generates the three-dimensional model based on the correlation between the two of the two or more images.

Defendants reincorporate as if fully set forth herein their noninfringement contentions to element 36.3.

In addition, Defendants' non-transitory computer readable storage medium which performs a method of generating a roof estimate report for a building having a roof, if any, is neither made nor used, entirely or primarily, as claimed within the United States, nor is it offered for sale in the United States.

For example, ███████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
███████████████████████████

ME1 25306392v.2   HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY

# Exhibit I

FILED UNDER SEAL

ATTORNEYS' EYES ONLY

Scott S. Christie
Matthew A. Sklar
Elina Slavin
Ravin R. Patel
**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
Newark, New Jersey  07102
Phone: (973) 848-5388
Fax: (973) 297-3981

Lee Carl Bromberg
Brian J. Larivee
**McCARTER & ENGLISH, LLP**
265 Franklin St.
Boston, Massachusetts 02110
Phone: (617) 449-6500
Fax: (617) 607-9200
*Counsel for Defendants Xactware
Solutions, Inc. and Verisk Analytics, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| EAGLE VIEW TECHNOLOGIES, INC. and PICTOMETRY INTERNATIONAL CORP., | Civil Action No. 15-cv-07025-RBK-JS |
| Plaintiffs, | **ATTORNEYS' EYES ONLY** |
| v. | |
| XACTWARE SOLUTIONS, INC. and VERISK ANALYTICS, INC., | |
| Defendants. | |

## XACTWARE SOLUTIONS, INC.'S RESPONSES TO EAGLE VIEW TECHNOLOGIES, INC.'S  FIRST SET OF INTERROGATORIES (NOS. 1–21)

ATTORNEYS' EYES ONLY

Pursuant to Federal Rules of Civil Procedure 26 and 33, Defendant Xactware Solutions, Inc. ("Defendant" or "Xactware") hereby responds and objects to Eagle View Technologies, Inc.'s ("Plaintiff" or "Eagle View") First Set of Interrogatories ("Interrogatories") as follows:

## GENERAL OBJECTIONS

Defendant's  response to the Interrogatories is subject to, and incorporates, the following General Objections.   Defendant specifically incorporates these General Objections into its responses to each Interrogatory, whether or not each such General Objection is expressly referred to in Defendant's response to the Interrogatory.

1.      Defendant objects to any Interrogatory that seeks information protected from disclosure by the attorney-client privilege, the attorney work product doctrine, the joint defense or common interest privilege, or any other applicable privilege or immunity, or information that is otherwise subject to confidentiality obligations to a third party.  Any such Interrogatory has been read to exclude the discovery of such privileged information. Nothing contained in this response is intended to be, or in any way constitutes, a waiver of any such applicable privilege, doctrine, or confidentiality obligation.  The inadvertent disclosure by Defendant of information protected from disclosure by any privilege or doctrine shall not constitute a waiver by Defendant of such objections or protections.

2.      Defendant objects to any Interrogatory that is premature and/or conflicts with the schedule for disclosure or expert opinions entered by the Court or provided for by the Local Rules.

3.      Defendant objects to Plaintiff's "Definitions" and "Instructions" to the extent they purport to impose upon Defendant any duty or obligation that is inconsistent with or in excess of those obligations that are imposed by the Federal Rules of Civil Procedure, the Local Rules, or

2

ATTORNEYS' EYES ONLY

any other applicable rule. In particular, Defendant objects to any Interrogatory to the extent that it calls for information that is not relevant to any party's claims or defenses and is not proportional to the needs of the case.

4.      Defendant objects to Plaintiff's definition of "Complaint," and responds with the understanding that "Complaint" identifies only the First Amended Complaint filed November 30, 2015.

5.      Defendant objects to Plaintiff's definition of "Defendant", "Xactware", "you", "your", and "yours" as overbroad, unduly burdensome, and vague to the extent it includes any entities other than Xactware Solutions, Inc.

6.      Defendant objects to Plaintiff's definition of "Accused Product(s)" to the extent it includes Xactimate® not in combination with either Roof Insight™, Property Insight™, and/or Aerial Sketch™, or includes any rooftop aerial measurement product not accused of infringement in Plaintiffs' First Amended Complaint or not identified in Plaintiffs' Infringement Contentions.

7.      Defendant objects to Plaintiff's definition of "Xactware Product" to the extent it includes any product not designed, developed, manufactured, marketed, offered for sale or sold by Xactware.

8.      Defendant objects to each Interrogatory to the extent that it seeks information not in Defendant's possession, custody or control.

9.      Defendant objects to each Interrogatory to the extent that it is vague, ambiguous, or confusing.

10.      Defendant objects to any Interrogatory to the extent that it requires Defendant to draw a legal conclusion in order to respond.

3

ATTORNEYS' EYES ONLY

11.     Defendant objects to each Interrogatory to the extent that it improperly and prematurely seeks the substance of expert reports, opinions and/or trial testimony.

12.     Defendant objects to any Interrogatory that requests information about more than one topic as a compound question.  *See* Fed. R. Civ. P. 33(a)(1).  Defendant will count each discrete subpart that does not relate to a "single topic" or "common theme" as a separate interrogatory to quantify the total number of propounded interrogatories.

13.     Defendant will make, and has made, reasonable efforts to respond to the Interrogatories, to the extent that no objection is made, as Defendant understands and interprets each Interrogatory.  If Plaintiff subsequently asserts an interpretation of any Interrogatory that differs from the interpretation of Defendant, then Defendant reserves the right to supplement and amend its objections and responses.

14.     Defendant's responses to the Interrogatories are made without waiver and with preservation of:

a.     all questions as to competency, relevance, materiality, privilege, and admissibility of the responses and the subject matter thereof for any purpose and in any further proceeding in this lawsuit (including trial) and in any other action or matter;

b.     the right to object to the use of any such responses or the subject matter thereof, on any ground in any further proceeding in this lawsuit (including trial) and in any other action or matter;

c.     the right to object on any ground at any time to a demand or request for further response; and

d.     the right at any time to review, correct, add to, supplement, or clarify any of the responses contained herein.

4

ATTORNEYS' EYES ONLY

15.     Defendant provides theses objections and responses pursuant to the Federal Rules of Civil Procedure as amended effective December 1, 2015.  Those amendments include, for example, revised definitions of the scope of permissible discovery and updated procedures for objecting and responding to requests for production.  *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burdens or expense of the proposed discovery outweighs its likely benefit."); Fed. R. Civ. P. 34(b)(2).   By making these objections and responses under the revised rules, Defendant expressly incorporates objections under the prior version of the Federal Rules of Civil Procedure (*e.g.*, to requests that are not reasonably calculated to lead to the discovery of admissible evidence) to the extent that the prior version of the Federal Rules of Civil Procedure still applies in this case.

16.     Neither these General Objections nor the specific responses set forth below are an admission relative to the existence of any information sought, to the relevance or admissibility of any response, or to the truth or accuracy of any statement or characterization contained in the Interrogatories.

17.     Unless otherwise indicated, Defendant will not provide any information encompassed by the foregoing objections.

18.     Defendant's investigation of the facts relevant to this action is ongoing. Accordingly, Defendant reserves the right to amend and/or supplement these responses if further information becomes available in the course of its ongoing diligent inquiries, through discovery,

ATTORNEYS' EYES ONLY

or otherwise.  These responses should not be construed as, and do not constitute, a waiver of Defendant's right to adduce additional facts at trial.

## SPECIFIC OBJECTIONS AND RESPONSES

### INTERROGATORY NO. 1:

Identify by any and all product names, product codes, internal product nomenclatures, and/or designations each version of each Accused Product, including but not limited to Xactimate®, Roof InSight™, Property Insight™, Aerial Sketch™, and any other Xactware rooftop aerial measurement product, made, used, offered for sale, sold, or licensed in the United States, or imported into the United States by or on behalf of Xactware since September 23, 2009.

### RESPONSE TO INTERROGATORY NO. 1:

The General Objections are incorporated herein.  Defendant further objects to this Interrogatory as overly broad and unduly burdensome, including to the extent that it seeks identification of "any and all product names, product codes, internal product nomenclatures, and/or designations" for "each version of each Accused Product," and to the extent it seeks information with respect to "any other Xactware rooftop aerial measurement product." Defendant further objects to the unjustified temporal designation.  The scope of this Interrogatory is disproportional to the needs of the case.

