**REDACTED**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| EAGLE VIEW TECHNOLOGIES, INC., and PICTOMETRY INTERNATIONAL CORP., <br><br> Plaintiffs, <br><br> v. <br><br> XACTWARE SOLUTIONS, INC., and VERISK ANALYTICS, INC., <br><br> Defendants. | Civil Action No. 1:15-cv-07025 <br><br> Hon. Robert B. Kugler, U.S.D.J. <br> Hon. Joel Schneider, U.S.M.J. <br><br> **Final Pretrial Conference:** <br> April 1, 2019 at 10:00 AM (D.E. 559) <br><br> **Jury Selection and Trial:** <br> June 10, 2019 at 9:00 AM (D.E. 565) |

**PROPOSED JOINT FINAL PRETRIAL ORDER**

| | | PTO Page | Tab(s) |
|---|---|---|---|
| I | Jurisdiction and Brief Summary of the Case | 2 | - |
| II | Stipulated Facts | 5 | 2 |
| III | Plaintiff's Contested Facts | 5 | 3 |
| IV | Defendants' Contested Facts | 5 | 4 |
| V | Witnesses and Summary of Testimony | 5 | 5A-5B |
| VI | Expert Witnesses | 6 | 6A-6E |
| VII | Exhibits | 8 | 7A-7B |
| VIII | Law | 9 | 8A-8B |
| IX | Miscellaneous | 9 | - |
| X | Jury Trial | 20 | - |

ME1 30290577v.1

The following shall constitute the Final Pretrial Order pursuant to Rule 16, Federal Rules of Civil Procedure. This Final Pretrial Order shall govern the conduct of the trial of this case. Amendments to this Joint Final Pretrial Order will be allowed only in exceptional circumstances to prevent manifest injustice, or under any other circumstances permitted by the Court. *See* Fed. R. Civ. P. 16(e). Counsel are urged to move to amend in a timely fashion any portion of the Joint Final Pretrial Order that must be changed or modified between the filing of the Joint final Pretrial Order and the trial date.

**APPEARANCES:**

| **Plaintiff's Counsel** | **Defendants' Counsel** |
|---|---|
| Liza M. Walsh<br>Hector D. Ruiz<br>Eleonore Ofosu-Antwi<br>WALSH PIZZI O'REILLY FALANGA LLP<br>One Riverfront Plaza<br>1037 Raymond Boulevard, Suite 600<br>Newark, NJ 07102<br>(973) 757-1100 | Scott S. Christie<br>Matthew A. Sklar<br>Ravin R. Patel<br>MCCARTER & ENGLISH, LLP<br>Four Gateway Center<br>100 Mulberry Street<br>Newark, New Jersey 07102<br>(973) 848-5388 |
| Adam R. Alper<br>Brandon H. Brown<br>KIRKLAND & ELLIS LLP<br>555 California Street<br>San Francisco, CA 94104<br>(415) 439-1400 | Lee Carl Bromberg<br>Wyley S. Proctor<br>Brian M. Seeve<br>Thomas R. Fulford<br>Thomas F. Foley<br>James Thomson<br>MCCARTER & ENGLISH, LLP<br>265 Franklin St.<br>Boston, Massachusetts 02110<br>(617) 449-6500 |
| Michael W. De Vries<br>KIRKLAND & ELLIS LLP<br>333 South Hope Street<br>Los Angeles, CA 90071<br>(213) 680-8400 | |
| Leslie M. Schmidt<br>KIRKLAND & ELLIS LLP<br>601 Lexington Ave<br>New York, NY 10022<br>(212) 446-4800 | |
| Gianni Cutri<br>Joel R. Merkin<br>KIRKLAND & ELLIS LLP<br>300 North LaSalle<br>Chicago, IL 60654<br>(312) 862-2000 | |

1

## PART I.   JURISDICTION AND BRIEF SUMMARY OF THE CASE

1. This action arises under the patent laws of the United States, 35 U.S.C. §§ 100 *et seq.* This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a). Subject matter jurisdiction is not disputed. Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400(b). For purposes of this action only, no party has contested personal jurisdiction or venue.

2. EagleView alleges infringement of U.S. Patent Nos. 8,078,436 (the "'436 patent"), 8,170,840 (the "'840 patent"), 9,129,376 (the "'376 patent"), 8,825,454 (the "'454 patent"), 8,818,770 (the "'770 patent"), and 9,135,737 (the "'737 patent").

