Liza M. Walsh
Hector D. Ruiz
Eleonore Ofosu-Antwi
WALSH PIZZI O'REILLY FALANGA LLP
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, NJ 07102
(973) 757-1100

**OF COUNSEL** (admitted *pro hac vice*):

| | | |
|---|---|---|
| Adam R. Alper | Michael W. De Vries | Gianni Cutri |
| KIRKLAND & ELLIS LLP | KIRKLAND & ELLIS LLP | KIRKLAND & ELLIS LLP |
| 555 California Street | 333 South Hope Street | 300 North LaSalle |
| San Francisco, CA 94104 | Los Angeles, CA 90071 | Chicago, IL 60654 |
| (415) 439-1400 | (213) 680-8400 | (312) 862-2000 |

*Attorneys for Plaintiff*

*[Additional counsel listed on signature page]*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| EAGLE VIEW TECHNOLOGIES, INC., *et al.*, | Case No.: 1:15-cv-07025 (RBK-JS) |
| Plaintiffs, | **PLAINTIFF EAGLE VIEW TECHNOLOGIES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND PERMANENT INJUNCTION** |
| v. | |
| XACTWARE SOLUTIONS, INC., *et al.*, | |
| Defendants. | ***Filed Electronically Under Seal*** |

## **TABLE OF CONTENTS**

I.   **INTRODUCTION** ...................................................................1

II.  **ARGUMENT**.......................................................................3

    A.   A TRO Should Enter to Halt Defendants' Willful Infringement and Limit Irreparable Harm to EagleView.............................................4

        1.   EagleView Has Succeeded on the Merits ...................................4

        2.   EagleView's Injury Is Irreparable.............................................4

            a.   Defendants' Ongoing Willful Infringement Is Causing EagleView Irreparable Competitive Harm........4

            b.   Defendants' Willful Infringement Is Causing EagleView Loss of Good Will and Reputational Harm .................................................................8

            c.   EagleView Resoundingly Proved a Causal Nexus between Defendants' Infringement and Irreparable Harm ...............................................................10

        3.   Monetary Damages Are Inadequate To Compensate EagleView.....................................................................11

        4.   The Balance of Hardships Weighs Heavily in EagleView's Favor..................................................................13

        5.   A TRO Serves the Public Interest..........................................14

    B.   The TRO Should Stop Defendants from Infringing EagleView's Patents with the Accused Products and Any Products That Are Not Colorably Different ...............................................................17

III. **CONCLUSION** ..................................................................18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allegheny Energy Inc. v. DOE. Inc.*,
    171 F.3d 153 (3d Cir. 1999) ............................................................................3

*Apple Inc. v. Samsung Elecs. Co.*,
    695 F.3d 1370 (Fed. Cir. 2012) ......................................................................9

*Apple Inc. v. Samsung Elecs. Co.*,
    735 F.3d 1352 (Fed. Cir. 2013) ......................................................................9

*Apple Inc. v. Samsung Elecs. Co.*,
    809 F.3d 633 (Fed. Cir. 2015) .........................................................1, 6, 10, 16

*Becton Dickinson & Co. v. Tyco Healthcare Grp. LP*,
    No. 02-1694, 2008 WL 4745882 (D. Del. Oct. 29, 2008)..............................11

*Celsis In Vitro, Inc. v. CellzDirect, Inc.*,
    664 F.3d 922 (Fed. Cir. 2012) ......................................................................15

*Douglas Dynamics, LLC v. Buyers Prod. Co.*,
    717 F.3d 1336 (Fed. Cir. 2013) ..............................................................*passim*

*Enpat, Inc. v. Budnic*,
    No. 11-86, 2011 WL 1196420 (M.D. Fla. Mar. 29, 2011)..............................11

*Evonik Degussa Gmbh v. Materia, Inc.*,
    No. 09-636, 2017 WL 3434156 (D. Del. Aug. 10, 2017) ..................................7

