# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

EAGLE VIEW TECHNOLOGIES, INC.,
*et al.,*

      Plaintiffs,

v.

XACTWARE SOLUTIONS, INC., and
VERISK ANALYTICS, INC.,

      Defendants.

C.A. No. 15-cv-07025-RMB-JS

Filed Under Seal

## DECLARATION OF PHILIP GREEN IN SUPPORT OF
## XACTWARE'S REBUTTAL TO EAGLE VIEW'S MOTION
## FOR PRE- AND POSTJUDGMENT INTEREST

My name is Philip Green, and I declare:

      1.      I am a principal in the consulting firm of Hoffman Alvary & Company LLC. I have

been retained by McCarter & English, LLP, counsel for Xactware Solutions, Inc. ("Xactware")

and Verisk Analytics, Inc. ("Verisk") (together, "Defendants") to provide expert testimony in this

matter relating to the computation of damages. I provided testimony during trial on September 23

and September 24, 2019, during which I stated my qualifications as an expert in financial and

accounting matters.

      2.      On September 25, 2019, a jury found that Defendants infringed claims of five

patents (the "Infringed Patents") held by Eagle View Technologies, Inc. ("Eagle View"), and that

Eagle View's damages as a result of this infringement amounted to $125 million (the "Jury

*Confidential*

1

Verdict").[1]  Subsequently, the Court entered a judgment in favor of the Plaintiffs in the amount of $125 million based on the Jury Verdict (the "Judgment").[2]

3.     On November 12, 2019, Plaintiffs filed a motion for, among other things, pre- and postjudgment interest.[3]  The Declaration of Dr. Jonathan Arnold supporting Eagle View's motion (the "Arnold Declaration") calculated pre-judgment interest amounting to $26,060,453 through the date of the Jury Verdict.  The Arnold Declaration also calculated daily interest beyond September 25, 2019 amounting to $40,600.08 per day.[4]

4.     I have been asked by counsel to prepare alternate computations of the potential interest due Plaintiffs associated with the Judgment.  These calculations are presented on Schedules 1 through 4 to this declaration.  Following are descriptions of the assumptions underlying these calculations, and the resulting interest potentially due Plaintiffs.

A.     **Prejudgment Interest**

5.     I have prepared computations of prejudgment interest due Eagle View based on two time periods.  The first calculation assumes that interest would have accrued beginning May 1, 2012, when the first Infringed Patent issued.  The second calculation assumes that prejudgment interest would have accrued only on damages occurring after the September 23, 2015 complaint in this matter.  Both calculations assume the Court concludes that prejudgment interest should be awarded.

---

[1] *Verdict Form*, Civil Action No. 1:15-cv-07025 (RMB-JS), dated September 25, 2019.
[2] *Judgment*, Civil Action No. 1:15-cv-07025 (RMB-JS), dated September 26, 2019.
[3] *Brief in Support of Plaintiff's Motions for Willfulness and Enhanced Damages, Exceptional Case and Attorneys' Fees and Costs, Pre- and Postjudgment Interest, and An Accounting Under Rules 50(B), 54, and 59*, dated November 12, 2019.
[4] *Declaration of Dr. Jonathan Arnold In Support of Eagle View's Motion for Pre- And Postjudgment Interest And An Accounting*, dated November 12, 2019.  Hereafter, I refer to any calculations of interest beyond the date of the Judgment as "ongoing daily interest."

*Confidential*

6.      During the September 2019 trial, Eagle View claimed lost profits and price erosion damages amounting to $124.2 million as a result of Xactware's infringing sales.  Thus, the Jury Verdict in the amount of $125 million is consistent with the damages claimed by Eagle View.  I have therefore used the annual damages amounts presented to the jury by Eagle View to determine the appropriate prejudgment interest due in each period.  This is consistent with the methodology used in the Arnold Declaration.[5]

7.      I have been asked by counsel to evaluate the potential prejudgment interest due Eagle View using two different interest rates: (i) the Federal Reserve Bank Prime Rate ("Prime Rate"); and (ii) the 1-Year Treasury Bill Rate ("T-Bill Rate").

