[Docket No. 987]

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| EAGLE VIEW TECHNOLOGIES, INC., and PICTOMETRY INTERNATIONAL CORP., <br><br> Plaintiffs, <br><br> v. <br><br> XACTWARE SOLUTIONS, INC., and VERISK ANALYTICS, INC., <br><br> Defendants. | Civil No. 15-7025 (RMB/SAK) <br><br> **OPINION** |

**RENÉE MARIE BUMB, United States District Judge**

This matter comes before the Court upon the parties' jointly proposed Stipulation and Order Vacating Judgment and Permanent Injunction Previously Issued by the Court in this Matter and Dismissing All Claims and Counterclaims With Prejudice. [Docket No. 987.] The Court construes the parties' joint submission as a proposed motion and references it as such herein. For the reasons set forth below, the Court **grants**, in part, and **denies**, in part, the proposed motion.

**I.    BACKGROUND**

Plaintiffs Eagle View Technologies, Inc. and Pictometry International Corp. (collectively, "Eagle View" or "Plaintiffs") define their business as a data analytics company, with the "data" being derived from aerial imagery of roofs. [Trial Transcript, p. 705:24-706:1 ("A: . . . Eagle View is in the business of capturing aerial

imagery and then extracting roof measurements from the imagery.").] Eagle View's patented processes are applied to that data, and then a roof report is generated. This is Eagle View's "cornerstone product." [Daga Sept. 26, 2019 Decl. ¶ 4.] In contrast to Eagle View, less than half of one percent of revenue of Defendants Xactware Solutions, Inc. and Verisk Analytics, Inc. ("Defendants") results from the generation of roof reports. [PTX-138; PTX-940; Dkt. No. 791-1, Exs. B–E.] In fact, it is Defendants' generation of their roof reports from Defendants' software programs that a jury ultimately found to infringe on Eagle View's patents.

On September 26, 2019, after years of litigation and a two-week jury trial, the jury found that Defendants willfully infringed six of Eagle View's patents and awarded lost profits damages of $125 million to Eagle View. That same day, this Court entered its Judgment (in favor of Eagle View and reflecting the Jury Verdict) [Docket No. 799], and issued a Temporary Restraining Order, enjoining Defendants from, among other things, selling or offering to sell their Property Insight, Roof Insight, Geomni Roof and Geomni Property products that are produced by the computer software programs the jury found infringed Eagle View's patents [Docket No. 800]. Shortly thereafter, Eagle View filed a Motion for a Permanent Injunction, which the Court granted, in part, on October 18, 2019. [Docket No. 842.]

Defendants disputed the Jury Verdict and this Court's resulting findings, and filed Notices of Appeal to the Federal Circuit Court of Appeals with respect to this Court's (i) Judgment [Docket No 843], (ii) denial of Defendants' Motion for New Trial/Judgment as a Matter of Law [Docket No. 903], and (iii) Order on Motion for

Miscellaneous Relief [Docket No. 911].  While the appeal was pending, Eagle View filed a Motion for an Order to Initiate Contempt Proceedings and for a Temporary Restraining Order [Docket No. 940], and after conducting a hearing on the proposed motion, this Court determined that Eagle View had made a *prima facie* showing of contempt and allowed the parties to proceed with expedited discovery [Docket No. 967].

On November 5, 2021, with the appeal still pending, the parties notified the Court that they had reached a settlement agreement, resolving all issues between them without the need for further litigation.  [Docket No. 987.]  The parties' recent settlement is the basis for the parties' current motion before this Court.

## II.   JURISDICTION

Pursuant to Fed. R. App. P. 42(b), the parties sought joint dismissal of the appeal with each party to bear its own costs, which the Federal Circuit Court of Appeals granted on November 9, 2021.  [Docket No. 988.]