Subject to the foregoing objections, Defendant responds that the following list identifies representative versions of products accused of infringement in the Complaint:

- Xactimate 25.5

- Xactimate 27.3

- Xactimate 27.5 UC

- Xactimate 28.0 SU1

6

ATTORNEYS' EYES ONLY

- Xactimate 28.0 SU16

**INTERROGATORY NO. 2**:

Identify by any and all product names, product codes, internal product nomenclatures, and/or designations each version of each Accused Product, including but not limited to Xactimate®, Roof InSight[TM], Property Insight[TM], Aerial Sketch[TM], and any other Xactware rooftop aerial measurement product, under development by Xactware but not yet offered for sale, that Xactware intends to make, use, sell, license, or import into the United States.

**RESPONSE TO INTERROGATORY NO. 2:**

The General Objections are incorporated herein.  Defendant further objects to this Interrogatory as overly broad and unduly burdensome, including to the extent that it seeks identification of "any and all product names, product codes, internal product nomenclatures, and/or designations" for "each version of each Accused Product," and to the extent it seeks information with respect to "any other Xactware rooftop aerial measurement product." Defendant further objects to this Interrogatory as improperly seeking information concerning purported products "under development," which have not been identified by Plaintiff or accused of infringement, and which are therefore irrelevant to this case.  Defendant further objects to this Interrogatory to the extent that it calls for information that is not relevant to any party's claims or defenses, or otherwise is disproportional to the needs of the case, including information relating to purported products that may not exist or be released for use and distribution to the public.

**INTERROGATORY NO. 3:**

Separately for each version of each Accused Product, including each Product identified in response to Interrogatory Nos. 1 and/or 2, identify all Documents showing the Accused Product's design, structure, function, operation, and development, including but not limited to

7

ATTORNEYS' EYES ONLY

user manuals, training guides and/or videos, promotional, advertising, and instructional materials, datasheets, schematics, bills of materials ("BOMs"), technical specifications, functional specifications, including but not limited to software, hardware, and system functional specifications, documents Related To product requirements, concept and design documents, Source Code and documentation related thereto, troubleshooting instructions, testing results, and analysis reports.

**RESPONSE TO INTERROGATORY NO. 3:**

The General Objections are incorporated herein. The Objections to Interrogatories Nos. 1 and 2 are incorporated herein. Defendant further objects to this Interrogatory as overly broad and unduly burdensome, including to the extent that it seeks identification of documents for "each version of each Accused Product." The scope of this Interrogatory is disproportional to the needs of the case.

Subject to the foregoing objections, Defendant responds that documents related to the design, structure, function, operation, and development of the Accused Products identified in response to Interrogatory Nos. 1 and/or 2 have been produced. *See* Defendant's document production, XW00000001 – XW00022625. Defendant further states that, to the extent additional relevant documents may exist, it will produce these documents as discovery progresses in lieu of identifying any particular documents.

**INTERROGATORY NO. 4:**

Separately for each version of each Accused Product, including each Product identified in response to Interrogatory Nos. 1 and/or 2, identify by name, title, and work address the Xactware Persons or Entities most knowledgeable about the research, conception, design, development, engineering, and testing of the Accused Product and describe the nature of each Person's or

ATTORNEYS' EYES ONLY

Entity's involvement.  Include in your response the identity of each Document that supports your answer or to which you referred in preparing your answer.

## RESPONSE TO INTERROGATORY NO. 4:

The General Objections are incorporated herein.  The Objections to Interrogatories Nos. 1 and 2 are incorporated herein.  Defendant further objects to this Interrogatory as overly broad and unduly burdensome, including to the extent that it seeks identification of information for "each version of each Accused Product."  The scope of this Interrogatory is disproportional to the needs of the case.

Subject to the foregoing objections, Defendant responds that the following individuals are most knowledgeable about the research, conception, design, development, engineering, and testing of the Accused Products identified in response to Interrogatory Nos. 1 and/or 2:

| Name | Work Address | Nature of Involvement |
|---|---|---|
| Jeff Taylor | 1100 West Traverse Parkway Lehi, Utah | Research, conception, design, development, engineering, and testing of the Accused Products |
| Jeff Lewis | 1100 West Traverse Parkway Lehi, Utah | Research, conception, design, development, engineering, and testing of the Accused Products |

*See* Defendant's document production, XW00000001 – XW00022625.  Defendant further states it will produce further documents that support this answer as discovery progresses in lieu of identifying any particular documents.

## INTERROGATORY NO. 5:

Separately for each version of each Accused Product, including each Product identified in response to Interrogatory Nos. 1 and/or 2, state in detail every location where research, design, development, marketing, testing or other use, servicing or other product administration or

9

ATTORNEYS' EYES ONLY

support activities occur; the nature of the work done at each location; and the number of personnel (employees, contractors, *etc.*) involved in the work at each location. Include in your response the identity of each Document that supports your answer or to which you referred in preparing your answer.

**RESPONSE TO INTERROGATORY NO. 5:**

The General Objections are incorporated herein.  The Objections to Interrogatories Nos. 1 and 2 are incorporated herein.  Defendant further objects to this Interrogatory as overly broad and unduly burdensome, including to the extent that it seeks identification of information for "each version of each Accused Product."  Defendant further objects to this Interrogatory on the grounds that the phrases "other use" and "servicing or other product administration or support activities" are vague and ambiguous.  The scope of this Interrogatory is disproportional to the needs of the case.

Subject to the foregoing objections, Defendant responds that research, design, development, marketing, and testing is performed and coordinated at 1100 West Traverse Parkway Lehi, Utah.  *See* Defendant's document production, XW00000001 – XW00022625. Defendant further states it will produce further documents that support this answer as discovery progresses in lieu of identifying any particular documents.

**INTERROGATORY NO. 6**:

Separately for each version of each Accused Product, including each Product identified in response to Interrogatory Nos. 1 and/or 2, describe how the Product has been sold, licensed, and/or used to sell or license any type of report in the United States, identifying the revenue generated by quarter since September 23, 2009, expressed in U.S. dollars and units and identifying the persons most knowledgeable about the same. Include in your response the

ATTORNEYS' EYES ONLY

identity of each Document that supports your answer or to which you referred in preparing your answer.

## RESPONSE TO INTERROGATORY NO. 6:

The General Objections are incorporated herein.  The Objections to Interrogatories Nos. 1 and 2 are incorporated herein.  Defendant further objects to this Interrogatory as overly broad and unduly burdensome, including to the extent that it seeks identification of information for "each version of each Accused Product."  Moreover, Defendant objects to this Interrogatory on the grounds that the phrase "describe how the Product has been sold, licensed, and/or used to sell or license any type of report in the United States" is vague and ambiguous.  Defendant further objects to the unjustified temporal designation.  The scope of this Interrogatory is disproportional to the needs of the case.

Subject to the foregoing objections, Defendant responds that it is producing a spreadsheet showing revenue generated from Roof Insight$^{TM}$, Property Insight$^{TM}$, and Aerial Sketch$^{TM}$ by month from June 2011 through December 2015 at Bates No. XW00022626.

## INTERROGATORY NO. 7:

Separately for each version of each Accused Product, including each Product identified in response to Interrogatory Nos. 1 and/or 2, identify each and every sales office, distributor, agent, representative, customer or Entity (including any third party) that uses, makes, imports, offers for sale, sells, or licenses such Product or uses such Product to generate any type of report, and identify any Entity (including any third party) with which Xactware has entered into an agreement or contract Relating To the use, sale and/or distribution in the United States of such Product. Include in your response the identity of each Document that supports your answer or to which you referred in preparing your answer.

11

ATTORNEYS' EYES ONLY

**RESPONSE TO INTERROGATORY NO. 7:**

The General Objections are incorporated herein.  The Objections to Interrogatories Nos. 1 and 2 are incorporated herein.  Defendant further objects to this Interrogatory as overly broad and unduly burdensome, including to the extent that it seeks identification of information for "each version of each Accused Product."  Moreover, Defendant objects to this Interrogatory as compound.  In addition, Defendant objects to this Interrogatory to the extent that it calls for information that is not relevant to any party's claims or defenses, or otherwise is disproportional to the needs of the case.

Subject to the foregoing objections, Defendant responds that the following is a list of Xactware's U.S. sales representatives:



Defendant further states it will produce documents that support this answer as discovery progresses in lieu of identifying any particular documents.

**INTERROGATORY NO. 8:**

Separately for each version of each Accused Product, including each Product identified in

12

ATTORNEYS' EYES ONLY

response to Interrogatory Nos. 1 and/or 2, describe all attempts or plans to design around or otherwise avoid infringement of the Eagle View Asserted Patents. Include in your response the identity of each Document that supports your answer or to which you referred in preparing your answer.