3. The asserted claims ("Asserted Claims") are:

| Asserted Patents | Asserted Claims |
|---|---|
| '436 patent | Claims 2, 21, and 36 |
| '840 patent | Claims 10 and 18 |
| '376 patent | Claims 17, 20, and 23 |
| '454 patent | Claim 26 |
| '770 patent | Claim 12 |
| '737 patent | Claim 25 |

4. EagleView contends that Defendants' infringement is willful and that EagleView is entitled to damages, including lost profits, sufficient to compensate it for Defendants' infringement. Defendants contend that they do not infringe and are not liable for infringement of any of the Asserted Claims, that there is no basis for assertion of willful infringement, and that all of the Asserted Claims are invalid.

5. EagleView seeks:

   i. a judgment declaring that the Asserted Claims are not invalid;

   ii. a judgment declaring that the Asserted Claims are infringed under §§ 271(a), (f), and (g);

   iii. a judgment declaring that Defendants have induced and continue to induce the infringement of the Asserted Patents;

    iv.    a judgment permanently enjoining Defendants from engaging in the commercial manufacture, use, sale, offer to sell and/or importation of the Accused Products and anything that is not more than colorably different than the Accused Products until the expiration of the Asserted Patents, or alternatively, for ongoing royalties for Defendants' ongoing infringement;

    v.    a judgment declaring that Defendants' infringement of the Asserted Patents is willful and that EagleView is entitled to enhanced damages;

    vi.    a judgment declaring that EagleView is entitled to damages including lost profits to compensate EagleView for Defendants' infringement, including price erosion damages;

    vii.    a judgment declaring that EagleView is entitled to damages of at least a reasonable royalty to compensate EagleView for Defendants' infringement;

    viii.    a judgment declaring that EagleView is entitled to an accounting[1] and pre- and post-judgment interest;

    ix.    a judgment declaring that this is an exceptional case and awarding EagleView its attorneys' fees and costs; and

    x.    a judgment declaring that Defendants have failed to establish each of the affirmative defenses listed in their Second Amended Answer, Affirmative Defenses, Counterclaims, and Jury Demand (Dkt. No. 238)[2].

6.    Defendants seek:

    i.    a judgment declaring that the Asserted Claims are invalid;

    ii.    a judgment declaring that they do not infringe, have not infringed, and are not liable for infringement of any of the Asserted Claims and that there is no basis for assertion of willful infringement;

---

[1] Defendants dispute that EagleView is entitled to an accounting because Plaintiff failed to request relief in the form of an accounting. Plaintiff disagrees with Defendants' position. For example, Plaintiff's first amended complaint requested "damages arising from Xactware's and Verisk's infringement" and further sought "other and further relief as the Court may deem just and proper." Dkt. No. 30. Plaintiff is thus properly seeking an accounting. *See Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348 (Fed. Cir. 2013); *see also Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197 (Fed. Cir. 2010).

[2] On March 28, 2018, the Court granted EagleView's motion to dismiss the inequitable conduct counterclaim (Count XIX) in Defendants' Second Amended Answer, and to strike from the Answer Defendants' Twelfth Affirmative Defense of inequitable conduct. *See* Dkt. Nos. 408 and 409. As such, Defendants' inequitable-conduct defense and counterclaim are no longer at issue in this case.

    iii.    a judgment declaring that EagleView is not entitled to any damages—whether as lost profits, price erosion, reasonable royalty, or otherwise;

    iv.    a judgment declaring that EagleView is not entitled to pre- or post-judgment interest;

    v.    a judgment rejecting Eagle View's request for attorneys' fees and costs;

    vi.    a judgment declaring that EagleView has failed to establish each of the claims in its amended complaint dated November 30, 2015 along with a dismissal of its amended complaint with prejudice (Dkt. No. 30);

    vii.    a judgment declaring that Defendants have prevailed on their Counterclaims asserted against EagleView;

    viii.    a permanent injunction prohibiting EagleView, its officers, its agents, its servants, its employees, its attorneys, and those in active concert or participation with them directly or indirectly from asserting or threatening to assert infringement of any of the Asserted Claims against Defendants or any of their agents, employees, representatives, strategic business partners, distributors, contractors, customers, advisors, and investors; and

    ix.    a judgment declaring that this is an exceptional case under 35 U.S.C. § 285 in favor of Defendants and awarding Defendants their attorneys' fees, costs, and expenses.

**PART II.**    **STIPULATED FACTS**

The parties have stipulated to the facts attached at **Tab 2**.