*Hafco Foundry & Mach. Co., Inc. v. GMS Mine Repair & Maint.*,
    *Inc.*, No. 15-16143, 2018 WL 1786588 (S.D.W. Va. Apr. 12, 2018) ...............14

*i4i L.P. v. Microsoft Corp.*,
    598 F.3d 831 (Fed. Cir. 2010) ..............................................................6, 12, 14

*Illumina, Inc. v. Qiagen, N.V.*,
    207 F. Supp. 3d 1081 (N.D. Cal. 2016)..........................................................15

*Int'l Rectifier Corp. v. IXYS Corp.*,
    383 F.3d 1312 (Fed. Cir. 2004) ........................................................................16

*Inter City Retread, Inc. v. Michelin Retread Techs., Inc.*,
    No. 14-1564, 2014 WL 12621593 (D.N.J. Apr. 4, 2014) ...................................3

*Iofina, Inc. v. Khalev*,
    No. 14-1328, 2016 WL 7046829 (W.D. Okla. Dec. 2, 2016) .............................4

*RMH Tech LLC v. PMC Indus., Inc.*,
    352 F. Supp. 3d 164 (D. Conn. 2018)................................................................8

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
    659 F.3d 1142 (Fed. Cir. 2011) ...........................................................5, 11, 12

*Sanofi-Aventis Deutschland GmbH v. Glenmark Pharm. Inc.*,
    748 F.3d 1354 (Fed. Cir. 2014) ......................................................................15

*Sanofi-Aventis Deutschland GmbH v. Glenmark Pharm. Inc.*,
    821 F. Supp. 2d 681 (D.N.J. 2011)..................................................................14

*Sanofi-Synthelabo v. Apotex, Inc.*,
    470 F.3d 1368 (Fed. Cir. 2006) ......................................................................14

*TEK Glob., S.R.L. v. Sealant Sys. Int'l, Inc.*,
    920 F.3d 777 (Fed. Cir. 2019) ...........................................................9, 10, 11

*United States v. Pozsgai*,
    999 F.2d 719 (3d Cir. 1993) ...........................................................................13

*Visto Corp. v. Seven Networks, Inc.*,
    No. 03-333, 2006 WL 3741891 (E.D. Tex. Dec. 19, 2006) ..............................14

*Windsurfing Int'l, Inc. v. AMF, Inc.*,
    782 F.2d 995 (Fed. Cir. 1986) ........................................................................13

*Wordtech Sys., Inc. v. Integrated Network Sols., Inc.*,
    No. 04-1971, 2009 WL 113771 (E.D. Cal. Jan. 15, 2009)..................................4

**Rules**

Federal Rule of Civil Procedure 65(d)...................................................................16

Now that the jury has resoundingly rejected all of the defenses of Xactware Solutions, Inc. ("Xactware"), Geomni, Inc. ("Geomni"), and Verisk Analytics, Inc. ("Verisk") (collectively, "Defendants") and found both of them to be willful infringers of plaintiff EagleView Technologies, Inc.'s ("EagleView") lawfully-issued patent rights, EagleView respectfully requests that this Court enter a temporary restraining order ("TRO") to prevent Xactware Solutions, Inc. ("Xactware"), Geomni, Inc. ("Geomni"), and Verisk Analytics, Inc. ("Verisk") (collectively, "Defendants") from causing further irreparable harm to EagleView by their ongoing willful and intentional infringement even in the face of the jury's unequivocal verdict.

## I.    INTRODUCTION

The "right to maintain exclusivity" is "a hallmark and crucial guarantee of patent rights deriving from the Constitution itself[.]"  *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 642 (Fed. Cir. 2015).  "[T]he need to protect this exclusivity would certainly be at its highest when the infringer is one's fiercest competitor."  *Id.* That is precisely the case here.  Nearly four years to the day after EagleView filed the complaint in this case, the jury unanimously found Defendants willfully infringed every asserted claim of all five Asserted Patents, and rejected every one of Defendants' defense and purported excuses.  Through their infringement,

████████████████████████████████████████████

████████████████████████████████████████████

████.  PTX-530.0014, 0019, 0021, 0023.  Defendants have no intention of stopping this strategy, despite their corporate representative confirming that a responsible corporation "should stop infringing."  *Compare* Trial Tr. 2429:4–12 (Webecke testimony), *with id.* 3782:24–3783:10 (Defendants stating they would prefer to post a bond rather than stop infringing).  EagleView respectfully requests that the Court issue an immediate temporary restraining order stopping Defendants from any further willful infringement of EagleView's patent rights.