8.      The Prime Rate is an interest rate determined by commercial banks.  The Board of Governors for the Federal Reserve System reports the prime rate posted by the majority of the largest twenty-five banks.  While the Federal Reserve does not directly set the prime rate, many banks elect to set their prime rate based in part on the target level of the federal funds rate (the rate used by banks to lend to one another).  The Prime Rate is often used as the base rate for short-term business loans and credit card loans.[6]  I understand that numerous courts have found the Prime Rate is an appropriate interest measure for the purpose of calculating prejudgment interest.[7]  Between May 2012 and September 2019, the Prime Rate ranged from 3.25% to 5.50%.[8]

9.      The T-Bill Rate is the interest paid on treasury bills.  Treasury bills are short-term securities backed by the U.S. government and issued by the Department of the Treasury.  The government issues T-Bills with maturity periods up to one year.  Treasury Bills are sold at a discount to the par value, with the investor receiving the full par value at the specified maturity

---

[5] Arnold Declaration, ¶ 9 and footnote 1.
[6] See, for example, https://www.federalreserve.gov/faqs/credit_12846.htm.
[7] See, for example, *Mars, Inc. v. Coin Acceptors, Inc.*, 513 F. Supp. 2d 128, 133 (D.N.J. 2007).
[8] Schedule 4; see also, https://fred.stlouisfed.org/series/dPRIME.

*Confidential*

date. A T-Bill Rate represents the annualized discount to maturity reflected in the price paid for a treasury bill relative to its par value.  I understand that the U.S. Code specifies that postjudgment interest be calculated based on 1-year constant maturity Treasury yields.[9]  Between May 2012 and October 2019, the 1-Year T-Bill Rate ranged from 0.09% to 2.65%.[10]

10.     These analyses rely on interest rate data published by the Federal Reserve Bank of St. Louis.[11]  My interest rate computations are based on the average of the published daily rates included in a given period.  These average rates are summarized on Schedules 4 and 4A. Regardless of the rate applied, interest is assumed to compound annually.

11.     Eagle View's claim for damages began in May 2012 and continued through March 2019—the date of the most recent Xactware sales data available at trial.[12]  Consistent with the Arnold Declaration, my calculations assume damages occur evenly during each year. Accordingly, I have employed the mid-period convention to compute prejudgment interest.

12.     Assuming that interest accrues beginning May 1, 2012 (the date that the first Infringed Patent issued), prejudgment interest based on the Prime Rate amounts to $14,522,190.[13] Alternatively, based on 1-Year T-Bill rates, total prejudgment interest amounts to $5,087,791.[14]

13.     As discussed, I also have calculated prejudgment interest assuming that it accrues only on damages occurring after the September 23, 2015 Complaint in this matter.  Based on this alternative assumed principal, total prejudgment interest amounts to $10,729,719 or $4,113,211 using the Prime Rate or 1-Year T-Bill Rate, respectively.[15]

---

[9] 28 U.S.C. § 1961.
[10] https://fred.stlouisfed.org/series/DTB1YR.
[11] See, https://fred.stlouisfed.org/series/DPRIME; https://fred.stlouisfed.org/series/DTB1YR.
[12] Schedule 3.
[13] Schedule 1A.
[14] Schedule 1B.
[15] Schedules 2A and 2B.

*Confidential*

B.    **Post-Judgment Interest**

14.    I understand that the statute requires that postjudgment interest "be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding."[16]  Judgment in this matter was entered on September 26, 2019.[17]  Thus, my computations of postjudgment interest are based on the average 1-Year T-Bill Rate for the week ending September 20, 2019, which amounted to 1.840%.  Thus, the rate of ongoing daily interest amounts to approximately 0.005%.[18]

15.    Again, consistent with the Arnold Declaration's analysis, my computations assume ongoing daily interest is payable on the combined balance of the $124.2 million in total claimed damages plus the computed prejudgment interest.