## III.  ANALYSIS

Now that the Federal Circuit has dismissed the appeal, three motions remain pending before this Court:  (i) the parties' current motion; (ii) Eagle View's Motion to Initiate Contempt Proceedings, which the Court continued, in part, pending expedited discovery; and (iii) Eagle View's Motion for Attorneys' Fees, Costs, and Interest, which the Court continued, in part, pending adjudication of the appeal by the Federal Circuit.  In the current motion, the parties jointly request not only that the Court dismiss the remaining motions pending before it, but also that the Court

vacate its earlier findings.  Specifically, pursuant to Fed. R. Civ. P. 60(b)(5) and (6), the parties contend in their current motion that the Court has the inherent authority to do each of the following:

1. Vacate the Court's Judgment [Docket No. 799] entered on September 26, 2019, and all Orders, decisions, and findings underlying such judgment or merged therein;

2. Vacate the Court's Permanent Injunction [Docket No. 842] entered on October 19, 2019, and all Orders, decisions, and findings underlying such judgment or merged therein;

3. Dismiss, with prejudice, all claims, counterclaims, and defenses in this matter, including the allegations and averments contained therein; and

4. Terminate the contempt proceedings initiated by Eagle View.

[Docket No. 987 at 3.]  The Court considers each of the requests made by the parties in their current motion in turn.

### A. Eagle View's Remaining Motions to Initiate Contempt Proceedings and for Attorneys' Fees, Costs, and Interest

The Court agrees with the parties that it has the inherent authority to terminate the contempt proceedings initiated by Eagle View.  Fed. R. Civ. P. 60(b)(5) ("On motion and just terms, the court may relieve a party or its legal representative from a. . .**proceeding**. . . [when] applying it prospectively is no longer equitable[.]" (emphasis added)).  Undoubtedly, the Court also has the inherent authority to enforce its prior Orders, including its Permanent Injunction Order.  Here, however, the Court finds that the parties' recent settlement obviates the need for further proceedings regarding Defendants' alleged contempt, as stipulated by Eagle View in

the current motion. Thus, pursuant to Fed. R. Civ. P. 60(b)(5), Eagle View's Motion to Initiate Contempt Proceedings is hereby dismissed and the contempt proceedings initiated thereby are terminated.

Unlike Eagle View's Motion to Initiate Contempt Proceedings, nowhere in the current motion do the parties address Eagle View's Motion for Attorneys' Fees, Costs, and Interest. However, the Court finds that the parties' recent settlement also necessarily resolves the dispute insofar as it concerns such motion, and the motion is hereby dismissed as moot.

**B.   The Parties' Underlying Claims, Counterclaims, and Defenses**

The Court agrees with the parties that given the recent settlement, the parties' underlying claims, counterclaims, and defenses in this matter, including the allegations and averments contained therein, are rendered moot. [Docket No. 987 at 2 (citing *U.S. Phillips Corp. v. Windmere Corp.*, 9741 F.2d 728, 731 (Fed. Cir. 1992) (considering a settlement between two parties that occurred pending appeal and explaining that "[a]ll of the claims of the judgments were appealed, and have now become entirely moot")).] Thus, the Court dismisses, without prejudice, each of the parties' underlying claims, counterclaims, and defenses in the current dispute.

**C.   The Court's Permanent Injunction**

The Court finds that there is a legally sufficient basis for the vacatur of its Permanent Injunction entered on October 19, 2019. Considering the parties' recent settlement, it is "no longer equitable" to "prospectively" apply the Court's Permanent Injunction against Defendants. Fed. R. Civ. P. 60(b)(5). The Court

hereby vacates its Permanent Injunction. However, the parties' joint request to vacate "all Orders, decisions, and findings underlying such judgment or merged therein" as they pertain to the Court's Permanent Injunction is hereby denied and will be discussed below in connection with the identical request made regarding the Orders, decisions, and findings underlying the Court's Judgment.

### D. The Court's Judgment

In *Argentum Medical, LLC v. Noble Biomaterials*, the district court considered a nearly identical case. Civ. No. 3:08-1305, 2014 WL 4351531 (M.D.Pa. Sept. 2, 2014). After a jury found in favor of the plaintiff on its Latham Act claims and the trial court denied the defendants' motion for judgment as a matter of law, the defendants appealed to the Federal Circuit. *Id.* at *1. While the appeal was pending, the parties "fully and amicably resolved all outstanding disputes and claims," and requested that the district court vacate "the portion of the judgment that imposed punitive damages against them." *Id.* In denying the parties' request to vacate its prior judgment, the district court relied on the "principles emanating" from earlier decisions by the Supreme Court and the Third Circuit Court of Appeals, which provide a roadmap for the current request before this Court regarding its prior Judgment.