**RESPONSE TO INTERROGATORY NO. 8:**

The General Objections are incorporated herein. The Objections to Interrogatories Nos. 1 and 2 are incorporated herein. Defendant further objects to this Interrogatory as overly broad and unduly burdensome, including to the extent that it seeks identification of information for "each version of each Accused Product." Defendant further objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine and/or is otherwise privileged or protected from disclosure. Defendant further objects to this Interrogatory because it calls for a legal conclusion. Defendant further objects to the form of this Interrogatory because it improperly assumes an unwarranted conclusion of infringement. Defendant is unaware of any infringement of any valid claim of the Eagle View Asserted Patents. The scope of this Interrogatory is disproportional to the needs of the case.

Subject to the foregoing objections, Defendant responds: none.

**INTERROGATORY NO. 9:**

Separately for each version of each Accused Product, including each Product identified in response to Interrogatory Nos. 1 and/or 2, describe all interactions between Xactware personnel (employees, contractors, *etc*.) and Verisk Analytics, Inc. ("Verisk") personnel (employees, contractors, *etc*.) related thereto, including by identifying all Xactware and Verisk personnel involved in such interactions and their respective roles and responsibilities. Include in your response the identity of each Document that supports your answer or to which you referred in

ATTORNEYS' EYES ONLY

preparing your answer.

**RESPONSE TO INTERROGATORY NO. 9:**

The General Objections are incorporated herein.  The Objections to Interrogatories Nos. 1 and 2 are incorporated herein.  Defendant further objects to this Interrogatory as overly broad and unduly burdensome, including to the extent that it seeks identification of information for "each version of each Accused Product" and a description of "all interactions" and "all Xactware and Verisk personnel involved in such interactions."   The scope of this Interrogatory is disproportional to the needs of the case.

Subject to the foregoing objections, Defendant responds that to the extent any interactions took place between Xactware personnel and Verisk personnel concerning any of the Accused Products, they primarily involved ████████████████████████████████
████████████████████████████████████████████████████████████

Defendant further states it will produce documents that support this answer as discovery progresses in lieu of identifying any particular documents.

**INTERROGATORY NO. 10:**

Describe all interactions between Xactware and/or Verisk personnel (employees, contractors, *etc*.) on the one hand and Eagle View and/or Pictometry personnel (employees, contractors, *etc*.) on the other hand, including by identifying all Xactware, Verisk, Eagle View, and/or Pictometry personnel involved in such interactions and their respective roles and responsibilities. Include in your response the identity of each Document that supports your answer or to which you referred in preparing your answer.

**RESPONSE TO INTERROGATORY NO. 10:**

The General Objections are incorporated herein.   Defendant further objects to this

14

ATTORNEYS' EYES ONLY

Interrogatory as improperly unlimited in time and scope, and as overly broad and unduly burdensome.  Moreover, Defendant objects to this Interrogatory to the extent it seeks information that is not limited to any of the Accused Products, the Asserted Claims or the Asserted Patents.  In addition, Defendant objects to this Interrogatory to the extent the burden of deriving such information is substantially the same for Defendant as it is for Plaintiff.  The scope of this Interrogatory is disproportional to the needs of the case.

**INTERROGATORY NO. 11:**

Describe all efforts by Xactware and/or Verisk to emulate, capitalize on, reverse engineer, and/or analyze any Eagle View Product or technology, Identify any and all internal competitive analyses regarding rooftop aerial measurement technology, including with respect to Eagle View and/or any other competitor, and Identify all Eagle View Source Code, Products, and/or technical documentation (including any Document that contains any of Eagle View's proprietary information, including with respect to Eagle View's operating system, software products, Source Code, or any other aspects of Eagle View's technology, including with respect to Eagle View's hardware, software, and/or any other aspects of Eagle View's proprietary technologies) and/or Communications relating to such Eagle View Source Code, Products, and/or technical documentation in your possession, custody, or control, including by identifying the circumstances by which you acquired the same and all Persons knowledgeable about the same.

**RESPONSE TO INTERROGATORY NO. 11:**

The General Objections are incorporated herein.  Defendant further objects to this Interrogatory as improperly unlimited in time and scope, and as overly broad and unduly burdensome.  Defendant further objects to the form of this interrogatory because it improperly

15

ATTORNEYS' EYES ONLY

assumes an unwarranted conclusion of "efforts."  Defendant is unaware of any such "efforts" related to Eagle View Products or technology.  Moreover, Defendant objects to this Interrogatory to the extent the phrase "capitalize on" is vague and ambiguous.  In addition, Defendant objects to this Interrogatory as compound.

Subject to the foregoing objections, Defendant responds: none.

**INTERROGATORY NO. 12:**

Identify each and every current and former employee of Xactware who was employed by Eagle View, either directly or through a subcontractor, third party, or otherwise, at any time prior to such Person's employment by Xactware, either directly or through a subcontractor, third party, or otherwise, with Documents in such Person's possession, custody or control, that were generated while such Person was employed by Eagle View, either directly or through a subcontractor, third party, or otherwise, and/or where such Document contains any of Eagle View's proprietary information, including with respect to Eagle View's operating system, software products, Source Code, or any other aspects of Eagle View's technology, including with respect to Eagle View's hardware, software, and/or any other aspects of Eagle View's proprietary technologies, Eagle View's financial Documents, Eagle View's marketing or sales Documents, and/or any other Eagle View Documents related to Eagle View's business; or that brought such Documents to Xactware.

**RESPONSE TO INTERROGATORY NO. 12:**

The General Objections are incorporated herein.  Defendant further objects to this Interrogatory as improperly unlimited in time and scope, compound, and incomprehensible, and as overly broad and unduly burdensome, including to the extent that it seeks an identification of "each and every current and former employee of Xactware who was employed by Eagle View,

16

ATTORNEYS' EYES ONLY

either directly or through a subcontractor, third party, or otherwise." Moreover, Defendant objects to the extent the phrase "or otherwise" is vague and ambiguous. The scope of this Interrogatory is disproportional to the needs of the case.

Subject to the foregoing objections, Defendant responds: none.

## INTERROGATORY NO. 13:

If Xactware contends that any Accused Product, including the Products identified in response to Interrogatory Nos. 1 and 2, should not be subject to an injunction in This Case, describe in detail all factual and legal bases for Xactware's contentions; identify all information that supports or rebuts Xactware's contention(s); and identify all Persons most knowledgeable of, and all Documents Relating To, Xactware's contention(s).

## RESPONSE TO INTERROGATORY NO. 13:

The General Objections are incorporated herein. The Objections to Interrogatories Nos. 1 and 2 are incorporated herein. Defendant further objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome, and seeks a legal conclusion.

## INTERROGATORY NO. 14:

State the time, date, substance and circumstances of any Communications between Xactware and any other Entity, including but not limited to Verisk and/or EagleView Technology Corporation ("EVT"), in the context of Verisk's intended acquisition of, merger with, and/or other corporate transaction involving EagleView or otherwise, Concerning Eagle View, the Eagle View Asserted Patents and any Prior Art related thereto, the Accused Products, Eagle View software products, or This Case. For each Communication, identify all Entities that participated in the Communication, either by providing or receiving information, and all related

17

ATTORNEYS' EYES ONLY

Documents, including any notes, minutes, or memoranda Concerning the Communication and Documents embodying the Communication.

**RESPONSE TO INTERROGATORY NO. 14:**

The General Objections are incorporated herein.   Defendant further objects to this Interrogatory as improperly unlimited in time and scope, and as overly broad and unduly burdensome, including to the extent that it seeks information relating to "any Communications" as well as the "time, date, substance, and circumstances" for same.   Moreover, Defendant objects to this Interrogatory to the extent any communications involved Eagle View Technology Corporation because the burden of deriving such information is substantially the same for Plaintiff as it is for Defendant.   The scope of this Interrogatory is disproportional to the needs of the case.

Subject to the foregoing objections, Defendant responds that it will produce documents that contain information responsive to this Interrogatory as discovery progresses.

**INTERROGATORY NO. 15:**

For each of the Eagle View Asserted Patents, state with particularity all facts Concerning how and when Xactware first learned of the patent, including the date, circumstances and who was involved or has knowledge thereof, an identification of all persons within who were informed of the patent, an identification of all actions taken by Xactware as a result of becoming aware of the Eagle View Asserted Patents, including any comparisons made to the Accused Products; an identification of all documents and evidence relating to Xactware's awareness of the Eagle View Asserted Patents, and an identification of all individuals knowledgeable about Xactware's awareness of the Eagle View Asserted Patents and the subject matter known by them. Include in your response the identity of each Document that supports your answer or to

18

ATTORNEYS' EYES ONLY

which you referred in preparing your answer.