**PART III.**    **PLAINTIFF'S CONTESTED FACTS**

Plaintiff's statement of the facts it intends to prove at trial is attached at **Tab 3**.

**PART IV.**    **DEFENDANTS' CONTESTED FACTS:**

Defendants' statement of the facts they intend to prove at trial is attached at **Tab 4**.

**PART V.**    **WITNESSES AND SUMMARY OF TESTIMONY:**

Absent ~~an extraordinary showing of good cause,~~ [handwritten: leave of court,] only the witnesses whose names and addresses are listed herein will be permitted to testify at the time of trial. The listing of a witness on a party's witness list does not require that party to call that witness to testify, either in person

or by deposition. In the event a party seeks to call a substitute witness, the parties agree they will make an application to the Court to amend the Joint Final Pretrial Order.

     **A.**    **Plaintiff's Witnesses and Summary of Their Testimony**

Information concerning Plaintiff's witnesses is attached at **Tab 5A**.

     **B.**    **Defendants' Witnesses and Summary of Their Testimony**

Information concerning Defendants' witnesses is attached at **Tab 5B**.

**PART VI.**    **EXPERT WITNESSES:**

Any expert not listed in this portion of the Joint Final Pretrial Order shall not be permitted to testify at the time of trial. Additionally, the *curriculum vitae* of every expert expected to testify at the time of trial shall be attached to this Joint Final Pretrial Order.

1.    **Plaintiff's expert witnesses are:**

    a) Robert L. Stevenson, Ph.D. (*curriculum vitae* attached at **Tab 6A**)

    b) Jonathan I. Arnold, Ph.D. (*curriculum vitae* attached at **Tab 6B**)

    .

2.    **Defendants' expert witnesses are:**

- Geoff Cohen, Ph.D. (*curriculum vitae* attached at **Tab 6C**)
- Joseph Mundy, Ph.D. (*curriculum vitae* attached at **Tab 6D**)
- Philip Green (*curriculum vitae* attached at **Tab 6E**)

## PART VII.   EXHIBITS[3]

The parties are not required to list exhibits that will be used, if at all, only for impeachment.[4]

### A.   Plaintiff's Exhibits and Defendants' Objections

A list of Plaintiff's exhibits that it may offer into evidence is attached at **Tab 7A**. Defendants' objections are also contained in the list.

### B.   Defendants' Exhibits and Plaintiff's Objections

A list of Defendants' exhibits that it may offer into evidence is attached at **Tab 7B**. Plaintiff's objections are also contained in the list.

## PART VIII.   LAW

### A.   Plaintiff's Statement of the Legal Issues in this Case

Plaintiff's statement of the legal issues in this case is attached at **Tab 8A**.

### B.   Defendants' Statement of the Legal Issues in this Case

Defendants' statement of the legal issues in this case is attached at **Tab 8B**.

---

[3]   To the extent the Court's ruling on the parties' motions *in limine* impacts the admissibility of any exhibits on the parties' exhibit list, the parties may serve redacted exhibits in accordance with the Court's ruling.

[4]   On April 15, 2019, the Parties supplemented the following documents underlying the parties' respective damages calculations with additional data through March 2019: EV01427937; EV01552476; EV01553685; EV01553466; EV01553683; XW00942354; XW00942356. By May 3, 2019, the Parties may provide updated damages calculations based solely on this additional data; the Parties may not otherwise provide new, revised, or updated expert opinions regarding damages.

PART IX. **MISCELLANEOUS**

    A. **Motions *in Limine*[5]**

        i. <u>Plaintiff intends to file the following Motions *in limine*</u>:

1. Exclude any argument, evidence, testimony, or reference to irrelevant, potentially inflammatory remarks, concerning, for example, race, politics, or sex.

2. Exclude any argument, evidence, testimony, or suggestion that any of Defendants' technology is invalidating prior art to the Asserted Patents, including Aerial Sketch v.1.

3. Exclude any argument, evidence, or testimony regarding Defendants' patents, including any suggestion that the existence of Defendants' patents is a reason they do not infringe the Asserted Patents.

4. Exclude any argument, evidence, or testimony regarding Defendants' stricken and dismissed inequitable conduct defense and/or counterclaim, and regarding the parties dropping patents and claims from this action.

5. Exclude any argument, evidence, testimony, or reference to any of Defendants' invalidity theories estopped by *inter partes* review decisions.