Defendants must stop harming EagleView now and a temporary-restraining order ("TRO") should issue immediately.  Allowing Defendants' willful infringement to continue unabated will only exacerbate the damage that Defendants have already done to EagleView.  As explained in the concurrently filed declaration of Rishi Daga, ████████████████████████████████████████████ ████████████████████████████████████████  Daga Decl. ¶ 4. ███████████ ████████████████████████████████████████████ ████████████████████████████████████  *Id.* ¶ 5. ███████████ ████████████████████████████████████  *Id.* ███████████████ ████████████████████████████████████████████

2

██████████████████████████████████████████████████

██████████████████████████████. *Id.*

Moreover, Defendants have repeatedly represented to these customers that EagleView's case has no merit, creating confusion in the market place about EagleView's patent rights. *Id.* ¶ 7. Indeed, as of 9 am **today**, Defendants' website continues to state that EagleView abandoned "over 90%" of its claims before trial and calls it "iron[ic]" that EagleView supposedly "claim[ed] some sort of victory based only on the fact that their case hasn't completely fallen apart before trial[.]" Ex. A (Verisk Press Release titled "Open Letter from Verisk to the Insurance Industry"). Defendants' failure to acknowledge that the jury rendered a verdict entirely in EagleView's favor demonstrates that EagleView will continue to be "under attack" unless a TRO is entered. *Douglas Dynamics, LLC v. Buyers Prod. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013). EagleView respectfully requests that the Court enter a TRO to immediately put an end to Defendants' ongoing willful infringement of EagleView's patent rights.

## II.   ARGUMENT

In deciding whether to grant a TRO, "a Court must consider: (1) the movant's likelihood of success on the merits; (2) the probability of irreparable harm to the moving party if immediate relief is not granted; (3) the potential harm to the non-moving party; and where applicable, (4) the public interest." *Inter City Retread, Inc.*

*v. Michelin Retread Techs., Inc.*, No. 14-1564, 2014 WL 12621593, at *3 (D.N.J. Apr. 4, 2014) (citing *Allegheny Energy Inc. v. DOE. Inc.*, 171 F.3d 153, 158 (3d Cir. 1999)); *see also eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006) (listing same factors for injunctions in patent cases).  EagleView has readily satisfied each of those factors, and a TRO should issue.

### A.   A TRO Should Enter to Halt Defendants' Willful Infringement and Limit Irreparable Harm to EagleView

#### 1.   EagleView Has Succeeded on the Merits

On September 25, 2019, after a twelve-day trial, the jury returned a unanimous verdict in under two hours entirely in EagleView's favor.  Trial Tr. 3773:10–3778:6. EagleView has not simply shown a likelihood of a success on the merits, EagleView has prevailed on the merits.  *Iofina, Inc. v. Khalev*, No. 14-1328, 2016 WL 7046829, at *2 (W.D. Okla. Dec. 2, 2016) ("[I]in light of the jury's verdict in favor of plaintiffs and against [Defendant] on plaintiffs' claims …, plaintiffs have shown that they have prevailed on the merits."); *cf. Wordtech Sys., Inc. v. Integrated Network Sols., Inc.*, No. 04-1971, 2009 WL 113771, at *2 (E.D. Cal. Jan. 15, 2009) (awarding treble damages and attorneys' fees where "the evidence presented at trial overwhelmingly favored a finding for Plaintiff, as is evidenced by the relatively short deliberations required for the jury to reach a unanimous verdict on all causes of action.").