16.    Assuming prejudgment interest accrues from the date of first infringement and Prime Rates are used to compute prejudgment interest, ongoing daily interest amounts to $6,935. If 1-Year T-Bill Rates are used to calculate prejudgment interest, and it is accrued starting on the date of first infringement, ongoing daily interest amounts to $6,463.[19]

17.    Alternatively, assuming prejudgment interest accrues only on damages subsequent to the complaint, ongoing daily interest amounts to either $6,745 or $6,415, based on whether Prime Rates or T-Bill Rates, respectively, are used to determine prejudgment interest.[20]

---

[16] 28 U.S.C. 1961(a), *accessed at* https://www.law.cornell.edu/uscode/text/28/1961.
[17] *Judgment*, Civil Action No. 1:15-cv-07025 (RMB-JS), dated September 26, 2019.
[18] See Schedules 4 and 4A, and https://www.utd.uscourts.gov/2019-post-judgment-interest-rate.
[19] Schedules 1A and 1B.
[20] Schedules 2A and 2B.

*Confidential*

### C.   <u>Issues with the Arnold Declaration's Analyses</u>

18.    The Arnold Declaration bases both the pre- and post-judgment interest on so called

"[f]luctuating" interest rates.[21]   From 2012 to 2014, the Arnold Declaration assumes that interest

accrues based on the Prime Rate, consistent with my analysis above.   Beginning in 2015, the

Arnold Declaration assumes that Eagle View would have received interest based on various

blended average interest rates paid by Eagle View on its outstanding debt.[22]



19.    The Arnold Declaration relies on

.[23]   As an accounting matter,

, and

thus may require greater interest rates.

20.

.[24] It does not cite any underlying support allowing me

to confirm the debt pricing.   I note that the pricing cited by the Arnold Declaration appears

inconsistent with the                            debt pricing evidenced by Eagle View documents.[25]

Further, it does not coincide with the rates cited in the Declaration of Rishi Daga in support of

Eagle View's motion.[26]

21.                                                                              , the Arnold

Declaration ignores both the                                                            , and

---

[21] Arnold Declaration, ¶ 16.
[22] Arnold Declaration, Exhibit 4.
[23] Arnold Declaration, ¶ 12.
[24] Arnold Declaration Exhibit 3.
[25] See, for example, EV647324-371, at 332.
[26] *Declaration of Rishi Daga In Support of Eagle View's Motion for Prejudgment Interest*, filed November 12, 2019.

*Confidential*

instead assumes that Eagle View's damages would accrue interest based on ███████████ ████████.[27]  There is no basis to assume that ██████████████████ would apply to any of Eagle View's borrowings absent Xactware's infringement.  In fact, the application of the ████████████ appears illogical for at least the following reasons.

22.    First, Plaintiff has not alleged that Xactware's infringement impacted Eagle View's cost of borrowing, nor that Eagle View was forced to issue additional debt because of any forgone cash flows.

23.    Second, the Arnold Declaration provides no analysis of the company's working capital needs or other evidence indicating that it actually had any need to borrow at the rates cited on Exhibit 3 to the Arnold Declaration.

24.    Third, a July 2015 valuation of Eagle View that was prepared to support the 2015 acquisition by Vista Equity Partners ("Vista") indicates that Eagle View's cost of debt was ████.[28]  This rate is approximately equal to the average Prime Rate during the same month.[29]  I note that the Vista acquisition of Eagle View (and the valuation supporting it) were frequently referenced during the trial.

25.    Lastly, as noted above, Eagle View was acquired by private equity firm Vista in 2015.  At the time, Vista's cumulative capital commitments totaled over $14 billion.[30]  Today, Vista maintains capital commitments of over $52 billion.[31]  Vista's access to capital would enable it (and as a result, Eagle View) to borrow at costs substantially lower than the ████ cited in the Arnold Declaration.

---

[27] Arnold Declaration Exhibit 4.
[28] EV536576 – 640 at 622. ████████████████████████████████████
██.
[29] https://fred.stlouisfed.org/series/DPRIME.
[30] https://www.eagleview.com/2015/06/vista-equity-partners-to-acquire-eagleview-technology-corporation/.
[31] https://www.vistaequitypartners.com/our-firm/about/.