As noted by the district court in *Argentum Medical*, the Supreme Court has expressly considered the question as to "'whether appellate courts in the federal system should vacate civil judgments of subordinate courts in cases that are settled after appeal is filed or certiorari sought" and provided an answer "in a unanimous

6

opinion, [that] might fairly be stated as generally no." *Id.* at *2 (citing *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 19 (1994). In addition, the Third Circuit has clearly "voiced [its] opposition to settlements conditioned on nullification of judgments for money damages," but does "permi[t] the practice when the trial court's injunctive order imposed a legal bar to settlement." *Sentinel Trust Co. v. Universal Bonding Ins. Co.*, 316 F.3d 213, 220 (3d Cir. 2003) (citing *Clarendon Ltd. v. Nu-W. Indus., Inc.*, 936 F.2d 127 (3d Cir. 1991) ("While we share the view that voluntary settlements should be encouraged, we cannot agree that such a goal overrides the policy that a losing party with a deep pocket should not be permitted to use a settlement to have an adverse precedent vacated."); *Oracare DPO, Inc. v. Merin*, 972 F.2d 519, 522 (3d Cir.1992). "[E]xceptional circumstances must exist to justify vacatur of a judgment pursuant to Rule 60(b)(6)," including that none of Rules 60(b)(1) through (5) apply, but which "do not include the mere fact that the settlement agreement provides for vacatur." *Clarke v. Castro*, Civ. No. 10 Civ. 6330(HBP), 2013 WL 686680, at *2 (S.D.N.Y. Feb. 26, 2013) (citations omitted).

      The Court is not persuaded that exceptional circumstances exist in the current controversy, nor do the parties press anywhere in their current motion what circumstances warrant vacatur under Rule 60(b)(6). The Court is persuaded by the distinction drawn by the Third Circuit in *Sentinel Trust* – *i.e.*, between judgments that impose a legal bar to settlement and those that do not – and finds that such distinction is consistent with the prong in Fed. R. Civ. P. 60(b)(5) that allows the Court to vacate a judgment when "applying it prospectively is no longer equitable."

For example, the continued enforcement of the Court's Permanent Injunction against Defendants is incompatible with the parties' agreed-to settlement, as previously discussed; however, the Court's Judgment imposes no such barrier.

    The Court is also persuaded by the principles relied on by the district court in *Argentum Medical* that warrant denial of the parties' request to vacate the Judgment. The public interest is best served by the finality of judgments. "While a jury verdict alone has little or no precedential value, the integrity of all decisions in this court would be weakened by allowing unsuccessful parties to erase unfavorable legal outcomes by striking a deal with the other side after the fact." *Argentum Medical*, 2014 WL at *3. Moreover, vacatur of the Court's Judgment "would trivialize the significant judicial resources dedicated to this litigation, including the services rendered by the. . .members of the jury that considered this case." *Id.* Simply put, a jury verdict is no fiction that the parties can later purport never happened.

    A jury trial is not a dress rehearsal for each party to perform its case. Nor are the Court's prior rulings and opinions mere hook up sheets or prompt scripts. The finality of jury verdicts and the presumption that a jury verdict is correct until the appeal process has run its course are both fundamental to the legal system. That the parties have now settled their dispute does not change the fact that over a two-week period a jury considered a vast amount of complex evidence and testimony presented by the parties, based upon which the jury ultimately came to a unanimous decision. Similarly, the parties' eventual settlement is not incongruous with the multitude of underlying Orders, decisions, and findings made by the Court as the case progressed

through six years of litigation.

The Court's takes seriously that its "duty lies not in the direction of an automatic acquiescence to the parties' request, but rather with a deliberate consideration of the policy that will best serve the public good." *Clrendon*, 936 F.2d at 129. The parties' request to vacate the Court's Judgment is denied, and the parties' request that the Court vacate the Orders, decisions, and findings underlying both its Judgment and its Permanent Injunction is denied.

## IV. CONCLUSION

For the reasons stated above, the parties' proposed Stipulation and Order Vacating Judgment and Permanent Injunction Previously Issued by the Court in this Matter and Dismissing All Claims and Counterclaims With Prejudice is hereby GRANTED, in part, and DENIED, in part, as specifically set forth in the accompanying Order issued on this date.

November 10, 2021             s/Renée Marie Bumb
Date                                            Renée Marie Bumb
                                                                 U.S. District Judge