**RESPONSE TO INTERROGATORY NO. 15:**

The General Objections are incorporated herein. Defendant further objects to this Interrogatory as compound, overly broad, and unduly burdensome. Moreover, Defendant objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine and/or is otherwise privileged or protected from disclosure.

**INTERROGATORY NO. 16:**

Identify all Persons (including both experts and non-experts) that Xactware expects will offer testimony (written or oral) on its behalf at any hearing in This Case, the subject matter upon which each Person is expected to testify, and the facts and/or opinions to which each Person is expected to testify.

**RESPONSE TO INTERROGATORY NO. 16:**

The General Objections are incorporated herein. Defendant further objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome. Moreover, Defendant objects to this Interrogatory as premature.

Subject to the foregoing objections, Defendant responds that it will supplement its answer to this Interrogatory at the time required under the Local Rules and in accordance with the schedule entered in this action.

**INTERROGATORY NO. 17:**

Identify each Entity or Person with knowledge of one or more of the facts set forth in Xactware's responses to any Eagle View Interrogatory, including any Entity or Person who supplied information used in preparing responses to any Eagle View Interrogatory, or any facts

19

ATTORNEYS' EYES ONLY

alleged in the Complaint, and for each Entity or Person state in general terms the knowledge Xactware believes the Entity or Person possesses.

**RESPONSE TO INTERROGATORY NO. 17:**

The General Objections are incorporated herein. Defendant further objects to this Interrogatory on the grounds that it is compound, overly broad, and unduly burdensome.

Subject to the foregoing objections, Defendant responds that the following individuals provided information in support of Defendant's responses to Plaintiff's Interrogatories:

|  | *Subject Matter of Knowledge* |
|---|---|
|  | Development, creation, marketing and sales of the Accused Products |
|  | Development, creation, marketing and sales of the Accused Products |
|  | Knowledge of the Accused Products; correspondence between and among the parties |
|  | Sales of the Accused Products |
|  | Revenue and profit from sales of the Accused Products |

**INTERROGATORY NO. 18:**

Identify each Person from whom Documents were collected or reviewed for possible production in response to any Eagle View Request for Production to Xactware, and for each Document produced by Xactware in this action, identify the Entity or Person that was in possession, custody or control of such Document at the time of review or collection.

**RESPONSE TO INTERROGATORY NO. 18:**

The General Objections are incorporated herein. Defendant further objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome. Moreover, Defendant objects to this Interrogatory to the extent that it seeks information protected by the work product doctrine.

20

ATTORNEYS' EYES ONLY

**INTERROGATORY NO. 19:**

Assuming infringement by Xactware of the Eagle View Asserted Patents, state the amount of money that Xactware contends is owed to Eagle View and identify the complete factual and legal bases for that contention, including, without limitation: (i) an identification of each damages theory that you contend should be used in the damages calculation (*e.g.*, reasonable royalty, lost profits, *etc.*); (ii) the specific inputs that you contend should be used under each such theory in the damages calculation (*e.g.*, the royalty rate on net sales); (iii) the date(s) on which you contend damages should begin (and the bases supporting such dates); (iv) the amount of damages attributable to any portion of the Accused Products; and (v) an identification of all documents and things on which such calculation is based. If Xactware contends that Eagle View is not entitled to lost profits, then your answer should include, without limitation, the factual basis for any applicable *Panduit* factors; otherwise, your response should disclose the amount and basis for a claim of lost profits. Your answer should also include all factual bases for any contentions concerning the *Georgia Pacific* factors or other factors relevant to the determination of damages. If you contend that the entire market value of the Accused Products is not the proper damages base, your answer should identify what Xactware contends the proper damages base should be and identify all support for any contention that the basis of consumer demand for the Accused Products does not correspond to one or more elements of the asserted claims of the Eagle View Asserted Patents.

**RESPONSE TO INTERROGATORY NO. 19:**

The General Objections are incorporated herein.  Defendant further objects to this Interrogatory on the grounds that it is compound, vague, ambiguous, overly broad, and unduly burdensome.  Moreover, Defendant objects to this Interrogatory to the extent that it seeks

21

ATTORNEYS' EYES ONLY

information protected by the attorney-client privilege and/or the work product doctrine and/or is otherwise privileged or protected from disclosure. Defendant further objects to this Interrogatory because it calls for a legal conclusion. Defendant also objects to this Interrogatory as premature to the extent that this Interrogatory calls for expert opinion and testimony and expert reports are not yet required to be produced. Defendant further objects to this Interrogatory to the extent it is based on the faulty premise that Xactware has infringed a valid claim of any of the Eagle View Asserted Patents.

Subject to the foregoing objections, Defendant will supplement its answer to this Interrogatory at the time required under the Local Rules and in accordance with the schedule entered in this action.

**INTERROGATORY NO. 20:**

Describe the identity, content, interpretation, and circumstances surrounding the formation of all patent or technology license agreements executed since January 1, 2000 that: (a) you produced or will produce, identified or will identify in this case, (b) relate to aerial roof estimation systems and/or methods or any other technology related to the Asserted Patents or Accused Products, or (c) that you contend are comparable to a license that you would have taken in a hypothetical negotiation in This Case. For each such license, your answer should include at least the following: (i) names of all parties; (ii) the royalty rate; (iii) the royalty base; (iv) the term; (v) the technology at issue; (vi) the patent numbers for each patent covered by the license; (vii) the total amount of money paid under the license; (viii) whether the license was paid as a lump-sum or as a running royalty; (ix) whether it was assumed that the patents were infringed and valid; and (x) whether there were cross-licenses for any patents and, if so, how each cross-license impacted items (ii), (iii), (vii). Your description must also include all grounds for any

22

ATTORNEYS' EYES ONLY

contention that the license is comparable to what the parties would have agreed to in the hypothetical negotiation in this case.

**RESPONSE TO INTERROGATORY NO. 20:**

The General Objections are incorporated herein. Defendant further objects to this Interrogatory on the grounds that it is compound, vague, ambiguous, overly broad, and unduly burdensome. Moreover, Defendant objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine and/or is otherwise privileged or protected from disclosure. Defendant further objects to this Interrogatory because it calls for a legal conclusion. Defendant also objects to this Interrogatory as premature to the extent that this Interrogatory calls for expert opinion and testimony and expert reports are not yet required to be produced. Defendant further objects to this Interrogatory to the extent it is based on the faulty premise that Xactware has infringed a valid claim of any of the Eagle View Asserted Patents. Defendant further objects to the unjustified temporal designation.

Subject to the foregoing objections, Defendant responds: none.

**INTERROGATORY NO. 21:**

If Xactware contends that one or more claims of any of the Eagle View Asserted Patents are invalid under 35 U.S.C. § 101, describe in detail all factual and legal bases for Xactware's contention(s); identify all information that supports or rebuts Xactware's contention(s); and identify all Persons most knowledgeable of, and all Documents Relating To, Xactware's contention(s).

ATTORNEYS' EYES ONLY

**RESPONSE TO INTERROGATORY NO. 21:**

The General Objections are incorporated herein. Defendant further objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome and seeks a legal conclusion.