6. Exclude any argument, evidence, or testimony that Xactware does not and did not willfully infringe the asserted patents.

7. Exclude any argument, evidence, or testimony that is inconsistent with the Court's claim constructions or the parties' stipulated constructions.

8. Exclude any argument, evidence, or testimony relating to any prior legal disputes or litigation between the parties, specifically *Eagle View Technologies, Inc. v. Xactware Solutions, Inc.*, No. 2:12-cv-01913 (W.D. Wash. Oct. 29, 2012).

9. Exclude any argument, evidence, or testimony related to any equitable issues to be decided by the Court, including references to Vista and the Vista and Verisk Merger Agreements.

        ii. <u>Defendants intend to file the following motions in *limine*</u>:

1. Exclude references to *inter partes* review proceedings concerning the Asserted Patents or any other patent previously asserted in this case, and

---

[5] *See* Footnote 3.

any subsequent appeals of these *inter partes* review proceedings to the Court of Appeals for the Federal Circuit (collectively, the "IPR Proceedings"), as well as transcripts or recordings of hearings and oral argument in the IPR Proceedings, briefs and other documents from the IPR Proceedings containing attorney argument, expert testimony from the IPR Proceedings, and the results of and any documents containing rulings and decisions in the IPR Proceedings.

2. Exclude any argument, evidence, testimony, or suggestion that Eagle View is entitled to any pre-issuance damages under a provisional rights theory pursuant to 35 U.S.C. §154(d).[6]

3. Exclude any argument, evidence, or testimony regarding the statements made by Scott Stephenson in connection with the January 15, 2014 investor call.

4. Preclude Plaintiff from presenting, proffering, or relying on any argument, evidence, or testimony regarding the Doctrine of Equivalents.[7]

5. Exclude any argument, evidence, or testimony regarding, and preclude Plaintiff from relying whatsoever on the following, per previous Order of this Court (Dkt. 330):

   a. The Doctrine of Equivalents, including the following arguments or theories, which were stricken by the Court:

      i. that a "roof estimation module" may be logically or physically split or separated between different software threads, processes, tools, widgets, components, processors, cores, computers, network devices, or applications, or be implemented by means of parallel and distributed computing, such as splitting a program between multiple distinct hardware components or across networked devices

---

[6] During the Parties' conference, Plaintiff indicated it would be willing to stipulate on this issue. At Plaintiff's request, Defendants have proposed the following stipulation: "Plaintiff will not present any argument, evidence, testimony, or suggestion that EagleView is entitled to any pre-issuance damages or pre-reexamination certificate issuance damages." Defendants await Plaintiff's response.

[7] At Plaintiff's request, Defendants have proposed the following stipulation: "Plaintiff will not present, proffer, or rely on any argument, evidence, or testimony regarding any theory of infringement under the Doctrine of Equivalents." Defendants await Plaintiff's response.

8

        and still meet the limitations of the asserted claims; and

    ii. that a "memory" on separate hardware boxes, such as hard drives, flash drives, RAM, processor caches, network storage, servers storing information over a network or the Internet still meets the limitations of the asserted claims.

 b. Source code Bates-numbered higher than XWSC648;

 c. Plaintiff's amended L. Pat. R. 3.2(b) disclosures listed in their July 12 and 19, 2017 supplemental answers to interrogatory 7, regarding documents and source code evidencing conception and reduction to practice; and

 d. Plaintiff's new conception and reduction to practice dates in their July 12 and 19, 2017 answers to Interrogatory 7, to the extent the new dates are based on Plaintiff's stricken documents and source code.[8]

---

[8] During the Parties' conference, Plaintiff indicated that it would be willing to stipulate on this issue. At Plaintiff's request, Defendants have proposed the following stipulation: "Plaintiff will not, per previous Order of this Court (Dkt. 330), present any argument, evidence, or testimony regarding:

 i. theories raised under the Doctrine of Equivalents, including the theories, previously stricken by the Court, that: (1) a "roof estimation module" may be logically or physically split or separated between different software threads, processes, tools, widgets, components, processors, cores, computers, network devices, or applications, or be implemented by means of parallel and distributed computing, such as splitting a program between multiple distinct hardware components or across networked devices and still meet the limitations of the asserted claims; and (2) a "memory" on separate hardware boxes, such as hard drives, flash drives, RAM, processor caches, network storage, servers storing information over a network or the Internet still meets the limitations of the asserted claims;

 ii. theories based on source code with Bates numbers higher than XWSC648;

 iii. theories presented in Plaintiff's amended L. Pat. R. 3.2(b) disclosures listed in their July 12 and 19, 2017 supplemental answers to interrogatory 7, regarding documents and source code evidencing conception and reduction to practice; and

 iv. Plaintiff's new conception and reduction to practice dates in their July 12 and 19, 2017 answers to Interrogatory 7, to the extent the new dates are based on Plaintiff's stricken documents and source code.