#### 2.   EagleView's Injury Is Irreparable.

##### a.   Defendants' Ongoing Willful Infringement Is Causing EagleView Irreparable Competitive Harm

4

In the face of EagleView's lawsuit and demands that Defendants stop infringing, Defendants have used EagleView's patented technology to directly compete with EagleView for seven years.   As a result of that infringement, EagleView has lost market share and customers, and has been forced to reduce its prices in extended contracts for its own patented technology.   PTX-530.0014

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████; Trial Tr. 1017:5–15 ████████████████████████████

█████████████████████████████); Trial Tr. 1483:15–1484:4, 1496:5–22, 1500:5–

20 (███████████████████████████████████████████

███████████████████████████████████████████████████

█████████); PTX-640 (████████████████████████████).  █████████████

███████████████████████████████████████████████████

████████████████████████.  Trial Tr. 669:1-2 (████████████████

█████████████████████████████████████████); 1667:1-15

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████.  As Mr. Daga testified, EagleView "never had to lower price until Xactware came into the market with an infringing product."   Trial Tr. 820:9–10.  This is irreparable harm.  *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659

F.3d 1142, 1152 (Fed. Cir. 2011) (remanding for entry of injunction where "[t]he record here contains undisputed evidence of direct competition in each of the market segments[, and ]loss of market share and access to potential customers"). And the jury verdict—which only addressed damages through early 2019—does not come close to addressing the full impact of the ongoing harm that these infringement-based contracts will impose upon EagleView for years to come.

This irreparable harm will continue without an immediate injunction. When a customer decides not to buy a roof report from EagleView, EagleView also loses potential sales of complementary products, like Wall Reports. Daga Decl. ¶ 4. By the same token, once a customer is using Defendants' roof reports, they would be more likely to purchase Defendants' complementary products. *Id.* The impact that lost sales of roof reports have on sales of related products makes these loses difficult to quantify. *See Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d at 645 (explaining lost sales were difficult to quantify because "the sale of a single product can have [an effect] on downstream sales of accessories, computers, software applications, and future smartphones and tablets.").

As explained by Mr. Daga, the mere presence of Defendants' infringing products in the market imposes severe price pressure on EagleView that EagleView cannot come back from. Daga Decl. ¶¶ 4–5. ███████████████████

██████████████████████████████████████████████



█████████████████████████████████ Daga Decl. ¶¶ 6,

8 ████████████████████████████████████████████████████

████████████████████████████; Daga Decl. ¶¶ 5, 7 █████████

██████████████████████████████████████████████████████

███████████████████████████. ███████████████████████████

██████████████████████████████████████████████████████

████████████████ Daga Decl. ¶ 5. ███████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████ Daga

Decl. ¶ 5. ████████████████████████████████████████████

██████████████████████████████ Daga Decl. ¶ 6. █

██████████████████████████████████████████████████████

███████████████ Daga Decl. ¶ 6.  Now that Defendants are adjudicated willful

infringers, this irreparable harm must stop immediately—not weeks or months from

now, as Defendants propose. *See i4i L.P. v. Microsoft Corp.*, 598 F.3d 831, 861–62

(Fed. Cir. 2010) (taking direct competition and loss of market share into account in

evaluating irreparable harm); *Evonik Degussa Gmbh v. Materia, Inc.*, No. 09-636,

2017 WL 3434156, at *2 (D. Del. Aug. 10, 2017) (finding that the plaintiff would

suffer irreparable harm because the adjudged infringer was its direct and primary competitor).

      b.    **Defendants' Willful Infringement Is Causing EagleView Loss of Good Will and Reputational Harm**