7

*Confidential*

26.     In addition, I note that the Arnold Declaration's application of ████████

when determining ongoing daily interest is inconsistent with my understanding of

applicable case law, which specifies that postjudgment interest be calculated based on 1-year T-

Bill rates.[32]

**D.     Conclusion**

27.     The following table summarizes my computations of prejudgment interest and

ongoing daily interest based on the varying assumptions regarding term and interest rates discussed

above.

| *Pre- and Post-Judgment Interest Due Eagle View* | Prejudgment Interest | Ongoing Daily Interest |
|---|---|---|
| *Assuming Interest Accrues from Date of First Infringement* | | |
| Federal Reserve Prime | $14,522,190 | $6,935 |
| 1-Year T-Bill | $5,087,791 | $6,463 |
| | | |
| *Assuming Interest Accrues from Date of Complaint* | | |
| Federal Reserve Prime | $10,729,719 | $6,745 |
| 1-Year T-Bill | $4,113,211 | $6,415 |

28.     As discussed, damages in this matter were presented to the jury based on

Xactware's sales through March 2019.  The Arnold Declaration seeks an accounting to determine

Eagle View's purportedly ongoing lost profits.  It further anticipates updating its calculation of

interest to reflect these ongoing infringing sales.  To the extent Plaintiff is granted an accounting

based on additional Xactware sales data, I may update my calculations.

*[signature]*

Philip Green
Dated:  November 26, 2019

---

[32] See, for example, *Tricon Energy Ltd. v. Vinmar Int'l, Ltd.*, 718 F.3d 459 (5th Cir. 2013); *Allen Archery, Inc. v. Browning Mfg. Co.*, 898 F.2d 787 (Fed. Cir. 1990).

*Confidential*

Schedule 1A

## Calculation of Interest Due Eagle View [1]

*Based on Federal Reserve Bank Prime Rate from Date of First Infringement*

| Periods | Damages [2] | Opening Balance | Interest Rate [3] | | Interest | Closing Balance |
|---|---|---|---|---|---|---|
| | | | *Annual* | *Partial* | | |
| May - Dec 2012 | $1,299,531 | - | *3.250%* | *2.176%* | $14,139 | $1,313,670 |
| Jan - Dec 2013 | 1,292,570 | 1,313,670 | *3.250%* | *3.250%* | 63,699 | 2,669,939 |
| Jan - Dec 2014 | 10,600,572 | 2,669,939 | *3.250%* | *3.250%* | 259,032 | 13,529,543 |
| Jan - Dec 2015 | 3,863,635 | 13,529,543 | *3.260%* | *3.260%* | 504,040 | 17,897,218 |
| Jan - Dec 2016 | 22,402,554 | 17,897,218 | *3.511%* | *3.511%* | 1,021,648 | 41,321,420 |
| Jan - Dec 2017 | 35,913,663 | 41,321,420 | *4.097%* | *4.097%* | 2,428,630 | 79,663,713 |
| Jan - Dec 2018 | 41,947,920 | 79,663,713 | *4.902%* | *4.902%* | 4,933,259 | 126,544,892 |
| [5] Jan - Sept 2019 | 6,856,384 | 126,544,892 | *5.439%* | *n/a* | 5,297,743 | 138,699,019 |

| | |
|---|---|
| **Total Prejudgment Interest through September 26, 2019:** | **$14,522,190** |
| **Ongoing Daily Interest Rate:** | *0.005%* |
| **Ongoing Daily Interest:** [4] | **$6,935** |

*Notes/Sources*

[1] Interest calculated using mid-year convention and annual compounding.

[2] Damages per Schedule 3.

[3] Interest rates per Schedule 4.

[4] Ongoing Daily Interest based on Closing Balance as of September 26, 2019 multiplied by the daily interest rate implied by the weekly average one-year constant maturity Treasury yield during the week the Judgment was entered. See Schedule 4.

[5] Interest in the final period calculated through September 26, 2019. Damages were presented at trial based on Xactware's infringing sales through March 2019. To comport with the mid-period convention, I have calculated prejudgment interest assuming it accrues from February 15, 2019 through September 26, 2019 on the $6.9 million in 2019 damages. I have assumed that partial-year interest from January 1, 2019 through September 26, 2019 accrues on the remaining $126.5 million Opening Balance.

[6] Differences may exist due to rounding.