Subject to the foregoing objections, Defendant refers Plaintiff to Defendants Xactware Solutions, Inc. and Verisk Analytics, Inc.'s Motion to Dismiss Plaintiffs' Complaint Under 35 U.S.C. § 101 filed on February 9, 2015 [Dkt. No. 50]. ]


Dated: February 29, 2016                      s/Scott S. Christie
                                              Scott S. Christie
                                              Matthew A. Sklar
                                              Elina Slavin
                                              Ravin R. Patel
                                              **McCARTER & ENGLISH, LLP**
                                              Four Gateway Center
                                              100 Mulberry Street
                                              Newark, New Jersey  07102
                                              Phone: (973) 848-5388
                                              Fax: (973) 297-3981

                                              Lee Carl Bromberg
                                              Brian J. Larivee
                                              **McCARTER & ENGLISH, LLP**
                                              265 Franklin St.
                                              Boston, Massachusetts 02110
                                              Phone: (617) 449-6500
                                              Fax: (617) 607-9200

                                              *Counsel for Defendants Xactware*
                                              *Solutions, Inc. and Verisk Analytics, Inc.*

ATTORNEYS' EYES ONLY

## CERTIFICATE OF SERVICE

I hereby certify that on February 29, 2016, I caused a copy of XACTWARE SOLUTIONS, INC. RESPONSES TO EAGLE VIEW TECHNOLOGIES, INC.'S FIRST SET OF INTERROGATORIES (NOS. 1–21) to be served via email on counsel for Plaintiffs.

s/Scott S. Christie
Scott S. Christie

25

# Exhibit U

## FILED UNDER SEAL

EXHIBIT A
**PLAINTIFFS' CONTENTIONS PURSUANT TO L. PAT. R. 3.1(c)**
*Eagle View Technologies, Inc., et al. v. Xactware Solutions, Inc., et al.*, Civ. A. No. 1:15-cv-07025 (D.N.J)

<u>U.S. Patent 8,078,436</u>

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| **Claim 1:** A computing system for generating a roof estimate report, the computing system comprising: | To the extent that the preamble is found to be limiting, the accused products[4] constitute "a computing system for generating a roof estimate report." The Xactimate® platform supports mobile, online, and desktop computing systems. The Xactimate® computing system includes Xactware computers or servers used by Xactware in connection with Roof InSight[TM] and/or Property InSight[TM]. |

---

[1]     Unless otherwise indicated, all screen shots in this claim chart pertain to version 28 (including SU1 and SU16) of Xactimate®, and/or Property InSight[TM] Mass Production Tool. Plaintiffs have only received a subset of all versions of Xactimate® and expressly reserve the right to update these contentions as they receive further discovery.

[2]     Unless otherwise indicated, Plaintiffs' contentions pursuant to Local Patent Rule 3.1(c) are directed to each of the desktop, online, and mobile versions of Xactimate®. EV032111 - EV032112 (http://www.xactware.com/en-us/solutions/claims-estimating/xactimate/28/single-platform/).

[3]     All references listed are exemplary and non-exclusive. Plaintiffs reserve all rights to modify and supplement Exhibit A as discovery progresses. Plaintiffs further reserve the right to supplement these contentions as to the Doctrine of Equivalents if needed as discovery progresses and if the Court construes the asserted claims.

[4]     As defined in Section I.B and II.B of Plaintiffs' First Amended Disclosure Of Asserted Claims and Infringement Contentions Pursuant To L. Pat. R. 3.1.

1

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | **Xactimate Single Platform**<br><br>**Single platform, single version**<br><br>If you prefer to use Xactimate on a single platform you can choose from mobile, online, or the traditional desktop system. It's the same great Xactimate program that has been the standard of the industry since 1986 on the platform you prefer.<br><br>   ■ Mobile The mobile version of Xactimate is the first complete mobile estimating app for your Apple or Android device.<br>   ■ Online Now Xactimate is available anytime, anywhere from any computer with an Internet connection and a supported browser.<br>   ■ Desktop The tried-and-true estimating system on the tried-and-true hardware platform.<br><br>EV032006 (http://www.xactware.com/en-us/solutions/claims-estimating/xactimate/28/single-platform/).<br><br>***It's a Whole New Atmosphere™***<br><br>Xactimate is a fully functional, cloud-based estimating system. With your project and assignment information stored on Xactware's secure cloud, you can access and update a project anytime, anywhere using any of Xactimate's platforms – mobile, online, or desktop.<br><br>EV032004 (https://www.xactware.com/en-us/solutions/claims-estimating/xactimate/product/xactware-cloud/).<br><br>Roof InSight™ provides "comprehensive roof data that includes all dimensions and slopes." EV031997 (http://www.xactware.com/en-us/solutions/roof-data/roof-insight/features/).  Property InSight™ "includes all of the data found in Roof InSight."  EV031990 (http://www.xactware.com/en-us/solutions/property-data/property-insight/faqs/).<br><br>Both Roof InSight™ and Property InSight™ are used in combination with Xactimate®.  Both |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | can be accessed to generate roof estimate reports through Xactimate®. EV031997 (http://www.xactware.com/en-us/solutions/roof-data/roof-insight/features/) ("Request a Roof InSight data package with just a few mouse clicks from within either Xactimate or XactAnalysis. … The changes made in the Xactimate estimate are immediately reflected in the wide range of reports available to you."); EV031992 (http://www.xactware.com/en-us/solutions/property-data/property-insight/features/) ("Once enabled, requesting Property InSight within Xactimate or XactAnalysis requires just a few mouse clicks."). <br><br> In addition, Roof InSight™ and Property InSight™ include Xactimate® sketch data that can be viewed and modified with Xactimate®. EV031997 (http://www.xactware.com/en-us/solutions/roof-data/roof-insight/features/) ("The Roof InSight data package includes a precise Xactimate roof sketch which is seamlessly delivered into the Xactimate estimate"); EV031992 - EV031193 (http://www.xactware.com/en-us/solutions/property-data/property-insight/features/) ("The Property InSight data package includes a precise Xactimate 3D sketch."; "The data allows you to print a wide range of reports."). <br><br> Further, the Property InSight™ Mass Production Tool is used to generate Roof InSight™ and Property InSight™ reports that are delivered through Xactimate®. |
| a memory; | The accused products comprise memory. For example, Xactimate®'s software requires memory including "2GB of RAM" and "5GB of continual free space." EV032000 (http://www.xactware.com/en-us/solutions/claims-estimating/xactimate/28/system-requirements/) |
| a roof estimation module that is stored on the memory and that is configured, when executed, to: | The accused products comprise a "roof estimation module" as claimed. For example, the accused products allow users to "request a Roof InSight data package with just a few mouse clicks." EV031997 (http://www.xactware.com/en-us/solutions/roof-data/roof-insight/features/). |
| receive a first and a second aerial image of a building having a roof, each of the aerial images providing a different view of the roof of the | The accused products include a roof estimation module which can "receive a first and a second aerial image of a building having a roof, each of the aerial images providing a different view of the roof of the building, wherein the first aerial image provides a top plan view of the roof and the second aerial image provides an oblique perspective view of the roof, and are not a |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| building, wherein the first aerial image provides a top plan view of the roof and the second aerial image provides an oblique perspective view of the roof, and are not a stereoscopic pair; | stereoscopic pair."<br><br>For example, Roof InSight[TM] starts with "high-quality, high-resolution aerial data that includes aerial imagery."  EV031995 (http://www.xactware.com/en-us/solutions/roof-data/roof-insight/faqs/).<br><br>By way of further example, Roof InSight[TM] reports show an overhead image and multiple oblique aerial images that are not stereoscopic pairs: |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | EV032034, EV032121 ( |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | ███████████████; *see also* EV033461 - EV033462.<br><br>████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████<br><br>EV01427919. |
| correlate the first aerial image with the second aerial image; | The accused products include a roof estimation module that can "correlate the first aerial image with the second aerial image."<br><br>Xactware's correlating aerial images is demonstrated by the accused products. For example, the screenshots below demonstrate ███████████████████████████████████████ ██████████████ |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | EV032035, EV032126 (███████). |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | █████████████████████████████████████████████████████████████████████████████████ EV032037, EV032126 (████████████████████████████████ █████ ). |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | EV01427920. |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | EV01427921. |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | <br><br><br><br><br><br><br><br>EV01427922. |
| generate, based at least in part on the correlation between the first and second aerial images, a three-dimensional model of the roof that includes a plurality of planar roof sections that each have a corresponding slope, area, and edges; and | The accused products include a roof estimation module that "generates, based at least in part on the correlation between the first and second aerial images, a three-dimensional model of the roof that includes a plurality of planar roof sections that each have a corresponding slope, area, and edges."<br><br>For example, excerpts from a sample Roof InSight[TM] report shows |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | <br>EV033459. |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
|  |  EV033460. A three-dimensional model for Roof InSight™ can also be directly visualized in Xactimate® as demonstrated by the screenshot below: |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ EV032028, EV032121 (████████████████████████████████████████████████ ██████████████████████). |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| |  |
| | EV01427922. |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | <br>EV01427924. |
| generate and transmit a roof estimate report that includes one or more top plan views of the three-dimensional model annotated with numerical values that indicate the corresponding slope, area, and length of edges of at least some of the plurality of planar roof sections | The accused products include a roof estimation module that can "generate and transmit a roof estimate report that includes one or more top plan views of the three-dimensional model annotated with numerical values that indicate the corresponding slope, area, and length of edges of at least some of the plurality of planar roof sections using at least two different indicia for different types of roof properties."<br><br>For example, a Roof InSight[TM] report requested through Xactimate® is generated by Xactware and transmitted to the user. |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| using at least two different indicia for different types of roof properties. |  EV032027, EV032121 (███████████████████████████████ ██████████████). Moreover, the Roof InSight[TM] report includes an attached PDF document. |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | ████████████████████████████████████████████<br><br>EV032030, EV032121 (████████████████████████████ ████████████████).<br><br>Roof Insight™ reports use different indicia in different images.  In the first image, ████████ ████████████████████████████████████████ ████████████████████████████████████ |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
| --- | --- |
|  |  EV033459. |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| |  EV033460. |
| **Claim 2:** The computing system of claim 1 wherein the roof estimation module is further configured to correlate the first and second aerial images by receiving an indication of one or more corresponding | Claim 2 depends from claim 1. Each limitation of claim 1 is met by the accused products for the same reasons described above.  *See* analysis for Claim 1.<br><br>Additionally, the accused products include a roof estimation module that "is further configured to correlate the first and second aerial images by receiving an indication of one or more corresponding points on the building shown in each of the first and second aerial images."  For |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| points on the building shown in each of the first and second aerial images. | example, Xactware's roof estimation is demonstrated in the screenshot below ██████ ████████████████████████████████████ <br><br> ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ <br><br> EV032037, EV032126 (██████████████████ ████). |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | EV01427922. |
| **Claim 3:** The computing system of claim 1 wherein the roof estimation module is further configured to generate the three-dimensional model by receiving an indication of at least one of a ridgeline of the roof, a valley of the roof, an edge of the roof, a hip of the roof, and a gable of the roof. | Claim 3 depends from claim 1. Each limitation of claim 1 is met by the accused products for the same reasons described above. *See* analysis for Claim 1.<br><br>Additionally, the accused products include a roof estimation module that "is further configured to generate the three-dimensional model by receiving an indication of at least one of a ridgeline of the roof, a valley of the roof, an edge of the roof, a hip of the roof, and a gable of the roof." For example, Xactware's roof estimation is demonstrated in the screenshot below |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████<br><br>EV032036, EV032126 (██████████████████████████████████████████████ ████ ). |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | EV01427926. |
| **Claim 5:** The computing system of claim 1 wherein the roof estimation module is further configured to generate the roof estimate report by generating an electronic file that includes an image of the building along with line drawings of the one or more top plan views of the three- | Claim 5 depends from claim 1. Each limitation of claim 1 is met by the accused products for the same reasons described above. *See* analysis for Claim 1.<br><br>Additionally, the accused products include a roof estimation module that "is further configured to generate the roof estimate report by generating an electronic file that includes an image of the building along with line drawings of the one or more top plan views of the three-dimensional model."  For example, Roof InSight™ PDF reports are an example electronic file that includes |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| dimensional model. | ████████ <br><br> ████████████████████████████████████████████ <br><br> EV033459 - EV033462. |
| **Claim 7:** The computing system of claim 1 wherein the different types of roof properties include different roof measurements, and | Claim 7 depends from claim 1. Each limitation of claim 1 is met by the accused products for the same reasons described above. *See* analysis for Claim 1. <br><br> Additionally, the accused products include a roof estimation module that generates a report as claimed "wherein the different types of roof properties include different roof measurements.  For |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | example, Xactimate® can be used to view the Roof InSight™ report with ███████ ████████████████████████ ████████████████ |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | EV032029, EV032121 (████████████████████████ ███████████████████). <br><br> Similarly, Roof InSight™ PDF reports include ████████████ █████████████████████████████████. See EV033459 - EV033460. |
| the at least two different indicia include at least one of: length, slope, and area. | Additionally, the accused products include a roof estimation module that generates a report as claimed wherein "the at least two different indicia include at least one of: length, slope, and area."  For example, Xactimate® can be used to view the Roof InSight™ report with indicia of different measurements (such as area and length). |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | EV032029, EV032121 ( ▮ ). |