9

    6.    Exclude any argument, evidence, or testimony regarding or referring in any way to House Report, including that House Report practices or embodies any element of any Asserted Claim.

    7.    Exclude any argument, purported evidence, testimony, or suggestion of direct infringement by Verisk, infringement by Verisk pursuant to 35 U.S.C. § 271(g), infringement of the '737 patent by Xactware pursuant to 35 U.S.C. § 271(f)(1) or (2), or any other theory of infringement not disclosed in EagleView's Second Amended Disclosure of Asserted Claims and Infringement Contentions Pursuant to L. Pat. R. 3.1.

    8.    Exclude any argument, evidence, testimony, or suggestion that EagleView is entitled to an accounting or any other relief not requested in the First Amended Complaint.[9]

    9.    Preclude Plaintiff from presenting, proffering, introducing or relying upon (a) any argument or testimony that the firm of McCarter & English, LLP, counsel for Defendants, represented Verisk in any attempted acquisition of EagleView; and (b) any documentary evidence that is not redacted to remove portions that have been identified to Plaintiff as privileged or otherwise reference the firm of McCarter & English, LLP or the names of any of its attorneys, including exhibits PTX-916 and PTX-929.

### B.   Order of Presentation

Subject to the Court's approval, the parties have agreed as follows:

    1.    Plaintiff will present its opening statement first followed by Defendants' opening statement.

    2.    Plaintiff has the burden of proof on patent infringement. As such, Plaintiff will present its case-in-chief first, followed by Defendants' case-in-chief in response to Plaintiff.

---

Defendants await Plaintiff's response.

[9] At Plaintiff's request, Defendants have proposed the following stipulation: "If Plaintiff prevails, Plaintiff may be entitled to an accounting limited to the post-verdict infringing sales, if any, that are substantially related to the direct infringement by Defendants that the Court finds supported by the existing record. *See Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1380 (Fed. Cir. 2013)." Defendants await Plaintiff's response.

    3.     Defendants have the burden of proof on patent invalidity. As such, invalidity will be part of Defendants' case-in-chief.

    4.     Plaintiff will then present its case in response to Defendants' invalidity case.

### C. Time Allotted to Each Party

    1.     Subject to the Court's approval, the parties will provide opening statements of up to 60 minutes for Plaintiff and up to 60 minutes for Defendants.

    2.     Subject to the Court's approval, the parties will have equal time to present their cases.

### D. Witnesses

    1.     The parties agree that any fact witnesses, except for a party representative attending trial, appearing in person shall be sequestered until he/she testifies, and any trial testimony preceding the testimony of the fact witness cannot be disclosed to that witness directly or indirectly.

    2.     Regarding the order of witnesses, Plaintiff proposes: Each fact witness presenting live testimony may testify only once during each segment of the trial (*e.g.*, once in Plaintiff's case-in-chief, once in Defendants' case-in-chief, and once in Plaintiff's rebuttal). The parties may call witnesses on either party's "Will Call for Live Testimony" list or "May Call for Live Testimony or by Deposition" list.

    3.     Regarding the order of witnesses, Defendants propose: Neither party will call any witness listed in the opposing party's "Will Call for Live Testimony" list during presentation of that party's case-in-chief, unless such witness has previously been called to testify. Each fact witness presenting live testimony at trial will testify once, and as such, the scope of cross examination may exceed the scope of the direct examination. Notwithstanding the foregoing, the parties may call their own witnesses in rebuttal even if they previously testified at trial. Defendants oppose any attempt by Plaintiff to call Defendants' witnesses to testify during Plaintiff's case-in-chief.

    4.     Pursuant to the Court's April 8, 2019 order (Dkt. 573), and by agreement of the Parties, Defendants took the deposition of Hugh West on April 23, 2019.