Defendants' willful infringement also has harmed EagleView's "reputation as an innovator," and allowing Defendants to keep on infringing even in the face of the jury's verdict will cause additional irreparable harm on this front. *Douglas Dynamics*, 717 F.3d at 1344–45. As an initial matter, EagleView has "intentionally chose not to" license the Asserted Patents "so that it could maintain market exclusivity," which "is an intangible asset that is part of a [EagleView's] reputation [and is] under attack by [Defendants'] infringement." *Douglas Dynamics*, 717 F.3d at 745. Moreover, the entire industry—including Defendants—recognized EagleView as the innovator in the aerial rooftop measurement market. PTX-518.0001; PTX-173.0009 ("One small company reinvents a $30 billion market . . ."); PTX-173.0011 ("most insurance carriers at this point treat it [*i.e.* EagleView's roof report] as gospel.'"); PTX-444.0001–02 ("Eagle View Measurements revolutionizes the roofing industry with a unique innovation"). Defendants' seven years of willful infringement has damaged EagleView's reputation as an innovator and caused EagleView to lose good will with its customers. As explained by Mr. Daga, ███████████████████████████████████████████████████████

███████  Daga Decl. ¶ 7. And unless Defendants are stopped immediately,

8

EagleView will continue to suffer these irreparable harms as a result of Defendants'
ongoing willful infringement.

This "wait-and-see" approach is no accident.  Defendants have engaged in a
public-relations campaign to undermine EagleView's claims in this case to
EagleView's customers, and painting an overly (and inaccurately) rosy picture of
Verisk's and Xactware's defenses.   Defendants **continue** to make these
representations despite the jury's verdict:

- Verisk was "being attacked by lawsuit" [*sic*]

- EagleView "claim[ed] some sort of victory based only on the fact
  their case hasn't completely fallen apart before trial"

- "Verisk introduced 3-dimensional modeling of structures in 1997"

- "EagleView roof reports [obtained] through our Xactimate platform .
  . . included Xactware-developed technology"

- In the Verisk acquisition agreement, "***EagleView affirmed that Verisk
  was not infringing its intellectual property***." (emphasis in original)
  MIL 6 (equitable)

- "Since this dispute began, EagleView has abandoned three patents and
  142 claims"

Ex. A.  These are the very arguments that Defendants tried, and failed, to make at
the trial.   Trial Tr. 34:14–35:16, 49:14–52:18, 77:16–83:12.   To reward this
egregious conduct by allowing Defendants to continue selling their infringing
products despite a jury verdict rejecting every defense they offered would send the
message that EagleView's patented technology is not worth protecting. Accordingly,

9

an injunction is necessary to protect and begin to help restore the market's belief that EagleView is the true innovator. *See Douglas Dynamics*, 717 F.3d at 744; *see also RMH Tech LLC v. PMC Indus., Inc.*, 352 F. Supp. 3d 164, 201 (D. Conn. 2018) (entering injunction where "the public announcement of this litigation, and the press release updating distributors and customers of its status to be clear evidence that, absent an injunction, the manufacture, sale, and distribution of ColorSnap will further harm Plaintiffs' reputation, particularly given PMC's public dissemination of a comparison video").

> c.   **EagleView Resoundingly Proved a Causal Nexus between Defendants' Infringement and Irreparable Harm**

Irreparable harm also requires that a patentee show "a sufficiently strong causal nexus relates the alleged harm to the alleged infringement." *Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1363 (Fed. Cir. 2013). "To establish causal nexus, the patentee must show that "the infringing feature drives consumer demand for the accused product." *See Apple Inc. v. Samsung Elecs. Co.*, 695 F.3d 1370, 1375–76 (Fed. Cir. 2012). "Driving demand, however, does not require a patented feature to be the only basis of consumer demand." *TEK Glob., S.R.L. v. Sealant Sys. Int'l, Inc.*, 920 F.3d 777, 792 (Fed. Cir. 2019). Thus, it is "enough for [EagleView] to show that a significant reason consumers bought its device was the presence of the patented features." *Id.* EagleView presented significant evidence

that consumers and Defendants demanded the patented technology for its accuracy, efficiency, and safety, and that there were no non-infringing alternatives—and the jury agreed.  PTX-173.0009, 0012; PTX-444.0001–03; PTX-473.0312, 0315, 0316; PTX-623.0005; PTX-961 at 8:06–8:28; Joint Jury Instructions F–28.  In this two-player market, Defendants' willful infringement is more than enough to establish causal nexus.  *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d at 644 (finding causal nexus where the claimed features "were important to product sales and that customers sought these features in the phones they purchased").