*Confidential*

## Calculation of Interest Due Eagle View [1]

*Based on 1-Year Treasury Bill Rate from Date of First Infringement*

| Periods | Damages [2] | Opening Balance | Interest Rate [3] | | Interest | Closing Balance |
|---|---|---|---|---|---|---|
| | | | *Annual* | *Partial* | | |
| May - Dec 2012 | $1,299,531 | - | *0.175%* | *0.117%* | $760 | $1,300,291 |
| Jan - Dec 2013 | 1,292,570 | 1,300,291 | *0.125%* | *0.125%* | 2,433 | 2,595,294 |
| Jan - Dec 2014 | 10,600,572 | 2,595,294 | *0.113%* | *0.113%* | 8,922 | 13,204,788 |
| Jan - Dec 2015 | 3,863,635 | 13,204,788 | *0.305%* | *0.305%* | 46,167 | 17,114,590 |
| Jan - Dec 2016 | 22,402,554 | 17,114,590 | *0.596%* | *0.596%* | 168,763 | 39,685,907 |
| Jan - Dec 2017 | 35,913,663 | 39,685,907 | *1.167%* | *1.167%* | 672,691 | 76,272,261 |
| Jan - Dec 2018 | 41,947,920 | 76,272,261 | *2.254%* | *2.254%* | 2,191,930 | 120,412,111 |
| Jan - Sept 2019 | 6,856,384 | 120,412,111 | *2.149%* | *n/a* | 1,996,125 | 129,264,620 |

| | |
|---|---|
| **Total Prejudgment Interest through September 26, 2019:** | **$5,087,791** |
| **Ongoing Daily Interest Rate:** | *0.005%* |
| **Ongoing Daily Interest:** [4] | **$6,463** |

*Notes/Sources*

[1] Interest calculated using mid-year convention and annual compounding.  Interest in final period calculated through September 26, 2019.

[2] Damages per Schedule 3.

[3] Interest rates per Schedule 4.

[4] Ongoing Daily Interest based on Closing Balance as of September 26, 2019 multiplied by the daily interest rate implied by the weekly average one-year constant maturity Treasury yield during the week the Judgment was entered. See Schedule 4.

[5] Interest in the final period calculated through September 26, 2019.  Damages were presented at trial based on Xactware's infringing sales through March 2019.  To comport with the mid-period convention, I have calculated prejudgment interest assuming it accrues from February 15, 2019 through September 26, 2019 on the $6.9 million in 2019 damages.  I have assumed that partial-year interest from January 1, 2019 through September 26, 2019 accrues on the remaining $120.4 million Opening Balance.

[6] Differences may exist due to rounding.

*Confidential*

Schedule 2A

**Calculation of Interest Due Eagle View** [1]

*Based on Federal Reserve Bank Prime Rate from Date of Complaint*

| Periods | Damages [2] | Opening Balance | Interest Rate [3] Annual | Interest Rate [3] Partial | Interest | Closing Balance |
|---|---|---|---|---|---|---|
| Sept - Dec 2015 | $1,058,530 | - | *3.280%* | *0.899%* | $4,758 | $1,063,288 |
| Jan - Dec 2016 | 22,402,554 | 1,063,288 | *3.511%* | *3.511%* | 430,609 | 23,896,451 |
| Jan - Dec 2017 | 35,913,663 | 23,896,451 | *4.097%* | *4.097%* | 1,714,729 | 61,524,843 |
| Jan - Dec 2018 | 41,947,920 | 61,524,843 | *4.902%* | *4.902%* | 4,044,091 | 107,516,854 |
| Jan - Sept 2019 | 6,856,384 | 107,516,854 | *5.439%* | *n/a* | 4,535,532 | 118,908,770 |

**Damages Prior to Complaint:** $15,997,778

**Closing Balance - September 26, 2019:** $134,906,548

| | |
|---|---|
| **Total Prejudgment Interest through September 26, 2019:** | $10,729,719 |
| **Ongoing Daily Interest Rate:** | *0.005%* |
| **Ongoing Daily Interest:** [4] | $6,745 |

***Notes/Sources***

[1] Interest calculated using mid-year convention and annual compounding.  The first Infringed Patent issued on May 1, 2012.
Interest in final period calculated through September 26, 2019.