Similarly, Roof InSightTM PDF reports include views showing length, slope, and area.  See

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | EV033459 - EV033460. |
| **Claim 8:** The computing system of claim 7 wherein the length is located adjacent to a line representing a segment, the slope is located next to an arrow indicating direction of the slope and the area is located within a section having the area. | Claim 8 depends from claim 7. Each limitation of claim 7 is met by the accused products for the same reasons described above.  *See* analysis for Claim 7.<br><br>Additionally, the accused products generate reports "wherein the length is located adjacent to a line representing a segment, the slope is located next to an arrow indicating direction of the slope and the area is located within a section having the area"  as demonstrated by exemplary images from a Roof InSight[TM] report.<br><br><br><br>EV033459 - EV033460. |
| **Claim 15:** The computing system of claim 1 wherein the different types of roof properties include a ridge and the at least two different | Claim 15 depends from claim 1. Each limitation of claim 1 is met by the accused products for the same reasons described above.  *See* analysis for Claim 1.<br><br>Additionally, the accused products generate reports "wherein the different types of roof |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| indicia include a ridge length indicia, wherein the ridge length indicia is a ridge line with a numerical value adjacent thereto. | properties include a ridge and the at least two different indicia include ██████████<br><br>████████████████████████████████████ ███ ████<br><br>███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████<br><br>EV033459 - EV033460. |
| **Claim 17:** The computing system of claim 1 wherein the different types of roof properties include a slope and the at least two different indicia include a slope indicia, wherein the slope indicia is an arrow in a direction of the slope with a numerical value adjacent thereto. | Claim 17 depends from claim 1. Each limitation of claim 1 is met by the accused products for the same reasons described above. *See* analysis for Claim 1.<br><br>Additionally, the accused products generate reports "wherein the different types of roof properties include a slope and the at least two different indicia include a slope indicia, wherein the slope indicia is an arrow in a direction of the slope with a numerical value adjacent thereto" as demonstrated by an exemplary Roof InSight[TM] report. |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| |   EV033460. |
| **Claim 18:** A computer-implemented method for generating a roof estimate, the method comprising: | To the extent that the preamble is found to be limiting, the accused products enable a "computer-implemented method for generating a roof estimate report." The Xactimate® platform supports mobile, online, and desktop computing systems. The Xactimate® computing system includes Xactware computers or servers used by Xactware in connection with Roof InSight[TM] and/or Property InSight[TM]. |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | **Xactimate Single Platform**<br><br>**Single platform, single version**<br><br>If you prefer to use Xactimate on a single platform you can choose from mobile, online, or the traditional desktop system. It's the same great Xactimate program that has been the standard of the industry since 1986 on the platform you prefer.<br><br>  ■ Mobile The mobile version of Xactimate is the first complete mobile estimating app for your Apple or Android device.<br>  ■ Online Now Xactimate is available anytime, anywhere from any computer with an Internet connection and a supported browser.<br>  ■ Desktop The tried-and-true estimating system on the tried-and-true hardware platform.<br><br>EV032006 (http://www.xactware.com/en-us/solutions/claims-estimating/xactimate/28/single-platform/).<br><br>**It's a Whole New Atmosphere™**<br><br>Xactimate is a fully functional, cloud-based estimating system. With your project and assignment information stored on Xactware's secure cloud, you can access and update a project anytime, anywhere using any of Xactimate's platforms – mobile, online, or desktop.<br><br>EV032004 (https://www.xactware.com/en-us/solutions/claims-estimating/xactimate/product/xactware-cloud/).<br><br>Roof InSight™ provides "comprehensive roof data that includes all dimensions and slopes." EV031997 (http://www.xactware.com/en-us/solutions/roof-data/roof-insight/features/). Property InSight™ "includes all of the data found in Roof InSight."  EV031990 (http://www.xactware.com/en-us/solutions/property-data/property-insight/faqs/).<br><br>Both Roof InSight™ and Property InSight™ are used in combination with Xactimate®.  Both |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
|  | can be accessed to generate roof estimate reports through Xactimate®.  EV031997 (http://www.xactware.com/en-us/solutions/roof-data/roof-insight/features/) ("Request a Roof InSight data package with just a few mouse clicks from within either Xactimate or XactAnalysis. … The changes made in the Xactimate estimate are immediately reflected in the wide range of reports available to you."); EV031992 (http://www.xactware.com/en-us/solutions/property-data/property-insight/features/) ("Once enabled, requesting Property InSight within Xactimate or XactAnalysis requires just a few mouse clicks.").

In addition, Roof InSight™ and Property InSight™ include Xactimate® sketch data that can be viewed and modified with Xactimate®.  EV031997 (http://www.xactware.com/en-us/solutions/roof-data/roof-insight/features/) ("The Roof InSight data package includes a precise Xactimate roof sketch which is seamlessly delivered into the Xactimate estimate"); EV031992 - EV031993, (http://www.xactware.com/en-us/solutions/property-data/property-insight/features/) ("The Property InSight data package includes a precise Xactimate 3D sketch."; "The data allows you to print a wide range of reports.").