### E. Additional Stipulations

    1.     **Witnesses.** By 7:00 p.m. Eastern Time two calendar days before the expected trial day on which a witness will be called to testify, each party

11

will identify by email to the opposing party the witnesses it intends to call on that trial day, the order in which those witnesses will be called, and whether those witnesses will be called live or by deposition (if deposition designations are to be played in court). For example, for witnesses expected to be called on Monday, June 10, 2019, notice shall be given by 7:00 p.m. Eastern Time on Saturday, June 8, 2019.

2. **Playing of Deposition Designations.** To the extent that the Court requests that the parties play a witness's designations at trial, all portions of the testimony designated by any party will be played at the same time, including the parties' affirmative designations and counter-designations. All designated testimony will be introduced in the sequence in which the testimony was originally given.

3. **Documents.** Legible photostatic or other copies of documents (or portions thereof) may be marked for identification, and offered and received in evidence at the trial, with the same force and effect as the originals, subject to correction should error appear and subject to any and all objections as could be made to the original thereof. The originals of such copies shall be available for inspection at the trial upon reasonable notice.

4. **Exhibits.**

   a. Any exhibit listed by a party may be offered as an exhibit by that party or by another party, subject to any evidentiary objections by the opposing party.

   b. Any exhibit, once admitted at trial, may be used equally by any party, subject to the Federal Rules of Evidence.

   c. The parties agree that the listing of an exhibit by a party does not waive any objections that such party may have by the use of the same exhibit by another party.

   d. The parties agree that any description of a document or other material on an exhibit list is provided for convenience only and shall not be used as an admission or otherwise as evidence regarding the document or material.

   e. With the exception of documents subject to the parties motions *in limine*, the parties agree that they will not dispute the authenticity of any document that was produced during discovery, which on its face appears to have been authored by an employee or officer of the producing party, or by a third-party engaged by the producing party in the ordinary course of business, and that such documents shall be deemed *prima facie* authentic, subject to the right of the party against whom such a document is offered to adduce evidence to the

            contrary and subject to any contrary determination or ruling by the Court.

    f.    Plaintiff's demonstratives will be identified with PDX numbers.

    g.    Defendants' demonstratives will be identified with DDX numbers.

    h.    The parties agree that if any party removes or otherwise withdraws an exhibit from its Exhibit List, another party may amend its Exhibit List to include that same exhibit. The parties also agree that the parties may make objections to such exhibit, other than an objection based on untimely listing.

5.    **Objections to Deposition Designations Played in Court.** If the Court elects to hear deposition testimony played during trial, the following procedures will apply:

    a.    The introducing party will identify the particular designated deposition testimony (by page and line) from its previous designations that is actually intended to be played or read at trial, or a disclosure that all pages and lines previously designated will be played, by 7:00 p.m. Eastern Time two calendar days before introducing the deposition testimony. For avoidance of doubt, if the introducing party intends to play or read designated testimony on Monday, June 10, 2019, notice shall be given by 7:00 p.m. Eastern Time on Saturday, June 8, 2019. The advanced notification provision for designations does not apply to designations to be used during cross-examination.

    b.    By 8:30 p.m. Eastern Time the same day, the other party will identify any specific pages and lines from its counter-designations that it wishes to be introduced, pursuant to Fed. R. Civ. P. 32(a)(6), and any testimony to which it continues to object.

    c.    By 9:30 p.m. Eastern Time the same day, the introducing party will identify any counter-designated testimony to which it continues to object.

    d.    By 10:30 p.m. Eastern Time the same day, the parties shall meet and confer to resolve any objections to designated deposition testimony.

    e.    If objections to disputed testimony are not resolved by this process, the parties shall present such objections to the Court on the next trial day (the day before the intended deposition use).

    f.    If a party opts to introduce deposition testimony, any counter-designation of that same witnesses' testimony must be submitted in the same medium. Any objections or attorney colloquy included in

13

        the designated testimony should be removed unless required to clarify the record (*i.e.* discussion of scope of 30(b)(6) testimony).

    g.    The party electing to introduce deposition testimony shall be responsible for putting together the video file of the deposition designations and any counter designations not objected to by the parties, and the video files must be exchanged in the same manner as demonstrative exhibits used for direct examination, as governed by Paragraph 9(c), *i.e.* by 7:00 p.m. Eastern Time the day before the deposition testimony will be introduced.

6.    **Exhibits Introduced Through Deposition Designations.** If designated testimony to be played in open court includes the use of an exhibit to which a party has asserted an objection, such objections will be handled in the same manner as the procedures set forth for the resolution of objections to exhibits to be used on direct examination pursuant to Paragraph 8 below.