> ### 3.  **Monetary Damages Are Inadequate To Compensate EagleView.**

In an attempt to justify their stated intent to go on willfully infringing EagleView's patent rights despite the jury's verdict, Defendants suggested that the jury's damages award had adequately compensated EagleView for Defendants' infringement. Trial Tr. 3782:24-3783:10 ("The jury came back with a monetary verdict, which fully compensates[.]").  But the jury's damages award will not bring back EagleView's lost customers, lost market share, lowered prices, or reputation. *TEK*, 920 F.3d at 792.  Defendants' entry into the market destroyed EagleView's status as the sole provider of roof reports generated by the patented technology. If Defendants' infringement continues, EagleView will continue to lose market share as EagleView's customers leave EagleView for Defendants' infringing products. *See* Section II.A.2.  EagleView will also continue to suffer price erosion with respect

11

to its roof report products, an indisputable but difficult to quantify effect of Defendants' infringing activity. *See* Section II.A.2. Defendants' own damages expert Mr. Green took the position that lost profits were so difficult to quantify that *zero dollars* should be awarded for lost profits even if Defendants were found to infringe. Trial Tr. at 3133:15-3135:2. Thus, there is no dispute about the "inherent difficulty of quantifying loss of market share, brand recognition, and customer goodwill," meaning "remedies at law are inadequate." *See TEK*, 920 F.3d at 792.

Moreover, "[t]here is no reason to believe that [Defendants] will stop infringing, or that the irreparable harms resulting from its infringement will otherwise cease, absent an injunction." *Robert Bosch*, 659 F.3d at 1155. Indeed, Defendants have made clear that they intend to continue their willful infringement despite the jury's verdict and Mr. Webecke's testimony that "if you are infringing, then you should stop infringing." *Compare* Trial Tr. 3782:24–3783:3 (Defendants arguing for no injunction after jury verdict), *with* Trial Tr. 2429:4–12 (Mr. Webecke's testimony). The "record evidence underscores the profitability of infringement and suggests that mere damages will not compensate for [Defendants'] increasing share of" the very market that EagleView "created with its investment in patented technology." *Douglas Dynamics*, 717 F.3d at 1345. Monetary damages cannot remedy this injury. *Enpat, Inc. v. Budnic*, No. 11-86, 2011 WL 1196420, at *3 (M.D. Fla. Mar. 29, 2011) (citations omitted); *see also Becton Dickinson & Co.*

12

*v. Tyco Healthcare Grp. LP*, No. 02-1694, 2008 WL 4745882, at *4 (D. Del. Oct. 29, 2008) ("The statutory right to exclude represents a tangential benefit associated with patent rights that cannot be quantified in monetary damages." (citation omitted)).

### 4. The Balance of Hardships Weighs Heavily in EagleView's Favor

Balance of hardships "assesses the relative effect of granting or denying an injunction on the parties." *i4i*, 598 F.3d at 862–63, *aff'd*, 564 U.S. 91 (2011). "When measured by these factors, it is clear that the patented technology is central to [EagleView's] business," (*id.*) and "requiring [EagleView]to compete against its own patented invention… places a substantial hardship on [EagleView]. *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d at 1156; Trial Tr. 662:12-21, 667:18-20, 669:1-16, 670:17-671:2, 675:7-676:7, 690:6-10, 1017:5-15, 1485:3-17, 1489:14-1491:3, 1502:16-1503:19, 1504:14-18.