[2] Damages per Schedule 3.  Damages occuring subsequent to the September 23, 2015 Complaint are estimated based on days.

[3] Interest rates per Schedule 4A

[4] Ongoing Daily Interest based on Closing Balance as of September 26, 2019 multiplied by the daily interest rate implied by the
weekly average one-year constant maturity Treasury yield during the week the Judgment was entered. See Schedule 4.

[5] Interest in the final period calculated through September 26, 2019.  Damages were presented at trial based on Xactware's
infringing sales through March 2019.  To comport with the mid-period convention, I have calculated prejudgment
interest assuming it accrues from February 15, 2019 through September 26, 2019 on the $6.9 million in 2019 damages.  I have assumed
that partial-year interest from January 1, 2019 through September 26, 2019 accrues on the remaining $107.5 million Opening
Balance.

[6] Differences may exist due to rounding.

*Confidential*

Schedule 2B

**Calculation of Interest Due Eagle View** [1]

*Based on 1-Year Treasury Bill Rate from Date of Complaint*

| Periods | Damages [2] | Opening Balance | Interest Rate [3] | | Interest | Closing Balance |
|---|---|---|---|---|---|---|
| | | | *Annual* | *Partial* | | |
| Sept - Dec 2015 | $1,058,530 | - | *0.421%* | *0.115%* | $609 | $1,059,139 |
| Jan - Dec 2016 | 22,402,554 | 1,059,139 | *0.596%* | *0.596%* | 73,072 | 23,534,765 |
| Jan - Dec 2017 | 35,913,663 | 23,534,765 | *1.167%* | *1.167%* | 484,207 | 59,932,635 |
| Jan - Dec 2018 | 41,947,920 | 59,932,635 | *2.254%* | *2.254%* | 1,823,635 | 103,704,190 |
| Jan - Sept 2019 | 6,856,384 | 103,704,190 | *2.149%* | *n/a* | 1,731,688 | 112,292,262 |

|  |  |
|---|---|
| **Damages Prior to Complaint:** | **$15,997,778** |
| **Closing Balance - September 26, 2019:** | **$128,290,040** |

|  |  |
|---|---|
| **Total Prejudgment Interest through September 26, 2019:** | **$4,113,211** |
| **Ongoing Daily Interest Rate:** | *0.005%* |
| **Ongoing Daily Interest:** [4] | **$6,415** |

*Notes/Sources*

[1] Interest calculated using mid-year convention and annual compounding. The first Infringed Patent issued on May 1, 2012. Interest in final period calculated through September 26, 2019.

[2] Damages per Schedule 3. Damages occuring subsequent to the September 23, 2015 Complaint are estimated based on days.

[3] Interest rates per Schedule 4A

[4] Ongoing Daily Interest based on Closing Balance as of September 26, 2019 multiplied by the daily interest rate implied by the weekly average one-year constant maturity Treasury yield during the week the Judgment was entered. See Schedule 4.

[5] Interest in the final period calculated through September 26, 2019. Damages were presented at trial based on Xactware's infringing sales through March 2019. To comport with the mid-period convention, I have calculated prejudgment interest assuming it accrues from February 15, 2019 through September 26, 2019 on the $6.9 million in 2019 damages. I have assumed that partial-year interest from January 1, 2019 through September 26, 2019 accrues on the remaining $103.7 million Opening Balance.

[6] Differences may exist due to rounding.

*Confidential*

# Eagle View's Claim for Damages

*As Presented During the Jury Trial in Case No. 1:15-cv-07025*

| Periods | Lost Profits | Price Erosion | Total | % of Total |
|---|---|---|---|---|
| May - Dec 2012 | $850,401 | $449,130 | $1,299,531 | *1.0%* |
| Jan - Dec 2013 | $1,010,019 | $282,551 | $1,292,570 | *1.0%* |
| Jan - Dec 2014 | $2,196,860 | $8,403,712 | $10,600,572 | *8.5%* |
| Jan - Dec 2015 | $2,495,559 | $1,368,076 | $3,863,635 | *3.1%* |
| Jan - Dec 2016 | $5,289,262 | $17,113,292 | $22,402,554 | *18.0%* |
| Jan - Dec 2017 | $14,910,098 | $21,003,565 | $35,913,663 | *28.9%* |
| Jan - Dec 2018 | $13,119,818 | $28,828,102 | $41,947,920 | *33.8%* |
| Jan - Mar 2019 | $2,528,982 | $4,327,402 | $6,856,384 | *5.5%* |
| **Total** | **$42,400,999** | **$81,775,830** | **$124,176,829** | **100.0%** |

**Notes/Sources**

[1] Lost Profits damages per PDX-6.39.