Further, the Property InSight™ Mass Production Tool is used to generate Roof InSight™ and Property InSight™ reports that are delivered through Xactimate®. |
| receiving a first and a second aerial image of a building having a roof, each of the aerial images providing a different view of the roof of the building wherein the first aerial image provides a top plan view of the roof and the second aerial image provides a view of the roof that is other than a top plan view and neither of the two images are part of a stereoscopic pair; | The accused products perform the step of "receiving a first and a second aerial image of a building having a roof, each of the aerial images providing a different view of the roof of the building, wherein the first aerial image provides a top plan view of the roof and the second aerial image provides an oblique perspective view of the roof, and are not a stereoscopic pair."

For example, Roof InSight™ starts with "high-quality, high-resolution aerial data that includes aerial imagery."  EV031995 (http://www.xactware.com/en-us/solutions/roof-data/roof-insight/faqs/).

By way of further example, Roof InSight™ reports show an overhead image and multiple oblique aerial images that are not stereoscopic pairs: |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | EV032034, EV032121 ( |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | ███████████████); *see also* EV033461 - EV033462.<br><br>████████████████████████████████<br><br>EV01427919. |
| correlating the first aerial image with the second aerial image; | The accused products perform the step of "correlating the first aerial image with the second aerial image."<br><br>Xactware's correlating aerial images is demonstrated by the accused products.  For example, the screenshots below demonstrate ████████████████████████<br>████████ |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
|  | ████████████████████████████████████████████████████████████████████████████████████████ EV032035, EV032126 (███████████████████████████████ ███ ). |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | EV032037, EV032126 (███████████████████████ ████). |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | EV01427920. |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
|  | EV01427921. |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████<br><br>EV01427922. |
| generating, based at least in part on the correlation between the first and second aerial images, a three-dimensional model of the roof that includes a plurality of planar roof sections that each have a corresponding slope, area, and edges; and | The accused products perform the step of "generating, based at least in part on the correlation between the first and second aerial images, a three-dimensional model of the roof that includes a plurality of planar roof sections that each have a corresponding slope, area, and edges."<br><br>For example, excerpts from a sample Roof InSight[TM] report shows ████████████<br>████████████████████████████████████<br>████████████ |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| |  EV033459. |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | <br><br>EV033460.<br><br>A three-dimensional model for Roof InSight[TM] can also be directly visualized in Xactimate® as demonstrated by the screenshot below: |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | EV032028, EV032121 ). |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | |
| | EV01427922. |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | <br>EV01427924. |
| transmitting a roof estimate report that includes one or more top plan views of the three-dimensional model annotated with numerical indications of at least one of the slope, area, and lengths of the edges of the plurality of planar roof sections, wherein the roof estimate report includes at least two | The accused products perform the step of "transmitting a roof estimate report that includes one or more top plan views of the three-dimensional model annotated with numerical values that indicate the corresponding slope, area, and length of edges of at least some of the plurality of planar roof sections using at least two different indicia for different types of roof properties."<br><br>For example, a Roof InSight[TM] report requested through Xactimate® is generated by Xactware and transmitted to the user. |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| different indicia for different types of roof properties. | <br><br>EV032027, EV032121 (███████████████████████).<br><br>Moreover, the Roof InSight[TM] report includes an attached PDF document. |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | <br><br>EV032030, EV032121 (█████████████████████████<br>████████████████).<br><br>Roof Insight[TM] reports use different indicia in different images as demonstrated by an exemplary Roof InSight[TM] report below. |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | EV033459. |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| |  EV033460. |
| **Claim 19:** The method of claim 18 wherein identifying the building includes receiving a street address of the building. | Claim 19 depends from claim 18. Each limitation of claim 18 is met by the accused products for the same reasons described above. *See* analysis for Claim 18.<br><br>Additionally, Xactimate® performs the step of the "method of claim 18 wherein identifying the building includes receiving a street address of the building." |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ EV032021, EV032121 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮). |
| **Claim 20:** The method of claim 18 wherein correlating the first and | Claim 20 depends from claim 18. Each limitation of claim 18 is met by the accused products for the same reasons described above. *See* analysis for Claim 18. |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| second aerial images includes receiving an indication of one or more corresponding points shown in each of the first and second aerial images. | Additionally, the accused products perform the "method of claim 18 wherein correlating the first and second aerial images includes receiving an indication of one or more corresponding points shown in each of the first and second aerial images." For example, Xactware's roof estimation is demonstrated in the screenshot below ████████████ ██████████████████████████ <br><br> ████████████████████████████ <br><br> EV032037, EV032126 (████████████████████ ████). |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | EV01427920. |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | EV01427922. |
| **Claim 21:** The method of claim 20 wherein receiving the indication of the corresponding point includes receiving the indication from a user. | Claim 21 depends from claim 20. Each limitation of claim 20 is met by the accused products for the same reasons described above. *See* analysis for Claim 20. <br><br> Additionally, the accused products perform the "method of claim 20 wherein receiving the indication of the corresponding point includes receiving the indication from a user." For example, Xactware's roof estimation is demonstrated in the screenshot below in which the roof estimation module receives an indication of corresponding points on a building based on user input. |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | EV032037, EV032126 ( ). |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | EV01427921. |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| |   EV01427922. |
| **Claim 31:** The method of claim 18 wherein the different types of roof properties include a ridge length and a valley length and the at least two different indicia include one color of a line associated with a ridge and a different color of a line associated with a valley. | Claim 31 depends from claim 18. Each limitation of claim 18 is met by the accused products for the same reasons described above.  *See* analysis for Claim 18.  Additionally, the accused products generate reports "wherein the different types of roof properties include a ridge length and a valley length and the at least two different indicia include one color of a line associated with a ridge and a different color of a line associated with a valley" as demonstrated by the exemplary Roof InSight$^{TM}$ report excerpted below. |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| |  EV033459. |
| **Claim 36:** A non-transitory computer-readable storage medium whose contents, which are computer executable instructions stored on the non-transitory | To the extent that the preamble is found to be limiting, the accused products comprise a "non-transitory computer-readable storage medium whose contents enable the computing system to generate a roof estimate report for a building having a roof, by causing, when executed by the computer processor of the computing system" as claimed.  The Xactimate® platform supports mobile, online, and desktop computing systems.  The Xactimate® computing system includes |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| computer-readable storage medium, when executed by a computer processor of a computing system, enable the computing system to generate a roof estimate report for a building having a roof, by causing, when executed by the computer processor of the computing system, the computing system to perform a method comprising: | Xactware computers or servers used by Xactware in connection with Roof InSight[TM] and/or Property InSight[TM]. |

Xactmate Single Platform

**Single platform, single version**

If you prefer to use Xactimate on a single platform you can choose from mobile, online, or the traditional desktop system. It's the same great Xactimate program that has been the standard of the industry since 1986 on the platform you prefer.

- ■ Mobile The mobile version of Xactimate is the first complete mobile estimating app for your Apple or Android device.
- ■ Online Now Xactimate is available anytime, anywhere from any computer with an Internet connection and a supported browser.
- ■ Desktop The tried-and-true estimating system on the tried-and-true hardware platform.

EV032006 (http://www.xactware.com/en-us/solutions/claims-estimating/xactimate/28/single-platform/).

*It's a Whole New Atmosphere™*

Xactimate is a fully functional, cloud-based estimating system. With your project and assignment information stored on Xactware's secure cloud, you can access and update a project anytime, anywhere using any of Xactimate's platforms – mobile, online, or desktop.

EV032004 (https://www.xactware.com/en-us/solutions/claims-estimating/xactimate/product/xactware-cloud/).