7.    **Exchange of Exhibits for Direct Examinations or Opening Statements.**

    a.    For exhibits to be used in connection with direct examination of fact witnesses, each party will provide by e-mail to the opposing party a list of all exhibits to be used, other than demonstratives, whose exchange shall be governed by Paragraph 9 below, by 7:00 p.m. Eastern Time one calendar day before they will be used at trial. For example, for exhibits to be used in a direct examination of a fact witness who is disclosed as testifying on Monday, June 10, 2019, the witness' exhibits shall be disclosed by 7:00 p.m. Eastern Time on Sunday, June 9, 2019. The party receiving identification of exhibits intended for use in direct examination will inform the identifying party of any objections by 9:00 p.m. Eastern Time that same day. The parties will meet and confer as soon as possible thereafter to resolve such objections, but in any event by 10:00 p.m. Eastern Time that same day.

    b.    For exhibits to be used in connection with direct examination of expert witnesses, each party will provide by e-mail to the opposing party a list of all exhibits to be used, other than demonstratives, whose exchange shall be governed by Paragraph 9 below, by 7:00 p.m. Eastern Time two calendar days before they will be used at trial. For example, for exhibits to be used in a direct examination of an expert witness who is disclosed as testifying on Monday, June 10, 2019, the expert witness' exhibits shall be disclosed by 7:00 p.m. Eastern Time on Saturday, June 8, 2019. The party receiving identification of exhibits intended for use in direct examination will inform the identifying party of any objections by 6:00 p.m. EST the following day. The parties will meet and confer as soon as possible

14

        thereafter to resolve such objections, but in any event by 9:00 p.m. Eastern Time the following day.

    c.    For exhibits to be used in connection with opening statements, each party will provide by e-mail to the opposing party a list of all exhibits to be used, other than demonstratives, whose exchange shall be governed by Paragraph 9 below, by noon Eastern Time the day before opening statements. The party receiving identification of exhibits for opening statements will inform the party identifying the exhibits of any objections by 3:00 p.m. Eastern Time that same day, and the parties will meet and confer as soon as possible thereafter to resolve such objections, but in any event by 6:00 p.m. Eastern Time that same day. If good faith efforts to resolve the objections fail, the party objecting to the demonstratives may bring its objections to the Court's attention prior to the opening statement.

    d.    The advanced notification provision for exhibits does not apply to exhibits to be used during cross-examination, whether for impeachment or to be offered into evidence.

    e.    Any party may use an exhibit that is listed on the other party's exhibit list, subject to the other party's opportunity to object to its introduction and subject to all applicable evidentiary objections. Any exhibit, once admitted at trial, may be used equally by any party, subject to the Federal Rules of Evidence.

8.    **Objections to Exhibits to be used on Direct Examination.** If good faith efforts to resolve the objections fail, the party objecting to the exhibits may bring its objections to the Court's attention when the exhibit is offered into evidence.

9.    **Exchange of Demonstrative Exhibits.**

    a.    The party seeking to use a demonstrative exhibit will provide a color representation of the demonstrative to the other side in PDF, PowerPoint, or some other commonly viewable format according to the schedule below. However, for video or animations, the party seeking to use the demonstrative will provide it to the other side via FTP or on a DVD, CD, or USB drive. For irregularly sized physical demonstrative exhibits, the party seeking to use the demonstrative will provide a color representation as a PDF of 8.5 x 11 inch copies of the exhibits and make the original available for inspection by the opposing party.

    b.    For demonstrative exhibits to be used in connection with opening statements, each party will exchange by e-mail or FTP PDFs, or by courier a DVD, CD or USB drive, of such demonstrative exhibits by

noon Eastern Time the day before opening statements. The party receiving identification of demonstrative exhibits for opening statements will inform the party identifying the exhibits of any objections by 3:00 p.m. Eastern Time that same day, and the parties will meet and confer as soon as possible thereafter to resolve such objections, but in any event by 6:00 p.m. Eastern Time that same day. If good faith efforts to resolve the objections fail, the party objecting to the demonstratives may bring its objections to the Court's attention prior to the opening statement.