By contrast, the Accused Products are far from central to Defendants' business. Over the course of Defendants' infringement, revenues for the Accused Products comprise a mere 0.4% of their total revenues from the same period. PTX-138; PTX-940; Exs. B, C, D, E. Verisk has 16 lines of business (of which Xactware is one), and Xactware has 18 products (of which roof reports is one). Exs. F, G. And even if the Accused Products formed a substantial portion of Defendants' business (which they do not), "[o]ne who elects to build a business on a product

13

found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected." *See Windsurfing Int'l, Inc. v. AMF, Inc.,* 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986). This is particularly the case where Defendants' conduct is willful. *See United States v. Pozsgai*, 999 F.2d 719, 736 (3d Cir. 1993) (disregarding hardship to defendant based on "repeated noncompliance" with law). Indeed, EagleView *told* Defendants they were infringing in 2012—a fact Defendants' corporate representative denied on the stand—and *still* decided to sell infringing products for the *next seven years*. DTX-478 █████████████

███████████████████████████████████████

███████████████████████████████████████

████████████; PTX-619.0024 (Xactware Solutions, Inc. Quarterly Review Q1 2012); Trial Tr. 2358:10-16 (Mr. Webecke denying that EagleView provided notice of infringement). Accordingly, the balance of the hardships tip overwhelming in EagleView's favor. *Visto Corp. v. Seven Networks, Inc.*, No. 03-333, 2006 WL 3741891, at *4 (E.D. Tex. Dec. 19, 2006) (balance of hardships favored entry of injunction where the patentee "will lose goodwill, potential revenue, and the very right to exclude that is the essence of the intellectual property at issue.").

### 5. A TRO Serves the Public Interest.

The "touchstone" of public-interest inquiry is "whether an injunction, both in scope and effect, strikes a workable balance between protecting the patentee's rights

and protecting the public from the injunction's adverse effects." *Hafco Foundry & Mach. Co., Inc. v. GMS Mine Repair & Maint., Inc.*, No. 15-16143, 2018 WL 1786588, at *5 (S.D.W. Va. Apr. 12, 2018) (citing *i4i*, 598 F.3d at 863).  The Federal Circuit has "long acknowledged the importance of the patent system in encouraging innovation. Indeed, the 'encouragement of investment-based risk is the fundamental purpose of the patent grant, and is based directly on the right to exclude.'" *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1383–84 (Fed. Cir. 2006).  A TRO would do achieve that fundamental purpose by halting Defendants' seven-years-long willful infringement, while the Court continues to weigh entry of a permanent injunction enjoining Defendants' willful infringement.  *See Sanofi-Aventis Deutschland GmbH v. Glenmark Pharm. Inc.*, 821 F. Supp. 2d 681, 696 (D.N.J. 2011) (finding that the public interest factor weighs in favor of a permanent injunction because patentee "invested significant resources with the expectation that it would be able to recoup its investment, and the patent system is designed to provide incentives for innovative drug companies to continue costly development efforts"), *aff'd* 748 F.3d 1354 (Fed. Cir. 2014).

Because EagleView and Defendants "are in direct competition[, t]he public can obtain" roof reports from EagleView.  *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 931 (Fed. Cir. 2012).  And EagleView "is poised to meet any demand for" Defendants' Accused Products, Trial Tr. 3369:14–17, and would have made

each of Defendants' sale but for their infringement. *Illumina, Inc. v. Qiagen, N.V.*, 207 F. Supp. 3d 1081, 1094 (N.D. Cal. 2016); Trial Tr. 668:7–19, 1470:11–15, 1759:7–1762:5, 1762:19–1763:4.   For those of Defendants' customers who have purchased EagleView's roof reports, EagleView believes that transitioning those customers back to EagleView's roof reports in Defendants' system will be straightforward, particularly if Defendants cooperate.   Daga Decl. ¶¶ 9–13.   And if Defendants refuse to cooperate, any resulting impact on their customers would be of Defendants' own making and not a basis on which to deny equitable relief to EagleView.   For Defendants' remaining customers who have not purchased roof reports through EagleView, EagleView is committed to working with these customers to expeditiously set up their accounts and accommodate their needs.   Daga Decl. ¶¶ 9–13.