[2] Price Erosion damages per PDX-6.50.

[3] Differences may exist due to rounding.

*Confidential*

Schedule 4

## Average Federal Reserve Prime and 1-Year Treasury Bill Interest Rates

*Based on the Date of First Infringement*

| | Periods | Fed. Reserve Prime  [2] | 1-Year Treasury Bill |
|---|---|---|---|
| [1] | May - Dec 2012 | 3.250% | 0.175% |
| | Jan - Dec 2013 | 3.250% | 0.125% |
| | Jan - Dec 2014 | 3.250% | 0.113% |
| | Jan - Dec 2015 | 3.260% | 0.305% |
| | Jan - Dec 2016 | 3.511% | 0.596% |
| | Jan - Dec 2017 | 4.097% | 1.167% |
| | Jan - Dec 2018 | 4.902% | 2.254% |
| [4] | Jan - Sept 2019 | 5.439% | 2.149% |

| | |
|---|---|
| Week Ending September 20, 2019  [5] | 1.840% |
| ***Implied Daily Interest Rate*** | **0.005%** |

### Notes/Sources

[1] Defendants' infringement began May 1, 2012.  See Schedule 3.

[2] Federal Reserve Prime Rate per Federal Reserve Economic Data, Research Division, Federal Reserve Bank of St. Louis, *accessed at:* https://fred.stlouisfed.org/series/DPRIME.  Rate in each period calculated as average of daily rates.

[3] 1-Year Treasury Bill rate per Federal Reserve Economic Data, Research Division, Federal Reserve Bank of St. Louis, *accessed at:* https://fred.stlouisfed.org/series/DTB1YR.  Rate in each period calculated as average of monthly rates.

[4] Judgment was entered on September 26, 2019.

[5] https://www.utd.uscourts.gov/2019-post-judgment-interest-rate.

[6] Differences may exist due to rounding.

*Confidential*

Schedule 4A

# Average Federal Reserve Prime and 1-Year Treasury Bill Interest Rates

*Based on the Date of Complaint* [1]

| Periods | Fed. Reserve Prime | 1-Year Treasury Bill |
|---------|:------------------:|:--------------------:|
| Sep - Dec 2015 | *3.280%* | *0.421%* |
| Jan - Dec 2016 | *3.511%* | *0.596%* |
| Jan - Dec 2017 | *4.097%* | *1.167%* |
| Jan - Dec 2018 | *4.902%* | *2.254%* |
| [4] Jan - Sept 2019 | *5.439%* | *2.149%* |

| | |
|---|---:|
| Week Ending September 20, 2019  [5] | *1.840%* |
| ***Implied Daily Interest Rate*** | ***0.005%*** |

### Notes/Sources

[1] *Complaint* , Eagle View Technologies, Inc. *et al.*  v. Xactware Solutions, Inc., *et al.,*  Civil Action No. 15-cv-07025-RMB-JS, filed September 23, 2015.

[2] Federal Reserve Prime Rate per Federal Reserve Economic Data, Research Division, Federal Reserve Bank of St. Louis, *accessed at:* https://fred.stlouisfed.org/series/DPRIME.  Rate in each period calculated as average of daily rates.

[3] 1-Year Treasury Bill rate per Federal Reserve Economic Data, Research Division, Federal Reserve Bank of St. Louis, *accessed at:* https://fred.stlouisfed.org/series/DTB1YR.  Rate in each period calculated as average of daily rates.

[4] Judgment was entered on September 26, 2019.

[5] https://www.utd.uscourts.gov/2019-post-judgment-interest-rate.

[6] Differences may exist due to rounding.

*Confidential*