Roof InSight[TM] provides "comprehensive roof data that includes all dimensions and slopes." EV031997 (http://www.xactware.com/en-us/solutions/roof-data/roof-insight/features/).  Property InSight[TM] "includes all of the data found in Roof InSight."  EV031990

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | (http://www.xactware.com/en-us/solutions/property-data/property-insight/faqs/).<br><br>Both Roof InSight[TM] and Property InSight[TM] are used in combination with Xactimate®.  Both can be accessed to generate roof estimate reports through Xactimate®.  EV031997 (http://www.xactware.com/en-us/solutions/roof-data/roof-insight/features/) ("Request a Roof InSight data package with just a few mouse clicks from within either Xactimate or XactAnalysis. … The changes made in the Xactimate estimate are immediately reflected in the wide range of reports available to you."); EV031992 - EV031993 (http://www.xactware.com/en-us/solutions/property-data/property-insight/features/) ("Once enabled, requesting Property InSight within Xactimate or XactAnalysis requires just a few mouse clicks.").<br><br>In addition, Roof InSight[TM] and Property InSight[TM] include Xactimate® sketch data that can be viewed and modified with Xactimate®.  EV031997 (http://www.xactware.com/en-us/solutions/roof-data/roof-insight/features/) ("The Roof InSight data package includes a precise Xactimate roof sketch which is seamlessly delivered into the Xactimate estimate"); EV031992 - EV031993 (http://www.xactware.com/en-us/solutions/property-data/property-insight/features/) ("The Property InSight data package includes a precise Xactimate 3D sketch."; "The data allows you to print a wide range of reports.").<br><br>Further, the Property InSight™ Mass Production Tool is used to generate Roof InSight™ and Property InSight™ reports that are delivered through Xactimate®. |
| receiving two or more images of the building, wherein at least one of the two or more images provides an oblique perspective view of the roof and one of the images provides a top plan view of the roof | The accused products perform the step of "receiving two or more images of the building, wherein at least one of the two or more images provides an oblique perspective view of the roof and one of the images provides a top plan view of the roof."<br><br>For example, Roof InSight[TM] reports show ███████████████████████████████ ████████████████████████ |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | EV032034, EV032121 ( |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | ); *see also* EV033461 - EV033462. <br><br> EV01427919. |
| receiving an indication of pairs of points on the two or more images, each pair of points corresponding to substantially the same point on the roof depicted in each of the two or more images; | The accused products perform "receiving an indication of pairs of points on the two or more images, each pair of points corresponding to substantially the same point on the roof depicted in each of the two or more images." <br><br> Xactware's correlating aerial images is demonstrated by the accused products.  For example, the screenshots below demonstrate receiving an indication of which points on the first image |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
|  | correspond to substantially the same points on the second image as indicated by the colored three-dimensional model being placed in the second image below. |

EV032035, EV032126 (███████████ ███).

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | EV032037, EV032126 (███████████████████████ ████). |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| |  EV01427922. |
| generating, based on the two or more images of the building, a three- dimensional model of the roof that includes a plurality of planar roof sections that each have a corresponding area and edges, wherein the generating, based on the two or more images of the building, the model of the roof | The accused products perform the step of "generating, based on the two or more images of the building, a three- dimensional model of the roof that includes a plurality of planar roof sections that each have a corresponding area and edges, wherein the generating, based on the two or more images of the building, the model of the roof includes generating the model of the roof based on the receiving the indication of the pairs of points on the two or more images of the building."<br><br>For example, excerpts from a sample Roof InSight™ report shows  |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| includes generating the model of the roof based on the receiving the indication of the pairs of points on the two or more images of the building; and |  EV033459. |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| |  EV033460.<br><br>A three-dimensional model for Roof InSight[TM] can also be directly visualized in Xactimate® as demonstrated by the screenshot below: |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | EV032028, EV032121 (██████████████████████). |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | EV01427922. |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| |  EV01427924. |
| transmitting a roof estimate report that includes one or more views of the model, the report being annotated with numerical indications of the area and lengths of the edges of at least some of the plurality of planar roof sections, wherein the roof estimate report includes at least two different | The accused products perform the step of "transmitting a roof estimate report that includes one or more views of the model, the report being annotated with numerical indications of the area and lengths of the edges of at least some of the plurality of planar roof sections, wherein the roof estimate report includes at least two different indicia for different types of roof properties."<br><br>For example, a Roof InSight[TM] report requested through Xactimate® is generated by Xactware and transmitted to the user. |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| indicia for different types of roof properties. | <br><br>EV032027, EV032121 (███████████████████████<br>██████████).<br><br>Moreover, the Roof InSight™ report includes an attached PDF document. |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | <br><br>EV032030, EV032121 (███████████████████████ ██████████████████).<br><br>Roof Insight[TM] reports use different indicia in different images as demonstrated by the exemplary Roof InSight[TM] report excerpted below. |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| |  EV033459. |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | <br>EV033460. |
| **Claim 37:** The non-transitory computer-readable storage medium of claim 36 wherein generating the model of the roofbased on the receiving the indication of the pairs of points on the two or more | Claim 37 depends from claim 36. Each limitation of claim 36 is met by the accused products for the same reasons described above. *See* analysis for Claim 36. |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| images includes: | |
| correlating two of the two or more images by registering the pairs of points; and | Additionally, the accused products perform "correlating two of the two or more images by registering the pairs of points."<br><br>Xactware's correlating aerial images is demonstrated by the accused products.  For example, the screenshots below demonstrate ███████████████████ ████████████████████<br><br>█████████████████████████████████████████████<br><br>EV032035, EV032126 (███████████████████████ ████). |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | EV032037, EV032126 ( ). |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | <br>EV01427920. |
| generating the three-dimensional model based on the correlation between the two of the two or more images. | The accused products perform "generating the three-dimensional model based on the correlation between the two of the two or more images."<br><br>For example, excerpts from a sample Roof InSight<sup>TM</sup> report shows views of a three-dimensional model generated from the correlation of images. |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | <br>EV033459. |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | <br><br>EV033460.<br><br>A three-dimensional model for Roof InSight[TM] can also be directly visualized in Xactimate® as demonstrated by the screenshot below: |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | EV032028, EV032121 (████████████████████████████████ ████████████). |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | EV01427/922. |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | EV01427924. |
| **Claim 38:** The non-transitory computer-readable storage medium of claim 36 wherein the method further comprises generating the roof estimate report, the roof estimate report including annotated line drawings of each of the one or more views of the model. | Claim 38 depends from claim 36. Each limitation of claim 36 is met by the accused products for the same reasons described above. *See* analysis for Claim 36.<br><br>The accused products comprise "the non-transitory computer-readable storage medium of claim 36 wherein the method further comprises generating the roof estimate report, the roof estimate report including annotated line drawings of each of the one or more views of the model."  For example, excerpts from a sample Roof InSight[TM] report shows ████████████ ████ |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | EV033459. |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| |  |
| | EV033460. |
| **Claim 40:** The non-transitory computer-readable storage medium of claim 36 wherein generating the model of the roof includes automatically identifying at least some features of the roof for inclusion in the model. | Claim 40 depends from claim 36. Each limitation of claim 36 is met by the accused products for the same reasons described above.  *See* analysis for Claim 36.

Additionally, the accused products comprise "the non-transitory computer-readable storage medium of claim 36 wherein generating the model of the roof includes automatically identifying at least some features of the roof for inclusion in the model."  For example, Xactware can "detect and automatically trace the slopes of a roof."  EV032113 (http://www.xactware.com/en- |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
|  | au/Solutions/claims-estimating/xactimate/27-5/aerial-sketch/). |
| **Claim 42:** The non-transitory computer-readable storage medium of claim 36 wherein the method further comprises transmitting to a remote computing system a computer-readable data file that includes a representation of the model. | Claim 42 depends from claim 36. Each limitation of claim 36 is met by the accused products for the same reasons described above.  *See* analysis for Claim 36.<br><br>Additionally, the accused products comprise "the non-transitory computer-readable storage medium of claim 36 wherein the method further comprises transmitting to a remote computing system a computer-readable data file that includes a representation of the model."  For example, a Roof InSight[TM] report requested through Xactimate® is transmitted to the application.<br><br>EV032027, EV032121 (███████████████ ███████).<br><br>Moreover, the Roof InSight[TM] report includes computer-readable datafiles. |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| | █████████████████████████████████████████████████████████████ |
| | EV032030, EV032121 (███████████████████████████████████████████ ████████████████████). |
| **Claim 55:** The non-transitory computer-readable storage medium of claim 36 wherein the different types of roof properties include a | Claim 55 depends from claim 36. Each limitation of claim 36 is met by the accused products for the same reasons described above.  *See* analysis for Claim 36.

Additionally, the accused products comprise "The non-transitory computer-readable storage |

| Claim Terms in U.S. Patent 8,078,436 | Plaintiffs' Contentions Pursuant to Local Patent Rule 3.1(c)[123] |
|---|---|
| valley and the at least two different indicia include a valley length indicia, wherein the valley length indicia is a valley line with a numerical value adjacent thereto. | medium of claim 36 wherein the different types of roof properties include a valley and the at least two different indicia include a valley length indicia, wherein the valley length indicia is a valley line with a numerical value adjacent thereto" as demonstrated by the exemplary Roof InSight[TM] report excerpted below.<br><br><br><br>EV033459. |