c. For demonstrative exhibits to be used in connection with direct examination of fact witnesses, each party will exchange by e-mail or FTP PDFs, or by courier a DVD, CD or USB drive, of such demonstrative exhibits by 7:00 p.m. Eastern Time the day before they will be used at trial. To clarify, if a party plans to use demonstrative exhibits in the morning of a Monday, the party will need to exchange the demonstrative exhibits by Sunday 7:00 p.m. Eastern Time. The party receiving identification of demonstrative exhibits will inform the party identifying the exhibits of any objections by 9:00 p.m. Eastern Time, and the parties will meet and confer as soon as possible thereafter to resolve such objections, but in any event by 10:00 p.m. Eastern Time that same day. If good faith efforts to resolve the objections fail, the party objecting to the demonstratives may bring its objections to the Court's attention prior to the witness for whom the demonstratives were created being called to the stand.

d. For demonstrative exhibits to be used in connection with direct examination of expert witnesses, each party will exchange by e-mail or FTP PDFs, or by courier a DVD, CD or USB drive, of such demonstrative exhibits by 7:00 p.m. Eastern Time two calendar days before they will be used at trial. To clarify, if a party plans to use demonstrative exhibits in the morning of a Monday, the party will need to exchange the demonstrative exhibits by Saturday 7:00 p.m. Eastern Time. The party receiving identification of demonstrative exhibits will inform the party identifying the exhibits of any objections by 6:00 p.m. Eastern Time the following day, and the parties will meet and confer as soon as possible thereafter to resolve such objections, but in any event by 9:00 p.m. Eastern Time that same day. If good faith efforts to resolve the objections fail, the party objecting to the demonstratives may bring its objections to the Court's attention prior to the witness for whom the demonstratives were created being called to the stand.

    e. There is no obligation to disclose demonstratives that will be created during live testimony or that will be used or created during cross examination.

  10. **Protective Order.** The Court has entered a Discovery Confidentiality Order to safeguard the confidentiality of certain of the parties business and technical information, as well as that of third parties.

**PART X.** **<u>JURY TRIAL</u>**

1. Trial is scheduled to commence on June 10, 2019 (D.E. 565).

2. The Parties believe the trial commencing on June 10, 2019 can be completed in 10 business days.

3. Deadlines: *[handwritten: Subject to the Court's Approval). RB.]*

  i. <u>Motions in Limine</u>:

    a) Opening Submissions: May 2, 2019

    b) Opposition Submissions: May 16, 2019

    c) Reply Submissions: May 23, 2019

  ii. <u>Trial Brief</u>: June 3, 2019

  iii. <u>Jury Instructions</u>: June 3, 2019

  iv. <u>Voir Dire Questions</u>: June 3, 2019

  v. <u>Jury Questionnaire</u>[10]: June 3, 2019

<u>**CONCLUDING CERTIFICATION**</u>

We hereby certify by the affixing of our signatures to this Joint Final Pretrial Order that it reflects the efforts of all counsel and that we have carefully and completely reviewed all parts of this Order prior to its submission to the Court. Further, it is acknowledged that amendments to this

---

[10] Subject to the Court's approval, and to the extent the parties agree upon a jury questionnaire to be provided to the jury, the parties will submit an agreed-upon questionnaire.

Joint Final Pretrial Order will not be permitted except where the Court determines that manifest injustice would result if the amendment is not allowed.

Dated: April 30, 2019

*s/Liza M. Walsh*

Liza M. Walsh
Hector D. Ruiz
Eleonore Ofosu-Antwi
WALSH PIZZI O'REILLY FALANGA
LLP One Riverfront Plaza
1037 Raymond Boulevard, Suite 600
Newark, NJ 07102
(973) 757-1100

Adam R. Alper
Brandon H. Brown
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
(415) 439-1400

Michael W. De Vries
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, CA 90071
(213) 680-8400

Leslie M. Schmidt
KIRKLAND & ELLIS LLP
601 Lexington Ave
New York, NY 10022
(212) 446-4800

Gianni Cutri
Joel R. Merkin
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

*Counsel for Plaintiff*

*s/Scott S. Christie*

Scott S. Christie
Matthew A. Sklar
Ravin R. Patel
MCCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 848-5388

Lee Carl Bromberg
Wyley S. Proctor
Brian M. Seeve
Thomas R. Fulford
Thomas F. Foley
James Thomson
MCCARTER & ENGLISH, LLP
265 Franklin St.
Boston, Massachusetts 02110
(617) 449-6500

*Counsel for Defendants*

ME1 30290577v.1

Entry of the foregoing Joint Final Pretrial Order is hereby APPROVED this 30th day of April, 2019.

_____
HON. JOEL SCHNEIDER
United States Magistrate Judge
**United States District Court for the District of New Jersey**

19