While some customers may enjoy the lower prices that Defendants have offered—at EagleView's expense—"cheap copies of patented inventions have the effect of inhibiting innovation and incentive. This detrimental effect, coupled with the public's general interest in the judicial protection of property rights in inventive technology, outweighs any interest the public has in purchasing cheaper infringing products." *Douglas Dynamics*, 717 F.3d at 1346.   Simply put, "the public interest *strongly* favors an injunction." *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d at 647.

16

**B.**     **The TRO Should Stop Defendants from Infringing EagleView's Patents with the Accused Products and Any Products That Are Not Colorably Different**

Under Federal Rule of Civil Procedure 65(d), a proposed injunction must "describe in reasonable detail … the act or acts restrained or required." Fed. R. Civ. P. 65(d).  In patent cases, an injunction "may prohibit … infringement of the patent by the adjudicated devices and infringement by devices not more than colorably different from the adjudicated devices." *Int'l Rectifier Corp. v. IXYS Corp.*, 383 F.3d 1312, 1316 (Fed. Cir. 2004).  Accordingly, the TRO should enjoin Defendants, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise are restrained and enjoined from performing the following actions until at least October 8, 2019:

> 1. making, offering to sell, selling, importing, and/or using a) Xactimate in combination with Aerial Sketch; and/or b) Xactimate in combination with Property Insight or Roof Insight, and the Mass Production Tool; and any products made by these processes, including Property Insight, Roof Insight, Geomni Roof and Geomni Property, and any products not more than colorably different in or into the United States;
>
> 2. instructing or encouraging anyone to make, offer to sell, sell, import, and/or use in or into the a) Xactimate in combination with Aerial Sketch; and/or b) Xactimate in combination with Property Insight or Roof Insight, and the Mass Production Tool; and any products made by these processes, including Property Insight, Roof Insight, Geomni Roof, and Geomni Property, and any products not more than colorably different;
>
> 3. supplying or causing to be supplied in or from the United States all or a substantial portion of the components of a) Xactimate in

17

combination with Aerial Sketch; and/or b) Xactimate in combination with Property Insight or Roof Insight, or any products made by these products, including Property Insight, Roof Insight, Geomni Roof, and Geomni Property, and including the Mass Production Tool, aerial imagery, and any components not more than colorably different; and

4.  importing into the United States, or offering to sell, sell, or using within the United States, Property Insight, Roof Insight, Geomni Roof, Geomni Property, and any products not more than colorably different.

## III.   CONCLUSION

For the foregoing reasons, EagleView requests that the Court enter a temporary restraining order in the form set forth in the proposed order filed herewith. Given the foregoing and the limited time frame of the requested restraining order, EagleView respectfully submits that a bond should not be required as a condition for the TRO sought, or that any bond required should be of a limited amount.

Dated: September 26, 2019          WALSH PIZZI O'REILLY
                                   FALANGA LLP

                                   s/ *Liza M. Walsh*
                                   Liza M. Walsh
                                   Hector D. Ruiz
                                   Eleonore Ofosu-Antwi
                                   WALSH PIZZI O'REILLY
                                   FALANGA LLP
                                   Three Gateway Center
                                   100 Mulberry Street, 15th Floor
                                   Newark, NJ 07102
                                   (973) 757-1100

**OF COUNSEL** (admitted *pro hac vice*):

Adam R. Alper
Brandon H. Brown
KIRKLAND & ELLIS
LLP
555 California Street
San Francisco, CA
94104
(415) 439-1400

Gianni Cutri
Joel R. Merkin
KIRKLAND & ELLIS
LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

Michael W. De Vries
KIRKLAND & ELLIS
LLP
333 South Hope Street
Los Angeles, CA 90071
(213) 680-8400

Leslie M. Schmidt
KIRKLAND & ELLIS
LLP
601 Lexington Ave.
New York, NY 10022
(212) 446-4800